# EXHIBIT 9

# HINSHAW
& CULBERTSON LLP

**ATTORNEYS AT LAW**
800 Third Avenue
13th Floor
New York, NY 10022

212-471-6200
212-935-1166 (fax)
www.hinshawlaw.com

**STRICTLY CONFIDENTIAL AND ATTORNEY-CLIENT PRIVILEGED MATERIAL**

March 27, 2018

Lori D. Thompson, Esq.
General Counsel
LeClairRyan PLLC
1800 Wells Fargo Tower
Drawer 1200
Roanoke, Virginia 24006


Re:     **Opinion Letter**

Dear Ms. Thompson:

This letter responds to the request from LeClairRyan PLLC ("LR") for Hinshaw & Culbertson LLP ("we," "our," or "us") to opine whether LR's plan to enter into a joint venture to be called ULX Partners, LLC ("ULX Partners" or the "Joint Venture") with ULX Manager LLC ("ULX Manager" or the "Managing Member"), a 100% owned indirect subsidiary of UnitedLex Corporation ("ULex"), is consistent with the law and the New York Rules of Professional Conduct (the "Rules," or "RPCs") governing lawyers and the unauthorized practice of law. This opinion is based on the law and Rules of the State of New York. Excerpts of certain of those Rules are attached as Appendix 1.[1] This opinion rests upon the facts set forth in this opinion letter. Although we have reviewed in whole or in part drafts of certain agreements documenting the Joint Venture transaction, we have relied on your interpretation and description of how LR and the Joint Venture will implement the transaction and operate after the transaction closes. Should the facts as summarized in this opinion letter prove inaccurate, such inaccuracies could change the conclusions herein. We do not express an opinion on any tax consequences or on the merits of the business plans described herein. Further, this letter is intended only for LR and its members and should not be relied upon by others.

---

[1] We have reviewed comparable sections (to the extent they exist) of the Rules of Professional Conduct in California, Delaware, the District of Columbia, Florida, Georgia, Illinois, Massachusetts, Pennsylvania, Texas and Virginia, and have attached copies in Appendix 2. Although time has not permitted a detailed review, we do not believe that the analysis will be materially different in those states. In addition, we have attached the Rules of Connecticut, Maryland, Michigan and New Jersey but have not reviewed their applicability to the proposed arrangement. We will provide a supplemental memorandum on these jurisdictions.

**STRICTLY CONFIDENTIAL AND ATTORNEY-CLIENT PRIVILEGED MATERIAL**

LeClairRyan PLLC
Page 2

### Summary of Facts

LR is a professional limited liability corporation engaged in the practice of law and organized under the laws of the Commonwealth of Virginia. ULex is a Delaware corporation with its principal place of business in Overland Park, Kansas.[2]

**The Joint Venture Transaction**

We understand that LR will enter into a joint venture with ULX Manager, which is a wholly owned indirect subsidiary of ULex. The Joint VentureULX Partners is a limited liability company organized under the laws of Delaware. ULX Manager will be the controlling (Class A) member of ULX Partners. LR will be [a] Class B member.

As consideration for its Class B interest in ULX Partners, LR will at closing contribute certain intellectual property (for example, but not limited to, LR human resources and other policies, LR business plans and procedures, IT procedures, and administrative procedures and tools excluding all legal intellectual property), and transfer its administrative and other support staff to ULX Partners. As consideration for its Class A interest, ULX Manager or another ULX entity will at closing provide term loans to LR totalling $ 33 million to be used to return LR's members' capital and pay off existing debt. In addition, ULX Manager or another ULX entity will provide letters of credit to secure LR's leases and make a line of credit available to support LR's business needs.

It is contemplated that LR will transfer its paralegal staff to ULX Partners in the future.

ULX Manager and LR will each receive an equity interest in ULX Partners. It is anticipated that the value of the equity interests will increase over the life of the joint venture due to the profits ULFS will make in its provision of services to LR, and LR has the right to redeem a portion of its interest in ULFS twice, five years and 10 years after closing.

---

[2] Ulex does business in more than 20 countries. In the United States, it is engaged in providing services to law firms and corporate legal departments in the form of "back-office" services such as, among other things, accounting, marketing, technology, human resources, and legal and nonlegal staffing. In addition, ULex provides to corporate legal departments and to law firm clients "client-facing" nonlegal services, such as contracts and transactional management, intellectual property assistance (including patent mining and monetization, technical expertise, and strategic advice), data management, discovery and cyber security, and other nonlegal litigation and transactional support, which for the purposes of this letter we assume are "nonlegal" and do not constitute the unauthorized practice of law.

**STRICTLY CONFIDENTIAL AND ATTORNEY-CLIENT PRIVILEGED MATERIAL**

LeClairRyan PLLC
Page 3

**The Joint Venture Operation**

LR will continue to practice law, bill clients for its services at its usual rates, and distribute profits to its members at the end of the year. No LR proceeds from fees will be shared with ULFS.

Pursuant to a Master Services Agreement between LR and ULX Partners (the "MSA"), ULX Partners will provide "back office" services to LR. These will include, without limitation, accounting, technology, human resources, marketing and IT support. In some cases, ULX Partners will receive assistance from ULex, which, as described above, is experienced in providing this support. It is anticipated that ULX Partners, with ULex's assistance, will be in a position to provide these services more efficiently than LR would be able to do on its own. ULX Partners will not provide any services directly to clients. Any paralegal services will be provided to LR, not directly to clients, and ULX Partners will bill LR for those services. LR will in turn bill clients for those services either on an hourly basis, or, if billed as a marked-up disbursement, with notice to the client of the mark-up. All "back office" services as described above will be subject to the supervision of LR as appropriate in accordance with Rule 5.3 of the Rules of Professional Conduct. In addition, to the extent client information is available to ULX Partners, LR will have the ultimate authority to require ULX Partners to maintain the confidentiality of such information, including client identities.

The MSA and other relevant agreements provide:

Notwithstanding any allocation of responsibility in this agreement, the parties acknowledge and agree that

(a) [LR] shall have full authority and the right to oversee the maintenance of confidentiality of all client information, including the identity of clients, whether in electronic or hard copy format that comes into the possession, custody or control of [ULX Partners], in accordance with its obligations under the Rules of Professional Conduct (the "Rules"), and [ULX Partners] agrees to abide by and cause all of its employees to comply with the policies and instructions of [LR] with respect to client confidentiality, including, without limitation, all steps, policies, procedures or systems that may be required from time to time to preserve appropriate levels of cyber security; and

(b) [LR] has obligations under the Rules, including, without limitation, the duty of competence, the duty of communication, duties with respect to fees and expenses, the duty of confidentiality, and the duty to avoid conflicts, and [ULX Partners] agrees to defer to [LR]'s final judgment with respect to any decisions that implicate [LR]'s obligations under the Rules.

ULX Partners will invoice LR for all services at market rates.

**STRICTLY CONFIDENTIAL AND ATTORNEY-CLIENT PRIVILEGED MATERIAL**

LeClairRyan PLLC
Page 4

LR may also seek assistance for certain "client-facing" nonlegal services, such as transactional management, intellectual property assistance, data management, discovery and cyber support and other nonlegal litigation and transactional support for client matters (the "ULex Services"). In those situations, LR will advise its clients that it can use ULex or another vendor to provide these services and disclose to the client that it has a business relationship with ULex. ULex will bill LR for these client support services at market rates, and LR will bill its clients in the ordinary course.

LR will supervise the performance and delivery of all ULex Services.

ULex may also provide legal and nonlegal staffing to LR. These lawyers will work under the supervision of LR lawyers.

**Opinion**

Based on the foregoing facts, and with the caveat that we cannot predict with certainty how a regulator may view a particular arrangement, we believe that there is a reasonable basis to conclude that, by entering into the Joint Venture Transaction and conducting its business as described above, LR will

1. Not be engaged in impermissible fee-sharing within the meaning of Rule 5.4(a).

2. Not be assisting another entity or individual in the unauthorized practice of law.

3. Will be in compliance with its duty of supervision under Rule 5.3.

HINSHAW & CULBERTSON LLP

Anthony E. Davis

AED/jls
Attachments

cc: Janis M. Meyer

301405825v7 1006289

# APPENDIX 1
## *EXCERPTS* FROM THE NEW YORK RULES OF PROFESSIONAL CONDUCT

**RULE 1.0: TERMINOLOGY**

. . .

(j) "Informed consent" denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated information adequate for the person to make an informed decision, and after the lawyer has adequately explained to the person the material risks of the proposed course of conduct and reasonably available alternatives.

. . .

**RULE 1.7: CONFLICT OF INTEREST: CURRENT CLIENTS**

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that either:

(1) the representation will involve the lawyer in representing differing interests; or

(2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

**RULE 1.8: CURRENT CLIENTS: SPECIFIC CONFLICT OF INTEREST RULES**

(a) A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise professional judgment therein for the protection of the client, unless:

(1) the transaction is fair and reasonable to the client and the terms of the transaction are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;

(2) the client is advised in writing of the desirability of seeking, and is given a reasonable opportunity to seek, the advice of independent legal counsel on the transaction; and

(3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

. . .

### RULE 5.3: LAWYER'S RESPONSIBILITY FOR CONDUCT OF NONLAWYERS

(a) A law firm shall ensure that the work of nonlawyers who work for the firm is adequately supervised, as appropriate. A lawyer with direct supervisory authority over a nonlawyer shall adequately supervise the work of the nonlawyer, as appropriate. In either case, the degree of supervision required is that which is reasonable under the circumstances, taking into account factors such as the experience of the person whose work is being supervised, the amount of work involved in a particular matter and the likelihood that ethical problems might arise in the course of working on the matter.

(b) A lawyer shall be responsible for conduct of a nonlawyer employed or retained by or associated with the lawyer that would be a violation of these Rules if engaged in by a lawyer, if:

(1) the lawyer orders or directs the specific conduct or, with knowledge of the specific conduct, ratifies it; or

(2) the lawyer is a partner in a law firm or is a lawyer who individually or together with other lawyers possesses comparable managerial responsibility in a law firm in which the nonlawyer is employed or is a lawyer who has supervisory authority over the nonlawyer; and

(i) knows of such conduct at a time when it could be prevented or its consequences avoided or mitigated but fails to take reasonable remedial action; or

(ii) in the exercise of reasonable management or supervisory authority should have known of the conduct so that reasonable remedial action could have been taken at a time when the consequences of the conduct could have been avoided or mitigated.

### RULE 5.4: PROFESSIONAL INDEPENDENCE OF A LAWYER

(a) A lawyer or law firm shall not share legal fees with a nonlawyer, except that:

(1) an agreement by a lawyer with the lawyer's firm or another lawyer associated in the firm may provide for the payment of money, over a reasonable period of time after the lawyer's death, to the lawyer's estate or to one or more specified persons;

(2) a lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the estate of the deceased lawyer that portion of the total compensation that fairly represents the services rendered by the deceased lawyer; and

(3) a lawyer or law firm may compensate a nonlawyer employee or include a nonlawyer employee in a retirement plan based in whole or in part on a profit-sharing arrangement.

301405825v7 1006289

(b) A lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law.

(c) Unless authorized by law, a lawyer shall not permit a person who recommends, employs or pays the lawyer to render legal service for another to direct or regulate the lawyer's professional judgment in rendering such legal services or to cause the lawyer to compromise the lawyer's duty to maintain the confidential information of the client under Rule 1.6.

(d) A lawyer shall not practice with or in the form of an entity authorized to practice law for profit, if:

(1) a nonlawyer owns any interest therein, except that a fiduciary representative of the estate of a lawyer may hold the stock or interest of the lawyer for a reasonable time during administration;

(2) a nonlawyer is a member, corporate director or officer thereof or occupies a position of similar responsibility in any form of association other than a corporation; or

(3) a nonlawyer has the right to direct or control the professional judgment of a lawyer.

**RULE 5.7: RESPONSIBILITIES REGARDING NONLEGAL SERVICES**

(a) With respect to lawyers or law firms providing nonlegal services to clients or other persons:

(1) A lawyer or law firm that provides nonlegal services to a person that are not distinct from legal services being provided to that person by the lawyer or law firm is subject to these Rules with respect to the provision of both legal and nonlegal services.

(2) A lawyer or law firm that provides nonlegal services to a person that are distinct from legal services being provided to that person by the lawyer or law firm is subject to these Rules with respect to the nonlegal services if the person receiving the services could reasonably believe that the nonlegal services are the subject of a client-lawyer relationship.

(3) A lawyer or law firm that is an owner, controlling party or agent of, or that is otherwise affiliated with, an entity that the lawyer or law firm knows to be providing nonlegal services to a person is subject to these Rules with respect to the nonlegal services if the person receiving the services could reasonably believe that the nonlegal services are the subject of a client-lawyer relationship.

(4) For purposes of paragraphs (a)(2) and (a)(3), it will be presumed that the person receiving nonlegal services believes the services to be the subject of a client-lawyer relationship unless the lawyer or law firm has advised the person receiving the services in writing that the services are not legal services and that the protection of a client-lawyer relationship does not exist with respect to the nonlegal services, or if the interest of the lawyer or law firm in the entity providing nonlegal services is de minimis.

(b) Notwithstanding the provisions of paragraph (a), a lawyer or law firm that is an owner, controlling party, agent, or is otherwise affiliated with an entity that the lawyer or law firm knows is providing nonlegal services to a person shall not permit any nonlawyer providing such

3

services or affiliated with that entity to direct or regulate the professional judgment of the lawyer or law firm in rendering legal services to any person, or to cause the lawyer or law firm to compromise its duty under Rule 1.6(a) and Rule 1.6(c) with respect to the confidential information of a client receiving legal services.

(c) For purposes of this Rule, "nonlegal services" shall mean those services that lawyers may lawfully provide and that are not prohibited as an unauthorized practice of law when provided by a nonlawyer.

301405825v7 1006289

# APPENDIX 2

To the extent there are rules comparable to NY Rules 1.0 (definition of "informed consent"), 1.7, 1.8, 5.3, 5.4, and 5.7 in California, Delaware, the District of Columbia, Florida, Georgia, Illinois, Massachusetts, Pennsylvania, Texas, and Virginia, they are included herein.[3] Although the provisions of these Rules differ in language, there is no basis to conclude that the analysis in these jurisdictions would be different than that under the New York Rules.

California, Illinois, Texas and Virginia have not adopted Rule 5.7. Nevertheless, there is no prohibition in these jurisdictions on lawyer ownership of an entity that provides nonlegal services.

**California**

In Formal Op. No. 1994-141, the State Bar of California Standing Committee on Professional Responsibility & Conduct opined that it was permissible for a lawyer to render nonlegal services through an entity in which the lawyer had an ownership interest provided there was compliance with the California Rules of Professional Conduct (conflicts, disclosure, client confidentiality, non-solicitation, and the rules relating to doing business with a client.)

**Illinois**

We did not locate any support for the view that the the proposed arrangement would not be permissible in Illinois.

**Texas**

In Opinion No. 643, the Supreme Court of Texas Professionalism Committee noted that there is no *per se* prohibition in Texas on a lawyer's ownership of an entity providing non-legal services. In addressing a question as to whether it was proper for a lawyer to arrange for a debt management firm the lawyer owned to refer legal business to the lawyer, however, the committee concluded that this situation would present a conflict because the lawyer would be opining on the work the debt management company did for the client, and no amount of disclosure would be sufficient to render the conflict waivable. 2014 TX Sup. Ct. Prof. Comm. Op. 643.

We do not believe the reasoning in this opinion is applicable in the proposed arrangement. ULX Partners is not providing services that would be subject to analysis by LR. It does not appear that Texas law would prohibit the proposed arrangement.

---

[3] The Rules of Professional Conduct in California, Virginia and Texas do not contain a definition of "informed consent" or Rule 5.7. California's rules also do not contain an equivalent of Rule 5.3.

**Virginia**

The Virginia Standing Committee on Legal Ethics concluded that it was proper for a law firm to work with a consulting firm owned by the law firm provided there was adequate disclosure. 1995 Va. Legal Ethics Op. No. 1658.  The reasoning in this opinion would apply equally to the proposed arrangement.

The rules and ethics opinions are attached.

# APPENDIX 2-EXHIBITS

**1. California**

Excerpts from California Rules of Professional Conduct

1-300, 1-310, 1-320, 3-310

California State Bar Formal Op. No.141-1995

**2. Delaware**

Excerpts from Delaware Rules of Professional Conduct

1.0, 1.7, 1.8, 5.3, 5.4, 5.7

**3. District of Columbia**

Excerpts from District of Columbia Rules of Professional Conduct

1.0, 1.7, 1.8, 5.3, 5.4, 5.7

**4. Florida**

Excerpts from Florida Rules of Professional Conduct

Preamble, 1.7, 1.8, 5.3, 5.4, 5.7

**5. Georgia**

Excerpts from Georgia Rules of Professional Conduct

1.0, 1.7, 1.8, 5.3, 5.4, 5.7

**6. Illinois**

Excerpts from Illinois Rules of Professional Conduct

1.0, 1.7, 1.8, 5.3, 5.4, 5.7

**7. Massachusetts**

Excerpts from Massachusetts Rules of Professional Conduct

1.0, 1.7, 1.8, 5.3, 5.4, 5.7

**8. Pennsylvania**

Excerpts from Pennsylvania Rules of Professional Conduct

1.0, 1.7, 1.8, 5.3, 5.4, 5.7

**9. Texas**

Rules of Professional Conduct

1.06, 1.08, 5.03, 5.04

Texas Supreme Court Professionalism Committee, Formal Op. 643-2014

**10. Virginia**

Rules of Professional Conduct

1.7, 1.8, 5.3, 5.4

Virginia Legal Ethics Ops., 1658-1995

**11. Conn. Rules of Prof. Conduct (excerpts)**

**12. Maryland Rules of Prof. Conduct (excerpts)**

**13. Michigan Rules of Prof. Conduct (excerpts)**

**14. New Jersey Rules of Prof. Conduct (excerpts)**

301405825v7 1006289