## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Richmond Division)

| | |
|---|---|
| In re:<br><br>**LECLAIRRYAN PLLC,**<br><br>      **Debtor.** | **Chapter 7**<br><br>**Case No. 19-34574 (KRH)** |
| **Lynn L. Tavenner, as Chapter 7 Trustee,**<br><br>      **Plaintiff,**<br><br>**vs.**<br><br>**ULX Partners, LLC and UnitedLex Corporation**<br><br>      **Defendants.** | **Adv. Proc. No. 20-03142-KRH** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' ULX PARTNERS, LLC'S
AND UNITEDLEX CORPORATION'S
<u>MOTION TO PARTIALLY DISMISS THE COMPLAINT</u>**[1]

---

[1] This Motion to Dismiss shall not be deemed or construed to be a waiver of Defendants' rights (1) to have final orders in non-core matters or *Stern* claims entered only after de novo review by a District Court Judge, (2) to trial by jury in any proceeding so triable in this case or any case, controversy, or proceeding related to this case, (3) to have the District Court withdraw the reference as set forth in Defendants' Motion to Withdraw the Reference filed on January 11, 2021 [Docket No. 13], and (4) to any other rights, claims, actions, setoffs, or recoupments to which Defendants are or may be entitled, all of which are hereby expressly reserved.

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

THE CLAIMS IN THE COMPLAINT ........................................................................ 3

FACTUAL BACKGROUND ......................................................................................... 4

    A.    The Law Firm of LeClairRyan .............................................................. 5
    B.    LeClairRyan Obtains a Loan from Virginia Commercial Finance ....... 6
    C.    LCR Converts to a PLLC ...................................................................... 7
    D.    LCR Terminates its Deferred Compensation and Supplemental Retirement
         Plans ...................................................................................................... 8
    E.    Discussions and Diligence Leading to the Joint Venture ..................... 9
    F.    The Joint Venture Structure .................................................................. 10
    G.    The ULXP Note ..................................................................................... 13
    H.    ULXP Continues to Provide Services to LCR ...................................... 14
    I.    The Novellus Law Group ...................................................................... 14

STANDARD OF REVIEW ........................................................................................... 15

ARGUMENT .................................................................................................................. 15

    A.    The Trustee's Efforts to Disguise a Claim of Deepening Insolvency Must
         be Rejected ............................................................................................ 15
    B.    The Trustee's Fiduciary-Related Claims Also Fail in Their Own Right .............. 17

         1.    Aiding and Abetting a Breach of Fiduciary Duty is Not a Recognized
              Cause of Action in Virginia ...................................................... 18
         2.    Even if Aiding and Abetting is a Recognized Cause of Action, the
              Trustee Lacks Standing to Recover Alleged Damages to Creditors .............. 19
         3.    Similarly, the Trustee's Claims on Behalf of the Debtor are Barred by
              the Doctrine of In Pari Delicto .................................................. 20
          4.    The Trustee Fails to State a Predicate Claim of Breach of Fiduciary
              Duty by LCR's Directors and Officers ..................................... 22
          5.    The Trustee Fails to Allege the Elements of Aiding and Abetting
              Breach of Fiduciary Duty .......................................................... 24

    C.    The Trustee Fails to State Claims for Conspiracy in Counts X and XI ............... 27

         1.    The Conspiracy Claims Lack the Requisite Predicate Claim ......... 27
         2.    The Conspiracy Claims are Not Pled with the Requisite Particularity .......... 28
         3.    The Trustee's Pleading Invokes the Intra Corporate Immunity Doctrine ....... 29

    D.    The Conveyance Related Claims .......................................................... 30

1. Counts I, III, and VI Fail Because the Trustee Fails to Allege the Requisite Intent and Because Lack of Specificity Required by Rule 9(b) ................................................................................................ 30

2. Counts II Should be Dismissed Because ULXP Provided Reasonably Equivalent Value .................................................................................... 31

3. Any Claim for Avoidance of ULXP's Security Interest Must be Limited to Section 547 ................................................................................ 32

4. Count VII for Disallowance of Claims Should be Dismissed ........................ 33

5. The Trustee Fails to State a Claim for the ULXP Note to be Recharacterized ............................................................................................ 33

RESERVATION OF RIGHTS ......................................................................................... 34

CONCLUSION ................................................................................................................ 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.G. Van Metre Construction, Inc. v. NVKettler L.P.*,
  1992 WL 884467 (Loudoun County Cir. Ct. Jan. 29, 1992) ............................................18, 19

*Anderson Gustafsson Advokatbyra, KB v. eSCRUB Systems Inc.*,
  2011 WL 677053 (E.D. Va. Feb. 15, 2011).....................................................................17, 23

*Arrowsmith v. Mallory*,
  2017 Bankr. LEXIS 2230 (Bankr. E.D. Va. Aug. 9, 2017) ....................................................30

*Baena v. KPMG LLP*,
  453 F.3d 1 (1st Cir. 2006)..............................................................................................20, 21

*Bank of America v. Musselman*,
  222 F.Supp.2d 792 (E.D. Va. 2002) ...............................................................................22, 23

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................................15

*In re Bernard L. Madoff Inv. Securities LLC*,
  721 F.3d 54 (2d Cir. 2013)...................................................................................................21

*Bowman v. State Bank of Keysville*,
  331 S.E.2d 797 (1985) .........................................................................................................29

*Calderon v. Aurora Loan Serv., Inc.*,
  2010 WL 2306343 (E.D. Va. June 3, 2010) ..........................................................................18

*Caplin v. Marine Midland Grace Trust Co.*,
  406 U.S. 416 (1972)..............................................................................................................19

*Charles E. Brauer Co., Inc. v. NationsBank of Virginia, N.A.*,
  466 S.E.2d 382 (1996) .........................................................................................................29

*Cohen v. Un-Ltd. Holdings, Inc. (In re Nelco, Ltd.)*,
  264 B.R. 790 (Bankr. E.D. Va. 1999)...................................................................................31

*In re Dornier Aviation, Inc.*,
  453 F.3d 225 (4th Cir. 2006) ...............................................................................................33

*Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership*,
  213 F.3d 175 (4th Cir. 2000) ...............................................................................................15

*Fortress Holdings II, LLC v. Patty*,
    2017 WL 10978805 (Norfolk Apr. 27, 2017) ................................................29, 30

*Gasner v. Cnty. of Dinwiddie*,
    162 F.R.D. 280 (E.D. Va. 1995) ................................................................11, 12

*Godlewski v. Affiliated Computer Servs., Inc.*,
    210 F.R.D. 571 (E.D. Va. 2002) .......................................................................1

*Government Employees Insurance Co. v. Google, Inc.*,
    330 F.Supp.2d 700 (E.D. Va. 2004) ...............................................................28

*In re Great Alliance Title and Escrow, LLC*,
    2009 WL 2018986 (Bankr. E.D. Va. July 5, 2009) .........................................20

*Halifax Corp. v. Wachovia Bank*,
    604 S.E.2d 403 (Va. 2004) .....................................................................18, 25

*In re Health Diagnostic Laboratory, Inc.*,
    2018 WL 4676339 (Bankr. E.D. Va. Sept. 26, 2018) ................................19, 24

*Herold v. Merrill Lynch*,
    2018 WL 1950641 (E.D. Va. Apr. 25, 2018) ............................................24, 25

*Infinity Technology, LLC v. Burney*,
    2020 WL 6387378 (E.D. Va. June 4, 2020) ....................................................18

*Islam v. Jackson*,
    782 F. Supp. 1111 (E.D. Va. 1992) ...............................................................15

*Jordon v. Osmun*,
    2016 WL 7173784 (E.D. Va. Dec. 8, 2016) ...................................................18

*KPMG Peat Marwick, L.L.P. v. Estate of Nelco*,
    250 B.R. 74 (E.D.Va. 2000) ...........................................................................19

*La Bella Dona Skin Care, Inc. v. Belle Femme Enterprises, LLC*,
    805 S.E.2d 399 (Va. 2017) .....................................................................27, 28

*LandAmerica Financial Group, Inc. v. Southern California Edison Co.*,
    525 B.R. 308 (E.D. Va. 2015) ........................................................................31

*Logan v. JKV Real Estate Servs. (In re Bodgan)*,
    414 F.3d 507 (4th Cir. 2005) .....................................................................19, 20

*MicroStrategy Services Corp. v. OpenRisk, LLC*,
    2015 WL 1221263 (E.D. Va. Mar. 17, 2015) .................................................18

*Rashad v. Jenkins*,
  2016 WL 901279 (E.D. Va. Mar. 3, 2016) ............................................................10

*Schneider v. Donaldson Funeral Home, P.A.*,
  733 Fed. Appx. 641 (4th Cir. 2018) ("'[I]n the event of conflict between the
  bare allegations of the complaint and any exhibit attached, the exhibit
  prevails.'") ................................................................................................................8

*Schnelling v. Crawford (In re James River Coal Co.)*,
  360 B.R. 139 (Bankr. E.D. Va. 2007) ........................................................... *passim*

*Scholes v. Lehmann*,
  56 F.3d 750 (7th Cir. 1995) ...................................................................................19

*In re Section 1031 Exchange Litigation*,
  716 F.Supp.2d 415 (D.S.C. 2010) ..........................................................................25

*Steinberg v. Kendig (In re Ben Franklin Retail Stores)*,
  225 B.R. 646 (Bankr. N.D. Ill. 1998) ....................................................................23

*In re SunSport, Inc.*,
  260 B.R. 88 (Bankr. E.D. Va. 2000) .......................................................................30

*In re Townsend-Robertson Lumber Co.*,
  144 B.R. 407 (Bankr. E.D. Ark. 1992) ...................................................................32

*Trenwick America Litigation Trust v. Ernst & Young, L.L.P.*,
  906 A.2d 168 (Del. Ch. 2006) ................................................................................16

*Tysons Toyota, Inc. v. Commonwealth Life Ins.*,
  1990 WL 10039336 (Fairfax Cnty. Cir. Ct. Aug. 9, 1990) ....................................18

*Washington v. Veritiss, LLC*,
  2015 WL 965931 (E.D. Va. Mar. 4, 2015) .............................................................15

*Wenzel v. Knight*,
  2015 WL 222182 (E.D. Va. Jan. 14, 2015) ............................................................22

*Witthohn v. Fed. Ins. Co.*,
  164 F.App'x 395 (4th Cir. 2006) ..............................................................................8

**Statutes**

11 U.S.C. § 502 .............................................................................................................4

11 U.S.C. § 544 .............................................................................................................4

11 U.S.C. § 547 .............................................................................................................4

11 U.S.C. § 548................................................................................................4, 30, 31, 34

11 U.S.C. § 550...........................................................................................................4

11 U.S.C. § 551...........................................................................................................4

Virginia Code §55-80 ...........................................................................................28, 30

Virginia Code §§ 18.2-499, et seq. ............................................................................4

**Other Authorities**

Federal Rule of Bankruptcy Procedure 7012..............................................................15

Federal Rule of Civil Procedure 8 ..............................................................................21

Federal Rule of Civil Procedure 9 ...................................................................21, 28, 30

Federal Rule of Civil Procedure 12 ....................................................................1, 15, 21

Defendants ULX Partners, LLC ("**ULXP**") and UnitedLex Corporation ("**UnitedLex**") (collectively, "**Defendants**"), by counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, hereby file this Memorandum of Law in support of their Motion to Dismiss Counts I, II, III, V, VI, VII, VIII, IX, X, and XI of the Complaint served by Plaintiff Lynn L. Tavenner, as Chapter 7 Trustee (the "**Trustee**" or "**Plaintiff**") of the bankruptcy estate of LeClairRyan PLLC ("**LeClairRyan**" or "**LCR**" or the "**Debtor**").[2]

## INTRODUCTION

Although a court must accept well pled factual allegations as true when considering a motion to dismiss, the court is <u>not</u> required to engage in the willing suspension of disbelief when doing so. Yet the story pushed by the Trustee in the Complaint asks that one uncritically accept the premise that prolonging the life of a struggling business is wrong and inherently harmful to creditors. Unless one accepts that false premise, most of the 49-page Complaint fails to state a cause of action. Only if that premise is true, which it is not, are the efforts and actions of Defendants and others to keep LCR alive described in the Complaint – paying wages to hundreds of employees, paying rent to dozens of landlords, paying invoices from vendors for goods and services provided, seeking and obtaining credit extensions, forbearances and waivers – conceivably able to be viewed as breaches of duty. Only under such an approach could the

---

[2] Defendants are not at this time seeking to dismiss Counts IV, XII, XIII, and XIV, which are premised on allegations by the Trustee (including the allegations that ULXP had the authority and ability to direct, and did direct, actions by LCR) that must be accepted as true only for purposes of a Motion to Dismiss. While Defendants unequivocally deny such alleged "facts," it is premature at the Motion to Dismiss stage to seek dismissal of these counts. Defendants reserve the right to file an Answer to all claims, including those that are not subject to this Motion to Dismiss, within the time provided for in the Federal Rules once the Court rules upon this Motion. *See Godlewski v. Affiliated Computer Servs., Inc.*, 210 F.R.D. 571, 572 (E.D. Va. 2002) ("the filing of a motion that only addresses part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are subject of the motion.").

consultation, advice, extensions of credit and granting of forbearances described in the Complaint wrongly be characterized as aiding and abetting breaches of duty.  Only by the willing suspension of logical belief could discussions and negotiations with representatives of the Debtor and third parties regarding the foregoing possibly be characterized as "conspiracy."

Thirteen years ago, however, this Court forcefully and definitively rejected the premise that trying to keep a struggling company afloat was wrong or that efforts to avert insolvency should be characterized as a breach of duty because they did not succeed.  *Schnelling v. Crawford (In re James River Coal Co.)*, 360 B.R. 139, 179 (Bankr. E.D. Va. 2007).  Not to reject that premise, this very Court noted, "would fundamentally transform Virginia law" as "Virginia law does not require a financially challenged company to abruptly windup its business affairs and liquidate its assets."  *Id*.  Accordingly, the acts described in the Complaint allegedly to prolong the life of Debtor, even if taken as true (and Defendants contend that the Complaint contains numerous misstatements of fact that the Trustee knew or should have known with minimal inquiry were untrue) do not state a cause of action for conspiracy (statutory or otherwise), hindering, delaying or defrauding creditors (intentionally or constructively), or aiding and abetting breaches of fiduciary duties.  Such actions should be dismissed with prejudice.

In a similar vein, whether the Debtor was insolvent at any point in time (and Defendants take issue with the Trustee's characterizations), a payment made for value does not constitute a fraudulent conveyance.  Shortly after filing the Complaint alleging that $19,357,282.51 of payments from LCR to ULXP were fraudulent conveyances, the Trustee testified under oath that she had conducted no analysis into the bona fides of the invoices rendered to LCR and had no knowledge or basis for disputing that they were legitimate payments for the services rendered every day to LCR by the hundreds of ULXP employees. (Bankr. Docket No. 689, p.19:7-20;

2

21:1-19).  While this is a question of fact, the Trustee has had all of the accounting records of

LCR for more than a year and knows or should know that such employees showed up for work

every day and performed services supporting the legal practice of LCR, as detailed in the Master

Services Agreement, at substantially the same rates as when such persons had been employed by

LCR.  Without a factual allegation that the payments were for less than fair value (which the

Trustee cannot make in good faith) or in any other way illegitimate or improper, these counts

merely seek to convert a preference action into a cause of action for fraudulent conveyance and

should be dismissed.

Similarly, the Complaint alleges that ULXP improperly sought to hinder, delay, and

defraud creditors by taking a secured note instead of immediate payment of overdue debts.  Far

from hindering or delaying creditors, the Court can take judicial notice that the real-world impact

of the note was to permit other unsecured creditors to receive payment ahead of ULXP from

December 20, 2018 through the petition date.  And the Trustee's claim that LCR's senior

creditor who, advised by experienced and able counsel, approved the terms of the note and

related security agreement and executed a stiff intercreditor agreement was deceived into

believing that such note was equity is simply not plausible.

For these reasons, among others, Counts I, II, III, V, VI, VII, VIII, IX, X, and XI should

be dismissed.

## THE CLAIMS IN THE COMPLAINT

For the Court's convenience, the 14 causes of action alleged by the Trustee are set forth

below, with the Counts subject to this Motion to Dismiss being denoted with an "*".

3

| Count | Cause(s) of Action | Cited Code Sections or Statutes (if any) | Applicable Defendant |
|---|---|---|---|
| 1* | Avoidance of Fraudulent Transfers – Actual Fraud | 11 U.S.C. § 548(a)(1)(A) | UnitedLex and ULXP |
| 2* | Avoidance of Fraudulent Transfers – Constructive Fraud | 11 U.S.C. § 548(a)(1)(B) | UnitedLex and ULXP |
| 3* | Avoidance of Fraudulent Transfers under Bankruptcy Code and Applicable State Law | 11 U.S.C. §§ 544(b) and 550 | UnitedLex and ULXP |
| 4 | Avoidance of Preferences | 11 U.S.C. § 547(b) | UnitedLex and ULXP |
| 5* | Avoidance of Lien and Recovery of Avoided Transactions | 11 U.S.C. §§ 544(b), 550(a) and 551 | ULXP |
| 6* | Avoidance of Fraudulent Transfer under Bankruptcy Code and Applicable State Law | 11 U.S.C. §§ 544(b) and 550 | ULXP |
| 7* | Disallowance of Claims | 11 U.S.C. §§ 502(d), 547 and 550 | UnitedLex and ULXP |
| 8* | Re-Characterization of Debt as Equity | | ULXP |
| 9* | Aiding and Abetting Breach of Fiduciary Duty | | UnitedLex and ULXP |
| 10* | Statutory Conspiracy | Va. Code §§ 18.2-499, et seq. | UnitedLex and ULXP |
| 11* | Common Law Conspiracy | | UnitedLex and ULXP |
| 12 | Conversion | | UnitedLex and ULXP |
| 13 | Unjust Enrichment | | UnitedLex and ULXP |
| 14 | Alter Ego Liability | | UnitedLex |

## **FACTUAL BACKGROUND**[3]

This matter arises from a transaction in April 2018 in which LCR divested itself of the non-legal aspects of its business, transferring its back office and support personnel as well as responsibility for the services previously provided by them to a newly formed LLC, ULXP.

---

[3] The facts set forth herein are based upon those set forth in the Complaint, and are accepted as true solely for purposes of this Motion to Dismiss.

Although LCR received a 1% profits interest in ULXP, it no longer employed its non-legal and back office staff, and as in most outsourcing agreements, LCR expressed satisfaction or dissatisfaction with the services provided by ULXP, which were detailed in a Master Services Agreement, through consultation with the managers of ULXP who sat on an Oversight Board (Compl. Ex. 11, 16). By design and in practice, LCR exercised control over its business – the practice of law – through its Board of Directors and Executive Officers including a Chief Financial Officer. Through the arrangement, ULXP was tasked with providing secretarial support, business recommendations, cash flow analyses, and personnel recommendations, among other services, to LCR's Chief Executive Officer and Board of Directors for their consideration, review, and final decision. The Trustee, however, incorrectly characterizes the transaction as one where LCR ceded control of the law firm to ULXP, and that ULXP not only allegedly aided and abetted certain breaches of fiduciary duties by LCR's Board, but that ULXP actually "directed" some of the breaches. Incredibly, the Trustee even goes so far as to allege that ULXP was directing LCR's actions even before the parties entered their joint venture. Yet despite nearly a year of investigation, conducting presumably dozens of witness interviews, having access to all of LCR's files and communications, and reviewing hundreds of thousands of pages of documents, the Trustee's Complaint offers little more than vague and conclusory allegations that support a misguided narrative – notwithstanding the existence of overwhelming evidence to the contrary.

## A.    The Law Firm of LeClairRyan

LeClairRyan was a Richmond based law firm founded in 1988 by Dennis Ryan and Gary D. LeClair. (¶21).[4] The firm's original focus was corporate matters, and it later expanded into a

---

[4] Unless otherwise noted, "(¶__)" refers to the identified paragraph of the Complaint.

general services firm with offices across the country and hundreds of attorneys. (¶21). LCR was

run and managed by a Board of Directors and its CEO. (¶14). According to the Trustee, LCR

suffered from financial mismanagement, including the over-compensation of attorneys, declining

revenue, and improper and erroneous accounting for certain income and expense items; all of

which contributed to LCR allegedly missing its budgets and revenue projections since at least

2014. The Trustee does not, however, allege that these "misses" were material, or that these

"misses" precluded LCR from meeting payroll or paying its other expenses in the ordinary

course of its business. (¶22). Instead, her own exhibit contains statements from LCR's CEO that

LCR managed to achieve a cash profit in 2017 and significantly reduced its debt levels. (Compl.

Ex. 5, p.3). Nevertheless, despite such profit, the Trustee alleges that LCR was left "searching

for a lifeline" in 2017. (¶25).

### B.    LeClairRyan Obtains a Loan from Virginia Commercial Finance

In 2017, after apparently suffering all of the foregoing ills and, according to the Trustee,

being either insolvent or within the zone of insolvency, LCR had discussions with Virginia

Commercial Finance ("**VCF**") to obtain a loan in an amount in excess of $13 million dollars (the

"**VCF Loan**"). (¶¶24, 37, Compl. Ex. 19, p.1).[5] On information and belief, VCF conducted due

diligence and entered into a Loan and Security Agreement with VCF for over $13 million dollars

on December 29, 2017, and would not have done so had LCR been insolvent.[6] (¶37, Compl. Ex.

---

[5] As discussed herein, this effort by the Trustee to plead both insolvency and zone of insolvency
is fatal to the Complaint. The documents attached to the Complaint show that LCR was not
insolvent in 2017, and a "zone of insolvency" theory is a specifically rejected theory. *See*
(Compl. Ex. 5, p.3).

[6] At the September 3, 2019 First Days hearing of the Debtor's bankruptcy case, counsel for VCF
stated: "When [VCF] made the loan [on December 29, 2017], LeClairRyan was over 330
attorneys, projected to generate 160 million dollars in revenue and had 14 million dollars-plus
net worth." (Bankr. Docket No. 45, p.43:17-19). Further, it is telling that the Trustee has not, to
Defendants' knowledge, publicly accused VCF of wrongdoing by making its loan to keep LCR

19, p.2).  With the improved financing from VCF, LCR continued to examine ways to improve its financial conditions in late 2017 and early 2018.

### C.    LCR Converts to a PLLC

Prior to 2018, LCR operated as a professional corporation.  In or about 2017 and 2018, however, as part of its internal review of business, recruiting, and retention efforts, LCR began to consider converting into a professional limited liability company.  According to a memo provided by LCR's leadership to its shareholders in February 2018, the conversion of corporate status had significant tax benefits for both LCR and its shareholders.  (Compl. Ex. 12).  LCR's CEO subsequently described this event as one that "materially reduce[s] [its] monthly cash burn [in 2018] by another $450k per month," and that it allowed LCR to "pay about $30 million in partner draws on a tax deferred basis," which "create[d] significant retention incentive through 2023, especially for [LeClairRyan's] biggest producers . . . ."  (¶¶97-98).  Contrary to the Trustee's assertion that the conversion was a condition precedent to any deal with UnitedLex, LCR's CEO noted in a document that the Trustee attached to her own Complaint that the "LLC conversion is a standalone item," that was separate and independent of any contemplated joint venture with UnitedLex.  (Compl. Ex. 12, p.2).  As the Complaint notes, if the joint venture were to proceed and the 1% profits interest became valuable, LCR shareholders would 'benefit' by avoiding the double taxation that would be imposed on LCR in corporate form.  (¶99).  Nevertheless, proceeding with the joint venture idea was not a certainty when LCR was evaluating the conversion.  (See Compl. Ex. 12, p.2).  With this knowledge, and without any guarantee of any eventual transaction with UnitedLex, LCR's Board of Directors and shareholders voted to approve the conversion on or about February 24, 2018.  (¶99).  The

_____

in business during a time when the Trustee believes the law firm was insolvent or within the zone of insolvency.

Articles of Entity Conversion were finalized and signed on February 28, 2018, and the conversion became effective March 4, 2018 -- nearly a month before a deal with Defendants.[7] *See* Articles of Conversion, attached as **Exhibit A**.[8]

### D.    LCR Terminates its Deferred Compensation and Supplemental Retirement Plans

In late December 2017, the LCR Board also voted to terminate the firm's Deferred Compensation and Supplemental Retirement plans effective as of December 29, 2017 – again, at a time when joint venture discussions were in their very early stages and when a final deal was far from certain.  (*See* ¶102).  The alleged effect of this termination was that at least $12 million became eligible to be transferred to shareholders approximately <u>one year later</u>, on December 28, 2018.  According to the Trustee, such distributions diverted funds from LCR's creditors.  (¶106). Significantly, however, the Complaint fails to highlight that the distribution in December 28, 2018 resulted from LCR's own decision <u>a year earlier</u> (pre-joint venture), and the Complaint makes <u>no</u> allegation that UnitedLex was involved in this decision by the LCR Board or that UnitedLex somehow directed this decision in late 2017, <u>months</u> before a joint venture agreement was reached.  Nor does the Complaint contain an allegation as to how creditors would have any right to such vested and employee-contributed retirement funds.

---

[7] The Trustee incorrectly asserts that "LeClairRyan converted from a PC to a PLLC as of March 31, 2018." (¶95).  The correct date is March 4, 2018.  (Ex. A); s*ee also Schneider v. Donaldson Funeral Home, P.A.*, 733 Fed. Appx. 641, 645 (4th Cir. 2018) ("'[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached, the exhibit prevails.'") (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)).

[8] *See Witthohn v. Fed. Ins. Co.*, 164 F.App'x 395, 396 (4th Cir. 2006) (On a motion to dismiss, a court "may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed.")

E.    Discussions and Diligence Leading to the Joint Venture

At the same time that LCR was evaluating and, in some instances, adopting changes such as those referenced above, LCR was also having discussions with UnitedLex regarding a possible joint venture. (¶25). UnitedLex is not a law firm; rather, it is a multinational corporation which provides support and consulting services to a variety of businesses including law firms and legal departments with a view to using digital technology and other best business practices to enhance those businesses' efficiency and profitability. (¶¶1, 26). These early discussions between LCR and UnitedLex focused on ways that UnitedLex would assist in areas of business development, project management, operations support, and capital efficiencies, among others. (Compl. Ex. 1, ¶7). The original intention was that UnitedLex would move from being simply a vendor for law firms, to more of a "back-office" partner to a "constellation" of law firms. (¶27). In short, UnitedLex sought to use its expertise to provide LCR, and other future law firm clients, with "market-leading technology, new sources of capital, project and knowledge management, process innovation, and resource management to deliver maximum value to clients and improve law firm economics." (¶30).

The parties' discussions involved various potential terms, considerations, and proposals, such as those reflected in the alleged December 29 Proposal attached to the Complaint as Exhibit 1. (¶33). Terms that were discussed included, among others, replacing VCF as a lender, eliminating shareholder capital contributions, and loaning additional funds to LCR. (¶¶33-38). Contrary to what the Trustee implies, however, none of these terms and proposals had any binding force or effect; rather, the terms evolved following more discussion and diligence. More specifically, during the winter and spring of 2018, the parties engaged in due diligence for the joint venture. (¶44). Accordingly, in or about January 2018 – less than a month after closing on

the VCF Loan – UnitedLex retained a third party, Doug Benson, to conduct its own due diligence and assess LCR's finances. (¶47). Doug Benson's report raised additional questions by UnitedLex, which were addressed, in part, by LCR's CEO in an email dated March 22, 2018. In such email, LCR's CEO provided additional information to UnitedLex, as well as confirmed that without the joint venture, LCR could still "continue on its repositioned path as a stand alone firm." Further, the CEO stated that LCR was turning "cash positive" in March 2018. (Compl. Ex. 5, p.1, 3). Following this email, as well as additional discussion and diligence, the parties proceeded to move towards finalizing the joint venture.

Prior to signing any such deal, however, both parties sought legal advice from the well-known and well-regarded ethics law firm of Hinshaw & Culbertson, LLP ("**Hinshaw**") regarding the proposed structure of the transaction. (¶¶55, 56). UnitedLex had previously received a legal opinion from Hinshaw back in 2017 as it contemplated a similar outsourcing joint venture with another law firm – and relied upon such opinion, and similar advice, when negotiating the structure of the joint venture with LCR. (¶¶62, 63). Ultimately, Hinshaw also provided a letter to LCR with respect to the subject joint venture in which Hinshaw opined that the proposed transaction complied with LCR's ethical obligations. (Compl. Ex. 9).[9]

### F.      The Joint Venture Structure

After months of discussions and negotiations, the parties entered into the joint venture on or about April 4, 2018. (¶78). More specifically, the parties formed ULXP and consummated a

---

[9] The Trustee tries to undermine this by alleging, in conclusory fashion, that LCR's management and Defendants made false and/or misleading statements to Hinshaw regarding the joint venture. The Trustee, however, provides no factual support for these allegations and thus, they are to be ignored by this Court for purposes of the Motion to Dismiss. *See, e.g.*, *Rashad v. Jenkins*, 2016 WL 901279, at *4 (E.D. Va. Mar. 3, 2016) (stating that a court "'need not accept conclusory allegations encompassing the legal effects of the pleaded facts.'") (quoting *Chamblee v. Old Dominion Sec. Co., L.L.C.*, 2014 WL 1415095, at *4 (E.D. Va. Apr. 11, 2014)).

transaction involving, (i) substantially all of LCR's non-attorney employees (secretaries, paralegals, accounting and marketing staff, etc.) becoming employees of ULXP with ULXP assuming ongoing responsibility for their compensation and benefits; (ii) LCR's receiving a 1% share of ULXP's anticipated profits, and (iii) execution of a Master Services Agreement dated April 4, 2018 (the "**MSA**") through which LCR retained ULXP to provide a host of business (non-legal) operational functions detailed therein. (Compl. Ex. 11).

According to the Trustee, ULXP was "in charge of key functions," such as accounting, marketing, conflict management, and business development, and further that ULXP could incur expenses on LCR's behalf or make personnel decisions.  (¶¶111-114).  Yet the MSA was structured to ensure that LCR retains ultimate control over such functions by noting that only the policies and practices that LCR approves of will be implemented.   The MSA included an Addendum that described the services that ULXP would provide to LCR, subject to LCR's ultimate approval and authority.[10]  For example, the MSA states that although ULXP will "identify, develop, and propose modified or new Law Firm policies," only the policies that LCR "agrees [with]" will ultimately be adopted.  (Ex. B, Addendum 1, p.1).  Even when the MSA appears to go further regarding ULXP's role, such as stating that ULXP will "manage the process for" LCR's conflict system," it nevertheless confirms LCR's superiority by stating that LCR's "General Counsel [is] to provide [ULXP] with oversight and final determination of all conflict resolution."  (Ex. B, Addendum 1, p.6) (emphasis added).  And while certain ULXP

---

[10] The Trustee failed to attach the MSA's Addendum to the Complaint.  Accordingly, as the Addendum is part of the underlying MSA, the Defendants attach a copy of the Addendum as **Exhibit B**, and the Court may consider the Addendum with respect to this Motion to Dismiss. *See* note 8, *supra*; *see also Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) ("[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment.").

employees were given "chief" titles, such as Josh Rosenfeld receiving a designation of "Chief Operating Officer," the LCR Management Statement,[11] which identifies the Executive Officers of LCR and defines their duties, notes that despite such titles, "ULXP employees shall not be considered Executive Officers of [LCR] for the purposes of this Management Statement." (Ex. C, §7); *see* note 8, *supra*. The transfer to ULXP of the LCR employees, who, prior to such transfer, may have had important administrative responsibility at LCR but by no stretch of the imagination controlled LCR, did not magically elevate their authority and influence over LCR. In other words, despite ULXP playing many roles and providing many services, nothing happened at LCR without LCR's final approval. And to the extent either party felt the other was not performing, the MSA provided that either party could terminate the MSA at any time for convenience. (Compl. Ex. 11, §6).

Under the MSA, ULXP was to be compensated for "Operations Services Fees" related to ULXP's provision of back-office and non-legal services. As noted in LCR's CEO's memorandum to partners, the joint venture was structured such that these fees "will remain proportional" to what LCR originally paid its staff before the joint venture. In other words, LCR did "not pay a premium back to [ULXP] for the services from . . . [former LCR] team members." (Compl. Ex. 6, p.6). In addition, the MSA provided for "Production Service Fees" that were designed to compensate ULXP for assisting LCR in obtaining improvements to LCR's actual financial performance. (Ex. B, Addendum 2, p.2). While the Trustee alleges that any sharing of fees from LCR's legal practice is prohibited by the Virginia State Bar Rules of Professional Conduct (and Defendants dispute that this allegation is correct), the Trustee does not allege with

---

[11] The Defendants attach a copy of LCR's Amended and Restated Management Statement, adopted December 14, 2018 (the "**LCR Management Statement**"), as **Exhibit C**. The Court may consider the LCR Management Statement with respect to this Motion to Dismiss. *See* note 8, *supra*; *see also Gasner*, 162 F.R.D. at 282.

any certainty that any such sharing actually occurred. Rather, the Trustee only alleges that "[u]pon information and belief, ULXP was sharing in fees from LeClairRyan's legal practice." (¶87).[12] As the Trustee well knows by this point, no fees were shared.

G.     **The ULXP Note**

During 2018 ULXP provided services to LCR as contemplated, with LCR making various payments for those services over the course of that year in the form of Operations Services Fees. (Compl. Ex. 26). By December 2018, however, LCR owed Defendants fees in excess of $12 million. (¶131). A portion of this outstanding receivable was ultimately converted into the Outstanding Deferred Promissory Note dated December 20, 2018 (the "**ULXP Note**"). The ULXP Note and related Security Agreement and Intercreditor Agreement were formalized and executed on or about April 2, 2019.[13] As the ULXP Note recites, "[a]lthough Borrower has not paid all Invoiced Fees when due [ULXP] has continued to provide services and is willing to accept this secured note . . . in respect of $8,000,000 of such deferred Invoiced Fees." (Compl. Ex. 19, p.1). The maturity date for the ULXP Note was June 30, 2023, but it also provided for a five-year extension until 2028 in the event LCR did not receive a distribution from ULXP prior to the original maturity date. (Compl. Ex. 19, §1). Pursuant to its terms, no payments were

---

[12] The Trustee's use of "upon information and belief" pleading is inappropriate in this circumstance because the Trustee has access to all of LCR's records and files, and thus presumably, has all of the information necessary to determine the veracity of such allegation. Pleading by "information and belief" is reserved for instances where information is in the possession of the other party and can only be obtained through discovery. *See, e.g.*, *Gonzalez v. Spunk Indus.*, WL 4392951, at *5 (D. Md. Sept. 13, 2019) (stating that when "information 'is particularly within defendants' knowledge and control,' the use of 'upon information and belief' is warranted.") (internal citations omitted).

[13] The Trustee asserts in Paragraph 133 of the Complaint that the Security Agreement was also dated December 20, 2018. However, as shown on its face, the Security Agreement was dated April 2, 2019. *See* Exhibit 20 to Complaint; *see also* note 7, *supra*.

made (or required to be made) under the ULXP Note prior to LCR filing for bankruptcy.  (¶146, Compl. Ex. 19, §3).

### H.    ULXP Continues to Provide Services to LCR

Even after the ULXP Note was executed, ULXP continued to provide back-office services to LCR and invoice LCR for Operations Services Fees.  During this time, however, LCR continued to experience partner defections and declining revenue.  (¶130).  Pursuant to ULXP's financial advisory responsibilities under the MSA, ULXP worked with LCR's CFO, Dwight Jones, to develop strategies for handling cash flow.  (¶147).  This included having regular meetings with Mr. Jones and his team, and developing 13-week cash flow forecasts as to how vendor payments, including payments to ULXP, would be handled on a going forward basis. (¶148).  Indeed, as part of these discussions, ULXP would help Mr. Jones identify critical vendors that needed to be paid.  (¶150).  But there is no allegation in the Complaint that ULXP was the entity actually writing checks to these vendors (or itself) on the Debtor's behalf.[14] Instead, ULXP continued to invoice LCR and receive some limited payments from LCR for the continued back-office services that ULXP provided.  (¶¶153, 154).  Ultimately, however, ULXP was left with a receivable of over $8 million under the ULXP Note, plus an additional nearly $4 million outside of the ULXP Note.  *See* Proofs of Claim, Claim Nos. 174 and 175.

### I.    The Novellus Law Group

As LCR's financial condition worsened in 2019, and per the terms of the MSA, Defendants assisted LCR in exploring ways to improve their financial status and identify growth

---

[14] In fact, as the Trustee knows or with minimal inquiry should have known, neither ULXP nor any employee of ULXP had any authority to write checks or otherwise access any funds of LCR. This is in stark contrast to VCF which, in July 2019, asserted dominion and control over LCR's control accounts in accordance with the terms of its agreement with LCR upon the existence of certain conditions.  The Trustee does not allege that a similar arrangement was made with ULXP whereby ULXP could exercise financial control over LCR, its accounts or its funds.

opportunities. (¶¶169-170). One of the contemplated ideas was called Project Modern (a/k/a The Novellus Law Group) through which the parties evaluated whether a new partnership could be formed where LCR's profitable attorneys could continue to practice law and ULXP could continue to provide back-office services. (¶¶172-174). This concept, however, never materialized. (¶186).

## STANDARD OF REVIEW

Federal Rule 12(b)(6), made applicable to this adversary proceeding by Bankruptcy Rule 7012(b), requires courts to dismiss a claim that "fail[s] to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b); *see also Islam v. Jackson*, 782 F. Supp. 1111, 1113 (E.D. Va. 1992). A court need not accept "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership*, 213 F.3d 175, 180 (4th Cir. 2000). And, while a court reviewing a complaint on a Rule 12(b)(6) motion must accept well-pleaded factual allegations as true, it need not accept as true legal conclusions disguised as factual allegations. *Washington v. Veritiss, LLC*, 2015 WL 965931, at *2, *5 (E.D. Va. Mar. 4, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679-81 (2009)). A plaintiff must allege more than a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT

A.   **The Trustee's Efforts to Disguise a Claim of Deepening Insolvency Must be Rejected**

The Trustee is improperly pursuing a claim for deepening insolvency against Defendants in Counts IX, X, and XI of the Complaint. Deepening insolvency, this Court has noted, is "the fraudulent prolongation of a corporation's life beyond insolvency, resulting in damage to the corporation caused by increased debt." *Schnelling v. Crawford (In re James River Coal Co.)*,

15

360 B.R. at 178 (internal quotations omitted).  This is precisely what the Trustee alleges; that "the actions or inactions of the ULX Entities only served to plunge LeClairRyan further into insolvency," and that Defendants "[kept] the Debtor operating instead of winding down the insolvent firm."  *See* ¶¶1, 182, 283, 291.  Claims for deepening insolvency, however, have been summarily rejected across the country, including by this Court.  The Trustee's attempt to revive the claim should suffer the same fate.

As noted by this Court in the leading case of *Schnelling v. Crawford (In re James River Coal Co.)*, "[n]o court applying Virginia law has ever recognized an independent cause of action premised solely on a company's economic decline."  360 B.R. at 179.  "Virginia law does not," this Court explained, "require a financially challenged company to abruptly wind up its business affairs and liquidate its assets . . . ."  *Id.*[15]  Rather, "[t]he Board of Directors must remain free to exercise its good faith business judgment that will allow it to pursue strategies the board views as sound to turn the company around."  *Id.*; *see also Trenwick America Litigation Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 205 (Del. Ch. 2006) (stating that the fact that the strategy ultimately "results in continued insolvency and an even more insolvent entity does not in itself give rise to a cause of action.").  To hold otherwise would "fundamentally transform Virginia law . . . ."  *In re James River Coal Co.*, 360 B.R. at 179; *see also Trenwick*, 906 A.2d at 173 ("What Delaware law does not do is to impose retroactive fiduciary obligations on directors simply because their chosen business strategy does not pan out.").

Transforming Virginia law and imposing a retroactive fiduciary obligation upon LCR's Directors and Executive Officers, however, is exactly what the Trustee is trying to do.  She details how LCR chose to convert from a professional corporation to a professional limited

---

[15] The Trustee was counsel for the plaintiff trustee, Anthony H. N. Schnelling, in the *James River* case and therefore has direct knowledge that deepening insolvency claims are improper.

liability company. (¶¶94-98).    She details how LCR chose to terminate its Deferred Compensation and Retirement plans to take advantage of tax benefits and to increase attorney retention incentives.  (¶¶102-106).  She details how LCR sought to increase its ability to focus on client services and outsource its back-office services.  (¶¶78, 128).  And she improperly judges each of the foregoing acts, and others, by the result that LCR ultimately fell into insolvency and filed for bankruptcy as constituting breaches of fiduciary duty.    But the Trustee has this backwards.  Virginia law is clear that the foregoing acts do not become breaches of a fiduciary duty <u>because</u> of their ultimate result.  *See In re James River Coal Co.*, 360 B.R. at 179-180 ("The inability to state a claim that the directors of an insolvent corporation breached the fiduciary duty they owed to the corporation and its creditors <u>cannot</u> be remedied by alleging that the corporation became more insolvent as a result of a failed business strategy.") (emphasis added).

For these reasons, any attempt by the Trustee to bootstrap thinly-veiled claims of deepening insolvency should be rejected and dismissed by this Court.

**B.    The Trustee's Fiduciary-Related Claims Also Fail in Their Own Right**

The Trustee's inability to assert a claim for deepening insolvency cannot be remedied simply by labeling such claims as breaches of fiduciary duty and conspiracy.  *See Anderson Gustafsson Advokatbyra, KB v. eSCRUB Systems Inc.*, 2011 WL 677053, *4 (E.D. Va. Feb. 15, 2011) ("'The rejection of an independent cause of action for deepening insolvency does not absolve . . . causes of action for breach of fiduciary duty and for fraud,' [and] merely re-labeling a cause of action as a claim for 'breach of fiduciary duty' for the same predicate conduct will not stand.") (quoting *Trenwick*, 906 A.2d at 205).  Rather, "'one seeking to recover for "deepening insolvency" must show that the defendant prolonged the company's life in breach of a <u>separate duty, or committed an actionable tort</u> that contributed to the continued operation of a corporation and its increased debt.'"  *In re James River Coal Co.*, 360 B.R. at 179 (citations omitted)

(emphasis added). The Trustee's effort to obfuscate the deepening insolvency claim only emphasizes her awareness that this aggressive claim is improper.

For the reasons discussed below, the Trustee's Complaint fails to achieve this.

1.    **Aiding and Abetting a Breach of Fiduciary Duty is Not a Recognized Cause of Action in Virginia**

As an initial matter, Defendants respectfully contend that Count IX for aiding and abetting breach of fiduciary duty should be dismissed because this cause of action has <u>not</u> been recognized by the Supreme Court of Virginia. In *Infinity Technology, LLC v. Burney*, 2020 WL 6387378 (E.D. Va. June 4, 2020), this district dismissed a claim for aiding and abetting a tort because "neither the Supreme Court of Virginia nor the Virginia General Assembly has adopted an independent cause of action for aiding and abetting a tort . . . ." *Id.* at \*6. *See also MicroStrategy Services Corp. v. OpenRisk, LLC*, 2015 WL 1221263, at \*3 (E.D. Va. Mar. 17, 2015) (declining to recognize a cause of action for aiding and abetting breach of fiduciary duty); *see also Halifax Corp. v. Wachovia Bank*, 604 S.E.2d 403, 411-12 (Va. 2004) (not addressing whether such an action exists, but assuming its existence for the purpose of determining claimant failed to allege sufficient facts to state such a claim); *A.G. Van Metre Construction, Inc. v. NVKettler L.P.*, 1992 WL 884467, at \*3 (Loudoun County Cir. Ct. Jan. 29, 1992) (sustaining demurrer to claim for aiding and abetting and stating that "[a]iding and abetting is a criminal concept and not a civil concept"). Accordingly, Count IX should be dismissed.[16]

---

[16] Despite the foregoing cases, Defendants acknowledge the existence of various cases throughout the Commonwealth that come to the opposite conclusion – that "aiding and abetting" is in fact actionable. As noted in *Jordon v. Osmun*, 2016 WL 7173784 (E.D. Va. Dec. 8, 2016), "'the Supreme Court of Virginia has refrained from either recognizing or rejecting a separate "aiding and abetting" tort,'" and accordingly, "intermediate courts in Virginia and in this district have split on whether the cause of action is cognizable under Virginia law." *Id.* at \*4 (internal citation omitted) (comparing *Calderon v. Aurora Loan Serv., Inc.*, 2010 WL 2306343, at \*6 (E.D. Va. June 3, 2010) and *Tysons Toyota, Inc. v. Commonwealth Life Ins.*, 1990 WL 10039336, at \*1 (Fairfax Cnty. Cir. Ct. Aug. 9, 1990)); *but see Infinity Tech., LLC v. Burney*,

### 2.    Even if Aiding and Abetting is a Recognized Cause of Action, the Trustee Lacks Standing to Recover Alleged Damages to Creditors

The Trustee is precluded from bringing the fiduciary-related claims[17] to the extent they seek to recover damages allegedly suffered by LCR's creditors, contrary to what she alleges in paragraphs 283, 284, 294, and 301 of the Complaint. *Id.* (alleging that both the Debtor and its creditors "sustained significant damages" and that the Trustee "is entitled to recover from the Defendants the damages suffered by the Debtor and its creditors.") (emphasis added).    This prohibition is rooted in Supreme Court precedent.    In *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972), the Supreme Court held that a bankruptcy court lacks standing to pursue an action against a third party that could not have been maintained by the debtor. Applying *Caplin*, the District Court in *KPMG Peat Marwick, L.L.P. v. Estate of Nelco*, 250 B.R. 74, 83 (E.D.Va. 2000), noted that there "can be little doubt that the *Caplin* line of authority precludes bankruptcy trustees from asserting the claims of third party creditors."    *Id.* at 83; *see also Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995) (noting that a bankruptcy trustee may sue only to redress injuries to the debtor in bankruptcy).[18]    Accordingly, to the extent the Trustee

---

2020 WL 6387378, at *6 (E.D. Va. June 4, 2020) (stating that with respect to cases that have held to the contrary, "those cases do not establish a separate cause of action for aiding and abetting tort under Virginia law.").    Defendants recognize that this Court, and specifically Your Honor, has, on multiple occasions in prior cases, held that aiding and abetting a breach of fiduciary duty is a cognizable cause of action under Virginia law.    *See, e.g.*, *In re Health Diagnostic Laboratory, Inc.*, 2018 WL 4676339, *11 (Bankr. E.D. Va. Sept. 26, 2018) (noting that "A cause of action for aiding and abetting a breach of fiduciary duty has been recognized by the Fourth Circuit and Virginia courts.").    Accordingly, Defendants respectfully raise this argument in light of the generally noted uncertainty around this issue and because the Supreme Court of Virginia has to date not formally recognized such a claim.

[17] These include all claims upon which the Trustee seeks to establish the existence of a fiduciary duty, including claims for aiding and abetting, as well as civil and statutory conspiracy.

[18] *But see Schnelling v. Crawford (In re James River Coal Co.*), 360 B.R. 139, n.10 (stating that *Caplin* does not apply where claims are being brought on behalf of all the creditors as part of the bankruptcy estate, but involving facts where creditor claims were assigned to a trustee under a

seeks to recover any damage allegedly suffered by the creditors, rather than the Debtor, Count IX

should be dismissed.

### 3. Similarly, the Trustee's Claims on Behalf of the Debtor are Barred by the Doctrine of In Pari Delicto

Again, assuming *arguendo* that aiding and abetting is a cognizable claim in Virginia, the

Trustee's fiduciary-related claims against the Defendants are nevertheless barred by the doctrine

of *in pari delicto* because the claims are premised upon alleged wrongdoing by the Debtor's own

Board of Directors and Executive Officers. *See Logan v. JKV Real Estate Services (In re*

*Bogdan*), 414 F.3d 507, 514 (4th Cir. 2005) (stating that *in pari delicto* "bars a wrongdoer from

recovering against his alleged coconspirators."). In other words, a wrongdoer should not profit

from his own misconduct and for decisions in which it participated. *See In re Great Alliance*

*Title and Escrow, LLC*, 2009 WL 2018986, at *2 (Bankr. E.D. Va. July 5, 2009); *see also Baena*

*v. KPMG LLP*, 453 F.3d 1, 7 (1st Cir. 2006) (holding that the doctrine of *in pari delicto* barred

the trustee's claims against an accounting firm relating to misstated financial statements when

the trustee alleged that "the chairman of the board, the CEO and the managing directors were all

knowing parties to the financial statements.").

The Trustee repeatedly alleges in the Complaint that the LCR Officers and Directors

breached their fiduciary duties to the Debtor, and/or its shareholders, clients, and creditors, and

that those same Officers and Directors conspired with Defendants regarding the same. More

specifically, the Trustee asserts that the fiduciary duties were breached by entering into the

ULXP transaction, authorizing LCR to change its corporate form, terminating the firm's

Deferred Compensation and Supplemental Retirement plans, and selecting which vendors to pay

---

plan of reorganization) (relying upon *Logan v. JKV Real Estate Servs. (In re Bogdan)*, 414 F.3d
507, 511-12 (4th Cir. 2005).

and which funds to use to make such payments.[19]  All of these alleged actions constitute ordinary conduct and functions of a law firm's management, and thus, are subject to the *in pari delicto* defense.  *See In re James River Coal Co.*, 360 B.R. at 158 (stating that *in pari delicto* will not apply when a fiduciary is acting outside the scope of its employment or engaged in self-dealing); *see also Baena*, 453 F.3d at 7 (stating that "[t]he approval and oversight of [financial] statements is an ordinary function of management that is done on the company's behalf," and that such conduct was therefore attributable to the company itself).

Nor does the Trustee allege the level of self-dealing that could plausibly place a manager's conduct outside the scope of *in pari delicto*.  In *Baena*, the Court noted that such "adverse interest" exception to *in pari delicto* "in the context of imputation means that the manager is motivated by a desire to serve himself or a third party, and not the company, the classic example being looting." *Id.* at 8.  Without allegations that the "defalcating managers were acting <u>solely</u> out of self-interest or otherwise attempting <u>primarily</u> to benefit anyone other than the company through their behavior," dismissal of the Trustee's claim is warranted under Rule 12(b)(6). *See id.* (emphasis added); *see also In re Bernard L. Madoff Inv. Securities LLC*, 721 F.3d 54, 63 (2d Cir. 2013) (noting that "'this most narrow of exceptions' is reserved for cases of 'outright theft or looting.'") (citations omitted).  The allegations in the Trustee's Complaint come nowhere near this requisite level of self-dealing, as further discussed below, and amount to nothing more than allegations that the LCR Board and Officers benefitted, if at all, just the same as all other partners at LCR.  *See* ¶¶105-6.

---

[19] The Trustee also makes the conclusory allegation that the Debtor's Board of Directors and Officers made misleading or false statements to professional consultants, but provides no notice as to the specifics of such statements as required by Federal Rules 8 and 9.

In light of the foregoing, the Trustee's fiduciary-related claims with respect to harms allegedly suffered by the Debtor should be dismissed.

### 4.    The Trustee Fails to State a Predicate Claim of Breach of Fiduciary Duty by LCR's Directors and Officers

In the event that a cause of action for aiding and abetting a breach of fiduciary duty is proper under Virginia law, the Trustee nevertheless fails to appropriately plead the claim. In order to state a claim that Defendants were aiding and abetting a breach of fiduciary duty by the LCR Directors and Officers, the Trustee must also properly state a claim that the LCR Directors and Officers in fact did breach applicable duties. *See Wenzel v. Knight*, 2015 WL 222182, at *4 (E.D. Va. Jan. 14, 2015) ("[T]here can be no claim for aiding and abetting of a breach of fiduciary duty without an underlying breach by a fiduciary."). The Trustee alleges in Paragraph 107 of the Complaint that the LCR Directors and Officers breached their duties of care and loyalty by entering into the ULXP joint venture, entering into the Conversion, terminating the firm's Deferred Compensation and Supplemental Retirement plans, not using client-tendered funds for specific expenses, facilitating fraudulent transfers, and making misleading or false statements to professional consultants. What the Trustee does not properly allege, however, is that the LCR Directors and Officers owed a duty to the Debtor's creditors with respect to any of these actions.

As noted in *Bank of America v. Musselman*, 222 F.Supp.2d 792 (E.D. Va. 2002), "directors and officers owe a limited fiduciary duty to creditors during <u>insolvency</u>; this duty extends <u>only</u> to refraining from <u>self-dealing</u> acts." *Id.* at 801 (approvingly summarizing the similar law in various other jurisdictions) (emphasis added). In *Musselman*, the District Court examined "whether the creditors of an insolvent company may sue the company's officers for breach of fiduciary duty to recover defaulted loan amounts in the absence of self-dealing by the

22

officers," ultimately dismissing the fiduciary claim as a result.  *Id.* at 794.   In reaching its decision, the court surveyed various other jurisdictions, noting that those courts in other states that impose such a fiduciary duty were all in cases that "uniformly involve self-dealing conduct," and that those courts that directly addressed the issue all held that "self-dealing is <u>essential</u> for liability."  *Id.*at 799, 800 (emphasis added).   In its analysis, the District Court pointed to *Steinberg v. Kendig (In re Ben Franklin Retail Stores)*, 225 B.R. 646 (Bankr. N.D. Ill. 1998), where the "corporate officers and directors were accused of 'wrongfully prolonging [the corporation's] life beyond the point of insolvency by misrepresenting the true value of [its] accounts receivable.'"  *Id.* at 800 (citing *Steinberg*, *supra*, at 649).   In that case, the Illinois court explained that "the insolvency exception to the general rule that directors owe no duty to creditors is, after all, an exception.   Its scope should be no greater than the problem it was intended to solve."  *Id.* (internal quotations omitted); *see also Andersson Gustafsson Advokatbyra, KB v. eSCRUB Systems Inc.*, 2011 WL 677053, at *4 (adopting the reasoning of *Musselman*); *see also In re James River*, 360 B.R. at 170 ("[W]hen a corporation becomes insolvent, or in a failing condition, the officers and directors no longer represent the stockholders, but by the fact of insolvency, become trustees for the creditors, and that they cannot by transfer of its property or payment of cash, prefer themselves or other creditors.").

The Trustee's Complaint, like the complaint in *Musselman*, lacks allegations of self-dealing by the LCR Directors and Officers that are "essential" to stating a claim for breach of a fiduciary duty owed to creditors.   Indeed, the only allegation that could arguably be considered as self-dealing is the conclusory statement that "[t]he termination and subsequent payments from the Deferred Compensation and Supplemental Retirement plans diverted funds from the Debtor's creditors."  (¶106).   Yet the allegation fails to allege the recipients of any distributions, the

23

amount of the distributions, or when the distributions occurred, nor do they allege that the Board

received anything that the shareholders did not.   Additionally, with respect to other possible

breaches referenced in Paragraph 107 of the Complaint, the Trustee fails to allege any self-

dealing.  She does not explain how the Conversion benefitted the LCR Directors and Officers (as

opposed to all of the shareholders or the firm generally).  Nor does she allege that the ULXP

joint venture itself or the alleged failure to use client-tendered funds for specific expenses

benefitted in any way the LCR Directors and Executive Officers, amounted to self-dealing, or

were somehow unfair to LCR as a whole.  *See In re James River Coal Co.*, 360 B.R. at 170

(finding allegations of self-dealing sufficient when the directors engaged in transactions that

were not fair to the company.).  Accordingly, the Trustee did not properly allege the existence of

an actionable fiduciary duty with respect to creditors.

Without a properly alleged claim for a breach of fiduciary duty by the LCR Directors and

Officers, there can be no finding of "aiding and abetting" against Defendants and Count IX of

the Complaint should be dismissed.

### 5.       The Trustee Fails to Allege the Elements of Aiding and Abetting Breach of Fiduciary Duty

In the event the Court holds that the Trustee had properly pled a predicate claim against

LCR's Directors and Officers, the Court should nevertheless dismiss Count IX for failing to state

a claim.  As noted in *Herold v. Merrill Lynch*, 2018 WL 1950641, at *4 (E.D. Va. Apr. 25,

2018), "Virginia may recognize aiding and abetting a breach of fiduciary duty, which requires

that the defendant (1) know about another duty and breach; (2) participate in or direct the breach;

and (3) benefit from the breach."  *See also Arrowsmith v. Mallory (In re Health Diagnostics,

Inc.)*, 2018 WL 4676339, at *11 (Bankr. E.D.Va. Sept. 26, 2018) ("A prima facie case for aiding

and abetting breach of fiduciary duty is established by proving the [ ] Defendants, with

24

knowledge, offered substantial assistance to the directors in connection with the breaches of their fiduciary duties."). The Trustee's Complaint lacks the requisite allegations to satisfy these elements.

First, the Trustee fails to allege that Defendants had the requisite knowledge of the alleged duties and breaches by LCR's Directors and Officers, let alone that the Defendants knowingly participated in the breaches. Virginia law states that the liability of an aider and abetter "must be premised on actual knowledge of the primary violation." *In re Section 1031 Exchange Litigation*, 716 F.Supp.2d 415, 422 (D.S.C. 2010) (citation omitted) (emphasis added); *Halifax Corp. v. Wachovia Bank*, 604 S.E.2d 403, 414 (Va. 2004) ("A bank participates in numerous transactions every day involving the acceptance and deposit of checks. Yet, unless it actually knows a breach of fiduciary duty is occurring and participates with *mens rea* in the consummation of the breach, it should not be held liable for aiding and abetting the breach.") (emphasis added); *Herold v. Merrill Lynch*, 2018 WL 1950641, *4 (E.D. Va. Apr. 25, 2018) ("Simply claiming that Merrill Lynch should have noticed alleged fraudulent conduct does not establish that Merrill Lynch had actual knowledge of an existing duty and breach or that Merrill Lynch knowingly participated in it."); *In re Section 1031 Exchange Litigation*, 716 F.Supp.2d at 421-22 (discussing Virginia law) ("[W]hile aiding and abetting may not require a defendant to agree to join the wrongful conduct, it necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purposes of assisting another in performing a wrongful act.") (citing *Howard v. Superior Court*, 2 Cal. App. 4th 745 (Cal. Ct. App. 1992)).

The Trustee fails to allege that the complained-of actions that Defendants allegedly aided and abetted – namely, entering into the ULXP joint venture, directing LCR to consummate the Conversion, terminating the firm's Deferred Compensation and Supplemental Retirement plans,

identifying vendors to pay and funds to use to pay them, and/or making misleading statements to professionals – were actually known by Defendants to constitute a breach of fiduciary duty by LCR's Board and Officers or that they participated with the necessary *mens rea* for the breach. According to the Trustee, "[a]s of March 22, 2018, UnitedLex knew or should have known, that LeClairRyan was insolvent or in the zone of insolvency." (¶53). Assuming a duty to creditors existed, which Defendants do not concede, the earliest that Defendants are alleged to have possibly known of such duty is March 22, 2018. Accordingly, certain alleged improper actions by the LCR Board all occurred <u>before</u> that date – such as the termination of the Deferred Compensation and Supplemental Retirement Plan (December 29, 2017) and the Conversion (February 28, 2018). (¶102; Ex. A). Thus, the Complaint lacks any allegation that the Defendants actually knew that the termination of the Deferred Compensation and Supplemental Retirement plans or Conversion constituted a breach of fiduciary duty by LCR's Board and Officers, and therefore cannot serve as a basis for an aiding and abetting claim. In other words, UnitedLex and ULXP cannot be held to have aided and abetted actions determined and performed by the Debtor's management that occurred well before the joint venture was agreed to (and well before ULXP was even established). Nor does the Complaint contain any allegations that Defendants knew that entering into the ULXP joint venture itself would constitute a breach of LCR's Board's fiduciary duty or that Defendants knew that they were engaging in some sort or tortious activity when entering into the joint venture.[20] To be clear, however, Defendants reject the premise that any of the foregoing constitute a breach of fiduciary duty, regardless of whether Defendants are alleged to have had actual knowledge about them or not.

---

[20] The Complaint lacks any specificity with respect to the alleged "false or misleading" statements and therefore such cannot constitute a basis for an alleged claim for aiding and abetting a breach of fiduciary duty.

Finally, the Trustee's claim for aiding and abetting also fails because she does not allege how Defendants benefitted from any of the alleged breaches by LCR's Board and Officers.  For example, there are no allegations that explain how the Conversion or termination of the Deferred Compensation and Supplemental Retirement plans – both of which took place before the ULXP joint venture deal was finalized or consummated – benefitted Defendants.  Rather, the Complaint only offers the conclusory, and thus insufficient allegation, that Defendants "directly benefited from aiding and abetting such breaches of fiduciary duty and self-dealing by reaping financial rewards to which they were not entitled."  (¶282).  Accordingly, as the Trustee fails to allege yet another element of an aiding and abetting claim, Count IX must be dismissed.

### C.   The Trustee Fails to State Claims for Conspiracy in Counts X and XI

### 1.   The Conspiracy Claims Lack the Requisite Predicate Claim

To state a claim for common law conspiracy (Count X), the Trustee must allege that "two or more persons combined to accomplish, by some concerted action, an unlawful purpose or some lawful purpose by unlawful means."  *In re James River*, 360 B.R. at 174-75.  Similarly, a claim for Virginia statutory conspiracy (Count XI) requires a showing of "(1) two or more persons combining, agreeing, or mutually undertaking to (2) willfully and maliciously injure another in his reputation, trade, business or profession."  *Id.* at 175.  A claim of civil conspiracy, however, is not actionable in its own right and instead requires a predicate unlawful act.  *See La Bella Dona Skin Care, Inc. v. Belle Femme Enterprises, LLC*, 805 S.E.2d 399, 406 (Va. 2017).  "The gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use unlawful means."  *Id.* at 405-06 (citing *Gallop v. Sharp*, 19 S.E.2d 84, 86 (1942)).  Like the Trustee's claims for "aiding and abetting," the Trustee's conspiracy claims are premised upon purported predicate claims that LCR Directors and Officers

27

breached their fiduciary duties.  (¶¶107, 108, 287).  And just as the Trustee's failure to sufficiently plead such predicate claim of breach of fiduciary duty for the reasons set forth above was fatal to the aiding and abetting claim, the same is true with respect to the conspiracy claims and such claims should be dismissed as a result.[21]

### 2.    The Conspiracy Claims are Not Pled with the Requisite Particularity

The Trustee alleges that Defendants conspired with the LCR Directors and Officers to breach the fiduciary duties such Directors and Officers owed to the Debtor, its shareholders, its clients, and its creditors, and that the parties conspired to injure the Debtor.  (¶¶108, 287). Further, she alleges that the parties conspired "for the purpose of willfully and maliciously injuring the Debtor in its reputation, trade, business, or profession," and that the Defendants' alleged "wrongful conduct was aimed directly at damaging the Debtor and the Debtor's other creditors."  (¶¶287, 290).  While the Trustee offers these, and similar, conclusory allegations, she fails to provide the level of particularity required by Rule 9.  *See Government Employees Insurance Co. v. Google, Inc.*, 330 F.Supp.2d 700, 706 (E.D. Va. 2004) (dismissing statutory conspiracy count when alleged facts lacked the specificity "to support the conclusory language that the parties entered into an agreement with the purpose of injuring [the plaintiff] in its business.").  While the Trustee alleges that the Defendants conspired with the LCR Directors and Officers by entering into the ULXP joint venture, terminating the Deferred Compensation and Supplemental Retirement plans, and the like, the Trustee does not allege facts that claim these

---

[21] To the extent the Trustee alleges a claim of conspiracy based upon alleged fraudulent conveyances by LCR, such claim must be dismissed.  In *Le Bella Dona Skin Care, Inc.*, the Supreme Court of Virginia noted that "because avoidance of a transaction is the only remedy available under [Virginia] Code §55-80, a claim for fraudulent conveyance is not a predicate unlawful act from which liability can be spread to others on a theory of civil conspiracy."  805 S.E.2d at 406.

things were done by Defendants with the intent to injure others.  Without the requisite level of

particularity, the conspiracy claims should be dismissed.

### 3.    The Trustee's Pleading Invokes the Intra Corporate Immunity Doctrine

While Defendants vigorously deny that they had "control" over LCR or even that the

Trustee's allegations on this issue are sufficient for 12(b)(6) purposes, the Trustee has

nevertheless made such allegations (albeit in conclusory fashion) central to her claims against

Defendants.  And it is these same allegations, which the Court must accept as true for purposes

of this Motion to Dismiss, that defeat the Trustee's claims due to the intra corporate immunity

doctrine.

Virginia's intra corporate immunity doctrine states that "there must be two persons to

comprise a conspiracy, and a corporation, like an individual, cannot conspire with itself."

*Bowman v. State Bank of Keysville*, 331 S.E.2d 797, 801 (1985).  Similarly, "<u>agents</u> of a

corporation, acting within the scope of their agency, qualify as one legal person – and as such,

there cannot be 'concerted action' amongst multiple actors."  *See Fortress Holdings II, LLC v.

Patty*, 2017 WL 10978805, at *5 (Norfolk Apr. 27, 2017); *see also Charles E. Brauer Co., Inc. v.

NationsBank of Virginia, N.A.*, 466 S.E.2d 382, 387 (1996) (holding that a bank and the

collection agency it retained pursuant to a servicing agreement were considered one person and

therefore could not be found to have engaged in a conspiracy).

In the Trustee's Complaint, she expressly alleges (albeit in a conclusory manner) that

Defendants "worked as managing agents for the Debtor".  (¶¶110, 234).  She further alleges that

Defendants are both statutory and non-statutory insiders that "exercised dominion and control"

over LCR by, among other things, directing LCR to enter into the Conversion, terminate the

firm's Deferred Compensation and Supplemental Retirement plans, and selecting which vendors

to pay and which funds to use.  *See* ¶¶107, 249, 262.  Accepting these allegations as true, as the Court must for purposes of this Motion to Dismiss, then the acts alleged in the Complaint are "the acts of only one legal entity at issue," and thus, there can be no conspiracy.  *Fortress*, 2017 WL 10978805, at *5.  Accordingly, Counts X and XI must be dismissed in their entirety.

### D.  **The Conveyance Related Claims**

#### 1.  **Counts I, III, and VI Fail Because the Trustee Fails to Allege the Requisite Intent and Because Lack of Specificity Required by Rule 9(b)**

Claims for avoidance of intentional fraudulent transfers under Bankruptcy Code Sections 548(a)(1), 544(b), 550, and applicable state law require a showing that the Debtor made the transfer with the "actual intent to hinder, delay or defraud creditors."  11 U.S.C. §548(a)(1)(A); Va. Code §55-80.  It is the debtor's intent as transferor, and not the recipient's intent as transferee, that matters.  *See In re SunSport, Inc.*, 260 B.R. 88, 111 (Bankr. E.D. Va. 2000) (stating that Section 548(a)(1)(A) requires the trustee to prove that the transferor acted with the requisite fraudulent intent).  The requisite intent may be established by pleading, with the particularity required by Rule 9(b), the presence of certain badges of fraud, which include, among others, (i) a relationship between the debtor and the transferee, (ii) lack of consideration for the conveyance, and (iii) the debtor's insolvency or indebtedness.  *See Arrowsmith v. Mallory*, 2017 Bankr. LEXIS 2230, *34-35 (Bankr. E.D. Va. Aug. 9, 2017); *see In re James River Coal Co.*, 360 B.R. at 162 (stating that the complaint must "detail[] the transfers alleged to be fraudulent, the reasons the transfers are fraudulent, and the roles of the defendants in the transfers.").  The Trustee, however, fails to satisfy these requirements.

According to the Trustee, the transfers identified in Exhibit 26 to the Complaint were accompanied by at least three badges of fraud:  (i) that ULXP, as recipient, was an insider, (ii) that the transfers were made at the same time substantial new liabilities and debts were being

incurred by the Debtor, and (iii) that LeClairRyan was or became insolvent at the time of the

transfers. (¶¶195, 223).  While the Trustee provides details of the dates, amounts, and recipients

of the transfers at issue, the Trustee fails to detail the reasons why such transfers are fraudulent

other than to offer insufficient, conclusory allegations that Defendants are insiders and that

LeClairRyan was insolvent.  *See* ¶¶ 24, 93, 195, 223.  The Trustee has not alleged that any of

these payments were made for any purpose or with any intent other than procuring the ordinary

back office and support services necessary for the smooth functioning of a large law firm.  Under

the Trustee's reasoning, every payment to a landlord, employee or vendor for goods or services

was a fraudulent conveyance.  Nor does the Trustee make any factual allegations showing that

LCR was insolvent on the date of each transfer to ULXP.  Accordingly, Counts I, III, and VI

should be dismissed.

### 2.    Counts II Should be Dismissed Because ULXP Provided Reasonably Equivalent Value

Like Counts I, III, and VI, Count II is also fatally flawed because the Trustee fails to

adequately allege that LCR was insolvent on the date of each transfer as required by Section

548(a)(1)(B)(ii) of the Bankruptcy Code.  Count II should also be dismissed, however, because

to avoid the transfers under § 548(a)(1)(B), the Trustee must show that LCR received less than

the reasonably equivalent value of each transfer.  *Cohen v. Un-Ltd. Holdings, Inc. (In re Nelco,
Ltd.)*, 264 B.R. 790, 813 (Bankr. E.D. Va. 1999).  Subsection (d) of § 548 defines "value" as

including the satisfaction of a present or antecedent debt of the debtor, while "reasonably

equivalent value" is determined from the totality of the circumstances surrounding the

transaction.  *See LandAmerica Financial Group, Inc. v. Southern California Edison Co.*, 525

B.R. 308, 319 (E.D. Va. 2015); *In re Nelco, Ltd.*, 264 B.R. at 813 (dismissing constructive fraud

claim where defendant performed work for the debtor and received an $800,000 bonus under

31

good-faith). As noted above, the Trustee testified that she had no basis for asserting that the payments for services invoiced by ULXP to LCR were not for fair value. The Trustee offers nothing more than a conclusory allegation that the Debtor "did not receive reasonably equivalent value in exchange for the Avoidable Transfers." (¶204). The Trustee's allegations are insufficient.

As previously noted, as a result of the ULXP joint venture, substantially all of LCR's non-attorney employees (secretaries, paralegals, accounting and marketing staff, etc.) became employees of ULXP, and it was those ULXP employees that provided back office services to LCR on a going forward basis pursuant to the parties' agreement. As noted in LCR's CEO's memorandum to partners, the fees for such services were to "remain proportional" to what LCR originally paid its staff prior to the joint venture, and LCR was not charged a premium for such services. (Compl. Ex. 6, p.6; ¶34). *See In re Townsend-Robertson Lumber Co.*, 144 B.R. 407, 409 (Bankr. E.D. Ark. 1992) (finding transfers conducted pursuant to an arms-length transaction to be for "reasonably equivalent value"). And notably absent from the Complaint are allegations that LCR made the transfers to ULXP for any purpose other than paying for these back-office services, or that these services did not provide value to the Debtor. For these reasons, Count II should be dismissed.

### 3. Any Claim for Avoidance of ULXP's Security Interest Must be Limited to Section 547

In Count V of the Complaint, the Trustee seeks to avoid ULXP's security interest and UCC-1 financing statement. To the extent such claim rests upon Bankruptcy Code Sections 544 and/or 548, such claim should be dismissed for the reasons set forth above. To the extent the Trustee relies upon Section 547 and allegations that Defendants were "insiders" of the Debtor, however, Defendants dispute such allegations and reserve all rights with respect thereto.

32

4.    **Count VII for Disallowance of Claims Should be Dismissed**

In Count VII, the Trustee alleges that Defendants were the recipients of the Avoidable Transfers and the Preferential Transfers and that Defendants' Proofs of Claim against the Debtor should be disallowed because Defendants have not returned those transfers.  (¶¶266, 267).  The Trustee's claims regarding the Avoidable Transfers and Preferential Transfers each fail for the reasons set forth above, and thus, Count VII should be similarly dismissed for those same reasons.

5.    **The Trustee Fails to State a Claim for the ULXP Note to be Recharacterized**

In Count VIII of the Complaint, the Trustee seeks to recharacterize the ULXP Note as equity.  The ULXP Note came about when the parties agreed to convert $8 million of almost $12 million in unpaid overdue invoices for services that ULXP provided to LeClairRyan, into long-term secured debt.  The Trustee alleges, however, that because no payments were made on the Note and because LCR ultimately sought for its lender, VCF, to treat the ULXP Note as equity for leverage ratio purposes, the ULXP Note was actually an equity infusion.  (¶139).  The plain terms of the ULXP Note, however, state otherwise.  (Compl. Ex. 19).

When determining whether recharacterization is appropriate, courts examine a myriad of factors, including items such as the name of the instrument, presence of a fixed maturity date, presence of interest, and security for the advances, among others.  *See In re Dornier Aviation, Inc.*, 453 F.3d 225, 233 (4th Cir. 2006).  While this analysis is typically fact intensive, the plain language of the ULXP Note and the allegations of the Complaint make recharacterization inappropriate as a matter of law.

The ULXP Note was an obligation that LCR was required to repay.  Its terms stated that in the event LCR did not receive a distribution from ULXP prior to the original maturity date,

33

LCR could extend the maturity date by five years, <u>not</u> that the loan would be forgiven.  Further, the ULXP Note was subordinated to LCR's lender, VCF, and pursuant to an Intercreditor Agreement, ULXP could assert no remedies as a lender that would interfere with VCF's rights. The Court may take judicial notice that a sophisticated financial institution such as VCF, advised by experienced and able counsel who negotiated and approved the terms of the ULXP Note and Security Agreement and who signed an Intercreditor Agreement with ULXP acknowledging the ULXP Note as debt subject to subordination and standstill provisions, was not defrauded into believing that it was an equity contribution.  Moreover, the ULXP Note was perfected by a properly filed UCC financing statement.  *See* Proof of Claim, Claim No. 174.  Nor does the Trustee allege that the ULXP Note was not listed in LCR's April 2019 financial statements as debt.  In other words, the Parties always intended for ULXP to be paid for these outstanding amounts without regard to the future success or failure of ULXP.  In light of these terms, the ULXP Note is appropriately characterized as debt and Count VIII should be dismissed.

## <u>RESERVATION OF RIGHTS</u>

Pursuant to Fed. R. Bankr. P. 7012(b), Defendants respectfully state that they do not consent to the entry of final orders or judgment by the Bankruptcy Court.

## <u>CONCLUSION</u>

WHEREFORE, Defendants respectfully request that the Court grant this Motion to Dismiss as follows:

a)    Dismiss Count I of the Complaint for Avoidance of Fraudulent Transfers Under Section 548(a)(1)(A) of the Bankruptcy Code against ULXP and UnitedLex;

b)    Dismiss Count II of the Complaint for Avoidance of Fraudulent Transfers Under Section 548(A)(1)(B) of the Bankruptcy Code against ULXP and UnitedLex;

c)       Dismiss Count III of the Complaint for Avoidance of Fraudulent Transfers Under Section 544(b) and Section 550 of the Bankruptcy Code against ULXP and UnitedLex;

d)       Dismiss Count V of the Complaint for Avoidance of Lien and Recovery of Avoided Transactions Under Section 550(a) of the Bankruptcy Code against ULXP;

e)       Dismiss Count VI of the Complaint for Avoidance of Fraudulent Transfer Under Section 544(b) and Section 550 of the Bankruptcy Code against ULXP;

f)       Dismiss Count VII of the Complaint for Disallowance of Claims under Section 502(d) of the Bankruptcy Code against ULXP and UnitedLex;

g)       Dismiss Count VIII of the Complaint for Re-Characterization of Debt as Equity against ULXP;

h)       With respect to Count IX of the Complaint for Aiding and Abetting Breach of Fiduciary Duty Against ULXP and UnitedLex, (i) dismiss Count IX in its entirety, or (ii) in the alternative, prohibit the Trustee from pursuing any such claim based upon a theory of deepening insolvency against the Defendants, or (iii) in the alternative, dismiss Count IX to the extent the Trustee seeks to recover damages allegedly suffered by the Debtor's creditors and instead limit such claim to damages allegedly suffered by the Debtor, or (iv) prohibit the Trustee from pursuing any claims based upon LCR's conversion of corporate status and/or termination of LCR's Deferred Compensation and Supplemental Retirement Plans;

i)       With respect to Count X of the Complaint for Statutory Conspiracy against ULXP and UnitedLex, (i) dismiss Count X in its entirety, or (ii) in the alternative, prohibit the Trustee from pursuing any such claim based upon a theory of deepening insolvency against the Defendants, or (iii) in the alternative, dismiss Count X to the extent the Trustee seeks to recover damages allegedly suffered by the Debtor's creditors and instead limit such claim to damages allegedly

35

suffered by the Debtor, or (iv) prohibit the Trustee from pursuing any such claims based upon LCR's conversion of corporate status and/or termination of LCR's Deferred Compensation and Supplemental Retirement Plans;

j)      With respect to Count XI of the Complaint for Common Law Conspiracy against ULXP and UnitedLex, (i) dismiss Count XI in its entirety, or (ii) in the alternative, prohibit the Trustee from pursuing any such claim based upon a theory of deepening insolvency against the Defendants, or (iii) in the alternative, dismiss Count XI to the extent the Trustee seeks to recover damages allegedly suffered by the Debtor's creditors and instead limit such claim to damages allegedly suffered by the Debtor, or (iv) prohibit the Trustee from pursuing any such claims based upon LCR's conversion of corporate status and/or termination of LCR's Deferred Compensation and Supplemental Retirement Plans; and

k)      Grant and provide such other relief as the Court deems to be just and proper.

Dated:  January 11, 2021                    Respectfully submitted,

                                            /s/ Thomas J. McKee, Jr.
                                            Thomas J. McKee, Jr. (VSB No. 68427)
                                            David G. Barger (VSB No. 21652)
                                            Greenberg Traurig, LLP
                                            1750 Tysons Boulevard, Suite 1000
                                            McLean, Virginia 22102
                                            Telephone: (703) 749-1300
                                            Facsimile: (703) 749-1301
                                            Email: mckeet@gtlaw.com
                                                    bargerd@gtlaw.com

                                            and

                                            J. Gregory Milmoe (admitted pro hac vice)
                                            Greenberg Traurig, LLP
                                            One International Place, Suite 2000
                                            Boston, MA 02110
                                            Telephone: (617) 310-6064
                                            Email:  milmoeg@gtlaw.com

                                            *Counsel to Defendants*

36

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of January 2021, I served a true and correct copy of the foregoing via the Court's CM/ECF filing system upon:

Erika L. Morabito, Esq.
Brittany J. Nelson, Esq.
FOLEY & LARDNER LLP
3000 K Street, NW, Suite 600
Washington, DC 20007-5109
emorabito@foley.com
bnelson@foley.com
*Special Counsel to Lynn L. Tavenner, Chapter 7 Trustee*

  /s/ Thomas J. McKee, Jr.
Thomas J. McKee, Jr. (VSB No. 68427)
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Telephone:  (703) 749-1300
Facsimile:   (703) 749-1301
Email: mckeet@gtlaw.com

*Counsel to Defendants*