David G. Barger (VSB No. 21652)
Thomas J. McKee, Jr. (VSB No. 68427)
J. Gregory Milmoe (admitted *pro hac vice*)
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Telephone:  (703) 749-1300
Fax:          (703) 749-1301
Email:  mckeet@gtlaw.com

*Counsel to ULX Partners, LLC and UnitedLex Corp.*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### (Richmond Division)

| | |
|---|---|
| In re:<br><br>**LECLAIRRYAN PLLC,**<br><br>     **Debtor.** | **Chapter 7**<br><br>**Case No. 19-34574 (KRH)** |
| **Lynn L. Tavenner, as Chapter 7 Trustee,**<br><br>     **Plaintiff,**<br><br>vs.<br><br>**ULX Partners, LLC and UnitedLex Corporation,**<br><br>     **Defendants.** | **Adv. Pro. No. 20-03142-KRH** |

### DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
### <u>MOTION TO WITHDRAW THE REFERENCE</u>

### <u>**RELIEF IS SOUGHT FROM A UNITED STATES DISTRICT COURT JUDGE**</u>

ULX Partners, LLC ("**ULXP**") and UnitedLex Corporation ("**UnitedLex**" and together

with ULXP, the "**Defendants**"), by counsel and pursuant to Local Bankruptcy Rule 5011-1(D),

respectfully submit this reply (the "**Reply**") in further support of *Defendants' Motion to Withdraw*

the Reference and Memorandum in Support Thereof [Adv. Docket No. 13][1] (the "**Motion**") and in response to *Plaintiff's Opposition to Defendants' Motion to Withdraw the Reference* [Adv. Docket No. 19] (the "**Opposition**"), filed by Lynn L. Tavenner, in her capacity as Chapter 7 Trustee (the "**Trustee**") of the bankruptcy estate of LeClairRyan, PLLC ("**LCR**" or the "**Debtor**"). For the reasons set forth below, the Defendants submit that all of the claims alleged by the Trustee against the Defendants in the *Complaint* [Adv. Docket No. 4] (the "**Complaint**") should be withdrawn immediately for adjudication by the District Court.

## **INTRODUCTION**

Contrary to the Trustee's opinion, the Defendants have shown that ample cause exists to warrant the immediate withdrawal of the adversary proceeding by the District Court. In the Opposition, the Trustee misapplies the law in concluding that many of the claims alleged against the Defendants, brought pursuant to common law or Virginia statute, are or should otherwise be deemed "core". This improper conclusion at the outset leads the Trustee to incorrectly believe that the Defendants do not have a right to a jury trial in connection with such claims, but this is not the case. Many of the claims at issue are of a nature that afford the Defendants a right to a jury trial under the Seventh Amendment, and that right has not been disturbed, forfeited or otherwise nullified. As the Defendants do not consent to the Bankruptcy Court conducting a jury trial with respect to such claims, they may only be finally determined by an Article III judge. Accordingly, and in view of the fact that there may be some overlap of the facts applicable to the claims for which the Defendants have a right to a jury trial and the facts underlying those claims for which there may not be such a right, the Defendants respectfully submit that withdrawal of the reference to the District Court of *all* of the

---

[1]   References to "Adv. Docket No. __" are to the Bankruptcy Court docket in the adversary proceeding, case number 20-03142 (KRH). References to "Bankr. Docket No. __" are to the Bankruptcy Court docket in the Debtor's main bankruptcy, case number 19-34574 (KRH).

*ACTIVE 55145706v3*

claims asserted against the Defendants will promote the orderly and efficient resolution of the claims and preserve judicial resources. Finally, the Motion was timely brought in accordance with deadlines imposed by the Bankruptcy Court. Though the Trustee argues that the relief sought by the Motion is speculative, discovery related to the alleged claims is already underway and, while the Bankruptcy Court's ability to address any issues attendant to the discovery process is undisputed, the Defendants are of the opinion that this process should be overseen by the court that will preside over the matter for the sake of efficiency and preserving judicial resources.

## **REPLY**

### I.    **Defendants Meet the Standard for Withdrawal of the Reference**

As set forth in the Motion, the District Court may, for cause shown, withdraw, in whole or in part, a case or proceeding referred to the Bankruptcy Court. *See* 28 U.S.C. § 157(d). "Cause" is not defined; however, in evaluating whether the reference should be withdrawn, the district courts in the Fourth Circuit typically consider: (i) whether the proceeding is core or non-core; (ii) if withdrawal serves the uniform administration of bankruptcy proceedings; (iii) if withdrawal promotes judicial economy; (iv) if withdrawal would be an efficient use of debtor and creditor resources; (v) whether withdrawal would promote forum shopping; and (vi) the preservation of the right to a jury trial. None of the foregoing factors is dispositive. *See In re El-Atari*, No. 11-cv-1090 (LMB/IDD), 2011 WL 5828013, at *5 (E.D. Va. Nov. 18, 2011) (citing *Tyler v. McLane Foodservices, Inc.* (*In re QSM, LLC*), 453 B.R. 807, 809-10 (E.D. Va. 2011)); *see also In re U.S. Airways Group, Inc.*, 296 B.R. 673, 682 (E.D. Va. 2003) ("[D]iscretionary withdrawal of reference should be determined on a case-by-case basis by weighing all the factors presented in a particular case."). Contrary to the Trustee's assertions in the Opposition, the factors weigh in favor of withdrawal of the claims to the District Court.

A.      **Certain of the Trustee's Claims Against the Defendants are Non-Core**

1.      **Trustee Misapplies the Law in Concluding All of the Claims Are Core**

In considering whether to withdraw the reference, "the most important factor is whether a proceeding is core or non-core, as efficiency, uniformity and judicial economy concerns are largely subsumed within it." *In re K & R Express Systems, Inc.*, 382 B.R. 443, 446 (N.D. Ill. 2007).  "'[A] proceeding is core under section 157 [of the United States Code] if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.'" *In re U.S. Airways Group, Inc.*, 296 B.R. at 681, n.18 (quoting *Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987)).  Non-core proceedings, by contrast, involve disputes that have little or no relation to a bankruptcy proceeding, do not arise under the Bankruptcy Code, and would exist in the absence of a bankruptcy case.  *See Federal Insurance Co. v. Parnell (In re Peanut Corporation of America)*, 407 B.R. 862, 865 (W.D. Va. 2009).

The Trustee asserts that the "factual and legal issues underlying the Trustee's state law claims are [ ] central to the legality, validity, allowance, priority and amount of the Proofs of Claim. [And t]he overlap between the claim allowance process and the Trustee's state law claims makes them core."  (Opposition, at 22).

However, the Trustee fails to sufficiently analyze her own case law regarding the core/non-core treatment of state law counterclaims.  Notwithstanding the fact that there may be a commonality of factual and legal issues among state law claims and "core" claims, some overlap with or "bearing on a bankruptcy case" is not enough.  *See Stern v. Marshall*, 564 U.S. at 499; *In re FKF 3, LLC*, No. 13-cv-3601 (KMK), 2016 WL 4540842, at *9, *10 (S.D.N.Y. Aug. 30, 2016) (holding that some overlap of issues between a proof of claim and trustee's counterclaims is not sufficient to provide the bankruptcy court with final adjudicative authority over asserted common

4

law claims).  "[I]f [a] debtor's claim can be resolved without considering the creditor's claim, then the bankruptcy court lacks the constitutional authority to hear the debtor's claim."  *In re Pulaski*, 475 B.R. 681, 688 (Bankr. W.D. Wis. 2012) (citing *In re Black, Davis and Shue Agency, Inc.*, 471 B.R. 381, 402 (Bankr. M.D. Pa. 2012)).  "Several bankruptcy courts have held that counterclaims which may be prosecuted independent of a creditor's claim cannot be finally decided by a bankruptcy court."  *In re Black, Davis and Shue Agency, Inc.*, 471 B.R. at 402.

In the present matter, several of the state law claims asserted by the Trustee, such as the alter ego (Count XIV), conspiracy (Counts X and XI), conversion (Count XII) and aiding and abetting breaches of fiduciary duty claims (Count IX), require legal and factual determinations different from ULXP's proofs of claim (the "**Proofs of Claim**"), which seek payment (i) of an asserted secured claim based on an executed promissory note and accompanying security agreement, and (ii) an asserted unsecured claim for services that were rendered to LCR prior to its bankruptcy filing.  The Trustee could prosecute these claims independent of ULXP's Proofs of Claim.  Therefore, they are not and should not be deemed "core".

Separately, "a counterclaim . . . that seeks affirmative monetary relief to augment the [bankruptcy] estate but *does not directly modify the amount claimed* would not qualify as a claim to be resolved in ruling of [a] proof of claim."  *In re TP, Inc.*, 479 B.R. 373, 385 (Bankr. E.D.N.C. 2012) (emphasis added).  In *In re TP, Inc.*, the Bankruptcy Court, in considering whether a debtor's counterclaims, including, among others, constructive fraud and fraud, against a creditor were core, held that such claims were not core because (i) they did not stem from the bankruptcy itself and were based on state law, and (ii) although the claims arose out of the transactions underlying the creditor's claim, the debtor's claims would not affect the calculation of the amount of the creditor's claim.  479 B.R. at 384-85.  The Bankruptcy Court noted that instead, it appeared that the

5

bankruptcy estate sought affirmative monetary relief in order to augment the size of the estate, as opposed to asking for a modification of the amount claimed by the creditor. *Id.* at 385. The Bankruptcy Court explained that, "a counterclaim that seeks to reduce the amount that debtors owe to a claimant should be contrasted with the situation where a bankruptcy estate is seeking affirmative monetary relief from a claimant to augment the bankruptcy estate. In other words, a counterclaim by the estate based in state law must seek to directly reduce or recoup the amount claimed in order to be resolved in ruling on the proof of claim." *Id.* at 384-85.

Through its Proofs of Claim, ULXP asserts that it is owed over $12 million from the Debtor. For each of the arguably non-core claims brought by the Trustee against the Defendants pursuant to Virginia statute or common law, the Trustee does not request that the Bankruptcy Court reduce the amounts asserted to be owed by ULXP in the Proofs of Claim. Rather, the Trustee seeks monetary damages "in [ ] amount[s] to be proven at trial" but for no less than considerable sums ranging from over $1 million to over $40 million. (Complaint, ¶¶ 284, 294, 301, 306, 311). In addition, for the statutory conspiracy claim, the Trustee seeks treble damages of close to $130 million. (Complaint, ¶ 295). Such claims are clearly being pursued solely to augment LCR's estate. *See In re Complete Management, Inc.*, No. 01-03459 (NRB), 2002 WL 31163878, at *3 (S.D.N.Y. Sept. 27, 2002) (granting a creditor's motion to withdraw the reference where, among other considerations, the debtor's counterclaim sought more than a "mere setoff" of the creditor's asserted claim (for $1 million) and demanded damages in an amount that was seventy times greater than the amount asserted by the creditor in its proof of claim (i.e., in excess of $70 million)).

Based on a more comprehensive review of the law pertaining to whether state law counterclaims, which on the surface would seem to be non-core proceedings, should be construed as core proceedings, it is evident that such claims set forth in the Complaint are not inextricably

6

intertwined with ULXP's Proofs of Claim and seek monetary relief to augment the estate; therefore, they would not necessarily be resolved in the claims allowance process. Accordingly, the state law claims alleged against the Defendants are not and should not be deemed "core".

## 2.    The State Law Claims are Not Core[2]

### a.    *The Alter Ego Claim*

In Count XIV of the Complaint, the Trustee alleges that ULXP was an alter ego of UnitedLex. As such, the Trustee seeks to hold UnitedLex jointly and severally liable for all damages asserted and sought in the other counts of the Complaint.[3] (Complaint, ¶¶ 313-320).

There is a split of opinion in federal courts around the country as to whether an alter ego claim/a claim for piercing a corporate veil is a core proceeding. *See McCarthy v. Giron*, No. 13-cv-01559-BGL-TCB, 2014 WL 2696660, at *6 (E.D. Va. June 6, 2014). In the Opposition, the Trustee states, "Courts in this District have consistently held that alter ego claims are core matters." (Opposition at 21). However, the nature of the parties involved in such claims appears to be a significant factor. Notably, the cases cited by the Trustee in support of this contention[4] all involve claims charging a non-debtor defendant as being the alter ego *of the debtor*. <u>None</u> of the cases cited involves a claim alleging that a non-debtor defendant is the alter ego of another non-debtor

---

[2]  Although in the Opposition, the Trustee provides an analysis in support of her contention that the claims alleged against the Defendants that are commonly considered to be core, such as preferential and fraudulent conveyances and transfers, recharacterization and claim disallowance, are, in fact, core, the Defendants did not specifically discuss these claims in the Motion. Therefore, and in light of the fact that, for purposes of a motion to withdraw the reference, there is no requirement that all claims be either core or non-core, the Defendants do not discuss whether these claims should be considered core or non-core in this Reply. By taking this position, however, the Defendants do not concede that such claims are necessarily core.

[3]  As noted in the Motion, the Trustee alleges fourteen causes of action – one (1) solely against UnitedLex (Count XIV alleging alter ego liability), three (3) solely against ULXP, and the remaining ten jointly against the Defendants. (Motion, ¶ 10).

[4]  All of the cases cited by the Trustee in the Opposition, with the exception of *In re Richels*, 163 B.R. 760 (Bankr. E.D. Va. 1994)), are discussed in the Motion.

7

defendant.[5]  The Trustee does identify the one case out of the bankruptcy courts in this District that found alter ego claims <u>not</u> to be core claims.  (Opposition, at 21) (citing *In re Systems Engineering & Energy Management Associates, Inc.*, 252 B.R. 635, 649, 650 (Bankr. E.D. Va. 2000) (holding alter ego claims asserted against sole shareholders of non-debtor corporate entities that were putative alter egos of the debtor as being non-core, noting that an alter ego claim "obviously sounds solely under state law and in no manner can be construed as [statutorily core].")).

The allegation that ULXP, a non-debtor defendant, was the alter ego of UnitedLex, a non-debtor defendant that is also the predominant shareholder of ULXP, is more akin to the alter ego claim in *In re Systems Engineering & Energy Management Associates, Inc.*; *see also In re BN1 Telecommunications, Inc.*, 246 B.R. 845, 849-50 (6th Cir. BAP 2000) (finding that the Bankruptcy Court's determination that a proceeding involving an alter ego claim among two non-debtor corporate defendants and a third non-debtor individual defendant, who was allegedly the sole owner and operator of the non-debtor corporate defendants, whereby the individual defendant could be held liable for the corporate defendants' debts to the debtor, was core, lacked any analytical support); *Mirant Corp. v. The Southern Co.*, 337 B.R. 107, 117-18 (N.D. Tex. 2006) (holding, for purposes of deciding whether to withdraw the reference, that claims asserting chapter 11 debtor's former corporate parent was debtor's alter ego with regard to certain creditors' claims was a non-core proceeding as it was solely based on state-created rights); *J. Baranello & Sons, Inc. v. Baharestani (In re J. Baranello & Sons, Inc.)*, 149 B.R. 19, 26 (Bankr. E.D.N.Y. 1992) (holding as noncore a proceeding where a chapter 11 debtor attempted to pierce the corporate veil

---

[5]  In *In re SunSport, Inc.*, two non-debtor corporations were alleged to be alter ego corporations of each other (and individual defendants) *as well as of the debtor*.  260 B.R. 88, 98, 107, 110 (Bankr. E.D. Va. 2000).

*ACTIVE 55145706v3*

of a corporation against which the debtor held a judgment to hold the corporation's shareholders liable).

The alleged alter ego claim is clearly a strategic attempt by the Trustee to pursue an entity with "deep pockets" as it is unlikely that the estate, to the extent it prevails on any of its claims, would be able to recover the sought-after damages from ULXP. As UnitedLex is the holder of 99% of the equity interests in ULXP (Complaint, ¶ 19; Opposition, at 4, ¶ 6), this claim is similar to the alter ego claims considered *In re Systems Engineering & Energy Management Associates, Inc.* as well as those from courts outside of this jurisdiction, where such claims were asserted against shareholders of a non-debtor defendant – essentially two levels removed from the bankruptcy proceeding – and held to be noncore proceedings. For these reasons as well as those set forth above, the alter ego claim is not a "core" claim.

### b.  *The Other State Law Claims*

In Count IX of the Complaint, the Trustee alleges the Defendants aided and abetted certain of the Debtor's officers and directors (or managers, as applicable) in breaching their fiduciary duties. (Complaint, ¶¶ 279-284). In Counts X and XI of the Complaint, the Trustee alleges that the Defendants violated Virginia's Business Conspiracy Act and engaged in common law conspiracy, respectively, with certain of LCR's officers and directors (or managers, as applicable), resulting in damage to LCR and its creditors. (Complaint, ¶¶ 286-292, 297-300). Relatedly, in Count XII of the Complaint, the Trustee alleges that the Defendants improperly received funds from LCR that had been provided to LCR by its clients for specific expenses and, in Count XIII of the Complaint, the Defendants improperly benefitted from the receipt of such funds. (Complaint, ¶¶ 303-306, 308-310).

*ACTIVE 55145706v3*

The Trustee argues that these state law claims are core proceedings because they (i) "'would necessarily be resolved in the claims allowance process' because they share 'common questions of fact and law' with [ULXP's Proofs of Claim] and 'seek to directly reduce or recoup the amount claimed", and (ii) "are intertwined, factually and legally, with the Trustee's core claims." (Opposition, at 22-23). As discussed in Section I(A)(1) above, these claims are not core. These claims, which are wholly based on alleged events and/or conduct that occurred prior to the commencement of LCR's bankruptcy, do not arise under the Bankruptcy Code, and would exist in the absence of the bankruptcy case. In addition, none of these claims stems from the bankruptcy case or would necessarily be resolved in the claims allowance process due to the fact that the factual and legal bases underlying these claims do not sufficiently overlap with those of the Trustee's actual core claims to construe them as "intertwined". Consideration of ULXP's Proofs of Claim is not required for the Trustee to prosecute these claims. Moreover, in connection with these claims, the Trustee does not request to reduce or recoup the amounts claimed to be due to ULXP in the Proofs of Claim; instead, the Trustee seeks to collect significant monetary damages, which would only serve to augment the estate.

The Trustee cites to only one case in support of her contention. (Opposition, at 23, n.11). While the evaluation of whether such claims are core or non-core is determined on a case-by-case basis (*see In re U.S. Airways Group, Inc.*, 296 B.R. at 682), ample case law exists supporting the Defendants' position as to the non-core nature of these claims. *See, e.g., In re FKF 3, LLC*, 2016 WL 4540842, at *7 (holding claims against defendant in adversary complaint, including for aiding and abetting breach of fiduciary duties and alter-ego, "are state common law causes of action that . . . do not qualify as public rights over which the Bankruptcy Court has final adjudicative authority."); *In re SurfaceMax, Inc.*, No. 14-cv-05896-5 (DMW), 2015 WL 5676776, at *5 (Bankr.

E.D.N.C. Sept. 25, 2015) (finding that common law conversion claim would not necessarily be resolved by claims allowance process); *Krasny v. Bagga (In re Jamuna Real Estate, LLC)*, 357 B.R. 324, 332 (Bankr. E.D. Pa. 2006) (finding that a conversion claim could not be considered core simply because it was similar to a fraudulent transfer claim).[6]  *Cf. In re Toys "R" Us, Inc.*, 615 B.R. 96, 107 (Bankr. E.D. Va. 2020) (holding state law claims, including unjust enrichment and conversion claims related to a separate claim for turnover of estate property, to be sufficiently intertwined with the bankruptcy case to render them core for they would affect distributions under the debtors' confirmed plan); *In re Circuit City Stores, Inc.*, No. 15-03477-KRH, 2016 WL 1714515, at *4 (Bankr. E.D. Va. Apr. 26, 2016) (holding unjust enrichment claim seeking recovery of alleged excess proceeds of letters of credit was a state-law claim that was to be adjudicated by the bankruptcy court where the claim was found (i) to directly affect distributions under the debtors' confirmed plan and (ii) to be a related counterclaim to the defendant's proof of claim). These cases are distinguishable from the present adversary proceeding, where these claims are not related to a claim regarding property of the estate; rather, the claims relate to property of LCR's former clients that was seemingly held in trust by LCR.

For these reasons, as more fully discussed on pages 5 through 7 hereof, the Trustee's additional state law claims are not "core" claims.

### B.    The Defendants Have the Right to a Jury Trial on the Asserted State Law Claims

### 1.    Law Regarding Right to Jury Trial

The Seventh Amendment preserves the right to a jury trial "in suits at common law."  U.S. Const. Amend. VII.  The Supreme Court has developed a two-step analysis for courts to utilize

---

[6] The Defendants cite additional case law supporting their position with respect to the conspiracy, unjust enrichment and conversion claims in the Motion.  (Motion, ¶ 24).

*ACTIVE 55145706v3*

when considering whether a right to trial by jury exists:  The court must "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity" and "examine the remedy sought" in order to determine whether the action is legal or equitable in nature. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989).

As explained in *Granfinanciera*, the Supreme Court has "consistently interpreted the phrase 'suits at common law' to refer to 'suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.'"  *Granfinanciera*, 492 U.S. at 41 (citation omitted).

> **2.    ULXP's Filing of Proofs of Claim Does Not Eliminate
> Defendants' Right to Jury Trial on the State Law Claims
> Nor Does It Prevent the District Court from Withdrawing the Reference**

> ***a.    Defendants' Rights to Jury Trial on State Law Claims is Preserved***

The Trustee asserts that, in submitting the Proofs of Claim, ULXP waived its right to a jury trial. (Opposition, at 2, n.2).  The Trustee argues that, "because ULXP filed proofs of claim, and the resolution of the Trustee's claims are intertwined with those proofs of claim, all of the Trustee's claims are deemed equitable in nature for which there is no right to a jury trial."  (Opposition, at 2).

The Trustee's contention that, in filing the Proofs of Claim, ULXP subjected itself to the equitable jurisdiction of the bankruptcy court on *all* of the claims asserted by the Trustee (Opposition, at 30) is flatly incorrect.  ULXP's filing of the Proofs of Claim does not automatically convert the state law claims, which are arguably non-core claims, into core claims and eliminate the Defendants' rights to a jury trial.  *See Granfinanciera*, 492 U.S. at 52 (1989) (noting that legal actions addressing private rights "are not magically converted into equitable issues by their presentation to a court of equity.").  Similarly, "the mere filing of a proof of claim is not necessarily

dispositive of the issue of whether a defendant has waived its right to a jury trial and thereby submitted to the equitable jurisdiction of the Bankruptcy Court." *In re AgFeed USA, LLC*, 565 B.R. 556, 563 (D. Del. 2016). "Moreover, joinder of equitable claims with legal claims does not deprive a party of the right to a jury trial on the legal claims." *Mirant Corp. v. The Southern Co.*, 337 B.R. at 120 (in considering a motion for withdrawal of the reference, holding the defendant was entitled to a jury trial on an allegation that it aided and abetted plaintiff's breach of fiduciary duties). "[I]f [a] legal claim is joined with an equitable claim, the right to jury trial on the legal claim, *including all issues common to both claims*, remains intact. The right cannot be abridged by characterizing the legal claim as 'incidental' to the equitable relief sought." *Curtis v. Loether*, 415 U.S. 189, 196, n.11 (1974) (emphasis added).

"[F]iling a proof of claim is a necessary *but not sufficient* condition to forfeit[ure of] a creditor's right to a jury trial. Rather, a creditor loses its jury trial right only with respect to claims whose resolution affects the allowance or disallowance of creditor's proof of claim." *In re CBI Holding Co., Inc.*, 529 F.3d 432, 466 (2d Cir. 2008) (emphasis added) (internal citation omitted). As explained above, for each of the state law claims asserted against the Defendants, with the exception of the alter ego claim against UnitedLex, the Trustee does not seek to directly reduce or recoup the value of ULXP's Proofs of Claim, but instead, demands significant monetary damages in final amounts that are "to be proven at trial". These claims simply serve to augment the estate, and because the resolution of these claims will not affect the allowance or disallowance of ULXP's Proofs of Claim, ULXP's right to a jury trial is not waived, lost or otherwise eliminated. *See Germain v. Connecticut National Bank*, 988 F.2d 1323, 1327 (2d Cir. 1993); *see also In re Brier Creek Corporate Center Associates Ltd. Partnership*, No. 12-00121-8-SWH, 2013 WL 492461, at *8 (Bankr. E.D.N.C. Feb. 8, 2013) (holding claims alleging defendant's course of conduct in its

dealings with the plaintiffs was deceptive, immoral, unethical, oppressive, or unscrupulous, unfair and in violation of state law, for which plaintiffs sought *treble the amount of their actual damages*, to be not constitutionally core, and thus, non-core, because the resolution of the claims was not necessary to a determination of the defendant's proofs of claim) (emphasis added); *In re FKF 3, LLC*, 2016 WL 4540842, at *13 ("conversion is a common law claim that generally must be finally adjudicated by an Article III court").

Relatedly, in filing its Proofs of Claim, ULXP cannot be held to have knowingly and voluntarily waived its right to a jury trial with respect to claims that are not attendant to resolution of its proof of claim.  *See Germain v. Connecticut National Bank*, 988 F.2d at 1330 ("We will not presume that [a] creditor [who files a proof of claim] knowingly and willingly surrender[s] its constitutional right to a jury trial for the resolution of disputes that are only incidentally related to the bankruptcy process."); *see also Mirant Corp. v. The Southern Co.*, 337 B.R. at 121 ("[T]he Supreme Court has made clear, any waiver of constitutional rights must be voluntary, intelligently, and knowingly made [and has] consistently held that courts must indulge in a presumption against waiver of the Seventh Amendment right to a jury trial.") (internal citations omitted).

At most, the Trustee could (incorrectly) argue that ULXP (and not UnitedLex) should have anticipated that all matters relating to the Proofs of Claim (i.e., the Trustee's desire to offset/invalidate ULXP's claims) would be resolved by the Bankruptcy Court.  The Trustee cannot credibly make any assertion, however, that ULXP (and certainly not UnitedLex, which did not file a proof of claim) knowingly waived its right to a jury on claims that, by the time ULXP's Proofs of Claim were filed in December 2019, were not even hinted at by the Trustee – particularly claims such as aiding and abetting, conspiracy, and the seeking of over $150M in affirmative monetary damages against both Defendants.  Indeed, at the December 19, 2019 omnibus hearing – which

14

occurred days <u>after</u> ULXP filed its Proofs of Claim, counsel for the Trustee noted that the Trustee had not yet retained special counsel and that with respect to determining whether "there [were] bad actions taken [by third parties] . . . that analysis has not even been touched as of yet.  We're still just gathering information and looking to hire."  (Dec. 19, 2019 Hrg. Tr., 27:15-22).  In other words, neither the Trustee nor the Defendants had knowledge at this time that there may be alleged state-law claims of the nature at issue in this case and that the Trustee would be seeking north of $150M in affirmative relief.  Thus, there was no knowingly and intelligently made voluntary waiver of any jury right.

The Trustee also uses the Defendants' language from the Motion – that the facts underlying the claims are substantially the same – to support her contention that the state law claims are factually and legally intertwined with ULXP's Proofs of Claim.  (Opposition, at 32).  However, an overlap or commonality of facts is not the test to determine if claims are intertwined for purposes of transforming otherwise non-core claims into core claims as part of the claims allowance process.  Instead, Supreme Court decisions have focused on whether a cause of action *necessarily affects the claims allowance process*.  *See, e.g.*, *Granfinanciera*, 492 at 52.  As explained above, the state and common law claims are not intertwined whereby the claims have become necessarily part of the claims allowance process.  It seems worth clarifying that the Defendants stated that the facts underlying the allegations in the Complaint were substantially similar in support of its request for the District Court to withdraw the reference for of all of the claims in the interests of judicial economy and preservation of resources.[7]

---

[7] The Defendants concede that, in the event the District Court did not find cause to withdraw the reference as to all of the claims, the Defendants requested having the District Court withdraw the reference as to only the state law claims.  Again, this alternative was proposed with the goals of avoiding duplicative litigation and preserving party resources.

*ACTIVE 55145706v3*

The Trustee separately argues that UnitedLex, which did <u>not</u> file a proof of claim against LCR, should nevertheless be deprived of an independent right to a jury trial on the state law claims on account of being ULXP's alleged alter ego. (Opposition, at 28, 33). The Trustee expounds on this premise, claiming that as UnitedLex is ULXP's alleged alter ego, ULXP's Proofs of Claim should be viewed as UnitedLex's proofs of claim. (Opposition, at 10, ¶ 24, n.8). The Trustee's conclusion that UnitedLex does not have an independent jury trial right in connection with the state law claims is without merit. *See In re Bonds Distributing Co., Inc.*, No. 98-6044, 2000 WL 33682815, at *8 (Bankr. M.D.N.C. Nov. 15, 2000) ("The weight of authority appears to recognize a right to jury trial with respect to claims seeking to pierce the corporate veil based upon the theories of alter ego," because "where such claims seek to impose liability upon the defendant for the debts or obligations of another, [courts have concluded] the remedy sought is monetary damages and, hence, is legal in nature."). In other words, the Trustee seeks to deprive UnitedLex of its right to a jury based purely on <u>allegations</u> that it is the alter-ego of ULXP and that it should somehow be bootstrapped to ULXP's Proofs of Claim – a result that would deprive UnitedLex of its constitutional rights.

Alternatively, the Trustee alleges that UnitedLex waived its right to a jury trial on such claims and consented to the Bankruptcy Court's equitable jurisdiction through its participation in the bankruptcy proceeding. (Opposition, at 33). With the exception of filing notices of appearance [Bankr. Docket Nos. 62-64], the Motion and a motion seeking dismissal of certain of the claims alleged in the Complaint <u>after</u> filing the instant Motion, UnitedLex has not actively or meaningfully participated in the bankruptcy proceeding to date. By filing the Motion, the Defendants expressly declined to consent to the Bankruptcy Court entering final judgments as to

16

the adversary proceeding.  Therefore, UnitedLex has not consented to the Bankruptcy Court's jurisdiction.

### b.  *District Courts Have Withdrawn the Reference in Cases Where a Movant Has Asserted a Proof of Claim*

If the right to a jury trial exists, then there is sufficient ground to withdraw the reference." *In re Gulf States Long Term Acute Care of Covington, L.L.C.*, 455 B.R. 869, 877 (E.D. La. 2011); *In re Lipstein*, No. 94-cv-7100 (LLS), 1995 WL 675486, at *1 (S.D.N.Y. Nov. 14, 1995) ("The fact that an adversary proceeding concerns non-core matters for which there is a right to a jury trial is sufficient cause to withdraw the reference.").

Accordingly, notwithstanding a movant's filing of a proof of claim in an underlying bankruptcy case, district courts have granted the form of relief sought by the Defendants in the Motion.  *See In re Complete Management, Inc.*, 2002 WL 31163878, at *3 (withdrawing the reference of an adversary proceeding from a bankruptcy court despite the movant having filed a proof of claim, where, acknowledging that case law existed supporting the debtor's position that the filing of a proof of claim subjects the creditor to the equitable jurisdiction of the bankruptcy court, the court found no case law supporting an extension of the equitable jurisdiction to a counterclaim that sought excessive damages); *In re Leedy Mortg. Co., Inc.*, 62 B.R. 303, 306 (E.D. Pa. 1986) (withdrawing the reference of an action brought by a trustee against defendants that had asserted claims in the debtor's bankruptcy on the grounds that "the trustee's counterclaim [wa]s a matter very different from matters included in the typical administration of a bankrupt estate" and (i) the action could have been brought in the district court, (ii) the action could require extensive discovery, (iii) the trial could last from two to four weeks, (iv) the trial would require a jury and extensive examination of documents and witnesses, and (v) the trustee sought more than a mere setoff; and asserted an affirmative claim for damages).

### C. The Interests of Judicial Economy, Efficient Use of Resources and Uniform Administration of Bankruptcy Law Support Withdrawal of Reference

The District Court has jurisdiction under 28 U.S.C. § 1334(b) to decide both the core and non-core claims, and considerations of judicial economy and preservation of party and judicial resources weigh in favor of withdrawing the reference so that all of the claims can be decided by the District Court. *See In re K & R Express Systems, Inc.*, 382 B.R. 443, 448-49 (N.D. Ill. 2007) (holding that all of the trustee's claims should be tried in one forum – the district court – to avoid confusion and promote judicial economy); *see also Mirant Corp. v. The Southern Co.*, 337 B.R. at 122 ("Judicial economy will not be sacrificed by the withdrawal.  Rather, adjudicating all of the claims, both core and non-core, in the district court eliminates the prospect of an appeal from the bankruptcy judge's adjudications of core claims, and dispenses with the need for the district court to conduct a *de novo* review of proposed findings and conclusions of the bankruptcy judge after a trial in the bankruptcy court as to non-core claims.  And, for the same reasons, withdrawal of the reference will foster the economical use of the resources of the litigants.").  This approach is particularly appropriate here, given that the arguably core claims asserted against the Defendants are based on the same or similar alleged facts as the non-core claims, which require adjudication by the District Court.

The Defendants contend that withdrawal of the adversary proceeding to the District Court will not jeopardize the uniform administration of bankruptcy law.  To date, the Trustee has initiated approximately seventy-two (72) adversary proceedings on behalf of LCR's estate.[8]  (Opposition, at 24).  These adversary proceedings largely involve single-count complaints for the turnover of property of the estate or recovery of preferential transfers.  Significantly, the Complaint is not an omnibus

---

[8] Twenty-seven (27) of these proceedings have been closed, leaving forty-five (45) still pending.

*ACTIVE 55145706v3*

complaint asserting various and distinct claims against numerous defendants, and none of the other pending adversary proceedings involves claims premised on the same facts and circumstances as alleged in the Complaint against the Defendants.    Accordingly, adjudication of the adversary proceeding poses no risk of inconsistent rulings and application of bankruptcy law with respect to the various proceedings and defendants.

### D.    The Defendants Are Not Engaging in Forum Shopping

Contrary to the Trustee's assertion, the Defendants are not pursuing the Motion as "an escape hatch" from adjudication of the adversary proceeding by the Bankruptcy Court.  (Opposition, at 26). Rather, as explained directly above in Section I(C), given that the claims alleged in the Complaint include non-core claims that can only be fully resolved by the District Court, but adjudication of all of the claims will likely involve consideration of the same or similar factual evidence, the Defendants filed the Motion in the interests of judicial economy and judicious use of resources.   While the Bankruptcy Court undoubtedly holds greater expertise in connection with adjudicating truly "core" claims, the District Court is no stranger to evaluation of the putatively core claims asserted in the Complaint.[9]  Having all of the claims decided by a single court – in this case the District Court – will preserve time and financial resources of the parties and the courts.

In addition, as noted above, the Bankruptcy Court is presently presiding over forty-five (45) adversary proceedings in LCR's bankruptcy case.  While the Bankruptcy Court has, indeed, proven itself capable of managing its docket in other complex bankruptcy cases, the trial for the adversary

---

[9]  *See, e.g.*, *Tavenner v. Sigler*, No. 17-cv-00502 (MHL), 2018 WL 1511733 (E.D. Va. Mar. 27, 2018) (evaluating fraudulent conveyance and preference claims in the context of a motion to withdraw the reference); *Tavenner v. Chesapeake Construction Group, LLC*, No. 17-cv-00503 (MHL), 2018 WL 1511734 (E.D. Va. Mar. 27, 2018) (same); *In re Health Diagnostic Laboratory, Inc.*, No. 17-cv-00413 (HEH), 2017 WL 3084626 (E.D. Va. July 19, 2017) (same); *LandAmerica Financial Group, Inc. v. Southern California Edison Co.*, 525 B.R. 308 (E.D. Va. 2015) (evaluating fraudulent conveyance claim in the context of an appeal of an order on summary judgement).

19

proceeding has been slated to last over the course of ten (10) days (*see* Pre-Trial Order, Adv. Docket No. 9) and may involve the evaluation of a voluminous amount of evidence by both parties. If the District Court were to withdraw the reference of the adversary proceeding, the Bankruptcy Court will have more availability to adjudicate the other pending adversary proceedings with the hope of expediting the resolution of LCR's bankruptcy case.

In support of this assertion, the Trustee attempts to paint the Defendants as frustrated parties seeking to evade the Bankruptcy Court's jurisdiction after the Bankruptcy Court overruled ULXP's objection to the Trustee's use of cash collateral. (Opposition, at 26). In addition, the Trustee argues that the Bankruptcy Court has a "depth of historical knowledge" regarding the proceedings that "may not be helpful to the Defendants' positions". (Opposition, at 26-27). The Defendants take issue with the Trustee's characterization of the Bankruptcy Court's decision,[10] and insinuation that the decision serves as the foundation for the Motion.[11]

Separately, the Defendants disagree with the Trustee's notion that the Bankruptcy Court has significant knowledge with respect to the facts underpinning the claims of the adversary proceeding (which argument the Trustee also uses to support its contention that the factors of judicial economy and the uniform administration of bankruptcy law weigh in favor of denying the Motion; *see*

---

[10]  The Trustee states that, in connection with ULXP's objection thereto, "[t]he Bankruptcy Court rejected the Defendants' arguments with regard to the validity of the secured claim." (Opposition, at 26). The Bankruptcy Court neither evaluated nor made a determination as to the validity of ULXP's asserted secured proof of claim (Claim No. 174), in general. Rather, the Bankruptcy Court considered ULXP's assertion of a secured claim in the limited context of whether ULXP was entitled to additional adequate protection from the Trustee. *See* Oct. 30, 2020 Hrg. Tr., 60: 7-8, 21-25 ("[T]here is the problem of whether or not there's an allowed secured claim; and we have not established that . . . . The only question is whether the objecting party thinks it is entitled to some additional adequate protection. And the Court finds that it is not, that the adequate protection that the trustee has offered in this instance is adequate.").

[11]  The Trustee also states that as a result of the Bankruptcy Court overruling ULXP's objection to the Trustee's use of cash collateral, "it is not surprising that the Defendants desire to find another forum." (Opposition, at 27).

Opposition, at 23-24).  While the Bankruptcy Court certainly has familiarity with the Debtor, having

presided over the bankruptcy case for over 16 months (Opposition, at 23), the Defendants disagree

that the Bankruptcy Court has gained significant familiarity with the parties and factual allegations of

the adversary proceeding or that such factor should outweigh the others.  *See Wellman Thermal*

*Systems Corp. v. Columbia Gas Co.*, No. 05-cv-1191-JDT-TAB, 2005 WL 4880619, at *3 (S.D.

Ind. Oct. 5, 2005) ("[W]hile the bankruptcy court has gained familiarity with this case over the

past few years, that factor does not tip the scales against withdrawal in light of the other factors

that favor withdrawal.").  The Complaint was filed at the end of October 2020 and, with the exception

of the limited factual information presented to the Bankruptcy Court in connection with ULXP's

objection to the Trustee's use of cash collateral and the Defendants' motion that was just filed on

January 11, 2021 seeking dismissal of certain of the alleged claims against the Defendants [Adv.

Docket Nos. 17, 18], the Bankruptcy Court has not been presented with all of the information and

evidence relevant to the adversary proceeding.  The Bankruptcy Court acknowledged this at the

hearing on ULXP's objection to the Trustee's request to use cash collateral.  *See* Oct. 30, 2020 Hrg.

Tr., 14:3-10 ("It seems to me that [the adequate protection offered] ought to be the focus of our hearing

today . . . And so if we can . . . not litigate the things in the complaint.  I promise, you will have plenty

of time to litigate the complaint and the defenses and everything and all rights are preserved on both

sides with regard to that.  Nothing here is going to interfere with that."); 62: 4-5 ("[T]his is going to

be a difficult case when we get into the weeds of the complaint that's been filed.").

Notwithstanding the Trustee's accusations, the Defendants, in pursuing the Motion, are not

forum shopping.  *See In re Health Diagnostic Laboratory, Inc.*, 2017 WL 3084626, at *4, n.7 ("The

fifth factor, which considers the effect of forum shopping, is effectively neutral in this case and

has minimal impact on the Court's analysis.  Every motion to withdraw the reference necessarily

contemplates the changing of forum.  And certainly Movants believe they will receive some benefit

by litigating in the District Court – even if only a more expeditious resolution of their claims –

otherwise they would not have gone through the expense of filing the instant Motions.  However,

this is not the type of forum shopping that would prejudice Plaintiff.").

## II.     The Motion Is Not Premature[12] Or Speculative

The Trustee's argument that the Motion is premature and that the Bankruptcy Court should

decide whether a jury trial exists or whether the claims at issue are core or non-core *prior to* a

determination on the Motion by the District Court is unpersuasive, from a practical standpoint, and,

generally, incorrect.  As noted by the Trustee, the determination of whether withdrawal is appropriate

is at the sound discretion *of the district court*.  (Opposition, at 14).  Procedurally, in this jurisdiction,

although motions to withdraw the reference are first filed with the Bankruptcy Court, no part of such

motion is considered or addressed first by the Bankruptcy Court; rather, (presumably for purposes of

efficiency) parties are given the opportunity to file responsive pleadings, and then the clerk of the

Bankruptcy Court gathers and transmits the relevant pleadings and supporting documentation to the

District Court for consideration.  *See* LBR 5011-1.

While the Trustee's position may appear credible given the numerous cases referenced in

support thereof, the case law relied upon by the Trustee is not controlling.  Case law from courts

within this Circuit, as well as others, not cited by the Trustee, support a district court making this

initial determination.  *See In re U.S. Airways Group*, *Inc.*, 296 B.R. at 682 (denying withdrawal of the

---

[12]  The Trustee acknowledges that the Defendants timely filed the Motion in accordance with the
deadline set forth in the pre-trial order entered by the Bankruptcy Court on December 17, 2020
[Adv. Docket No. 9].  (Opposition, at 34, n.13).  Had the Defendants not filed the Motion when
they did, they may otherwise be deemed to have consented to the entry of a final judgment by the
Bankruptcy Court on matters related to the adversary proceeding.  This deadline and potential
implied consent as to Bankruptcy Court jurisdiction, however, does not alter the Defendants'
positions in pursuing the Motion at this stage of the proceeding.

reference *after* determining that the issues to be decided were core matters); *see also Corliss Moore & Associates, LLC v. Credit Control Services, Inc.*, 497 B.R. 219, 223-24 (E.D. Va. 2013) ("To determine whether withdrawal of reference is appropriate in this case, the Court must first determine what type of case is created by a claim . . . . Determining whether this adversary proceeding is a core or non-core proceeding requires the Court to consider . . . ."); *Shaia v. Malone*, No. 17-cv-00114 (MHL), 2017 WL 4203544, at \*4, n.7 (E.D. Va. Sept. 21, 2017) (declining, in consideration of a motion to withdraw the reference, to rule on whether the proceeding presented was core or non-core, simply concluding that the defendants had failed to establish their burden that the adversary proceeding was a non-core proceeding); *Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993) ("A *district court* considering whether to withdraw the reference should first evaluate whether the claim is core or non-core . . . once a *district court* makes the core/non-core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors.  The threshold core/non-core evaluation also determines the relevance of parties' trial rights to deciding a motion to withdraw the reference." (emphasis added).

In addition, while the determination of whether claims at issue are core or non-core proceedings is often considered "the most important factor" when considering whether withdrawal of the reference is warranted (Opposition, at 15), it is but one of the factors that is to be weighed by a district court and does not control the decision.  *See In re U.S. Airways Group*, *Inc.*, 296 B.R. at 682.

Furthermore, while the Trustee may not consider the preservation of judicial economy and party and judicial resources – both time and money – by way of avoidance of duplication of litigation before two different courts and having the court ultimately presiding over the matter to also handle

related pre-trial matters to be "legitimate justification[s]" for withdrawing the reference as early as possible (Opposition, at 33), the Defendants contend that such reasons are sufficient grounds for moving for immediate withdrawal of the reference. *See Abrams v. DLA Piper (US) LLP*, No. 12-cv-19-TLS, 2012 WL 13042026, at *1 (N.D. Ind. Aug. 28, 2012) (holding that withdrawal of the reference at an early stage of the proceedings would promote judicial economy, not encourage forum shopping, and facilitate efficient pretrial case management); *see also Wellman Thermal Systems Corp. v. Columbia Gas Co.*, 2005 WL 4880619, at *3 ("Certain efficiencies would be lost were the bankruptcy court to proceed with pretrial matters; the district court would not gain a valuable familiarity with the case that could assist it leading up to and through trial.").

## CONCLUSION

For the reasons set forth in this Reply, and those additional reasons stated in the Motion, the Defendants respectfully submit that cause exists for the District Court to grant the Motion at this time and withdraw the reference as to all of the claims alleged by the Trustee against the Defendants in the Complaint.

Dated:  February 8, 2021

   /s/ Thomas J. McKee, Jr.
David G. Barger (VSB No. 21652)
Thomas J. McKee, Jr. (VSB No. 68427)
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Telephone:  (703) 749-1300
Facsimile:   (703) 749-1301
Email: bargerd@gtlaw.com
      mckeet@gtlaw.com

and

J. Gregory Milmoe (admitted *pro hac vice*)
Greenberg Traurig, LLP
One International Place, Suite 2000
Boston, MA 02110
Telephone: (617) 310-6064
Email:  milmoeg@gtlaw.com
*Counsel to Defendants*

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of February 2021, I served a true and correct copy of *Defendants' Reply Memorandum in Support of Their Motion to Withdraw the Reference* via the Court's CM/ECF filing system upon:

> Erika L. Morabito, Esq.
> Brittany J. Nelson, Esq.
> FOLEY & LARDNER LLP
> 3000 K Street, NW, Suite 600
> Washington, DC 20007-5109
> emorabito@foley.com
> bnelson@foley.com

> *Special Counsel to Lynn L. Tavenner, Chapter 7 Trustee*

> _/s/ Thomas J. McKee, Jr._
> Thomas J. McKee, Jr. (VSB No. 68427)
> Greenberg Traurig, LLP
> 1750 Tysons Boulevard, Suite 1000
> McLean, Virginia 22102
> Telephone:  (703) 749-1300
> Facsimile:   (703) 749-1301
> Email: mckeet@gtlaw.com

> *Counsel to Defendants*