Erika L. Morabito (VSB No. 44369)
Brittany J. Nelson (VSB No. 81734)
FOLEY & LARDNER LLP
3000 K Street, NW, Suite 600
Washington, DC 20007-5109
Telephone:    (202) 672-5300
Facsimile:    (202) 672-5399
emorabito@foley.com
bnelson@foley.com

*Special Counsel to Plaintiff Lynn L. Tavenner, Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| In re:<br><br>    **LeClairRyan PLLC,**<br><br>        Debtor | **Case No.: 19-34574-KRH**<br><br>**Chapter 7** |
| **Lynn L. Tavenner, as Chapter 7 Trustee,**<br><br>        **Plaintiff,**<br><br>vs.<br><br>**ULX PARTNERS, LLC and UNITEDLEX**<br>**CORPORATION,**<br><br>        **Defendants.** | **Adv. Pro. No.: 20-03142-KRH** |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**MOTION TO PARTIALLY DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT  AND RELEVANT FACTUAL BACKGROUND .................. 1

APPLICABLE LEGAL STANDARD ........................................................................ 5

ARGUMENT ..................................................................................................... 6

A.    The Trustee Has Not Alleged a Deepening Insolvency Claim But Is Entitled to
Seek Damages for Additional Liabilities. ............................................................. 6

B.    The Trustee Has Sufficiently Pled Claims for  Aiding and Abetting Breaches of
Fiduciary Duties Owed to Creditors ................................................................... 8

    1.    Aiding and Abetting Breach of Fiduciary Is an Actionable Claim........................ 8

    2.    The *In Pari Delicto* Affirmative Defense Is Not a Basis to Dismiss the
Trustee's Claims ................................................................................... 10

        a.    The Defendants attempt to address the merits of an *in pari delicto*
defense when the defense does not clearly appear on the face of the
Complaint............................................................................... 10

        b.    The Defendants' status as insiders of the Debtor precludes a
determination that the Trustee's claims are barred by the *in pari
delicto* defense. ...................................................................... 12

        c.    The Defendants' conduct fits squarely within the "adverse interest"
exception to the *in pari delicto* defense. .................................... 15

    3.    The Trustee Has Sufficiently Alleged Predicate Claims for Both  the
Aiding and Abetting and Conspiracy Claims in Counts IX-XI ........................... 16

    4.    The Trustee Has Alleged the Requisite  Elements of Aiding and Abetting
Breach of Fiduciary Duty.................................................................... 19

C.    The Trustee Has Stated Claims For  Statutory and Common Law Conspiracy in
Counts X and XI ............................................................................................ 21

    1.    The Conspiracy Claims Are Pled With the Requisite Particularity
Required by Rule 9 .............................................................................. 21

    2.    The Intra-Corporate Immunity Doctrine Does Not Apply ................................. 25

D.   The Trustee Has Properly Stated Claims for Recovery of Actual and
     Constructively Fraudulent Transfers and Recharacterization of Debt.............................. 28

     1.   The Trustee's Claims for Avoidance of Fraudulent Transfers Under
          Bankruptcy Code Sections 548(a)(1)(A) and 544(b) and Applicable State
          Law Are Pled with Requisite Particularity .......................................................... 28

          a.   The Trustee has alleged conduct throughout the Complaint that
               demonstrates the presence of "badges of fraud."....................................... 30

          b.   The Trustee has alleged unlawful business practices that establish
               an actual intent to hinder, delay, or defraud creditors............................. 33

     2.   The Trustee's Claim for Avoidance of Constructively Fraudulent
          Transfers Under Bankruptcy Code Section 548(a)(1)(B) Is Sufficiently
          Stated..................................................................................................................... 35

     3.   Avoidance of ULXP's Security Interest Is Not Limited to a Claim Under
          Bankruptcy Code Section 547 .............................................................................. 38

     4.   The Trustee States a Claim for Disallowance of Claims Under Bankruptcy
          Code Section 502(d) ............................................................................................. 39

     5.   The Trustee Has Sufficiently Stated a Claim for Recharacterization of the
          ULXP Note ............................................................................................................ 40

E.   In the Alternative, the Trustee Seeks Leave to Amend to Cure Any Defects .................. 44

CONCLUSION.................................................................................................................... 45

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alberts v. Tuft (In re Greater Se. Cmty. Hosp. Corp. I)*,
   353 B.R. 324 (Bankr. D.D.C. 2006) .......................................................................... 7

*All. Tech. Grp., LLC v. Achieve 1, LLC*,
   No. 3:12CV701-HEH, 2013 WL 143500 (E.D. Va. Jan. 11, 2013) .................................... 9, 19

*Armstrong v. Collins*,
   No. 01CIV.2437(PAC), 2010 WL 1141158 (S.D.N.Y. Mar. 24, 2010) ............................ 36-37

*Arrowsmith v. Mallory (In re Health Diagnostic Lab., Inc.)*,
   Nos. 15-32919, 16-03271, 2017 Bankr. LEXIS 2230 (Bankr. E.D. Va. Aug. 9, 2017).... *passim*

*Arrowsmith v. Warnick (In re Health Diagnostic Lab., Inc.)*,
   No. 15-32919, 2018 WL 4676339 (Bankr. E.D. Va. Sept. 26, 2018)................................... 9, 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................... 6

*AvalonBay Cmtys.ommunities, Inc. v. Willden*,
   No. 1:08-CV-777, 2009 WL 2431571 (E.D. Va. Aug. 7, 2009) .............................................. 8

*Baldiga v. Moog, Inc. (In re Comprehensive Power, Inc.)*,
   578 B.R. 14 (Bankr. D. Mass. 2017) ...................................................................... 42

*Bank of America v. Musselman*,
   222 F.Supp.2d 792 (E.D. Va. 2002) ................................................................. 16, 17, 18

*Bankr. Estate of Gino Ruffini v. Norton Law Group, PLLC (In re Ruffini)*,
   No. 11-78841-REG, 2014 WL 714732 (Bankr. E.D.N.Y. Feb. 25, 2014) .............................. 37

*Bayer Corp. v. MascoTech, Inc. (In re Autostyle Plastics, Inc.)*,
   269 F.3d 726 (6th Cir. 2001) .................................................................................... 43

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................... 6

*Bell v. Disner*,
   No. 3:14CV91, 2016 WL 7007522 (W.D.N.C. Nov. 29, 2016), *aff'd sub nom. Bell v. Li Yu
   Chen*, 731 F. App'x 239 (4th Cir. 2018)................................................................... 37

*Buffalo Wings Factory, Inc. v. Mohd*,
   622 F. Supp. 2d 325 (E.D. Va. 2007) ..................................................................... 25, 26

*Bunch v. J.M. Capital Finance, Ltd. (In re Hoffinger Indus., Inc.)*,
   327 B.R. 389 (Bankr. E.D. Ark. 2005) .................................................................... 42

*Burtch v. Seaport Capital, LLC, (In re Direct Response Media, Inc.)*,
   466 B.R. 626 (Bankr. D. Del. 2012) ....................................................................... 13

*Buschi v. Kirven*,
    775 F.2d 1240 (4th Cir.1985) ................................................................ 26

*Byelick v. Vivadelli*,
    79 F. Supp. 2d 610 (E.D. Va. 1999) ...................................................... 16

*Cars Unlimited II, Inc. v. Nat'l Motor Co., Inc.*,
    472 F. Supp. 2d 740 (E.D. Va. 2007) .................................................... 24

*CBS, Inc. v. Folks (In re Folks)*,
    211 B.R. 378 (B.A.P. 9th Cir. 1997)...................................................... 18

*In re Cold Harbor Assocs., L.P.*,
    204 B.R. 904 (Bankr. E.D. Va. 1997).............................................. 41, 43

*Commonwealth Biotechnologies, Inc., v. Fornova Pharmworld, Inc., (In re Commonwealth*
    *Biotechnologies, Inc.)*,
    No. 11-30381-KRH, 2012 WL 5385632 (Bankr. E.D. Va. Nov. 1, 2012) .............................. 41

*Darton Envtl., Inc. v. FJUVO Collections, LLC*,
    332 F. Supp. 3d 1022 (W.D. Va. 2018) .............................................26-27

*Deckard v. General Motors Corp.*,
    307 F.3d 556 (7th Cir. 2002) ................................................................ 11

*Detrick v. Panalpina*,
    108 F.3d 529 (4th Cir.1997) ................................................................ 26

*Devon Mobile Communications Liquidating Trust v. Adelphia Commc'ns Corp. (In re Adelphia*
    *Commc'ns Corp.)*,
    322 B.R. 509 (Bankr. S.D.N.Y. 2005) .................................................. 13

*Fairchild Dornier GmbH v. Official Comm. of Unsecured Creditors (In re Dornier Aviation (N.*
    *Am.), Inc.)*,
    453 F.3d 225 (4th Cir. 2006) ......................................................... *passim*

*FCC v. Airadigm Commc'ns, Inc. (In re Airadigm Commc'ns, Inc.)*,
    616 F.3d 642 (7th Cir. 2010) ................................................................ 42

*FDIC v. Sea Pines Co.*,
    692 F.2d 973 (4th Cir. 1982) ................................................................ 17

*Fessler v. Int'l Bus. Machines Corp.*,
    959 F.3d 146 (4th Cir. 2020) .................................................................. 6

*Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*,
    412 F.3d 745 (7th Cir. 2005) ................................................................ 30

*Flame S.A. v. Freight Bulk Pte. Ltd.*,
    807 F.3d 572 (4th Cir. 2015) ................................................................ 29

*Flexible Benefits Council v. Feltman*,
    No. 1:08CV371 (JCC), 2008 WL 2465457 (E.D. Va. June 16, 2008) .................................... 26

*Forman v. Jeffrey Matthews Fin. Group, LLC (In re Halpert & Co.)*,
    245 B.R. 104 (Bankr. D.N.J. 1999) ...................................................... 36

*Friedman v. Am. Capital, Ltd. (In re Barton-Cotton, Inc.)*,
No. 09-12066-DK, 2012 WL 2803742 (Bankr. D. Md. July 10, 2012) ............................ 29-30

*Friedman v. Morabito (In re Morabito)*,
64 F.3d 658 (4th Cir. 1995) ........................................................................................ 45

*Galaxy Computer Servs., Inc. v. Baker*,
325 B.R. 544 (E.D. Va. 2005) .................................................................................... 21

*Gold v. Old Republic Nat. Title Ins. Co. (In re Taneja)*,
No. 08-13293-SSM, 2010 WL 4882826 (Bankr. E.D. Va. Nov. 24, 2010) .................... 15

*Goodman v. Praxair, Inc.*,
494 F.3d 458 (4th Cir. 2007) ...................................................................................... 11

*Grayson Consulting, Inc. v. Wachovia Securities., LLC (In re Derivium Capital LLC)*,
716 F.3d 355 (4th Cir. 2013) ...................................................................................... 12

*Grimm v. Washington Mut. Bank*,
No. 02:08-CV-0828, 2008 WL 2858377 (W.D. Pa. July 22, 2008) ............................... 30

*Grobstein v. Sharron (In re L. Scott Apparel, Inc.)*,
615 B.R. 881 (C.D. Cal. 2020) ................................................................................... 42

*Hosking v. TPG Capital Mgmt. LP (In re Hellas Telecomms.unications (Luxembourg) II SCA)*,
524 B.R. 488 (Bankr. S.D.N.Y. 2015) ........................................................................ 13

*Hudgins v. Shah (Sys. Eng'g & Energy Mgt. Associates, Inc.)*,
252 B.R. 635 (Bankr. E.D. Va. 2000) ......................................................................... 18

*Huennekens v. The Gilcom Corp. of Va. (In re Sun Sport, Inc.)*,
260 B.R. 88 (Bankr. E.D. Va. 2000) ........................................................................... 29

*In re IDI Constr. Co., Inc.*,
345 B.R. 60 (Bankr. S.D.N.Y. 2006) ........................................................................... 14

*Kaler v. Able Debt Settlement, Inc. (In re Kendall)*,
440 B.R. 526 (B.A.P. 8th Cir. 2010) ........................................................................... 37

*King v. Rubenstein*,
825 F.3d 206 (4th Cir. 2016) ........................................................................................ 6

*Kirschner v. J. P. Morgan Chase Bank, N.A. (In re Millennium Lab Holdings II, LLC)*,
No. 15-12284 (LSS), 2019 WL 1005657 (Bankr. D. Del. Feb. 28, 2019) ...................... 33

*Levin v. Province Grande Olde Liberty, LLC (In In re Province Grande Olde Liberty, LLC)*,
655 F. App'x 971 (4th Cir. 2016) .......................................................................... 40, 41

*Lightsway Litigation Services, LLC v. Yung (In re Tropicana Entm't, LLC)*,
520 B.R. 455 (Bankr. D. Del. 2014) ........................................................................ 12-13

*Logan v. JKV Real Estate Servs. (In re Bogdan)*,
414 F.3d 507 (4th Cir. 20056) ..................................................................................... 11

*Miller v. McCown De Leeuw & Co. (In re The Brown Schools)*,
386 B.R. 37 (Bankr. D. Del. 2008) .............................................................................. 13

v

*Nat. City Bank of Minneapolis v. Lapides (In re Transcolor Corp.)*,
   296 B.R. 343 (Bankr. D. Md. 2003) ...................................................................... 18

*In re Newfound Lake Marina, Inc.*,
   No. 04-12192-MWV, 2007 WL 2712960 (Bankr. D.N.H. Sept. 14, 2007) ............................ 43

*Official Comm. of Unsecured Creditors of the Debtors v. Austin Fin. Servs., Inc. (In re KDI
Holdings, Inc.)*,
   277 B.R. 493 (Bankr. S.D.N.Y. 1999) ............................................................... 13, 14

*OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*,
   340 B.R. 510 (Bankr. D. Del. 2006) ...................................................................... 11

*Pem Entities, LLC, v. Province Grande Olde Liberty, LLC (In re Province Grande Olde Liberty,
LLC)*,
   No. 13-01563-8-RDD, 2014 WL 6901052 (Bankr. E.D.N.C. Dec. 5, 2014) ..................... 43-44

*Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*,
   458 B.R. 87 (Bankr. S.D.N.Y. 2011) ...................................................................... 13

*Poth v. Russey*,
   281 F. Supp. 2d 814 (E.D. Va. 2003), *aff'd*, 99 F. App'x. 446 (4th Cir. 2004) ...................... 17

*Ray v. Roane*,
   948 F.3d 222 (4th Cir. 2020) ................................................................................ 6

*Republican Party of N.C. v. Martin*,
   980 F.2d 943 (4th Cir. 1992) ................................................................................ 6

*Roth Steel Tube Co. v. C.I.R.*,
   800 F.2d 625 (6th Cir. 1986) ............................................................................... 42

*Schimmelpenninck v. Byrne (In re Schimmelpenninck)*,
   183 F.3d 347 (5th Cir.1999) ................................................................................ 18

*Schnelling v. Crawford (In re James River Coal Co.)*,
   360 B.R. 139 (Bankr. E.D. Va. 2007) ............................................................... *passim*

*Schwartz v. Celestial Seasonings, Inc.*,
   124 F.3d 1246 (10th Cir. 1997) ............................................................................ 30

*In re Sentinel Mgmt. Grp., Inc.*,
   728 F.3d 660 (7th Cir. 2013) ........................................................................... 33-34

*Smith v. Bowen (In re Bowen)*,
   No. 12-31699-KLP, 2015 WL 775053 (Bankr. E.D. Va. Feb. 24, 2015) .............................. 29

*Steinberg v. Buczynski*,
   40 F.3d 890 (7th Cir. 1994) ................................................................................ 18

*Sterne Agee Group, Inc. v. Robinson (In re Anderson & Strudwick, Inc.)*,
   No. 14-32679-KLP, 2015 WL 1651146 (Bankr. E.D. Va. Apr. 8, 2015) ................................ 6

*TechINT Sols. Grp., LLC v. Sasnett*,
   No. 5:18-cv-00037, 2019 WL 2619539 (W.D. Va. June 26, 2019) ..................................9-10

*Tobey v. Jones*,
706 F.3d 379 (4th Cir. 2013) ................................................... 6

*The TRU Creditor Litigation Trust v. UPS Supply Chain Solutions Inc. (In re Toys "R" Us., Inc.)*,
No. 17-34665-KLP, 2020 WL 2765046 (Bankr. E.D. Va. May 26, 2020) ............................. 11

*Tysons Toyota, Inc. v. Globe Life Ins. Co.*,
45 F.3d 428 (4th Cir. 1994) ................................................. 8, 10, 20

*WLR Foods v. Tyson Foods, Inc.*,
869 F. Supp. 419 (W.D. Va. 1994) ........................................... 16

**State Cases**

*Advanced Marine Enters., Inc. v. PRC Inc.*,
256 Va. 106, 501 S.E.2d 148 (Va. 1998) ...................................... 21

*Best Med. Int'l, Inc. v. Wittmer*,
73 Va. Cir. 504, 2007 WL 6013714 (Va. Cir. Ct. 2007) ........................ 19

*Colbert v. Ashland Const. Co., Inc.*,
176 Va. 500, 11 S.E.2d 612 (Va. 1940) ....................................... 37

*Colgate v. Disthene Grp., Inc.*,
86 Va. Cir. 218, 2013 WL 8019576 (Va. Cir. Ct. 2013) ........................ 27

*Com. Bus. Sys., Inc. v. Bellsouth Servs., Inc..*,
249 Va. 39, 453 S.E.2d 261 (Va. 1995) ....................................... 24

*Fid. Nat. Title Ins. Co. v. Washington Settlement Grp., LLC*,
87 Va. Cir. 77, 2013 WL 9541969 (Va. Cir. Ct. 2013) ...................... 25, 27

*Halifax Corp. v. Wachovia Bank*,
268 Va. 641, 604 S.E.2d 403 (Va. 2004) .................................. 9, 19, 20

*Kieft v. Becker*,
58 Va. Cir. 171, 2002 WL 481249 (Va. Cir. Ct. 2002) ......................... 10

*Patteson v. Horsley*,
70 Va. 263, 29 Gratt. 263 (Va. 1877) ..................................... 9, 10, 20

*Sherry Wilson & Co., Inc. v. Generals Court, L.C.*,
No. 21696, 2002 WL 32136374 (Va. Cir. Ct. Sept. 27, 2002) .................... 8

**Statutes and Rules**

11 U.S.C. § 502(d) ........................................................ 39
11 U.S.C. § 544(b) ........................................................ 28
11 U.S.C. § 547 ........................................................ 38, 39
11 U.S.C. § 548 ...................................................... *passim*
Fed. R. Bankr. P. 7015 ................................................. 44-45
Fed. R. Bankr. P. 7012(b) ................................................. 6

Fed. R. Civ. P. 9 ..................................................................................... 21, 28, 29-30, 31

Fed. R. Civ. P. 10(c) ............................................................................................... 30

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 6

Virginia Code Ann. § 55.1-400 .......................................................................... 28, 29

Virginia State Bar Rule 5.4 ...................................................................................... 34

Virginia State Bar Rules of Professional Conduct ............................................... *passim*

**Other Authorities**

5A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1326 (4th ed.) ............ 30

5B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1357 (3d ed.) ............ 5-6

Plaintiff Lynn L. Tavenner, solely in her capacity as Chapter 7 Trustee ("**Plaintiff**" or

"**Trustee**") for LeClairRyan, PLLC ("**LeClairRyan**" or the "**Debtor**"), by her undersigned

counsel, respectfully submits this opposition (the "**Opposition**") to the *Motion to Partially Dismiss*

*the Complaint* (the "**Motion**" or "**Mot.**")[1] filed by Defendants ULX Partners, LLC ("**ULXP**") and

UnitedLex Corporation ("**UnitedLex**" and, together with ULXP, the "**Defendants**").[2]  In support

of this Opposition, the Trustee respectfully states as follows:

**PRELIMINARY STATEMENT**
**AND RELEVANT FACTUAL BACKGROUND**

The Defendants move to dismiss ten of the fourteen Counts pled by the Trustee in the

Complaint, alleging that they fail to state a cause of action.  But the Defendants' Motion fails to

acknowledge the detailed and specific allegations set forth in the 320-paragraph, 49-page

Complaint filed by the Trustee (supplemented by 28 exhibits).  In light of the Trustee's detailed

Complaint, the Defendants cannot meet their burden of proving that the factual allegations in the

Complaint do not state claims for relief.  Consequently, their Motion is meritless and should be

denied.

The gravamen of the Complaint is that the Defendants exploited LeClairRyan's precarious

financial situation through a one-sided venture (ULXP) governed by an unlawful contract.

Through this venture, the Defendants exercised inappropriate control over LeClairRyan and

improved their financial position (and obtained numerous avoidable transfers) at the expense of

the Debtor's legitimate creditors.  Among other specific and detailed allegations in the Complaint,

the Trustee alleged the following:

---

[1] Page citations to the Motion in this Opposition appear as "Mot. at __" and refer to page numbers in the accompanying Memorandum.

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the Complaint filed in this adversary proceeding at Dkt. No. 4 (the "**Complaint**" or "**Compl.**").  Paragraph citations to the Complaint in this Opposition appear as "Compl. ¶" or "Compl. ¶¶."

- Upon learning of LeClairRyan's precarious financial situation, UnitedLex restructured the proposed transaction between ULXP and LeClairRyan in two principal ways. First, UnitedLex reduced the financial benefits that LeClairRyan would receive under the deal. UnitedLex took the additional loans of up to $33 million to LeClairRyan off the table. UnitedLex therefore provided no new money to LeClairRyan as part of the transaction. In addition, LeClairRyan's equity interest in ULXP was reduced, ultimately to only 1%. UnitedLex owned the other 99% of ULXP. (Compl. ¶¶ 19, 74-77);

- Pursuant to the April 4, 2018 Master Services Agreement between ULXP and LeClairRyan (the "**MSA**"), ULXP assumed overwhelming control over LeClairRyan, including core law firm functions such as "Legal Operations & Administration, "Client Relations & Business Development," and "Conflicts & Engagement Management."[3] ULXP took over control of LeClairRyan despite a 2017 legal opinion that it received from Hinshaw & Culbertson LLP opining that UnitedLex could not "under any circumstances have an ownership interest in [the law firm], or exercise any management or control over [the law firm], or over the provision of legal services by [the law firm]." (Compl. ¶¶ 61, 79-81);

- The MSA also provided that ULXP would earn fees for both "Operations Services" and "Production Services." The Operations Services fees related to ULXP's provision of back-office, non-legal services. The Production Services fees, however, compensated ULXP based on the net profits of LeClairRyan in its provision of legal services. ULXP (and thus UnitedLex) thus shared in legal fee profits despite the prohibition on this practice by the Virginia State Bar Rules of Professional Conduct. (Compl. ¶¶ 83-86);

- The Defendants' assumption of control was part of their ongoing plan to essentially take over LeClairRyan. In August 2018, Peter Krakaur, UnitedLex's Vice President of Business Solutions, stated in a presentation that "[o]ver time, we will shift ULXP (and [LeClairRyan]) towards [UnitedLex] systems and processes. The art is doing it in a way that pulls [LeClairRyan] partners along with us given cultural and other limitations we discussed earlier regarding law firm partners and their business acumen." Mr. Krakaur also opined that "ULXP is now the ***owner of the business of law***" and characterized ULXP as "running the law firm." (Compl. ¶¶ 118-122) (emphasis added);

- The Defendants' control over LeClairRyan allowed them to strategically improve their own financial position at the expense of LeClairRyan's creditors. By the end of 2018, LeClairRyan was continuing to experience shareholder defections and declining revenue. At the same time, LeClairRyan owed the Defendants more than $12 million in fees. (Compl. ¶¶130-31);

---

[3] The staggering breadth of LeClairRyan's ceding of control to ULXP under the MSA is set forth in ¶ 81 of the Complaint.

- In April 2019, only five months before LeClairRyan's bankruptcy case—and at a time when the Defendants were exploring the creation of a new law firm called the Novellus Law Group to siphon off LeClairRyan's profitable members and assume obligations to UnitedLex, while leaving LeClairRyan saddled with its debts and liabilities—the Defendants converted their outstanding claim for alleged fees owed by LeClairRyan into a secured note held by ULXP. On April 4, 2019, ULXP and LeClairRyan entered into an Outstanding Deferred Loan Promissory Note in the principal amount of $8 million (the "**ULXP Note**") and an accompanying Security Agreement (the "**ULXP Security Agreement**"). The parties purported to back date the documents to December 20, 2018. (Compl. ¶¶ 132-34, 169-188);

- By purporting to obtain a "secured claim" against the Debtors under the ULXP Note and Security Agreement, the Defendants attempted to leapfrog in priority over the Debtors' unsecured creditors. In reality, the amounts included in the ULXP Note were equity infusions. (Compl. ¶¶ 137-44);

- Moreover, the Defendants also improved their positions significantly by controlling and manipulating the prioritization and decision-making over the debts that LeClairRyan would, and would not, be able to pay. The Defendants routinely demanded weekly payments from LeClairRyan and ensured that their invoices would be paid ahead of other creditors. Indeed, between November 2018 and LeClairRyan's bankruptcy in September 2019, the payables that LeClairRyan owed to ULXP *decreased* by approximately 30.7%, while LeClairRyan's payables owed to all other creditors *increased* by approximately 181%. (Compl. ¶¶ 150-55); and

- The Defendants also encouraged LeClairRyan's commingling and mishandling of funds tendered by clients for specific expenses, and thereby caused LeClairRyan to use such funds to prioritize operational expenses, including payments to ULXP. (Compl. ¶¶ 161-68).

These allegations, and others in the Complaint, specifically describe the timeframe of the Defendants' alleged conduct, the persons involved, the Defendants' underlying motivations, and the effect of their control and influence over the Debtor. The Complaint, viewed as a whole, easily satisfies the Trustee's pleading burden as to all Counts the Defendants have challenged in their Motion. Moreover, a number of the Defendants' challenges raise issues that would require this Court to make factual determinations or entertain defenses at the pleading stage. As this Court is well aware, such a decision at this stage would be improper.

At the outset, the Defendants argue that Counts IX-XI, in effect, are disguised "deepening insolvency" breach of fiduciary duty claims. (Mot. at 15). This unconvincing theory attempts to

recast these claims as something they are not.  Indeed, those Counts properly state claims for aiding and abetting breaches of fiduciary duty, statutory conspiracy, and common law conspiracy, respectively.  Simply put, the Trustee is not pursuing causes of action based on a theory of deepening insolvency; rather, the Trustee has alleged separate and independent causes of action that, as a measure of damages, include allegations regarding the detrimental impact of the Defendants' tortious actions on the value of the law firm.

The Defendants also contend that the Trustee's aiding and abetting claim in Count IX lacks any vitality "in light of the generally noted uncertainty around this issue and because the Supreme Court of Virginia has to date not formally recognized such a claim."  (Mot. at 18-19 n.16). Numerous courts, including this Court, have consistently found that aiding and abetting breach of a fiduciary duty is an actionable claim.  There is no "uncertainty" on this issue, and the Defendants' motion to dismiss Count IX on that basis lacks merit.

In addition, ignoring well-established tenets courts apply when evaluating the sufficiency of a complaint, the Defendants attempt to assert an *in pari delicto* defense when it does not clearly appear on the face of the Complaint.  But, the Defendants' status as insiders of the Debtor and their self-dealing conduct render this defense unavailable to the Defendants, even if it were procedurally proper to raise it at the motion to dismiss stage (which it is not).  The Defendants also posit that the Trustee has failed to (a) state predicate claims for the aiding and abetting and conspiracy claims in Counts IX-XI and (b) allege the requisite elements for aiding and abetting breach of fiduciary duty.  For the reasons discussed below, these arguments should be rejected.

The Defendants' challenges to the Trustee's conspiracy claims are similarly meritless.  As highlighted above and discussed further below, the Trustee has pled detailed and sufficient allegations in the Complaint to satisfy procedural pleading requirements.  In addition, the

Defendants' invocation of the intra-corporate immunity doctrine is a red herring that has no effect on the Trustee's conspiracy claims.

Notwithstanding the Defendants' arguments to the contrary, the Trustee has properly stated claims for recovery of actual and constructively fraudulent transfers made to the Defendants and for recharacterization of "debt" purportedly owed to ULXP. Once again, the Defendants disregard the clear import of the Trustee's factually detailed allegations. The Trustee has more than adequately alleged actual fraudulent intent. These particularized allegations not only easily establish the presence of classic "badges of fraud," but also describe unlawful business practices in contravention of state rules of professional responsibility. Moreover, even assuming the Trustee's constructively fraudulent transfer claim in Count II is subject to a claim-sufficiency analysis, the Trustee has nevertheless pled sufficient facts to support all relevant elements of Bankruptcy Code Section 548(a)(1)(B). Lastly, the Defendants' steadfast reliance upon the four corners of the ULXP Note would have this Court ignore significant factors militating in favor of recharacterization.

In sum, the Defendants' arguments in support of dismissal should be rejected, and the Trustee's detailed Complaint should survive in its entirety.

## <u>APPLICABLE LEGAL STANDARD</u>

A party seeking to dismiss a claim via Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "**Civil Rules**")[4] has the burden of proving that the factual allegations in the complaint do not state a claim for relief. 5B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1357 (3d ed.) ("All federal courts are in agreement that the burden is on the moving party to

---

[4] Civil Rule 12(b)(6) is made applicable to this proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

prove that no legally cognizable claim for relief exists."). "To survive a motion to dismiss, [the Court] require[s] 'only enough facts to state a claim to relief that is plausible on its face.'" *Fessler v. Int'l Bus. Machines Corp.*, 959 F.3d 146, 152 (4th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sterne Agee Group, Inc. v. Robinson (In re Anderson & Strudwick, Inc.)*, No. 14-32679-KLP, 2015 WL 1651146, at *4 (Bankr. E.D. Va. Apr. 8, 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Most importantly, "[i]n reviewing a motion to dismiss for failure to state a claim, [a court] must 'accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)). A motion under Civil Rule 12(b)(6) "'does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses.'" *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray*, 948 F.3d at 226 (alteration in original) (quoting *Tobey*, 706 F.3d at 387).

The Trustee's Complaint plainly meets this standard and should not be dismissed.

## ARGUMENT

### A.    The Trustee Has Not Alleged a Deepening Insolvency Claim But Is Entitled to Seek Damages for Additional Liabilities.

The Defendants advance a strawman theory that Counts IX-XI, in effect, are disguised "deepening insolvency" breach of fiduciary duty claims. (Mot. at 15.) This argument attempts to transform the causes of action asserted in Counts IX- XI into something the Trustee has not actually alleged. In reality, those Counts properly state independent claims for aiding and abetting breaches

6

of fiduciary duty, statutory conspiracy, and common law conspiracy, respectively. Simply put, the Trustee is not pursuing a deepening insolvency *claim*—which the Trustee is well aware is not actionable in this jurisdiction—but has alleged that the Defendants' tortious actions unreasonably prolonged the life of the Debtor, resulting in additional *damages* to the Debtor's estate (the "**Estate**") and its creditors.

As this Court has previously recognized, the theory of deepening insolvency "holds that the acquisition of debt by an insolvent corporation can harm the corporation as well as its creditors . . . ." *Schnelling v. Crawford (In re James River Coal Co.)*, 360 B.R. 139, 178 (Bankr. E.D. Va. 2007) (quoting *Alberts v. Tuft (In re Greater Se. Cmty. Hosp. Corp. I)*, 353 B.R. 324, 334-35 (Bankr. D.D.C. 2006)). "[O]ne seeking to recover for 'deepening insolvency' must show that the defendant prolonged the company's life *in breach of a separate duty, or committed an actionable tort that contributed to the continued operation of a corporation and its increased debt.*" *James River Coal*, 360 B.R. at 179 (citation omitted) (emphasis added). To be sure, the Trustee has alleged actions leading to deepening insolvency as a theory of harm to recover additional damages on behalf of the Estate and its creditors. *See Tuft*, 353 B.R. at 338 ("[T]his court prefers to treat deepening insolvency as the theory of harm that it was always meant to be, and will rely on other, more established (not to mention less convoluted) common law causes of action to ascertain whether the defendants in this case have engaged in a legal wrong for which [the trustee] is entitled to recover."). Unlike the trustee in *James River Coal*, who pursued a cause of action based on an *independent* theory of deepening insolvency, the Trustee in this case, as argued below, has properly alleged that the Defendants committed other actionable and recognized torts or violated state law in the course of unreasonably prolonging the Debtor's life.

Therefore, the Defendants' efforts to inappropriately reframe the Trustee's claims in Counts IX-XI should be rejected.

### B. The Trustee Has Sufficiently Pled Claims for Aiding and Abetting Breaches of Fiduciary Duties Owed to Creditors

#### 1. Aiding and Abetting Breach of Fiduciary Is an Actionable Claim

The Defendants contend that Count IX for aiding and abetting breach of fiduciary duty should be dismissed because such a cause of action has not been recognized by the Supreme Court of Virginia. This misleading argument should be flatly rejected.

Numerous courts, including the Fourth Circuit and other courts throughout the Commonwealth, have held that aiding and abetting a breach of fiduciary duty is a cognizable claim under Virginia law. *See, e.g.*, *Tysons Toyota, Inc. v. Globe Life Ins. Co.*, 45 F.3d 428 (4th Cir. 1994) (reversing the lower court's dismissal of aiding and abetting claim and holding that "[u]nder Virginia law, one who aids and abets a third party's breach of fiduciary duty may be held liable for providing such assistance"); *AvalonBay Cmtys., Inc. v. Willden*, No. 1:08-CV-777, 2009 WL 2431571, at *11 (E.D. Va. Aug. 7, 2009), *aff'd*, 392 Fed. Appx. 209 (4th Cir. 2010) ("Virginia law allows a third party to be liable for another party's breach of fiduciary duty when that third party knowingly participated in the breach."); *Sherry Wilson & Co., Inc. v. Generals Court, L.C.*, No. 21696, 2002 WL 32136374, at *1 (Va. Cir. Ct. Sept. 27, 2002) ("Thus, unlike some jurisdictions, it may be said that the common law of the Commonwealth has looked with favor upon recovery in tort against those who aid and abet others in the commission of the civil wrong for which damages may be maintained.").

The Defendants acknowledge, as they must, that various lower courts in this district have recognized that aiding and abetting breach of fiduciary duty is a cognizable claim. (*See* Mot. at 18-19 n.16). Indeed, on more than one occasion, this very Court has specifically held that aiding

8

and abetting breach of fiduciary duty is actionable. *See, e.g.*, *Arrowsmith v. Warnick (In re Health Diagnostic Lab., Inc.)*, No. 15-32919, 2018 WL 4676339, at *11 (Bankr. E.D. Va. Sept. 26, 2018) (denying motion to dismiss aiding and abetting claim and stating that "[a] cause of action for aiding and abetting a breach of fiduciary duty has been recognized by the Fourth Circuit and Virginia courts"); *James River Coal*, 360 B.R. at 174 (denying motion to dismiss aiding and abetting claim and stating that "[a]iding and abetting a breach of fiduciary duty is a viable claim under Virginia law"). And while it is true the Virginia Supreme Court has not formally recognized such a cause of action, it also has not rejected it. *See Halifax Corp. v. Wachovia Bank*, 268 Va. 641, 604 S.E.2d 403, 411–12 (Va. 2004) (Virginia Supreme Court assuming *arguendo* that Virginia recognizes the claim but affirming the lower court's dismissal of the claim for factual reasons).

The "generally noted uncertainty around this issue" that the Defendants have attempted to manufacture (*see* Mot. at 19 n.16) therefore is illusory. In fact, the Virginia Supreme Court has held that it is an appropriate avenue to establish joint tortfeasor liability. *See Patteson v. Horsley*, 70 Va. 263, 277 (Va. 1877). In rejecting a motion to dismiss an aiding and abetting claim in *Alliance Technology Group, LLC v. Achieve 1, LLC*, 3:12CV701-HEH, 2013 WL 143500 (E.D. Va. Jan. 11, 2013), the court held that "[i]t is not entirely clear that *Patteson* created a separate tort of 'aiding and abetting,' but it does appear to recognize joint tortfeasor liability if a defendant: (1) knows about another's duty and breach; (2) participates in it or directs its commission; and, (3) benefits from it." 2013 WL 143500, at *5 (citing *Patteson*, 70 Va. at 270-71). Based on this standard, the court in *Alliance Technology* found that the plaintiff had sufficiently pled an aiding and abetting breach of fiduciary duty claim. *See id.*; *see also TechINT Sols. Grp., LLC v. Sasnett*, No. 5:18-cv-00037, 2019 WL 2619539, at *4–5 (W.D. Va. June 26, 2019) (denying motion to dismiss and finding it was an appropriate cause of action to establish a "viable alternative theory

to secure joint liability"); *Kieft v. Becker*, 58 Va. Cir. 171, 172 (Va. Cir. Ct. 2002) (observing that *Patteson* and *Tysons Toyota* established aiding and abetting breach of fiduciary duty claim under Virginia law and extending this to aiding and abetting fraud claim).

In light of the rulings by the overwhelming majority of courts—including the Fourth Circuit and this Court—aiding and abetting breach of fiduciary duty is a cognizable claim under Virginia law.

### 2. The *In Pari Delicto* Affirmative Defense Is Not a Basis to Dismiss the Trustee's Claims

The Defendants further argue that the Trustee's aiding and abetting and conspiracy claims are barred by the doctrine of *in pari delicto*.  (*See* Mot. at 20-22).  This affirmative defense does not bar the Trustee's fiduciary-related claims for at least three independent reasons:  *first*, and most importantly, the defense does not clearly appear on the face of the Complaint and therefore is not ripe for consideration at this stage; *second*, the Trustee has sufficiently alleged that the Defendants were insiders of the Debtor; and *third*, the Complaint includes numerous allegations of self-dealing that trigger the "adverse interest" exception to the *in pari delicto* doctrine.

### a. The Defendants attempt to address the merits of an *in pari delicto* defense when the defense does not clearly appear on the face of the Complaint.

Having not filed an answer and thus not having pled any affirmative defenses in this action, the Defendants improperly attempt to argue that the affirmative defense of *in pari delicto* provides a basis for dismissal.  (*See* Mot. at 20-22).  They posit that the Trustee's claims against the Defendants are barred by the doctrine of *in pari delicto* "because the claims are premised upon alleged wrongdoing by the Debtor's own Board of Directors and Executive Officers."  (Mot. at 20).  As discussed below, the defense is not only meritless, it is also premature.

10

"The common-law doctrine of *in pari delicto* (meaning 'of equal fault') is often described as an affirmative defense that bars a wrongdoer from recovering against his alleged coconspirators." *Logan v. JKV Real Estate Servs. (In re Bogdan)*, 414 F.3d 507, 514 (4th Cir. 2005). Determining the viability of an affirmative defense at this stage of the litigation is improper. The Fourth Circuit has held that "a motion to dismiss filed under Federal Rule of Procedure 12(b)(6) . . . generally cannot reach the merits of an affirmative defense[.]" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (stating that a limited exception arises only where all facts necessary to the affirmative defense clearly appear on the face of the complaint); *The TRU Creditor Litigation Trust v. UPS Supply Chain Solutions Inc. (In re Toys "R" Us., Inc.)*, No. 17-34665-KLP, 2020 WL 2765046, at *4 (Bankr. E.D. Va. May 26, 2020) ("The Court can entertain an affirmative defense in the context of a motion to dismiss only if the defense clearly appears upon the face of the Complaint." (quoting *Arrowsmith v. Mallory (In re Health Diagnostic Lab., Inc.)*, Nos. 15-32919, 16-03271, 2017 Bankr. LEXIS 2230, *32 (Bankr. E.D. Va. Aug. 9, 2017)); *see also Deckard v. Gen. Motors Corp.*, 307 F.3d 556, 560 (7th Cir. 2002) (concluding that granting a motion to dismiss based on an affirmative defense is improper because "the existence of a defense does not undercut the adequacy of the claim"); *OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*, 340 B.R. 510, 536 (Bankr. D. Del. 2006) (holding, where "complaint clearly states that the defendants became insiders, fiduciaries, and de facto controllers of the Debtors" and "*in pari delicto* does not provide a defense for insiders[,]" that "*in pari delicto* fails to arise on the face of the complaint and, therefore, cannot bar the plaintiff's claims").

Accordingly, the Defendants' arguments in support of their alleged *in pari delicto* defense should not be considered at all when evaluating the sufficiency of the Trustee's claims against the Defendants. As the basis for claiming that the Trustee is of equal fault, the Defendants point to

the Trustee's specific allegations that "the fiduciary duties were breached by entering into the

ULXP transaction, authorizing LeClairRyan to change its corporate form, terminating the firm's

Deferred Compensation and Supplemental Retirement plans, and selecting which vendors to pay

and which funds to use to make such payments." (Mot. at 20-21). The Defendants also contend

that the Trustee has not alleged the appropriate level of self-dealing to "plausibly place a manager's

conduct outside the scope of *in pari delicto*." (Mot. at 21).

These arguments assume—wrongly—that the Court can and should entertain an

affirmative defense at the motion to dismiss stage. As discussed more specifically below, the

Trustee has alleged that the structure of the ULXP venture, and the way in which it operated in

practice, bestowed insider status on the Defendants vis-à-vis the Debtor, a fact that—taken as

true—eviscerates the *in pari delicto* defense. In addition, contrary to the Defendants' contention

otherwise, the Trustee has in fact alleged conduct by the Defendants amounting to self-dealing.

Thus, the Defendants cannot plausibly argue that the Complaint, on its face, clearly establishes an

entitlement to the affirmative defense at this stage of the case.

> **b.    The Defendants' status as insiders of the Debtor precludes a determination that the Trustee's claims are barred by the *in pari delicto* defense.**

Even if the Court were to consider the Defendants' *in pari delicto* defense at the pleading

stage (which it should not), the defense fails. The Trustee is aware that the Fourth Circuit has

remarked that "to the extent that *in pari delicto* would have barred a debtor from bringing suit

directly, it similarly bars a bankruptcy trustee—standing in the debtor's shoes—from bringing

suit." *Grayson Consulting, Inc. v. Wachovia Sec., LLC (In re Derivium Capital LLC)*, 716 F.3d

355, 367 (4th Cir. 2013). Nevertheless, many courts have held that the *in pari delicto* defense

cannot be invoked by corporate insiders, including with respect to claims for breach of fiduciary

duty. *See, e.g.*, *Lightsway Litigation Services, LLC v. Yung (In re Tropicana Entm't, LLC)*, 520

B.R. 455, 469 (Bankr. D. Del. 2014) (observing that the complaint clearly alleged that defendant was an insider of the debtors and determining that defendant could not prevail on the equitable defense of *in pari delicto* due to defendant's status as a corporate insider); *Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.)*, 466 B.R. 626, 646-47, 657 & n.18 (Bankr. D. Del. 2012) (rejecting *in pari delicto* defense and denying dismissal for chapter 7 trustee's claims for, *inter alia*, breach of fiduciary duty and aiding and abetting breach against debtor's officers and directors, parent company, indirect parent company, and affiliate, all of which were alleged to be debtor's insiders); *Miller v. McCown De Leeuw & Co. (In re The Brown Schools)*, 386 B.R. 37, 55-56 (Bankr. D. Del. 2008) (same); *Devon Mobile Communications Liquidating Trust v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 322 B.R. 509, 529 n.18 (Bankr. S.D.N.Y. 2005) ("The *[in pari delicto]* defense is inapplicable in this matter because the cause of action is brought against an insider."); *Official Comm. of Unsecured Creditors of the Debtors v. Austin Fin. Servs., Inc. (In re KDI Holdings, Inc.)*, 277 B.R. 493, 518 (Bankr. S.D.N.Y. 1999) ("[T]he *in pari delicto* doctrine is inapplicable where a cause of action is brought against an insider.").

"Even a third-party professional, typically the quintessential outsider, may surrender an *in pari delicto* defense where it exerts sufficient domination and control over the guilty corporation to render itself an insider." *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87, 124 (Bankr. S.D.N.Y. 2011); *see also, e.g.*, *Hosking v. TPG Capital Mgmt. LP (In re Hellas Telecomms. (Luxembourg) II SCA)*, 524 B.R. 488, 530 (Bankr. S.D.N.Y. 2015) (internal citation omitted) (rejecting argument that "only general partners, sole shareholders, and sole decision makers are considered insiders barred from asserting an *in pari delicto* defense" and denying motion to dismiss based on *in pari delicto* defense where "the Complaint [wa]s replete with allegations that [third-party defendants] dominated and controlled the management of [debtor] and

exercised their control" (*id.* at 533)); *In re KDI Holdings, Inc.*, 277 B.R. at 518 (rejecting *in pari delicto* defense raised by third-party lenders, where complaint alleged third-party lenders were insiders of debtors); *In re IDI Constr. Co., Inc.*, 345 B.R. 60, 66-67 (Bankr. S.D.N.Y. 2006) (holding that *in pari delicto* did not bar claim against a consultant involved in the fraud).

The Trustee pled that the Defendants were insiders throughout the time period at issue in the Complaint, including through their control over the Debtor.  Those allegations include that:

- The ULX Entities asserted expansive control over the Debtor through the MSA, which created a situation where "the Debtor was no longer able to function on its own without the support of the ULX Entities," (Compl. ¶¶ 78-82);

- UnitedLex required the Debtor to convert from a professional liability corporation and liquidate its deferred compensation and supplemental retirement plans, which were detrimental to the already financially flailing law firm, (Compl. ¶¶ 94-109);

- The ULX Entities controlled the Debtor through the venture, including control over the majority of the key functions, such as personnel, accounting, marketing, and financials, and "the slow movement to full integration and dominance by UnitedLex," (Compl. ¶¶ 110-123);

- The ULX Entities used their substantial control to have the Debtor prioritize payments to ULXP and encourage the Debtor to misappropriate funds tendered by the Debtor's clients, (Compl. ¶¶ 147-168); and

- The ULX Entities orchestrated the ultimately unsuccessful restructuring of the Debtor through the Novellus Law Group plan (Compl. ¶¶ 169-188).

Likewise, the Trustee refers to the Defendants as insiders throughout the Complaint in describing the conduct that gave rise to the Trustee's claims.  (*See* Compl. ¶¶ 2, 195, 223, 232, 233, 249, 250, and 262).

The Complaint, on its face, includes numerous allegations regarding the Defendants' status as insiders of the Debtor through their status, domination, and control.  Therefore, the Defendants cannot invoke the *in pari delicto* defense to bar the Trustee's fiduciary-related claims even if this Court considers it at the pleading stage.

> **c.    The Defendants' conduct fits squarely within the "adverse interest" exception to the *in pari delicto* defense.**

Although the Complaint's allegations regarding the Defendants' status as corporate insiders alone is fatal to the Defendants' *in pari delicto* defense, the Trustee's allegations are also sufficient to invoke the "adverse interest" exception thereto.  As the Defendants note, "[t]he doctrine is inapplicable where fiduciaries are found to have been acting outside the scope of their employment or to have been engaged in self-dealing." *James River Coal*, 360 B.R. at 158; *see also Gold v. Old Republic Nat. Title Ins. Co. (In re Taneja)*, No. 08-13293-SSM, 2010 WL 4882826 at *3 (Bankr. E.D. Va. Nov. 24, 2010) ("[I]f an agent acts adversely to the interest of the principal, the agency is destroyed, and the acts of the agent are no longer attributable to the principal for the purpose of applying the *in pari delicto* defense.").

The Trustee has alleged, extensively, that the Defendants' control over LeClairRyan allowed them to strategically improve their own financial position at the expense of LeClairRyan's creditors.  (*See, e.g.*, Compl. ¶¶ 130-31, 132-34, 137-44).  The Defendants improved their positions significantly by controlling and manipulating the prioritization and decision-making over the debts that LeClairRyan would, and would not, be able to pay.  The Defendants routinely demanded weekly payments from LeClairRyan and ensured that their invoices would be paid ahead of other creditors.  Indeed, between November 2018 and LeClairRyan's bankruptcy in September 2019, the payables that LeClairRyan owed to ULXP *decreased* by approximately 30.7%, while LeClairRyan's payables owed to all other creditors *increased* by approximately 181%. (*Id.* ¶¶ 150-55).  The Defendants also encouraged LeClairRyan's commingling and mishandling of funds tendered by clients for specific expenses, and thereby caused LeClairRyan to use such funds to prioritize operational expenses, including payments to ULXP. (*Id.* ¶¶ 161-68).

These allegations show that the Defendants were acting in a manner contrary to the interests of LeClairRyan and engaging in self-interested behavior. Accordingly, the *in pari delicto* defense does not apply for this reason as well.

### 3.     The Trustee Has Sufficiently Alleged Predicate Claims for Both the Aiding and Abetting and Conspiracy Claims in Counts IX-XI

The Defendants also argue that the Trustee failed to allege a predicate claim—breach of a duty or duties owed by LeClairRyan's directors and officers to its creditors—to support her aiding and abetting and conspiracy claims. (*See* Mot. at 22, 27). They contend that, while a duty owed to creditors does in fact exist during a debtor's insolvency, this duty "extends only to refraining from self-dealing acts," which they say the Trustee has failed to allege. (*See* Mot. at 22-24) (citing *Bank of America v. Musselman*, 222 F. Supp. 2d 792 (E.D. Va. 2002)). This argument is unavailing and should be rejected.

The underlying breaches of fiduciary duties alleged by the Trustee are based upon traditional duties of care and loyalty owed to the corporation, its shareholders, *and* its creditors. (*See, e.g.*, Compl. at ¶ 279).[5] "[I]t is well-established, by statute and caselaw, that a company's directors and officers owe a duty of care to the company's shareholders." *See Musselman*, 222 F. Supp. 2d at 797; *see also Byelick v. Vivadelli*, 79 F. Supp. 2d 610, 623 (E.D. Va. 1999) ("It is [also] well settled that '[a] Virginia corporation's directors and officers owe a duty of loyalty both to the corporation and to the corporation's shareholders.'") (quoting *WLR Foods v. Tyson Foods, Inc.*, 869 F. Supp. 419, 421 (W.D. Va. 1994)). Once a Virginia corporation becomes insolvent, however, the traditional fiduciary duties owed by directors and officers to the corporation and its shareholders also extend to the corporation's creditors. *James River Coal*, 360 B.R. at 170.

---

[5] ("From at least until or around 2017 and until or around 2019, the Defendants aided and abetted the breaches of fiduciary duty of due care and loyalty by one or more of the LCR Board and the LCR Officers, who owed such fiduciary duties to the Debtor and/or its shareholders, clients, and creditors at all relevant times.").

"'[W]hen a corporation becomes insolvent, or in a failing condition, the officers and directors no longer represent the stockholders, but by the fact of insolvency, become trustees for the creditors, and that they cannot by transfer of its property or payment of cash, prefer themselves or other creditors.'" *Poth v. Russey*, 281 F. Supp. 2d 814, 826 (E.D. Va. 2003) (quoting *FDIC v. Sea Pines Co.*, 692 F.2d 973, 977 (4th Cir. 1982)), *aff'd*, 99 F. App'x. 446 (4th Cir. 2004)).

Critically, this Court has observed that the fact of insolvency does not change or alter the duty directors owe, but merely adds an additional constituency to whom fiduciary duties are owed—creditors. *See, e.g.*, *James River Coal*, 360 B.R. at 179 (citing *Musselman*, 222 F. Supp. 2d at 796 n.5) (stating that insolvency does not change fiduciary duty traditionally encompassing both the duty of care and the duty of loyalty and highlighting that it "merely adds an additional constituency to whom that [traditional] fiduciary duty is owed"). Thus, when a company is insolvent—which the Trustee has adequately alleged the Debtor was—a director's or officer's duties do not change, but simply extend beyond the shareholders to the company's creditors.

The Defendants dedicate much space in the Motion attacking the Complaint for its ostensible lack of allegations regarding self-dealing—which the Defendants argue is essential for liability, relying on *Musselman*. Yet as this Court has cautioned, the holding in *Musselman* was limited—the allegations of self-dealing were necessary there to state a claim for an *individual* creditor to bring a *personal* claim of breach of fiduciary duty against directors of an insolvent corporation. *James River Coal*, 360 B.R. at 171.

Here, by contrast, the Trustee, standing in the shoes of the Debtor, has alleged breaches of fiduciary duties by LeClairRyan's officers and directors owed to, among others, the Debtor and its creditors generally, including by virtue of the following conduct:

- LeClairRyan officers and directors liquidating the retirement plan to benefit shareholders and diverting funds from the Debtor's creditors (Compl. ¶¶ 102-106);

- LeClairRyan officers and directors improperly diverting funds provided by clients for specified purposes to the Defendants, who were insiders and well-aware of the Debtor's ongoing financial troubles (Compl. ¶¶ 169-186);

- LeClairRyan officers and directors working with the Defendants to devise a new entity that would move the Defendants' debts to a new profitable entity while other debts would remain with the wound down LeClairRyan (Compl. ¶¶ 169-186); and

- LeClairRyan officers and directors effectuating an $8 million promissory note that elevated ULXP's priority over other unsecured creditors (Compl. ¶¶ 130-146).

The claims based on those breaches belong to the Debtor—not to individual creditors.[6] Therefore, *Musselman* is inapposite, and the Defendants' argument that allegations of self-dealing are required to state claims for aiding and abetting and conspiracy should be rejected. *See also Health Diagnostic Lab.*, 2018 WL 4676339, at *7 (denying motion to dismiss trustee's causes of action for breach of statutory and common law fiduciary duties of due care and loyalty against defendants).

---

[6] Notwithstanding Defendants' argument to the contrary, the Trustee has standing to assert all of the claims in the Complaint, including the "fiduciary-related claims." (*See* Mot. at 26-27 (apparently identifying Counts IX-XI)). As this Court has recognized, "[t]he trustee is the proper party to advance . . . 1) Actions by the estate that belong to the estate; [and] 2) Actions by individual creditors asserting a generalized injury to the debtor's estate, which ultimately affects all creditors." *James River Coal*, 360 B.R. at 158 (quoting *Schimmelpenninck v. Byrne (In re Schimmelpenninck)*, 183 F.3d 347, 360 (5th Cir.1999)). *See also Nat. City Bank of Minneapolis v. Lapides (In re Transcolor Corp.)*, 296 B.R. 343, 362 (Bankr. D. Md. 2003) ("Because the bankruptcy trustee's standing to prosecute a lawsuit on behalf of the bankruptcy estate is the same as the debtor's standing absent the bankruptcy case, the trustee may assert corporate causes of action in the bankruptcy court against third parties who have injured the debtor[.]" (citing, *inter alia*, *Hudgins v. Shah (In re Sys. Eng'g & Energy Mgt. Associates, Inc.)*, 252 B.R. 635, 640 (Bankr. E.D. Va. 2000) (allowing trustee to pursue statutory conspiracy claim against third parties under Virginia law))). In contrast, the only actions that are properly advanced by creditors themselves, rather than the trustee, are "[a]ctions by individual creditors that affect only that creditor personally." *James River Coal*, 360 B.R. at 158 (citation omitted). There are sound policy reasons for this division of standing: "[P]ermitting the trustee to pursue general creditor claims serves the orderly and equitable distribution of the bankrupt's assets." *Id.* at 159 (quoting *CBS, Inc. v. Folks (In re Folks)*, 211 B.R. 378, 386-87 (B.A.P. 9th Cir. 1997)).

In Counts IX-XI, the Trustee seeks to recover damages for harm to the Debtor's estate, which, by definition, are damages for harm to the general creditor body. The Trustee "represents the unsecured creditors of the corporation; and in that sense when [s]he is suing on behalf of the corporation [s]he is really suing on behalf of the creditors of the corporation." *Steinberg v. Buczynski*, 40 F.3d 890, 893 (7th Cir. 1994). Here, as in *James River Coal*, "[n]one of the actions asserted by the Trustee is personal to a specific creditor[,] [and] [t]he alleged damage caused harm to the creditors generally." 360 B.R. at 159 (internal quotation marks omitted). The Defendants do not dispute this. "As a result, the claims may be asserted on behalf of the bankruptcy estate and the Trustee has standing to pursue them." *Id.* (internal quotation marks omitted).

Nevertheless, assuming that allegations of self-dealing are required to state claims for aiding and abetting and conspiracy—which they are not—as discussed below, the Trustee has alleged sufficient facts to withstand a motion to dismiss.

4.    **The Trustee Has Alleged the Requisite
Elements of Aiding and Abetting Breach of Fiduciary Duty.**

The Defendants also attack the Trustee's aiding and abetting claim in Count IX of the Complaint due to a purported failure to properly allege the elements of aiding and abetting.  (Mot. at 24-27).  This argument also fails.

To assert a claim for aiding and abetting breach of a fiduciary duty, the Trustee must plead "(1) actual knowledge of the underlying fiduciary duty and (2) actual knowledge of the breach of that fiduciary duty by the primary tortfeasor." *Best Med. Int'l, Inc. v. Wittmer*, 73 Va. Cir. 504 (Va. Cir. Ct. 2007) (citing *Halifax*, 604 S.E.2d at 412).  Additionally, the Trustee can establish "joint tortfeasor liability if a defendant: (1) knows about another's duty and breach; (2) participates in it or directs its commission; and, (3) benefits from it." *All. Tech. Grp., LLC*, 2013 WL 143500, at *5.

The Defendants allege that the Trustee failed to plead the claim for two reasons: (1) a purported lack of actual knowledge by the Defendants, and (2) a purported failure to allege that the Defendants benefited from the breaches.  These arguments are without merit.

*First*, whether the Defendants had actual knowledge or benefited from the fiduciary breaches are questions of fact that are not appropriate for a motion to dismiss.  *See, e.g.*, *James River Coal*, 360 B.R. at 174 ("A determination of whether [the Defendants] received benefits from the alleged transactions requires a factual inquiry that is inappropriate at this stage of the proceedings.").  This principle alone dooms the Defendants' argument.

*Second*, the Trustee has plainly pled both the knowledge and benefit elements of the claim. With respect to knowledge, Virginia courts have required actual or *constructive* knowledge of the breach. *See Halifax*, 604 S.E.2d at 412 (noting the need for actual knowledge of the breach, stating that "[a]lleging actual knowledge of a fiduciary duty is not tantamount to alleging actual knowledge of a breach of the duty."); *Tysons Toyota*, 45 F.3d 428 ("The Virginia Supreme Court expressly held in *Patteson* that constructive notice of a breach of fiduciary duty suffices to hold a third party liable for participation in the breach.").

Here, the Trustee alleges in detail that the Defendants knew or should have known about the fiduciary breaches several times in the Complaint. Defendants negotiated deal terms and conducted due diligence beginning in October 2017. (*See* Compl. ¶¶ 27, 32-38). Their early knowledge of the Defendants' financials was the impetus for the requirements for LeClairRyan to liquidate a retirement plan and convert to a PLLC. (*Id.* at 43, 94-109). The Defendants obtained legal opinions as early as July 2017, which, among other things, cautioned that owning interests in a law firm or exercising management or control over a law firm or the provision of legal services were prohibited. (*Id.* at 55-72). By March 2018, the Defendants obtained further knowledge of the Debtor's insolvency, and rather than walk away from the deal, they used LeClairRyan's perilous financial position to secure expansive control in direct contravention of the legal advice given. (*Id.* at 73-93). Further, the Defendants were told about the misappropriation of funds tendered by clients and encouraged the Debtor to continue this practice. (*Id.* at 155-167). On the whole, the Trustee's allegations show sophisticated parties who understood the fiduciary duties at issue and the breaches of those fiduciary duties that were occurring, but nevertheless, the Defendants aided and abetted LeClairRyan's officers and directors in the breach of their duties.

Similarly, the Trustee alleges in detail the benefit that the Defendants received from the breaches of LeClairRyan's officers and directors' duties. The Defendants benefited through the ability to market what they expected to be a revolutionary business model and to secure additional investment. (Compl. ¶¶ 27-31). The Trustee alleges that the Defendants were able to tout this novel legal model as one that would "disrupt[] the traditional law firm model with a new 'constellation' platform" [and] "provide greater value to their clients while operating with significantly improved financial strength." (Compl. ¶¶ 29, 31). Additionally, the ULX Entities benefited from having unfettered access to LeClairRyan's financials. This insider information was used to minimize the Defendants' total debt by requiring the Debtor to pay their accounts first. The information was also key to prioritizing their debt above other creditors once LeClairRyan's bankruptcy was imminent. (*See, e.g.*, Compl. ¶¶ 112, 130-36).

Accordingly, the Trustee has properly stated a claim for aiding and abetting breaches of fiduciary duty. The Defendants' Motion to Dismiss Count IX should be rejected.

### C. The Trustee Has Stated Claims For Statutory and Common Law Conspiracy in Counts X and XI

#### 1. The Conspiracy Claims Are Pled With the Requisite Particularity Required by Rule 9

The Defendants argue that the Trustee's conspiracy claims should be dismissed because "the Trustee fails to provide the level of particularity required by Rule 9 . . . [and] does not allege facts that claim these things were done by Defendants with the intent to injure others." (Mot. at 28-29). This argument ignores the allegations in the Complaint and should be rejected.

Common law civil conspiracy "is an intentional tort requiring a specific intent to accomplish the contemplated wrong . . . ." *Galaxy Computer Servs., Inc. v. Baker*, 325 B.R. 544, 555 (E.D. Va. 2005). This specific intent does not require malice, but only knowledge of the wrongful act and actions in furtherance of that act. *Id*. (citing *Advanced Marine Enters., Inc. v.*

*PRC Inc.*, 256 Va. 106, 501 S.E.2d 148, 154 (Va. 1998)). Similarly, for statutory conspiracy, "the plaintiff is not required to prove actual malice. Sections 18.2–499 and –500 do not require a plaintiff to prove that a conspirator's primary and overriding purpose is to injure another in his trade or business. Rather, these statutes merely require proof of legal malice, that is, proof that the defendant acted intentionally, purposefully, and without lawful justification." *Id.*

As a threshold matter, the Trustee filed a 320-paragraph, 49-page Complaint. She included twenty-eight exhibits of specific communications and other documentation showing the timeframe of the alleged conduct, the persons involved, and the object of the alleged conspiracy. Indeed, the Defendants acknowledge this fact in the Motion—identifying some of the specific circumstances of the conspiracy alleged by the Trustee. (*See* Mot. at 28-29) ("While the Trustee alleges that the Defendants conspired with the LCR Directors and Officers by entering into the ULXP joint venture, terminating the Deferred Compensation and Supplemental Retirement plans, and the like . . . ."). Yet, with next to no case law support and no meaningful discussion of the issue, the Defendants attack the Trustee's well-pleaded conspiracy claims by arguing that the Trustee has not alleged that "things were done by Defendants with the intent to injure others." (Mot. at 29).

The Trustee has alleged that the Defendants knew or should have known that the ULXP venture violated the Virginia State Bar Rules of Professional Conduct (the "**Rules of Professional Conduct**") and principles regarding the unauthorized practice of law in light of previous legal opinions both UnitedLex and LeClairRyan received. (*See* Compl. ¶¶ 55-72). The Trustee also alleges that UnitedLex was fully aware of LeClairRyan's perilous financial position and continued to pursue an unlawful venture—in furtherance of the "constellation platform" with disregard for the Debtor's creditors and shareholders. (*See* Compl. ¶¶ 44-54).

22

In particular, among other communications and conduct, the Trustee cites communications between the Debtor's CEO, Gustafson, and UnitedLex CEO, Reed, including one where Reed specifically states that "[t]he real challenge is liquidity for [LeClairRyan].  I was not expecting that [UnitedLex] would make the capital return, takeover the debt (which does not help [LeClairRyan] in terms of new liquidity) AND then have to infuse material cash to ensure the firm can survive . . . [ULXP's consultant] has not come across a firm that is in [LeClairRyan]'s current cash position, and has expressed serious concern with its status as a going concern . . . ." (Compl. ¶ 54). Moreover, the Trustee alleges that the Defendants continued to closely monitor the Debtor's finances, suggesting that they were well aware of the Debtor's ongoing struggles and used that information to obtain an advantageous position relative to other creditors.  (*See* Compl. ¶¶ 110-129).

Based on these allegations, the Defendants not only forged ahead with the ULXP venture notwithstanding its obvious lack of compliance with the Rules of Professional Conduct, but after it became clear that LeClairRyan's financial distress was worsening, the Defendants also doubled down on the transaction and tightened their grip on LeClairRyan as a means to reducing their financial exposure and improving their financial position to the detriment of LeClairRyan's creditors.  For example, by March 2018, the Defendants obtained further knowledge of the Debtor's insolvency, and rather than walk away from the deal, they used LeClairRyan's perilous financial position to secure expansive control in direct contravention of Rules of Professional Conduct and the legal advice given.  (Compl. ¶¶ 73-93).  The Defendants' intentional and knowing actions caused the Debtor to incur significant additional liabilities, as well as to favor the Defendants with numerous transfers to the exclusion of the Debtor's "outsider" creditors.  (*Id.* ¶¶ 147-68).  Thus, the Trustee has sufficiently alleged that the Defendants had knowledge that the

venture was wrongful to begin with and used their control and influence over LeClairRyan to protect their financial interests at the expense of all other creditors.

In *Cars Unlimited II, Inc. v. Nat'l Motor Co., Inc.*, 472 F. Supp. 2d 740 (E.D. Va. 2007), the court denied a defendant's motion to dismiss a statutory business conspiracy count where, as here, plaintiff had alleged facts showing "there was a conspiracy to harm the plaintiff" and legal malice where the defendant "acted intentionally, purposely, and without lawful justification." *Id.* at 751; *see also Com. Bus. Sys., Inc. v. Bellsouth Servs., Inc.*, 249 Va. 39, 47, 453 S.E.2d 261 (Va. 1995) ("Although a jury reasonably could conclude that [defendant] harbored personal spite against [plaintiff], we think the statutes merely require proof of legal malice, i.e., that [defendant] acted intentionally, purposely, and without lawful justification."); *see also Health Diagnostic Lab.*, 2017 Bankr. LEXIS 2230, at *72-73 (finding that liquidating trustee stated viable claims under Virginia law for both statutory and common law conspiracy by alleging that defendants "were connected in a web of agreements to advance the Illegal Business Practices of [the debtor]," caused the debtor to incur significant liabilities as a result thereof, and "knew or should have known that [the debtor] was engaging in Illegal Business Practices that violated" applicable laws).

The Defendants simply fail to acknowledge the detailed allegations in the Complaint regarding the time, place, and object of the conspiracy. Collectively, these allegations show that while injuring the Debtor's business and its creditors may not have been the "primary and overriding purpose," the Defendants acted with legal malice. They "intentionally, purposefully, and without lawful justification" entered into and implemented a venture that they knew was improper under the Rules of Professional Conduct and applicable law, and engaged in self-interested conduct to protect their financial interests. All of this caused further damages and liabilities to the Debtor and its creditors.

Based on these standards, the Trustee has sufficiently pled facts stating a claim for common law and statutory conspiracy.

### 2.   <u>The Intra-Corporate Immunity Doctrine Does Not Apply</u>

The Defendants next argue that the intra-corporate immunity doctrine bars the Trustee's conspiracy claims.  (Mot. at 29-30).  The intra-corporate immunity doctrine is inapplicable for a few reasons.  UnitedLex, ULXP, and LeClairRyan were separate legal entities when all the events predicating the conspiracy occurred.  (*See generally* Compl. ¶¶ 25-72).  Furthermore, assuming *arguendo* that the Defendants becoming insiders following the formation of the ULXP venture could in theory implicate the intra-corporate immunity doctrine (which it does not), the Defendants were not acting within the scope of their agency and had an "independent personal stake" placing their actions outside of the scope of the doctrine.  In any event, the questions of whether the Defendants were managing agents or insiders and whether they were acting outside the scope of any such agency, are all factual questions that should not be addressed on a motion to dismiss. *See, e.g.*, *Fid. Nat. Title Ins. Co. v. Washington Settlement Grp., LLC*, 87 Va. Cir. 77, 2013 WL 9541969, *12 (Va. Cir. Ct. 2013).

Among other things, the conspiracy pled by the Trustee included the entry into the ULXP venture, the conditions preceding the venture, the conversion of LeClairRyan to a PLLC, and the dilution of the retirement plans.  (Compl. ¶¶ 4, 26-109).  The Debtor and UnitedLex accomplished these things while UnitedLex and LeClairRyan were indisputably separate legal entities.   In *Buffalo Wings Factory, Inc. v. Mohd*, 622 F. Supp. 2d 325, 335-36 (E.D. Va. 2007), a restaurant sued two former employees for conspiring with another restaurateur to take its trade secrets and open a competing restaurant.  The former employees served as managers and executives in the competing establishment.  The defendants there attempted to argue that the doctrine of intra-corporate immunity applied, as they were now the same legal entity under the new restaurant.

25

In rejecting this argument and denying the defendants' motion to dismiss, the court found that "[b]ecause [the Defendants] acted prior to forming [the new restaurant], and because they acted in concert with third parties after [the restaurant's] formation, the intra-corporate immunity doctrine is inapplicable." 622 F. Supp. 2d at 336; *see also, e.g.*, *Flexible Benefits Council v. Feltman*, No. 1:08CV371 (JCC), 2008 WL 2465457, at *9 (E.D. Va. June 16, 2008) ("Plaintiff's civil conspiracy claim also survives [the motion to dismiss] because the acts incorporating [company], and the agreement to establish the conspiracy, were made prior to the company's incorporation.").

Like the defendants in *Buffalo Wings Factory*, UnitedLex and the Debtor acted separately prior to the creation of the ULXP venture and continued to act in concert—along with ULXP and potentially others—during the unlawful business relationship. *Id.* Accordingly, the circumstances forming the basis of the conspiracy were present before there was any agency relationship between the Defendants; thus, the intra-corporate immunity doctrine does not apply.

Assuming the insider relationship formed after the ULXP venture began could provide the requisite agency relationship for purposes of invoking the intra-corporate immunity doctrine (which it cannot), the relationship would still fall within the exception for "independent personal stake" or actions outside of the scope of the agency. "[I]f an employee, officer, or agent has an 'independent personal stake' in the conspiracy, a conspiracy with the corporation may be found. Moreover, where an agent of a corporation engages in activity that is not authorized by the corporation, *i.e.*, activity beyond the scope of their employment, a conspiracy with the corporation may be found." *Buffalo Wings Factory*, 622 F. Supp. 2d at 335-36 (citing *Detrick v. Panalpina*, 108 F.3d 529, 544 (4th Cir.1997) and *Buschi v. Kirven*, 775 F.2d 1240, 1253 (4th Cir.1985)); *see also Darton Envtl., Inc. v. FJUVO Collections, LLC*, 332 F. Supp. 3d 1022, 1035 (W.D. Va. 2018)

("[T]he 'intracorporate immunity doctrine,' which has been adopted by the Virginia Supreme Court and the Fourth Circuit, deems multiple defendants a single entity for the purpose of analyzing a civil conspiracy claim if such defendants are employees or agents of the same entity and are acting *within the scope* of their employment/agency.") (citations omitted).

As with their *in pari delicto* argument, the Defendants' actions in prioritizing payment to themselves, encouraging misappropriation of funds tendered by LeClairRyan's clients, and otherwise transferring the Debtor's assets constituted actions within their personal interest and in direct contradiction to the interests of the Debtor and its creditors. Virginia courts have found this exception applies where the plaintiff alleged that the agents and employees worked together to breach the fiduciary duties of the company, engaged in self-dealing transfers, facilitated conversion of the company's assets, and/or otherwise acted outside of the scope of their agency. *See, e.g.*, *Colgate v. Disthene Grp., Inc.*, 86 Va. Cir. 218, 2013 WL 8019576 (Va. Cir. Ct. 2013) (dismissing motion to dismiss where plaintiffs alleged breach of fiduciary duties, self-dealing transactions, and conversion by executives and directors of the plaintiff companies); *Fid. Nat. Title Ins.*, 2013 WL 9541969 at *12 (dismissing demurrer where the plaintiffs alleged that the defendants were managing members of the company who acted outside of the scope of the agency in misappropriating escrow funds).

"Nothing in the intracorporate immunity doctrine prohibits a conspiracy claim against employees, officers, or agents who combine to harm their corporation." *Colgate*, 2013 WL 8019576, at *5. This is precisely what the Trustee alleges and the Defendants cannot use the intra-corporate immunity doctrine as a shield against this well-pleaded claim.

D.    **The Trustee Has Properly Stated Claims for Recovery of Actual and
Constructively Fraudulent Transfers and Recharacterization of Debt**

The Defendants raise various theories for dismissal of the Trustee's claims for recovery of

actual and constructively fraudulent transfers in Counts I, II, III, V, and VI.  Each of the arguments

is without merit.

1.    **The Trustee's Claims for Avoidance of Fraudulent Transfers Under
Bankruptcy Code Sections 548(a)(1)(A) and 544(b) and Applicable
State Law Are Pled with Requisite Particularity**

Bankruptcy Code Section 548(a)(1)(A) allows the Trustee to avoid any transfer of an

interest in the Debtor's property, or any obligation incurred by the Debtor, that was made or

incurred with actual intent to hinder, delay, or defraud any entity to which the Debtor was or

became indebted on or after the date that such transfer was made or such obligation incurred.  *See*

*generally* 11 U.S.C. § 548(a)(1)(A).  In addition, Bankruptcy Code Section 544(b) provides that

the Trustee may avoid "any transfer of an interest of the debtor in property or any obligation

incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured

claim . . . ." 11 U.S.C. § 544(b)(1).  To avoid intentionally fraudulent transfers under Virginia law

and Section 544(b), the Trustee relies on Virginia Code § 55.1-400, which provides that "[e]very

[] gift, conveyance, assignment, or transfer of, or charge upon, any estate, real or personal, . . .

given with intent to delay, hinder, or defraud creditors, purchasers, or other persons of or from

what they are or may be lawfully entitled to shall, as to such creditors, purchasers, or other persons

or their representatives or assigns, be void."  VA. CODE ANN. § 55.1-400.

The Defendants argue that the Trustee has failed to plead her actual fraudulent transfer

claims in Counts I, III, and VI with the particularity required by Civil Rule 9(b).  They specifically

contend that the Trustee has not specifically alleged a fraudulent purpose or intent by pleading,

with particularity, the presence of "badges of fraud," including that the Debtor was insolvent on

the date of each Avoidable Transfer. (Mot. at 30-31). In each case, the Defendants' allegations are simply false.

Under well-established case law, a plaintiff may establish a *prima facie* case for an intentionally fraudulent transfer "by showing the presence of so-called 'badges of fraud', those circumstances surrounding an allegedly fraudulent transfer that are indicative of a debtor's state of mind." *Huennekens v. The Gilcom Corp. of Va. (In re Sun Sport, Inc.)*, 260 B.R. 88, 110-12 (Bankr. E.D. Va. 2000). The "badges of fraud" include, among others: (i) a relationship between the debtor and the transferee; (ii) lack of consideration for the conveyance; (iii) the debtor's insolvency or indebtedness; and (iv) reservation of benefits, control, or dominion by the debtor. *See Health Diagnostic Lab.*, 2017 Bankr. LEXIS 2230, at \*34-35. "'The presence of just one of the above listed factors can warrant a court's conclusion that a transfer was fraudulently made, and, certainly, the presence of several factors 'can lead inescapably to the conclusion that the debtor possessed the requisite intent.'" *Id.* at 35 (quoting *Smith v. Bowen (In re Bowen)*, 2015 WL 775053, at \*3 (Bankr. E.D. Va. Feb. 24, 2015). Similarly, fraudulent intent for purposes of Virginia Code § 55.1-400 can be presumed if the "badges of fraud" are present. *See Flame S.A. v. Freight Bulk Pte. Ltd.*, 807 F.3d 572, 589 (4th Cir. 2015). Fraudulent intent of an officer or director may be imputed to the debtor for purposes of recovering an intentional fraudulent transfer. *See James River Coal*, 360 B.R. 161.

Moreover, the particularity standards with which fraud claims must be pled are "relaxed" when such claims are pursued by a bankruptcy trustee. *See, e.g.*, *Health Diagnostic Lab.*, 2017 Bankr. LEXIS 2230, at \*29; *Friedman v. Am. Capital, Ltd. (In re Barton-Cotton, Inc.)*, No. 09-12066-DK, 2012 WL 2803742, at \*3 (Bankr. D. Md. July 10, 2012) (internal citation omitted) ("Bankruptcy courts have consistently held that the heightened pleading requirements of [Civil]

Rule 9(b) should be relaxed in cases brought by a third party trustee because of the trustee's inevitable lack of knowledge concerning acts of fraud previously committed against the debtor, a third party.").

Here, the pleading standards are more than satisfied, whether or not relaxed. In Counts I and III of the Complaint, the Trustee seeks to avoid Avoidable Transfers totaling no less than $19,357,282.51. In Count VI of the Complaint, the Trustee seeks to avoid the ULXP Note Transfer, which resulted in the Defendants obtaining a security interest in connection with the ULXP Note. The Trustee has more than adequately alleged actual fraudulent intent, both in the fraudulent transfer Counts and throughout the Complaint, which allegations are incorporated into the fraudulent transfer Counts.[7] The Trustee's allegations not only easily establish the presence of classic "badges of fraud," but also describe unlawful business practices in contravention of the Rules of Professional Conduct. As discussed in detail below, these allegations are more than sufficient to state claims for intentionally fraudulent transfers.

### a. The Trustee has alleged conduct throughout the Complaint that demonstrates the presence of "badges of fraud."

In addition to the Trustee's alleged badges of fraud in Paragraphs 195 (Count I), 223 (Count III), and 262 (Count VI) of the Complaint, the Trustee re-alleged and incorporated by reference in Counts I, III, and VI specific allegations describing the conduct of the Defendants—who were

---

[7] Fraud claims are pled with the requisite particularity when sufficient allegations are found anywhere in the complaint and incorporated into those specific counts by reference. *See, e.g., Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 749 (7th Cir. 2005) (holding that it is error to dismiss fraud claims where "the particulars of the charge of fraud" are "found elsewhere in the complaint" because "as long as those data are somewhere in the complaint . . . [Civil] Rule 9(b) is satisfied"); *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1253 (10th Cir. 1997) (same; to do otherwise would "effectively deprive[ ] plaintiff of its . . . right to incorporate by reference . . . as allowed by [Civil] Rule 10(c)"). Under Civil Rule 10(c), "[f]acts alleged in connection with one count, defense, or paragraph may be incorporated by reference in a different count, defense, or paragraph of the same pleading." 5A *Fed. Prac. & Proc. Civ.* § 1326 (4th ed.); *see also, e.g., Grimm v. Washington Mut. Bank*, No. 02:08-CV-0828, 2008 WL 2858377, at *7 (W.D. Pa. July 22, 2008) ("[I]t must be noted that the incorporation of preceding paragraphs into subsequent causes of action is a standard practice, specifically permitted by [Civil] Rule 10(c) . . . .").

insiders of the Debtor—indicating an actual intent to hinder, delay, and defraud the Debtor's creditors.  For example, the Complaint sets forth the following key facts and circumstances regarding the Defendants' conduct and relationship with the Debtor, which satisfy the particularity requirement of Civil Rule 9(b) as to each relevant badge of fraud noted below:

### Relationship Between the Debtor and Defendants

- The Defendants were consummate insiders of LeClairRyan in many significant ways.  For example, following the execution of the underlying ULXP venture agreements, the Defendants worked as managing agents for LeClairRyan, and, as a result, were in charge of key functions of LeClairRyan; had access to the firm's financial and other confidential information essential to operations; incurred expenses on behalf of the firm; and made personnel decisions on its behalf (Compl. ¶¶ 110-14);

- Employees of ULXP were the directors of key operations at LeClairRyan (Compl. ¶ 115), and those employees regularly held themselves out to the public to be employees and decision-makers of LeClairRyan (Compl. ¶ 116);

- The Defendants' Production Services fees compensated the Defendants based on the net profits of LeClairRyan in its provision of legal services, and the Defendants arranged to share in legal fee profits despite the prohibition on this practice by the Virginia State Bar Rules of Professional Conduct (Compl. ¶¶ 83-86);

### The Debtor's Insolvency or Indebtedness

- By at least the end of 2014, LeClairRyan was insolvent, or within the "zone of insolvency," failing to generate sufficient revenue to pay its debt as they became due (Compl. ¶ 24);

- As of March 22, 2018, UnitedLex knew, or should have known, that LeClairRyan was insolvent or in the "zone of insolvency."  (Compl. ¶ 53);

- Despite expressing serious reservations once they learned the true extent of LeClairRyan's insolvency, CVC and UnitedLex pushed forward with the ULXP venture (Compl. ¶ 73);

- At the time the ULXP venture agreements were executed, LeClairRyan's officers and directors knew, or should have known, that LeClairRyan was insolvent or in the "zone of insolvency."  (Compl. ¶ 93);

- Because of LeClairRyan's continued and sustained financial problems, the Defendants knew or should have known that LeClairRyan did not have sufficient funds to pay its obligations as they came due (Compl. ¶ 129);

- LeClairRyan was or became insolvent at the time of the Avoidable Transfers (Compl. ¶ 195);

- The Debtor was insolvent on the dates that transfers were made or obligations were incurred, or became insolvent as a result of those transfers or obligations (Compl. ¶ 212);

- At the time the Debtor made the ULXP Note Transfer, the liabilities of LeClairRyan exceeded the fair value of its assets and it was insolvent (Compl. ¶ 252);

- LeClairRyan was or became insolvent at the time of the ULXP Note Transfer (Compl. ¶ 262);

### Reservation of Benefits, Control, or Dominion by the Debtor

- The Defendants' assumption of control was part of their ongoing plan to take over LeClairRyan, stating in a presentation that "[o]ver time, we will shift ULXP and (and LeClairRyan) towards [UnitedLex] systems and processes. The art is doing it in a way that pulls [LeClairRyan] partners along with us given cultural and other limitations we discussed earlier regarding law firm partners and their business acumen," and opining that "ULXP is now the *owner of the business of law*" and characterized ULXP as "running the law firm" (Compl. ¶¶ 118-122) (emphasis added);

- The Defendants' control over LeClairRyan allowed them to strategically improve their own financial position at the expense of LeClairRyan's creditors (Compl. ¶¶ 130-31);

- Only five months before LeClairRyan's bankruptcy case—and at a time when the Defendants were exploring the creation of the Novellus Law Group to siphon off LeClairRyan's profitable members and assume obligations to UnitedLex, while leaving LeClairRyan saddled with its other debts and liabilities—the Defendants used their influential position and control to purportedly obtain a "secured claim" against the Debtors under the ULXP Note and ULXP Security Agreement. This was an attempt by the Defendants to leapfrog in priority over the Debtor's unsecured creditors (Compl. ¶¶ 132-44, 169-188);

- The Defendants also improved their position significantly by controlling and manipulating the debts that LeClairRyan would, and would not, be able to pay. The Defendants routinely demanded weekly payments from LeClairRyan and ensured that their invoices would be paid ahead of other creditors. Indeed, between November 2018 and LeClairRyan's bankruptcy filing in September 2019, the payables that LeClairRyan owed to ULXP *decreased* by approximately 30.7%, while LeClairRyan's payables owed to all other creditors *increased* by approximately 181% (Compl. ¶¶ 150-55); and

32

- The Defendants' control over LeClairRyan was so complete that they directed LeClairRyan to divert to ULXP funds that were supposed to be used to pay client expenses (Compl. ¶¶ 5, 92).

The Defendants simply ignore these substantive allegations. Moreover, although the Defendants characterize the Avoidable Transfers as having been made for the purpose of "procuring the ordinary back office and support services necessary for the smooth functioning of a large law firm," (*see* Mot. at 31), the Complaint tells a much different story of impropriety, manipulation, and undue control. The Defendants argue that "[u]nder the Trustee's reasoning, every payment to a landlord, employee or vendor for goods or services was a fraudulent conveyance" (*id.*). This begs the question. Unlike the Defendants, these landlords, employees, or vendors were not insiders of the Debtor exercising significant control and influence over the Debtor and its financial affairs, including actions related to the processing of vendor payments.

### b.    The Trustee has alleged unlawful business practices that establish an actual intent to hinder, delay, or defraud creditors.

In addition to, and independently of, having adequately pled actual intent based on sufficiently pled badges of fraud, the Trustee has also adequately pled actual intent based on the unlawfulness of the business practices associated with the Avoidable Transfers and the ULXP Note Transfer, producing a fraudulent result. "A court may consider [circumstantial evidence] factors other than badges of fraud in its analysis [of actual intent]. For example, if the 'natural consequence' of a debtor's action is to hinder, delay or defraud creditors, a court may infer an intentional fraudulent conveyance." *Kirschner v. J. P. Morgan Chase Bank, N.A. (In re Millennium Lab Holdings II, LLC)*, No. 15-12284 (LSS), 2019 WL 1005657, at *3 (Bankr. D. Del. Feb. 28, 2019) (internal quotation marks and citation omitted) (trustee adequately pled actual intent under § 548(a)(1)(A) where trustee pled illegality of the debtor's business practices); *see also, e.g.*, *In re Sentinel Mgmt. Grp., Inc.*, 728 F.3d 660, 667-668 (7th Cir. 2013) (illegality of debtor's

conduct was sufficient to demonstrate actual intent for § 548(a)(1)(A), even assuming debtor had non-fraudulent "best intentions" for acting in the illegal manner it did; debtor "should have seen [fraudulent result] as a natural consequence of its actions").

The Complaint includes specific allegations regarding legal advice and opinions the Defendants obtained and relied upon—in connection with a similar transaction that fell through—to confirm whether the ULXP transaction would be legal, ethical, and compliant with the Rules of Professional Conduct (Compl ¶¶ 55-72). The Trustee has also alleged that the transaction, as structured, ran afoul of the Rules of Professional Conduct at least in part because ULXP was to be compensated based on net profits of a law firm from its provisions of legal services. (Compl. ¶¶ 84-87). *See* Va. State Bar Rule 5.4(a) (prohibiting a lawyer or law firm from sharing legal fees with a non-lawyer except in very limited circumstances designed to protect the lawyer's professional independence of judgment); Va. State Bar Rule 5.4(d)(3) (generally prohibiting a lawyer from practicing with or in the form of a professional corporation or association authorized to practice law for a profit if a non-lawyer has the right to direct or control the professional judgment of a lawyer).

Thus, because of the improper fee-sharing arrangement and undue control exercised by the Defendants, the Debtor's association with the Defendants resulted in a violation of one or more Rules of Professional Conduct. As such, the ULXP venture constituted an unlawful business venture. The perpetuation of this unlawful business venture by the Debtor and the Defendants—due to their control and influence as insiders—caused the Debtor to sustain significant damages and additional liabilities. This unlawfulness is a separate basis for finding that the Trustee has adequately stated a claim for actual and intentional fraudulent transfers. *See Health Diagnostic Lab.*, 2017 Bankr. LEXIS 2230, at *36-39 (denying motion to dismiss certain fraudulent transfer

claims where trustee alleged debtor's fraudulent and illegal business practices resulted in hundreds
of millions of dollars in fraudulent transfers at a time when the debtor was insolvent,
undercapitalized, and incurring or should have known it was incurring debts that it would be unable
to pay).

Because the Complaint is replete with factual allegations that the Defendants are liable for
actual and intentional fraudulent transfers, Counts I, III, and VI must survive.

### 2. The Trustee's Claim for Avoidance of Constructively Fraudulent Transfers Under Bankruptcy Code Section 548(a)(1)(B) Is Sufficiently Stated.

Pursuant to Bankruptcy Code Section 548(a)(1)(B), in Count II, the Trustee seeks to avoid
the Avoidable Transfers as constructively fraudulent transfers. Section 548(a)(1)(B) allows the
Trustee to avoid any transfer where the Debtor received "less than reasonably equivalent value in
exchange for such transfer or obligation," and where one of three alternative grounds is satisfied:
(1) the Debtors were insolvent or became insolvent as a result of the transfer; (2) the Debtors were
left insufficiently capitalized following the transfer; or (3) the transferor intended to incur, or
believed it would incur, debts beyond the Debtor's ability to pay as such debts matured. *See
generally* 11 U.S.C. § 548(a)(1)(B); *see also James River Coal*, 360 B.R. at 166 (describing
elements of Bankruptcy Code Section 548(a)(1)(B).

The Defendants challenge the sufficiency of the Trustee's allegations in Count II, offering
two reasons: (a) that the Trustee failed to adequately allege the Debtor was insolvent on the date
of each Avoidable Transfer, and (b) that the Trustee failed to "show" that the Debtor received less
than reasonably equivalent value for each transfer. (Mot. at 31.) These arguments are baseless.

As an initial matter, "[t]he elements of § 548(a)(1)(B) of the Bankruptcy Code involve
questions of fact that may not be resolved through a motion to dismiss." *James River Coal*, 360
B.R. at 165; *see also Health Diagnostic Lab.*, 2017 Bankr. LEXIS 2230, at *44 (same) (citing

*James River Coal*); *Forman v. Jeffrey Matthews Fin. Group, LLC (In re Halpert & Co.)*, 245 B.R. 104, 115 (Bankr. D.N.J. 1999) ("Since resolving this issue would require a fact-intensive inquiry, it would be improper for the Court to decide it on a motion to dismiss."). Thus, any challenges to the Trustee's claims for avoidance under Bankruptcy Code Section 548(a)(1)(B) involving questions of fact—including whether reasonably equivalent value was exchanged—are improper factual challenges that this Court should not entertain on a motion to dismiss.

Even assuming that claims asserted under Bankruptcy Code Section 548(a)(1)(B) are subject to a Civil Rule 12(b)(6) analysis, the Trustee has nevertheless pled sufficient facts to support all relevant elements of Bankruptcy Code Section 548(a)(1)(B). *First*, the Complaint alleges that the Debtor made the Avoidable Transfers while the Debtor was insolvent or became insolvent as a result of the Avoidable Transfers; that, at the time of, or as a result of the Avoidable Transfers, the Debtor was engaged in a business or transaction for which any property remaining with the Debtor was unreasonably small in relation to its business; and the Debtor intended to incur, or believed it would incur, debts beyond its ability to pay as such debts matured. (*See* Compl. ¶¶ 206-08). These allegations are not only in Count II, but are repeated throughout the Complaint and incorporated into Count II. (*See* Compl. ¶ 202).

*Second*, the Complaint alleges that the Debtor received less than reasonably equivalent value for each Avoidable Transfer. As discussed above in Section D.1., the Avoidable Transfers were made in the context of an unlawful business venture. As such, the Debtor's transfers to ULXP for services invoiced by ULXP were *not* made for reasonably equivalent value because the services ULXP rendered were effectively unlawful. "Illegal consideration does not constitute reasonably equivalent value." *Armstrong v. Collins*, No. 01CIV.2437(PAC), 2010 WL 1141158, at *30 (S.D.N.Y. Mar. 24, 2010) (voiding transfer as actually and constructively fraudulent where

payment was for illegal services and thus transferee did not provide reasonably equivalent value) (collecting cases); *see also Colbert v. Ashland Const. Co., Inc.*, 176 Va. 500, 509, 11 S.E.2d 612, 616 (Va. 1940) ("When the law prohibits a thing, it is unlawful to do it, and the courts should not lend their aid to the enforcement of prohibited contracts.").

This Court has endorsed the foundational principle followed by jurisdictions throughout the country that there can be no reasonably equivalent value for legally proscribed services. *See Health Diagnostic Lab.*, 2017 Bankr. LEXIS 2230, *39 (finding that constructive fraudulent transfer claims were adequately pled where, "Trustee allege[d] that [debtor] received little or no value from the [agreement] because it was an illegal agreement that significantly contributed to the liability [the debtor] incurred as a consequence of [the debtor]'s [i]llegal [p]ractices"); *see also, e.g.*, *Bankr. Estate of Gino Ruffini v. Norton Law Group, PLLC (In re Ruffini)*, No. 11-78841-REG, 2014 WL 714732, at *9 (Bankr. E.D.N.Y. Feb. 25, 2014) ("[W]here a contract is illegal or unenforceable, it does not support 'reasonably equivalent value' for purposes of § 548.") (granting constructive fraudulent conveyance claims under § 548); *cf. Bell v. Disner*, No. 3:14CV91, 2016 WL 7007522, at *11 (W.D.N.C. Nov. 29, 2016), *aff'd sub nom. Bell v. Li Yu Chen*, 731 F. App'x 239 (4th Cir. 2018) ("Actual participants and investors in a Ponzi scheme cannot establish that they gave 'reasonably equivalent value' for their winnings through their efforts participating in and recruiting others to the scheme.") (granting summary judgment to receiver on fraudulent transfer claim).[8]

As discussed above, the Trustee has alleged improper fee-sharing between the Defendants and the Debtor, whereby the ULXP's compensation for services would be based on net profits of

---

[8] *But see Kaler v. Able Debt Settlement, Inc. (In re Kendall)*, 440 B.R. 526, 532-533  (B.A.P. 8th Cir. 2010) (holding illegality of contract does not preclude reasonably equivalent value per se, but further noting that reasonably equivalent value is a question of fact).

the law firm from the provision of legal services (*see* Compl. ¶¶ 85-87). The Trustee has also

alleged extensive factual detail regarding the level of control assumed by ULXP, a non-lawyer,

over the core law firm functions of the Debtor (*see, e.g.*, Compl. ¶¶ 81-82, 90-92, 107, 110-123).

Taken together, these allegations of impropriety and unlawfulness provide ample support for the

proposition that the Debtor did not receive reasonably equivalent value in exchange for the

Avoidable Transfers. In addition, as discussed throughout this Opposition, the Trustee has alleged

that the Defendants were both insiders of the Debtor who exercised extensive control and influence

over the Debtor as well as its directors and officers. By wielding this enormous influence, the

Defendants took actions that caused the Debtor to favor the Defendants over other creditors and

vendors of the Debtor, resulting in the exchange of unreasonably equivalent value for the

Avoidable Transfers. *See, e.g.*, *Health Diagnostic Lab.*, 2017 Bankr. LEXIS 2230, at *44-45

(finding that liquidating trustee met his pleading burden for constructive fraud counts where trustee

had alleged that debtor received less than reasonably equivalent value because defendants helped

to perpetuate illegal activity and make payments that were not in the ordinary course of business).

For these reasons, the Trustee has pled viable claims for avoidance of constructively

fraudulent transfers under Bankruptcy Code Section 548(a)(1)(B).

### 3.    Avoidance of ULXP's Security Interest Is Not Limited to a Claim Under Bankruptcy Code Section 547

The Defendants argue that, to the extent the Trustee's claim for avoidance of the ULXP

Note Transfer rests on a fraudulent transfer theory, the claim should be dismissed, and any attempt

to avoid the ULXP Note Transfer should be limited to a claim under Bankruptcy Code Section

547. (Mot. at. 32). This argument should be rejected.

As the Trustee has alleged in Count VI, the ULXP Note Transfer was an intentionally

fraudulent transfer in its own right. As such, contrary to the Defendants' contention otherwise, the

Trustee can in fact state a claim for avoidance of the ULXP security interest as a fraudulent transfer and not rely solely upon a preference theory under Bankruptcy Code Section 547.  (Mot. at 32). The Trustee has alleged that Debtor entered into the ULXP Note Transfer with the actual intent to delay, hinder, or defraud the Debtor's creditors, because, among other things, the ULXP Note Transfer was made to ULXP, an insider of the Debtor, who exercised dominion and control over the Debtor at a time when substantial new liabilities and debts were being incurred by the Debtor. (Compl. ¶ 260-62).

Specifically, the ULXP Note Transfer between the Debtor and ULXP was executed only five months before the Debtor filed for bankruptcy and while the Debtor was undercapitalized. (Compl. ¶¶ 2, 132, 138).  Obtaining this security interest as an insider of the Debtor mere months before the filing is a textbook example of hindering, delaying, and defrauding creditors.  By purporting to obtain a "secured claim" against the Debtor under the ULXP Note Transfer, the Defendants attempted to leapfrog in priority over the Debtor's unsecured creditors.  (Comp. ¶¶ 130-37).

### 4.    The Trustee States a Claim for Disallowance of Claims Under Bankruptcy Code Section 502(d)

Defendants cannot dispute that if the Trustee has valid avoidance action claims (she does, *see* Sections D.1-3 above), then she has viable claims for disallowance of Defendants' claims under Bankruptcy Code Section 502(d).  "A court must disallow a claim to the extent that an entity that has filed a claim has property that is recoverable under sections 547 or 548 of the Bankruptcy Code."  *Health Diagnostic Lab.*, 2017 Bankr. LEXIS 2230, at *65 (denying motion to dismiss claims for disallowance where trustee met pleading burden for avoidance action claims).  Here, ULXP, an alter ego of UnitedLex, has filed proofs of claim (*see* Main Bankruptcy Case, Claim

Nos. 174 and 175), and the Trustee has adequately stated avoidance claims, as discussed in

Sections D.1-3 above.  Consequently, Count VII must survive.

> ### 5.      The Trustee Has Sufficiently Stated a Claim for Recharacterization of the ULXP Note

The Defendants argue that the Trustee has failed to state a claim for the ULXP Note to be

recharacterized as an equity infusion because the plain terms of the ULXP Note state otherwise.

(Mot. at 33).  This argument fails for a number of reasons.

In Count VIII, the Trustee seeks to recharacterize the $8 million-dollar ULXP Note as an

equity investment.  "Recharacterization is well within the broad powers afforded a bankruptcy

court." *Levin v. Province Grande Olde Liberty, LLC (In re Province Grande Olde Liberty, LLC)*,

655 F. App'x 971, 974 (4th Cir. 2016) (citing *Fairchild Dornier GmbH v. Official Comm. of

Unsecured Creditors (In re Dornier Aviation (N. Am.), Inc.)*, 453 F.3d 225, 231 (4th Cir. 2006)).

A bankruptcy court may consider the following factors when determining whether it should

recharacterize debt:

> (1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments.

*Dornier Aviation*, 453 F.3d at 233; *see also Health Diagnostic Lab.*, 2017 Bankr. LEXIS 2230, at

*60 (noting at *id.* n.6 that "[t]he substance of all of these multi-factor tests [from different circuits]

is identical")).  In listing the factors to consider, the Fourth Circuit noted that the application of

these factors to the facts of a particular case is not mechanical and that the factors have a varying

degree of significance depending upon the circumstances.  *Dornier Aviation*, 453 F.3d at 234.

"The inquiry is highly fact dependent and none of the factors are dispositive." *Id.*

"The recharacterization decision itself rests on the 'substance of the transaction' involved."

*In Re Province Grande Olde Liberty, LLC*, 655 F. App'x at 975 (emphasis in original) (quoting

*Dornier Aviation*, 453 F.3d at 232).  Courts in the Eastern District of Virginia have also held that

the "primary factor" to consider is "whether the transaction bears the earmarks of an arm's length

negotiation." *See, e.g.*, *In re Cold Harbor Assocs., L.P.*, 204 B.R. 904, 915 (Bankr. E.D. Va. 1997).

Here, the Trustee has properly pled a claim to recharacterize the ULXP Note as equity.

*First*, although couched as a purported "debt," the economic substance of the ULXP Note was an

equity interest in the Debtor.  In fact, the Debtor expressly sought to have the ULXP Note be seen

as "equity like" by its senior lender, VCF, "in that it is being paid from the return on our equity

investment in [ULXP]." (Compl. ¶ 140; *see also id.* Exh. 22 ("[T]his reflects an equity investment

and given that, I would propose that we reflect it as such in the Leverage Ratio calculation . . . the

ULX equity investment . . . .").  In turn, its senior lender—whom the Defendants characterize as

"a sophisticated financial institution" (Mot. at 34)—*did treat it as equity*.  (Compl. ¶¶ 141-143).

The Court "is not required to accept the label of 'debt' or 'equity' placed by the debtor upon a

particular transaction, but must inquire into the actual nature of a transaction to determine how

best to characterize it." *In re Cold Harbor Assocs.*, *L.P.*, 204 B.R. at 915; *see also Commonwealth*

*Biotechnologies, Inc., v. Fornova Pharmworld, Inc., (In re Commonwealth Biotechnologies, Inc.)*,

No. 11-30381-KRH, 2012 WL 5385632, at *7 (Bankr. E.D. Va. Nov. 1, 2012) (recharacterizing

purported "convertible promissory note" where "[a]ll the evidence suggest[ed] that the transaction

was not intended to be a loan").[9]

---

[9] It is not a defense to a recharacterization claim that an obligation is listed on a company's books as debt, notwithstanding Defendants' contorted implication (*see* Mot. at 34) to the contrary.  Rather, "[t]he entry of the

*Second*, the transaction culminating in the ULXP Note was anything but arm's length.  It was entered into between the Debtor and ULXP, an insider of the Debtor, only five months before the Debtor filed for bankruptcy and while the Debtor was undercapitalized.  (Compl. ¶¶ 2, 132, 138).

*Third*, the Trustee has alleged sufficient facts in the Complaint to satisfy multiple *Dornier Aviation* factors, particularly with respect to following, which overwhelmingly support the Trustee's claim seeking to recharacterize the ULXP Note as equity:

**Absence of Fixed Maturity Date and Schedule of Payments (Factor 2)**.  The ULXP Note contains only a conditional and extendable maturity date (*see* Compl. ¶ 132, n. 44 and Exh. 19 at 3 of 9), and requires no interest payments for at least five years (*id.*).  The Defendants' statement that the extendible maturity date does "not [mean] that the loan would be forgiven" is sleight of hand.  (Mot. at 34) (emphasis omitted).  It does not cure the lack of a *fixed* maturity date.  *See, e.g.*, *Baldiga v. Moog, Inc. (In re Comprehensive Power, Inc.)*, 578 B.R. 14, 27 (Bankr. D. Mass. 2017) (trustee sufficiently pled recharacterization claim based on *Dornier Aviation* factors including, *inter alia*, absence of a fixed maturity date, where the trustee alleged that "the Debtor could extend maturity" of the purported loan); *Grobstein v. Sharron (In re L. Scott Apparel, Inc.)*, 615 B.R. 881, 890 (C.D. Cal. 2020) (rejecting argument that "the existence of an initial fixed maturity" which was extended supported characterizing claim as debt, and affirming recharacterization based on lack of fixed maturity date).

**Absence of Interest Payments (Factor 3)**.  The Trustee indisputably pleads that the Debtor never made a single interest payment under the ULXP Note.  (Compl. ¶ 146).  Even if the Court

---

advances as loans on the accounting records of both entities provides little if any support for a finding of bona fide debt."  *Roth Steel Tube Co. v. C.I.R.*, 800 F.2d 625, 631 (6th Cir. 1986); *see also FCC v. Airadigm Commc'ns, Inc. (In re Airadigm Commc'ns, Inc.)*, 616 F.3d 642, 653 (7th Cir. 2010) ("[B]ankruptcy courts may place the proper label of 'claim' (generally, debt) or 'interest' (equity) on an advance of funds, regardless of what the parties call it.").

were to construe the ULXP Note's floating maturity date as "fixed" (it should not), the Trustee has alleged that the ULXP Note does not include a payment schedule, and requires no interest payments until its June 30, 2023 maturity date (Compl. ¶ 135), which independently marshals in favor of treating the purported debt as equity. *See, e.g.*, *Bunch v. J.M. Capital Finance, Ltd. (In re Hoffinger Indus., Inc.)*, 327 B.R. 389, 410 (Bankr. E.D. Ark. 2005) (recharacterizing note where "[a]lthough there was a fixed maturity date, there were no scheduled payments reducing principal"); *In re Newfound Lake Marina, Inc.*, No. 04-12192-MWV, 2007 WL 2712960, at *5 (Bankr. D.N.H. Sept. 14, 2007) (recharacterizing note where, "[w]hile the promissory note does have a repayment term, . . . there is no schedule of payments"). Given the Trustee's allegations regarding the absence of interest payments and a payment schedule, this factor favors recharacterization. *See In re Cold Harbor Assocs., L.P.*, 204 B.R. at 918 (recharacterizing purported debt where, "[a]lthough there is a defined rate of interest on the face of the notes, no provisions have been made for the payment of interest payments prior to" full repayment).

***Inadequacy of Capitalization (Factor 5)***. The Trustee indisputably pleads LeClairRyan's capitalization was inadequate at the time the ULXP Note was issued. (Compl. ¶¶ 138-139, 274). Indeed, she pleads that LeClairRyan was insolvent. *Id.*, ¶¶ 24, 53, 235. "[T]hin or inadequate capitalization is strong evidence that the advances are capital contributions rather than loans." *Bayer Corp. v. MascoTech, Inc. (In re Autostyle Plastics, Inc.)*, 269 F.3d 726, 751 (6th Cir. 2001).

***Identity of Interests (Factor 6)***. As the Trustee has alleged, extensively, both of the Defendants were insiders of the Debtor (*see, e.g.*, *See* Compl. ¶¶ 2, 195, 223, 232, 233, 249, 250, and 262), and there was a very substantial "identity of interest" between the Defendants and the Debtor. *See, e.g.*, *Pem Entities, LLC, v. Province Grande Olde Liberty, LLC (In re Province Grande Olde Liberty, LLC)*, No. 13-01563-8-RDD, 2014 WL 6901052, at *5 (Bankr. E.D.N.C.

43

Dec. 5, 2014), *aff'd*, 655 F. App'x 971 (4th Cir. 2016) (finding identity of interests supporting recharacterization where purported creditor's members were insiders of debtor).

***Extent to Which the Advances Were Subordinated to the Claim of Outside Creditors (Factor 9)***.    Incredibly, the Defendants reference an "Intercreditor Agreement" under which, allegedly, "the ULXP Note was subordinated to LCR's lender, VCF." (Mot. at 34).    While the Court ought not to entertain this impermissible reference to matters outside the pleadings, even if it did, the Defendants' allegations only undermine their position and further expose the ULXP Note as equity.  *See In re Health Diagnostic Lab., Inc.*, 2017 Bankr. LEXIS 2230, at *61 (trustee stated recharacterization claim where, *inter alia*, the "Note was subordinated to [debtor's] senior bank lender").

The Defendants cite no law to rebut that these factors are sufficient to state a claim for recharacterization of their claims to equity.    Given the allegations in the Complaint satisfy numerous *Dornier Aviation* factors, the Trustee plainly has met her pleading burden with respect to Count VIII.  *See, e.g.*, *In re Health Diagnostic Lab., Inc.*, 2017 Bankr. LEXIS 2230, at *59-60 (denying motion to dismiss recharacterization claims where trustee pled a handful of the *Dornier Aviation* factors); *In re Comprehensive Power, Inc.*, 578 B.R. 14, 26 (Bankr. D. Mass. 2017) (applying *Dornier Aviation* factors and concluding that "drawing reasonable inferences in his favor, the Trustee has pleaded sufficient facts in support of at least six of the recharacterization factors, sufficiently stating a plausible claim for recharacterization").    Thus, the Defendants' Motion to Dismiss Count VIII should also be denied.

**E.**      **In the Alternative, the Trustee Seeks Leave to Amend to Cure Any Defects**

Although the Trustee believes, as discussed above, that she has sufficiently pled all of her claims against the Defendants, if this Court believes that there are any defects in her pleading, the Trustee alternatively seeks leave to amend the Complaint under Bankruptcy Rule 7015 to cure any

such defects.  *See, e.g.*, *Friedman v. Morabito (In re Morabito)*, 64 F.3d 658 (4th Cir. 1995) (*per curium*) ("Fed. Bankr. R. 7015 allows a bankruptcy court to freely give leave to amend . . . .").

## **CONCLUSION**

For all of the foregoing reasons, the Defendants have failed to satisfy their burden of demonstrating that Counts I, II, III, V, VI, VII, VIII, IX, X, and XI of the Complaint should be dismissed.  This Court should deny the Motion.

Dated:    February 12, 2021                     Respectfully submitted,

                                                */s/ Erika L. Morabito*
                                                Erika L. Morabito (VSB No. 44369)
                                                Brittany J. Nelson (VSB No. 81734)
                                                FOLEY & LARDNER LLP
                                                3000 K Street, NW, Suite 600
                                                Washington, DC 20007-5109
                                                Telephone: (202) 672-5300
                                                Facsimile: (202) 672-5399
                                                emorabito@foley.com
                                                bnelson@foley.com

                                                *Special Counsel to Lynn L. Tavenner, Chapter 7 Trustee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of February, 2021, I served a true and correct copy of the foregoing *Plaintiff's Opposition to Defendants' Motion to Partially Dismiss the Complaint* via the Court's Electronic Case Filing System upon:

Thomas J. McKee, Jr.
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Email: mckeet@gtlaw.com
Email: milmoeg@gtlaw.com
Email: bargerd@gtlaw.com

*Counsel to Defendants*

/s/ Erika L. Morabito
Erika L. Morabito