Erika L. Morabito (VSB No. 44369)
Brittany J. Nelson (VSB No. 81734)
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone: (202) 672-5300

*Special Counsel to the Chapter 7 Trustee*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| In re:<br><br>**LeClairRyan PLLC,**<br><br>Debtor. | **Case No.: 19-34574-KRH**<br><br>**Chapter 7** |
| **Lynn L. Tavenner, as Chapter 7 Trustee,**<br><br>Plaintiff,<br><br>vs.<br><br>**ULX PARTNERS, LLC and UNITEDLEX CORPORATION,**<br><br>Defendants. | **Adv. Pro. No.: 20-03142-KRH** |

### TRUSTEE'S RESPONSE TO DEFENDANTS' OBJECTION TO THE BANKRUPTCY COURT'S PROPOSED FINDINGS OF FACT AND CONCLUSION OF LAW

Lynn L. Tavenner, solely in her capacity as Chapter 7 Trustee (the "**Trustee**") for

LeClairRyan, PLLC ("**LeClairRyan**" or the "**Debtor**"), by counsel and pursuant to Federal

Bankruptcy Rule 9033(b), respectfully submits this response (this "**Response**") to the objection

4833-7886-5895

(the "**Objection**" or "**Obj.**")[1] filed by Defendants ULX Partners, LLC ("**ULXP**") and UnitedLex Corporation ("**UnitedLex**" and, together with ULXP, the "**Defendants**") to the Bankruptcy Court's *Proposed Findings of Fact and Conclusions of Law* entered on March 31, 2021 [Adv. Docket No. 32] (the "**Proposed Findings**").

In support of this Response, the Trustee incorporates by reference *Plaintiff's Opposition to Defendants' Motion to Withdraw the Reference* [Adv. Docket No. 19] (the "**Opposition**"), submits the *Declaration of Lynn L. Tavenner, Trustee, in Support of Trustee's Response to Defendants' Objection to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law*, which is attached hereto as **Exhibit A** (the "**Tavenner Declaration**"), and further states the following:[2]

## I.    INTRODUCTION

The Proposed Findings reflect the detailed analysis of an experienced Bankruptcy Judge regarding the factors governing permissive withdrawal of the reference.  After conducting that analysis, the Bankruptcy Court concluded, correctly, that each of the factors relevant to withdrawal of the reference support denial of the Defendants' Withdrawal Motion.  As such, the Proposed Findings should be adopted by the District Court.

In their Objection, the Defendants repeatedly mischaracterize the nature of the Proposed Findings and attempt to re-argue legal conclusions that the Bankruptcy Court properly rejected. The Defendants' hyperbole and rehashing of meritless arguments provide no basis to revisit the Bankruptcy Court's conclusions.  Notwithstanding the above, and as discussed in more detail

---

[1] Capitalized terms used but not defined herein shall have the meanings given to them in the Objection or the Proposed Findings, as applicable.

[2] The Trustee filed the opposition in response to the *Defendants' Motion to Withdraw the Reference and Memorandum in Support Thereof* [Adv. Docket No. 13] (the "**Withdrawal Motion**").

below, the Trustee responds to the Defendants' objections to the Proposed Findings and to the Defendants' legal arguments.

The burden on the Defendants to establish sufficient "cause" to justify withdrawal of the reference is a "high" one. (*See* Proposed Findings at 9-10, nn.17-18.)  The Defendants failed to meet that burden.  *First*, each of the Trustee's claims are "core" bankruptcy claims.  Notably, the Defendants only take issue with the subset of claims connected with state law, conceding that the Trustee's other claims indeed are core claims.  (*See, e.g.*, Obj. at 7.)  The Trustee does not dispute that the State Law Claims arise under non-bankruptcy law.   As the Bankruptcy Court ruled, however, the State Law Claims are also "constitutionally core and properly subject to final resolution by the Bankruptcy Court" because they are "inextricably intertwined," factually and legally, with both (a) the resolution of ULXP's proofs of claim, and (b) the adjudication of the Trustee's other claims, which are indisputably core.  (Proposed Findings at 9-10.)  Moreover, the Defendants' contention that "there is no claims allowance process with respect to UnitedLex" is wrong.  (Obj. at 11.)  The Trustee has sued UnitedLex as an alter ego of ULXP.  (*See* Count XIV of the Complaint.)  Courts in this District have consistently held that alter ego claims are core matters.   In addition, the Trustee's claims against UnitedLex are also core because they are factually and legally intertwined with the Trustee's core claims as well as the ULXP Proofs of Claim.

*Second*, contrary to their unsupported and conclusory assumptions, the Defendants also have no right to a jury trial on any of the Trustee's claims.  Many of the Trustee's claims are equitable claims for which the Defendants have no right to a jury trial.  Moreover, as discussed above, because ULXP filed proofs of claim, and the resolution of the Trustee's claims are intertwined with those proofs of claim, all of the Trustee's claims are deemed to be equitable

claims for which there is no right to a jury trial. UnitedLex has also submitted to the equitable jurisdiction of the Bankruptcy Court through its involvement in the Debtor's bankruptcy case. UnitedLex therefore has no right to a jury trial on any of the Trustee's claims.

*Finally*, other considerations counsel against withdrawal of the reference. The Bankruptcy Court has presided over the Bankruptcy Case for more than a year, and as a result, has become deeply familiar with the Debtor's business, the administration of its estate, and the transactions underlying the Adversary Proceeding. In fact, the Bankruptcy Court has implemented procedures to streamline not only this Adversary Proceeding but also other adversary proceedings filed in the Bankruptcy Case. Leaving the reference undisturbed would facilitate the uniform administration of the bankruptcy proceedings and promote judicial economy. The Bankruptcy Court is therefore in the best position to hear and determine the Trustee's claims.

For these reasons and those set forth below, the Trustee submits that the Proposed Findings should be adopted, and the Bankruptcy Court's proposed denial of the Withdrawal Motion should be upheld.

## II.    SPECIFIC RESPONSES TO THE DEFENDANTS' OBJECTIONS TO FINDINGS

1.    **Proposed Finding:** "UnitedLex has not filed a proof of claim in the Bankruptcy Case to date but has been paid in the ordinary course for administrative expenses incurred in connection with the postpetition operation of the Debtor's business under section 503(a) of the Bankruptcy Code." (Proposed Findings at 3.) "Since the conversion of the Bankruptcy Case to a proceeding under Chapter 7, both ULXP and UnitedLex personnel have assisted the Trustee in winding down the Debtor's business operations." (Proposed Findings at 12.)

   **Response:** The Defendants concede that certain personnel that assisted the Trustee in winding down the Debtor's business operations were initially employed by ULXP but were

subsequently employed by UnitedLex.  *See* Obj. at 3 n.4; Hinton Declaration, ¶¶ 8-10.  The

Defendants therefore cannot dispute that "UnitedLex personnel have assisted the Trustee in

winding down the Debtor's business operations."  In addition, although the Defendants state that

"all postpetition payments for wind-down services provided to the Trustee were paid to ULXP,

and not to UnitedLex" (Obj. at 3 (original emphasis)) and that "UnitedLex never received any

payment from the Trustee for wind-down services" (Hinton Declaration, ¶ 10 (original emphasis)),

the Trustee's records indicate that UnitedLex issued invoices to the Estate for wind-down services,

which the Trustee timely paid, and all correspondence regarding the payment of these invoices

between January and April of 2020 was with individuals representing themselves to be employees

of UnitedLex.  *See* Tavenner Declaration, ¶¶ 6, 8.  Consequently, UnitedLex has been paid in the

ordinary course of business for administrative expenses incurred in connection with the wind-

down services provided by UnitedLex personnel to the Estate.  *Id.*, ¶ 9.

2.      **Proposed Finding**: "While the Joint Venture called for UnitedLex to control

ULXP, members of the Debtor's firm were to hold senior leadership positions at ULXP."

(Proposed Findings at 5.)

**Response**:    This Proposed Finding states that the joint venture "called for"

UnitedLex to control ULXP, and members of the Debtor's firm "were to hold" senior leadership

positions at ULXP.  By this Proposed Finding, the Bankruptcy Court acknowledges preliminary

deal terms based on the allegations in the Complaint and does not make a finding of fact as to what

the ultimate signed documents provided.  Notably, the Defendants do not appear to dispute those

preliminary deal terms.

3.      **Proposed Finding**: "The Debtor was also supposed to receive a significant equity

position in ULXP."  (Proposed Findings at 5.)

**Response:**  This Proposed Finding states that the Debtor was "supposed to" receive a significant equity position in ULXP.  By this Proposed Finding, the Bankruptcy Court acknowledges preliminary deal terms based on allegations in the Complaint and does not make a finding of fact as to what the ultimate signed documents provided.  Again, the Defendants do not appear to dispute those preliminary deal terms.

4.      **Proposed Finding:** "In furtherance of the Joint Venture, the Debtor converted from a professional corporation to a professional liability corporation and liquidated its deferred compensation and supplemental retirement plans." (Proposed Findings at 5.)

**Response:**   Whether the conversion was "in furtherance of" the joint venture appears to be an issue in dispute.  The parties have yet to file dispositive motions or submit evidence at trial.  By this Proposed Finding, the Bankruptcy Court relies, as it must at this stage, on allegations in the Complaint for purposes of the Withdrawal Motion, and does not make findings that would preclude a contrary finding later in these proceedings.

5.      **Proposed Finding:** The Proposed Findings contain various references to the Debtor owing "Defendants" fees.  (*See, e.g.*, Proposed Findings at 5-6.)

**Response:**   The Defendants' objection ignores the Trustee's alter ego claim set forth in Count XIV of the Complaint.  UnitedLex was LeClairRyan's venture partner in creating ULXP and controlled LeClairRyan to set all of the circumstances underlying the Complaint into motion.  Its relationship with ULXP – and LeClairRyan – thus is at the center of the bankruptcy and the Trustee's claims in her Complaint.

6.      **Proposed Finding:** "The Adversary Proceeding was not the first dispute to arise between the Trustee and the Defendants in the Bankruptcy Case.  On October 2, 2020, the Trustee filed her *Trustee's Supplemental Motion for Use of Cash Collateral and Grant of Adequate*

*Protection Related Thereto, if Appropriate, and Memorandum in Support Thereof* [Case No. 19-34574-KRH, ECF No. 658] (the "**Cash Collateral Motion**") . . . ." (Proposed Findings at 6.)

   **Response:** The Defendants object, in part, to clarify that the hearing on the Cash Collateral Motion spanned two days, with the first day lasting less than 50 minutes and the second day lasting only 95 minutes.  The Defendants also highlight that the Cash Collateral Motion hearing did not address the ultimate merits of the underlying claims in the Adversary proceeding. The Defendants' objection ignores that the Bankruptcy Court is well suited to understand the nature and extent of the hearings that have occurred before it.  The Bankruptcy Court indisputably conducted a hotly contested hearing, with arguments made and evidence – including cross examination of witnesses – presented in connection with the ULXP Proofs of Claim and conduct that is the subject of the Trustee's claims.  The Defendants' objection also ignores the Trustee's alter ego claim set forth in Count XIV of the Complaint.

  7. **Proposed Finding:** "The Defendants' relationship to the Debtor has been front and center since the first day of the Bankruptcy Case."  (Proposed Findings at 12.)

   **Response:** The Defendants do not dispute that ULXP's relationship to the Debtor has been front and center since the first day of the Bankruptcy Case.  With respect to UnitedLex, the Defendants' objection ignores the Trustee's alter ego claim set forth in Count XIV of the Complaint.  UnitedLex was LeClairRyan's venture partner in creating ULXP and controlled LeClairRyan to set all of the circumstances underlying the Complaint into motion.  Its relationship with ULXP – and LeClairRyan – thus is at the center of the bankruptcy and the Trustee's other core claims in her Complaint.

  8. **Proposed Finding:** "Counts I through VI of the Complaint that the Trustee has filed seeks recovery from the Defendants on account of assets and interests transferred to

UnitedLex and ULXP in connection with these very same transactions." (Proposed Findings at 10.)

**Response:** The Defendants' objection relates solely to UnitedLex. The objection ignores the Trustee's alter ego claim set forth in Count XIV of the Complaint. UnitedLex was LeClairRyan's venture partner in creating ULXP and controlled LeClairRyan to set all of the circumstances underlying the Complaint into motion. Its relationship with ULXP – and LeClairRyan – thus is at the center of the bankruptcy and the Trustee's other core claims in her Complaint. The Complaint itself alleges that the Avoidable Transfers and Preferential Transfers are recoverable from UnitedLex as an alter ego of ULXP. (*See* Compl. ¶¶ 201, 215, 227, 240, and 320.)

9.    **Proposed Finding:** Counts I through XIV of the Complaint are core proceedings and properly subject to final resolution in the Bankruptcy Court. (Proposed Findings at 10-12.)

**Response:** This is a legal conclusion. As the Bankruptcy Court held, and for all the reasons detailed below and in the Opposition, each of the claims alleged in the Complaint are core proceedings that are subject to final resolution by the Bankruptcy Court.

## III.    ARGUMENT

### A.    All of the Trustee's Claims Are "Core" Claims.

The "most important factor" in determining whether to withdraw the reference to the bankruptcy court is whether the case involves a core or non-core proceeding. *See, e.g.*, *In re Albertson*, 535 B.R. 662, 667 (Bankr. S.D. W. Va. 2015); *In re Iridium Operating, LLC*, 285 B.R. 822, 834 (S.D.N.Y. 2002). The Defendants only take issue with the State Law Claims, stating that they allegedly "predominate the parties' dispute." (Obj. at 2.) Focusing their Objection on the

subset of claims connected with state law, the Defendants concede that the Trustee's other claims are core claims. (*See* Obj. at 7.)

As the Bankruptcy Court recognized, certain of the Trustee's claims against the Defendants arise under state law. (Proposed Findings at 11.) The Trustee's State Law Claims are nevertheless "core" because they are intertwined, factually and legally, with both the ULXP Proofs of Claim and the Trustee's core claims against the Defendants.

In *Stern v. Marshall*, 564 U.S. 462 (2011), the Supreme Court held that a state law counterclaim asserted by the debtor against a creditor – even if "core" under the text of 28 U.S.C. § 157(b)(2)(C) – could not be deemed core as a constitutional matter because the counterclaim was not intertwined with the resolution of the defendant's proof of claim filed against the debtor's estate. *Id.* at 498-99. Numerous post-*Stern* decisions in this District and elsewhere, however, have held that a state law cause of action against a defendant will be deemed "core" if the cause of action "would necessarily be resolved in the claims allowance process." *See, e.g.*, *Allied Title Lending, LLC v. Taylor*, 420 F. Supp. 3d 436, 448 (E.D. Va. 2019) (citing *Stern*, 564 U.S. at 499). "A bankruptcy estate's state-law counterclaim against a creditor 'would necessarily be resolved in the claims allowance process' when it shares *common questions of fact and law* with the creditor's claim(s) and when it 'seek[s] to directly reduce or recoup the amount claimed.'" *Allied Title Lending, LLC*, 420 F. Supp. 3d at 448 (quoting *TP, Inc. v. Bank of Am., N.A. (In re TP, Inc.)*, 479 B.R. 373, 385 (Bankr. E.D.N.C. 2012)) (emphasis added). *See, e.g.*, *id.* at 449-450 (debtor's state law claim that contract violated Virginia's usury and consumer finance statutes "constitutes a constitutionally core claim, because resolution of [the claim] . . . will resolve the validity of the [contract], directly reducing the amount of [creditor's] Claims" for money owed under the contract).

In addition, state law claims that are intertwined factually and legally with core claims asserted by a plaintiff – such as fraudulent transfer claims – are also deemed to be core proceedings over which the Bankruptcy Court may enter final judgments. *See, e.g.*, *Fire Eagle LLC v. Bischoff (In re Spillman Dev. Grp., Ltd.)*, 710 F.3d 299, 306 (5th Cir. 2013) (affirming bankruptcy court's authority to enter final judgment on party's state law contract claim where the claim is "inextricably intertwined with the interpretation of a right created by federal bankruptcy law, the interpretation of [which] [would be] in fact determinative of [party's] claim"); *Schmidt v. Sosa (In re Lopez)*, No. 16-70134, 2019 WL 3987748, at *2 (Bankr. S.D. Tex. Aug. 22, 2019) ("To the extent that non-core claims are involved [state law tort and contract claims], this court finds that resolution of such claims are inextricably intertwined with resolution of the core claims regarding fraudulent conveyances.  As such, this Court may enter final orders and judgments.") (collecting cases employing the "inextricably intertwined approach").

The Bankruptcy Court ruled that there is significant overlap and intertwinement between the ULXP Proofs of Claim and the Trustee's State Law Claims.  (*See* Proposed Findings at 10-11.)  The ULXP Proofs of Claim, seek (i) payment from the Debtor's bankruptcy estate for services rendered under the MSA and (ii) repayment of the balance due under the ULXP Note.  The Trustee's State Law Claims seek recovery from the Defendants in connection with these very same transactions.  Accordingly, the State Law Claims would necessarily be resolved in the claims allowance process, because they (a) share common questions of fact and law with the ULXP Proofs of Claim, and (b) could potentially reduce or completely eliminate the amounts claimed in the ULXP Proofs of Claim.

The State Law Claims are also core because they are intertwined, factually and legally, with the Trustee's core claims.  The Trustee's actual and constructive fraudulent transfer claims –

which are core – address the same conduct (*e.g.*, illegal transfers, defrauding creditors by favoring the Defendants, misappropriation of client funds) that is alleged in the State Law Claims.  So does the Trustee's preferential transfer claim.  Indeed, a key element of the Trustee's preferential transfer claim is that the Defendants are "insiders," which overlaps with the allegations of control and domination contained in the State Law Claims.

The Bankruptcy Court observed that the ULXP Proofs of Claim and the Trustee's core claims in Counts I through VI of the Complaint implicated the validity of the parties' agreements, the nature of the transactions, and the relationship between the parties, among other factors. (Proposed Findings at 10.)  Dismissing the Defendants characterization of just "some overlap," the Bankruptcy Court also recognized that Counts IX through XIV of the Complaint "allege theories of liability that, while based on non-bankruptcy law, directly concern the legality of dealings between the Debtor and the Defendants . . . ."  (*Id.* at 10-11.)

In their Objection, the Defendants emphasize that UnitedLex did not file a proof of claim, and for this reason, the Defendants contend that the State Law Claims would not be fully resolved in the claims allowance process.  (*See, e.g.*, Obj. at 11-12, & 15.)  This argument fails.  In Count XIV of the Complaint, the Trustee has sued UnitedLex as an alter ego of ULXP.  An alter ego claim is "core" without intertwinement.  *See, e.g.*, *Shaia v. Malone*, No. 3:17-cv-V114, 2017 WL 4203544, at *5 (E.D. Va. Sept. 21, 2017) (holding Virginia state law alter ego/veil piercing claim to be core); *Huennekens v. The Gilcom Corporation of Virginia (In re SunSport, Inc.)*, 260 B.R. 88 (Bankr. E.D. Va. 2000) (same); *Smith v. Richels (In re Richels)*, 163 B.R. 760, 764 (Bankr. E.D. VA. 1994) (same); *Levy v. Runnells (In re Landbank Equity Corp.)*, 83 B.R. 362 (Bankr. E.D. Va. 1987) (same); *but see In re Sys. Eng'g & Energy Mgmt. Assocs., Inc.*, 252 B.R. 635, 649

(Bankr. E.D. Va. 2000) (holding that alter ego claims against shareholders of an alter ego were too removed from the bankruptcy and thus not core claims).

In addition, the alter ego claim against UnitedLex is also "core" because it is intertwined with both the Trustee's core claims and ULXP's Proofs of Claim. *See, e.g.*, *Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.)*, 597 B.R. 235, 244 (Bankr. D. Del. 2019) (holding that alter ego claims were core because "they arise under the same events as the 544 [fraudulent transfer] Claims and are intimately connected to them. Allegations of alter-ego, unjust enrichment, and conspiracy are part of the same story as the core fraudulent transfer claims"). UnitedLex's dominance of ULXP – and LeClairRyan – is central to the Trustee's state law claims and the validity, priority, and amount of the ULXP Proofs of Claim.

Each of the Trustee's claims therefore is a core proceeding on which the Bankruptcy Court may enter a final judgment. Accordingly, this Court should adopt the Proposed Findings.

**B.      The Defendants Do Not Have a**
**        Jury Trial Right on Any of the Trustee's Claims.**

In their Objection, the Defendants continue to assert, in a conclusory fashion, that they "have a constitutional right to a jury trial on the State Law Claims." (*See* Obj. at 15 n.10.) As the Bankruptcy Court reasoned, however, by virtue of ULXP filing its proofs of claim against the bankruptcy estate, ULXP submitted to the claims-allowance process and therefore lost its jury trial right. The Court also observed that, although UnitedLex has not filed, in its own right, any proofs of claim against the bankruptcy estate, it has participated in the administration of the bankruptcy case. Moreover, it noted that the Trustee seeks to hold UnitedLex jointly and severally liable on all claims with ULXP under an alter-ego theory of liability. (*See* Proposed Findings at 15.)

As demonstrated in the Trustee's Opposition, and as the Bankruptcy Court ruled, the Defendants do not have a jury trial right on any of the Trustee's claims.[3]   Accordingly, the Bankruptcy Court recommended that the District Court should find that the right to a jury trial, if any, does not outweigh the other factors suggesting that the reference should not be withdrawn. (*Id.*)   As analyzed below, the Defendants do not possess – or have waived – any purported jury trial right on the State Law Claims.

### 1.    Unjust Enrichment Claim

The Trustee's unjust enrichment claim (Count XIII) seeks to recover funds received by ULXP that LeClairRyan's clients tendered to the firm for specific client-related expenses. (Compl. ¶ 308)  The Complaint further alleges that ULXP retained the funds and did not use them for client-related purposes, despite that ULXP knew or should have known that the funds it received were to be used for specific client-related expenses.  (Compl. ¶¶ 309-10.)  "As unjust enrichment is an equitable claim, there is no right to a jury trial on that claim." *Ashmore v. Owens*, No. 8:15-cv-02373-JMC, 2017 U.S. Dist. LEXIS 90316, at *6 (D.S.C. June 13, 2017).  In addition, as discussed above, the unjust enrichment claim is intertwined with the resolution of the ULXP Proofs of Claim, eliminating any right to a jury trial on that basis as well.

### 2.    Aiding and Abetting a Breach of Fiduciary Duty, Conspiracy and Conversion Claims

The Defendants appear to allege that their Seventh Amendment jury trial right is not susceptible to being relinquished under any circumstances.  However, with respect to the Trustee's aiding & abetting breach of fiduciary duty, conspiracy, and conversion claims, ULXP waived its right to a jury trial.  Quite simply, by filing a claim against the bankruptcy estate, a creditor

---

[3] Because the Defendants did not assert a jury trial right in their Objection on the Trustee's core bankruptcy claims, this Response solely addresses the Defendants' purported rights to a jury trial on the State Law Claims.

"subject[s] himself to the bankruptcy court's equitable power."  *Off. Comm. of Unsecured Creditors v. Schwartzman (In re Stansbury Poplar Place, Inc.)*, 13 F.3d 122, 125-26 (4th Cir. 1993) (quoting *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990)).  As the Bankruptcy Court found, ULXP waived its right to a jury trial by filing the ULXP Proofs of Claim.  (Proposed Findings at 15.)

Nevertheless, the Defendants attempt to manufacture a standard whereby filed proofs of claim must match a plaintiff's claims in terms of quality, quantity, and magnitude.  For example, the Defendants highlight that "ULXP's right to a jury trial on $129 million worth of state law damage claims cannot be discarded or infringed by the existence of a clearly secondary claim to disallow ULXP's $12 million Proofs of Claim."  (Obj. at 17.)  As set forth below, the analysis of whether a defendant has waived a right to a jury trial by filing a proof of claim is not a counting exercise.

Instead, in examining whether a defendant possesses a right to a jury trial, courts examine "the remedy sought and determine whether it is legal or equitable in nature."  *Tull v. United States*, 481 U.S. 412, 417-18 (1987); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989).  In *Granfinanciera*, the defendant had not filed a proof of claim, and so the Supreme Court did not consider what consequence a defendant's filing of a proof of claim in a bankruptcy case has on its right to a jury trial.  In *Langenkamp*, however, the Supreme Court the following year squarely addressed the significance that the filing of a proof of claim has regarding the right to a jury trial under the Bankruptcy Code.  There, the Supreme Court held that by filing proofs of claim, creditors invoke the bankruptcy court's equitable jurisdiction over the allowance and disallowance of claims and the right to participate in the distribution of the estate, and "[a]s such, there is no Seventh Amendment right to a jury trial."  *Langenkamp*, 498 U.S. at 44; *see also Katchen v. Landy*, 382

U.S. 323, 336 (1966) (explaining that by filing a proof of claim, the creditor "converts" what otherwise may have been a legal claim pursued by the trustee into an equitable one).

In addition, it is well established that when there is significant intertwinement between proofs of claim and a debtor's claims against the creditor, the debtor's claims become subject to the claims-allowance process, eliminating the creditor's Seventh Amendment right to a jury trial. *See Lu v. Grant (In re Sunshine Trading & Transp. Co., Inc.)*, 193 B.R. 752, 756 (Bankr. E.D. Va. 1995) (denying right to jury trial on state law tort claim where party's conduct in bankruptcy proceeding implicated the claims-allowance process); *see also, e.g., In re WSC, Inc.*, 286 B.R. 321, 331 (Bankr. M.D. Tenn. 2002) (denying jury trial right on state law tort claims, including conversion and civil conspiracy, where "the Debtor's causes of action arise from the same facts, involve the same contracts and measure the same conduct that form the basis for [defendant's] claim in this bankruptcy case").

This type of transformative intertwinement exists here for all the reasons discussed above and highlighted by the Bankruptcy Court. (Proposed Findings at 9-10.) In fact, in the Withdrawal Motion, the Defendants admitted that "*the facts at issue* with respect to the claims for which the Defendants have a right to a jury trial *are substantially the same* as the facts underlying those claims for which there may not be such a right . . . ." (Withdrawal Mot. at 2) (emphasis added).

As the Bankruptcy Court properly held, UnitedLex also waived its purported right to a jury trial. *First*, the Trustee's alter ego claim against UnitedLex is an equitable claim for which a jury trial right does not attach. Under Virginia law, "piercing the corporate veil is an equitable claim that can only be ruled upon by the Court." *Horne v. Eco-Logic Const.*, 85 Va. Cir. 106 (Va. Cir. Ct. 2012). "It is firmly established that the Seventh Amendment right to trial by jury attaches to civil actions that are legal, not equitable, in nature." *Fowler v. Land Mgmt. Groupe, Inc.*, 978 F.2d

158, 163 (4th Cir. 1992) (citing *Granfinanciera*, 492 U.S. at 42).  Accordingly, UnitedLex does

not have a jury trial right on the Trustee's alter ego claim, and UnitedLex does not argue otherwise

in the Objection.

*Second*, as the Bankruptcy Court determined in its Proposed Findings, a party could in fact

submit to the equitable jurisdiction of a bankruptcy court without filing a proof of claim.  (*See*

Proposed Findings at 3 & 15) (noting that while UnitedLex has not filed a proof of claim, it has

been paid in the ordinary course for administrative expenses incurred for providing the Trustee

assistance in the business wind-down operations into April 2020, and accordingly, "it also could

be considered to have submitted to the equitable jurisdiction of the Bankruptcy Court"); *see also*

Opposition at ¶ 25 (describing the Defendants' back-office, non-legal services provided to the

bankruptcy estate as the Trustee undertook her duties as chapter 7 trustee).  Thus, UnitedLex

submitted to the equitable jurisdiction of the Bankruptcy Court even without filing a proof of claim

in its own right and, therefore, waived its right to a jury trial.  *See, e.g.*, *Sunshine Trading*, 193

B.R. at 756 (denying right to jury trial on state law tort claim where party's conduct in bankruptcy

proceeding implicated the claims-allowance process); *see also* Tavenner Declaration, ¶¶ 3-9

(detailing UnitedLex's payment by the Estate for administrative expenses incurred in the ordinary

course of business).

The District Court should adopt the Bankruptcy Court's proposed conclusion that the right

to a jury trial, if any, does not outweigh other factors dictating that the reference to the Bankruptcy

Court should be preserved.

### C.   Considerations of Judicial Economy, Efficiency, and Uniform Administration Militate Against Withdrawal of the Reference.

Because the Bankruptcy Court has great familiarity with the Debtor's chapter 7 case and

the background underlying the Complaint, and also has incontrovertible expertise as to the

Bankruptcy Code-based claims at the heart of the Complaint, the interests of efficiency, judicial economy, and uniform administration of this Bankruptcy Case all favor upholding the Proposed Findings and recommended denial of the Withdrawal Motion.

In short, the Bankruptcy Court is well up the learning curve on the issues at stake in this case. Indeed, as one bankruptcy court recognized, a bankruptcy court's familiarity with the bankruptcy can outweigh a district court's greater familiarity with certain state law claims:

> [A]ny greater experience in trying cases that may hypothetically be ascribed to the District Court as an institution is more than outweighed by the specific expertise that Judge Gonzalez has acquired with respect to the Enron matter by his seven years of presiding over the Enron bankruptcy. This greater familiarity with the underlying facts of the case will undoubtedly enable the Bankruptcy Judge to expedite the proceedings in a way that would be impossible for a Court that would have to spend an enormous amount of time getting up to speed on matters already well known to Judge Gonzalez.

*In re Enron Creditors Recovery Corp.*, 410 B.R. 374, 385 (S.D.N.Y. 2008).

Judge Huennekens, an experienced Bankruptcy Judge, has presided over the Debtor's bankruptcy case for nearly 20 months. During that time, the Bankruptcy Court has become deeply familiar with the Debtor's business, the administration of its estate, the transactions underlying the Adversary Proceeding, and the Debtor's relationship with the Defendants. The Bankruptcy Court has also held a contested hearing on the Cash Collateral Motion, at which extensive legal argument and evidentiary issues were presented regarding the facts and circumstances undergirding the ULXP Proofs of Claim—including certain operative facts and legal issues at stake in the Complaint. (*See* Proposed Findings at 12.)

Moreover, the Bankruptcy Court has implemented procedures to streamline not only this Adversary Proceeding but also other adversary proceedings filed in the Bankruptcy Case. (*See id.* at 13.) In light of the other proceedings at issue in the Bankruptcy Case, the Bankruptcy Court is

"well-suited" to determine how the Trustee's claims in this case "interact with their ongoing bankruptcy case," and to ensure the parties receive consistent answers to common questions of bankruptcy law in the various proceedings. *Lattea v. Vanderbilt Mortg. & Fin., Inc.*, No. 3:19-0375, 2020 U.S. Dist. LEXIS 2916, at *13 (S.D. W. Va. Jan. 8, 2020); *see also Dwyer v. First Nat'l Bank (In re O'Brien)*, 414 B.R. 92, 102 (S.D. W. Va. 2009) ("Permitting the bankruptcy court to resolve the outstanding bankruptcy law questions in this proceeding promotes the uniformity of bankruptcy law.")

Therefore, leaving the reference undisturbed would facilitate the uniform administration of the bankruptcy proceedings and promote judicial economy. The Bankruptcy Court is therefore in the best position to hear and determine the Trustee's claims.

In addition, as the Bankruptcy Court noted, "[t]he six factors enumerated by the Fourth Circuit in *McCarthy* are not necessarily an exclusive list. Additional considerations may be relevant to a case." (Proposed Findings at 15) (citing *McCarthy v. Wells Fargo Bank, N.A. (In re El-Atari)*, No. 1:11cv1090 (LMB/IDD), 2011 WL 5828013, at *5, 2011 U.S. Dist. LEXIS 133423, at *16 (E.D. Va. Nov. 18, 2011). In this vein, the Bankruptcy Court identified the ongoing COVID-19 pandemic and the continuing challenges it presents as additional considerations that "weigh heavily in favor of denying the [Withdrawal] Motion." (Proposed Findings at 15-17.) While the Defendants contend that "the constitutional right to a jury trial is in no way contingent upon the end of the pandemic," (Obj. at 19.), the Bankruptcy Court's observations regarding the continuing impact of the pandemic are certainly relevant to the overall analysis of judicial economy and efficiency.

Accordingly, additional considerations and factors support denial of the Withdrawal Motion.

## IV.    <u>**CONCLUSION**</u>

For all of the foregoing reasons, the District Court should adopt the recommendations contained within the Proposed Findings and uphold the Bankruptcy Court's proposed denial of the Withdrawal Motion.

Dated:    April 28, 2021                    Respectfully submitted,

*/s/ Erika L. Morabito*_____
Erika L. Morabito (VSB No. 44369)
Brittany J. Nelson (VSB No. 81734)
FOLEY & LARDNER LLP
3000 K Street, NW, Suite 600
Washington, DC 20007-5109
Telephone: (202) 672-5300
Facsimile: (202) 672-5399
emorabito@foley.com
bnelson@foley.com

*Special Counsel to Lynn L. Tavenner, Chapter 7 Trustee*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of April, 2021, I served a true and correct copy of the foregoing *Trustee's Response to Defendants' Objection to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law* via the Court's Electronic Case Filing System upon:

Thomas J. McKee, Jr.
J. Gregory Milmoe
David G. Barger
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Email: mckeet@gtlaw.com
Email: milmoeg@gtlaw.com
Email: bargerd@gtlaw.com

/s/ Erika L. Morabito
Erika L. Morabito

## Exhibit A

## Tavenner Declaration

Erika L. Morabito (VSB No. 44369)
Brittany J. Nelson (VSB No. 81734)
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone: (202) 672-5300

*Special Counsel to the Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **In re:** | **Case No.: 19-34574-KRH** |
| **LeClairRyan PLLC,** | **Chapter 7** |
| **Debtor.** | |
| **Lynn L. Tavenner, as Chapter 7 Trustee,** | |
| **Plaintiff,** | |
| **vs.** | **Adv. Pro. No.: 20-03142-KRH** |
| **ULX PARTNERS, LLC and UNITEDLEX CORPORATION,** | |
| **Defendants.** | |

**DECLARATION OF LYNN L. TAVENNER, TRUSTEE, IN SUPPORT OF TRUSTEE'S RESPONSE TO DEFENDANTS' OBJECTION TO THE BANKRUPTCY COURT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

I, Lynn L. Tavenner, Trustee, hereby declare that the following is true to the best of my knowledge, information, and belief:

1.      I am the duly appointed Chapter 7 trustee (in such capacity, the "**Trustee**") of the bankruptcy estate (the "**Estate**") of LeClairRyan PLLC ("**LeClairRyan**" or the "**Debtor**") in the above-captioned Chapter 7 case (the "**Bankruptcy Case**"). I hereby submit this declaration (this "**Declaration**") in such capacity in support of the *Trustee's Response to Defendants'*

*Objection to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law* (the "**Response**")[1] filed contemporaneously herewith.

2. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information that I have obtained in connection with my role as the Trustee, or my review of relevant documents.  If I were called upon to testify, I could and would competently testify to the facts set forth herein on that basis.

3. On the same day as my appointment as the Trustee of the Estate, I obtained court approval to continue the Debtor's operations for limited wind-down purposes, including, but not limited to, the collection of outstanding accounts receivable (collectively, "**Wind-Down Services**").  As members of my wind-down team, I utilized individuals who had provided services to LeClairRyan prior to the Petition Date, which individuals included ULXP personnel (the "**ULXP Wind-Down Team Members**").

4. In connection with this process, from October 2019 through December 2019, I received weekly a proposed roster with the designation of "ULXP roster" from Josh Rosenfeld, an individual who represented himself to be Chief Operations Officer of ULXP ("**Mr. Rosenfeld**").  After my approval of each ULXP roster, the Estate was invoiced and then paid, via wire, for the services rendered by these ULXP Wind-Down Team Members, as well as for "rent and overhead."

5. In December of 2019, Mr. Rosenfeld inquired as to whether I would object if the ULXP Wind-Down Team Members became employees of UnitedLex.  I noted that I had no objection.

6. Thereafter, on a weekly basis, I was provided a roster that was now designated as a UnitedLex roster (denoted as "ULX roster" as opposed to "ULXP roster") from Alex Bates, an

---

[1] Capitalized terms used but not defined herein shall have the meanings given to them in the Response.

individual who represented himself to be "Manager, Financial Reporting & Control" of UnitedLex ("**Mr. Bates**").  Upon my approval of each UnitedLex roster, the Estate was invoiced (the "**Invoices**") by Melissa DeJesús, Esq., an individual who represented herself to be "Manager, Global Contract-to-Cash" for UnitedLex ("**Ms. DeJesús**"), for the services of the UnitedLex personnel, as well as "rent and overhead."  Each of the Invoices had the following features: (a) the UnitedLex logo in the upper left corner and (b) the UnitedLex website, phone numbers, and finance department email address at the bottom.  As the Trustee of the Estate, I timely paid all of the Invoices that were issued to the Estate.

7.      In April of 2020, the Estate no longer required the assistance of any employee of UnitedLex or ULXP in that all remaining individuals assisting with the Wind-Down Services for the Estate were transitioned to independent contractor status.

8.      From January 2020 through April 2020, all correspondence regarding the payment of the Invoices was with individuals representing themselves to be employees of UnitedLex, including, but not limited to, Mr. Bates and Ms. DeJesús.

9.      Accordingly, I believe that UnitedLex has been paid in the ordinary course of business for administrative expenses incurred in connection with the Wind-Down Services provided by UnitedLex personnel to the Estate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: April 28, 2021                    */s/ Lynn L. Tavenner*
                                         Chapter 7 Trustee