## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISCTRICT OF VIRGINIA
### Richmond Division

In re:   LECLAIRRYAN PLLC,              Case No. 19-34574-KRH

            Debtor.              Chapter 7

---

LYNN L. TAVENNER,
as Chapter 7 Trustee,

            Plaintiff,

v.              Adv. Pro. No. 20-03142-KRH

ULX PARTNERS, LLC and
UNITED LEX CORPORATION,

            Defendants.

---

### MEMORANDUM OPINION

On October 26, 2020, Lynn L. Tavenner (the "Trustee"), in her capacity as Chapter 7 trustee for the bankruptcy estate of LeClairRyan PLLC ("LeClair," or the "Debtor"), commenced the above-captioned adversary proceeding (the "Adversary Proceeding") by filing a fourteen-count *Complaint* [ECF No. 4] (the "Complaint") against ULX Partners, LLC ("ULXP") and UnitedLex Corporation ("UnitedLex," and, together with ULXP, the "Defendants") in the United States Bankruptcy Court for the Eastern District of Virginia (this "Court"). Presently before the Court is the *Defendants' ULX Partners, LLC's and UnitedLex Corporation's Motion to Partially Dismiss the Complaint* [ECF No. 17] (the "Motion"). The Trustee filed a response [ECF No. 25] (the "Response") to the Motion. Defendants filed a reply [ECF No. 26] (the "Reply") to the Trustee's Response. The Court conducted a hearing (the "Hearing") on the Motion on June 24, 2021, at which the Court heard argument on behalf of the Defendants and the Trustee. At the conclusion

of the Hearing, the Court took the Motion under advisement.  After due consideration of the

pleadings, the arguments of counsel at the Hearing, and the authorities cited by the parties in their

memoranda of law, the Motion will be granted in part and denied in part.  This Memorandum

Opinion sets forth the Court's findings of fact and conclusions of law in accordance with Rule

7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").[1]

## Jurisdiction and Venue

The Court has subject matter jurisdiction under 28 U.S.C. § 1334 and the general order of

reference from the District Court dated August 15, 1984.  This is a core proceeding under 28 U.S.C.

§ 157(b)(2)(A), (B), (C), (F), (H), (K), and (O).[2]  Venue is appropriate pursuant to 28 U.S.C.

§ 1409(a).

## Legal Standard

By their Motion, the Defendants seek to dismiss Counts I through III and Counts V through

XI of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Civil

Rules"), made applicable hereto by Bankruptcy Rule 7012(b), on the grounds that, with respect to

these counts, the Complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R.

Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b).  A complaint must contain "a short and plain statement

of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr.

P. 7008.  To survive a motion to dismiss under Civil Rule 12(b)(6), "a complaint need only 'give

the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Tobey v.*

*Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (alteration in original) (quoting *Bell Atl. Corp. v.*

---

[1]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of
fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

[2]  The United States District Court for the Eastern District of Virginia (the "District Court") previously held that
"all of the Trustee's claims against the Defendants constitute core claims."  *See* Mem. Op., *ULX Partners, LLC v.*
*Tavenner*, Civil No. 3:21-cv-77 (DJN) (May 28, 2021), at 17.

*Twombly*, 550 U.S. 544, 555 (2007)).  "A motion to dismiss under [Civil Rule] 12(b)(6) tests the

sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the

merits of a claim, or the applicability of defenses."[3]  *Republican Party of N.C. v. Martin*, 980 F.2d

943, 952 (4th Cir. 1992).  "Because only the legal sufficiency of the complaint, and not the facts

in support of it, are tested under a [Civil Rule] 12(b)(6) motion, [the Court] assume[s] the truth of

all facts alleged in the complaint and the existence of any fact that can be proved, consistent with

the complaint's allegations."  *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020).

"Ultimately, '[t]o survive a motion to dismiss, a claim must contain factual matter, accepted as

true, to state a claim to relief that is plausible on its face.'"  *Edley-Worford v. Va. Conf. of United

Methodist Church*, 430 F. Supp. 3d 132, 139 (E.D. Va. 2019) (alteration in original) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## Factual Allegations

LeClair was a national law firm founded in 1988 and headquartered in Richmond, Virginia.

Compl. ¶ 21, ECF No. 4 at 4.  Beginning in at least 2014, LeClair's financial position began to

decline as revenue consistently fell short of projections.  *Id.* ¶ 23, ECF No. 4 at 5.  By 2017, LeClair

was searching for a lifeline.  *Id.* ¶ 25, ECF No. 4 at 5.  In or around October of 2017, LeClair began

negotiations with UnitedLex, a non-legal services provider for law firms and legal departments,

concerning a joint venture, ULXP.  *Id.* ¶¶ 26-32, ECF No. 4 at 5-6.  LeClair would contribute its

non-legal intellectual property as well as back office and certain other non-legal staff to ULXP,

---

[3]    The Motion raises a number of affirmative defenses, including Virginia's intra-corporate immunity doctrine.  In
considering a motion to dismiss, courts only reach affirmative defenses "in the relatively rare circumstances
where . . . all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'"  *Goodman
v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (emphasis and alteration in original) (quoting *Richmond,
Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).  This is not such a circumstance and,
therefore, the Court does not reach the issues raised by the Defendants' affirmative defenses.  *See Richmond,
Fredericksburg & Potomac R.R. Co.*, 4 F.3d at 250 ("These defenses are more properly reserved for consideration
on a motion for summary judgment.").

which would then contract with LeClair to provide an array of services to the firm. *Id.* ¶ 34, ECF No. 4 at 7. LeClair would pay a monthly fee for these services to be provided by ULXP. *Id.* Initially, the parties contemplated an arrangement in which UnitedLex would control ULXP, but members of the LeClair leadership team would hold senior leadership positions at ULXP. *Id.* ¶ 33, ECF No. 4 at 6. LeClair would also receive a significant equity interest in ULXP and at least one multimillion dollar loan from ULXP. *Id.* ¶¶ 34-37, ECF No. 4 at 7. Finally, LeClair's shareholders would receive financial incentives, including an immediate full redemption of their shares in LeClair, the elimination of shareholder capital contribution requirements, and the possibility of receiving equity interests in UnitedLex through either annual or performance-based options. *Id.* ¶ 38, ECF No. 4 at 7.

During the winter and spring of 2018, the parties engaged in due diligence for the joint venture. *Id.* ¶ 44, ECF No. 4 at 8. This process revealed to UnitedLex for the first time the financial troubles faced by LeClair. *See id.* ¶¶ 47-54, ECF No. 9-10. Upon learning the true extent of LeClair's financial woes, UnitedLex expressed serious reservations about the joint venture, and the parties restructured the proposed transaction. *Id.* ¶¶ 73-74, ECF No. 13. The Defendants would not make any loans to LeClair due to concerns about LeClair's liquidity and earning potential. *Id.* ¶ 75, ECF No. 4 at 14. As a result, UnitedLex provided no new money to LeClair as part of the transaction. *Id.* ¶ 76, ECF No. 4 at 14. LeClair's equity stake in ULXP was reduced to 1%. *Id.* ¶ 77, ECF No. 4 at 14.

As a condition precedent to entering into the joint venture, ULXP required LeClair to convert its corporate form from a professional corporation to a professional limited liability company in order to avoid double taxation. *Id.* ¶¶ 94, 96, ECF No. 4 at 17. LeClair effected this conversion on March 31, 2018. *Id.* ¶ 95, ECF No. 4 at 17. This conversion allowed LeClair to

reduce its cash burn by approximately $450,000 per month in 2018 and to pay approximately $30 million in partner draws on a tax-deferred basis. *Id.* ¶¶ 97-98, ECF No. 4 at 18. The latter consequence created a significant retention incentive for LeClair's attorneys, which was a key requirement of the joint venture for UnitedLex. *Id.* ¶¶ 98-99, ECF No. 4 at 18.

Also in connection with the ULXP transaction, LeClair's board of directors voted to terminate the firm's deferred compensation and supplemental retirement plans, effective December 29, 2017. *Id.* ¶ 102, ECF No. 4 at 19. As a result of these terminations, the plan balances of at least $12 million became eligible to be transferred to shareholders beginning on or about December 28, 2018. *Id.* ¶ 103, ECF No. 4 at 19. The ensuing payments would have ordinarily been taxable to the shareholders receiving payments from the terminated plans, but the tax savings realized from LeClair's conversion from a professional corporation to a professional limited liability company were passed through to the individual shareholders, who were able to use net operating losses to offset the taxes that would have been owed on these distributions. *Id.* ¶ 104, ECF No. 4 at 19.

After LeClair terminated its deferred compensation and supplemental retirement plans and converted to a PLLC, in April 2018, LeClair and the Defendants entered into the joint venture. *See id.* ¶ 89, ECF No. 4 at 16-17. As part of the joint venture, on or about April 4, 2018, LeClair and ULXP entered into a *Master Services Agreement* (the "MSA"),[4] pursuant to which ULXP took control of certain delineated responsibilities of LeClair, including legal operations and administration, client relations and business development, marketing and communications, conflicts and engagement management, value pricing and legal project management, human resources, talent development, and technology, data, and security. *Id.* ¶¶ 78-80, ECF No. 4 at 14.

---

[4]    The MSA is attached to the Complaint as Exhibit 11. *See* ECF No. 4-11.

Under the MSA, LeClair would compensate ULXP for these services, in part, based on net profits of LeClair from its provision of legal services. *Id.* ¶¶ 83-86, ECF No. 4 at 16.

Through the joint venture, the Defendants accessed LeClair's financial and other confidential information essential to its operation and incurred expenses on LeClair's behalf. *Id.* ¶¶ 112-113, ECF No. 4 at 20. The Defendants also made decisions regarding LeClair's personnel. *Id.* ¶ 114, ECF No. 4 at 20. In particular, ULXP employees held high-ranking positions at LeClair, such as chief operating officers/chief client services officers, senior vice president of human resources, director of engagement management, director of practice management and attorney integration, and director of marketing and business development. *Id.* ¶ 115, ECF No. 4 at 20. These employees regularly held themselves out to the public as employees and decision-makers of LeClair. *Id.* ¶ 116, ECF No. 4 at 21. Ultimately, UnitedLex's goal was to integrate ULXP and LeClair fully into UnitedLex's systems and processes. *Id.* ¶ 118, ECF No. 4 at 21. Through implementation of the foregoing, the Trustee asserts that the ULXP joint venture effectively gave control of LeClair to a non-lawyer. *See id.* ¶ 288, ECF No. 4 at 43.

During the course of the joint venture, it became necessary for the Defendants to infuse cash into LeClair's business. *See id.* ¶ 123, ECF No. 4 at 22. The Defendants agreed to extend up to $12 million through a cash flow float. *Id.* Under this arrangement, ULXP would provide services to LeClair and take over payment of vendor fees, while receiving little to no payments from LeClair. *Id.* The cash flow float was premised on (1) increased profitability by LeClair and (2) the Defendants' systems further optimizing that profitability by allowing attorneys to focus on the practice of law. *Id.* ¶ 128, ECF No. 4 at 23. However, the cash flow float did not fix LeClair's financial problems. By the end of 2018, LeClair, while still experiencing declining revenue and shareholder departures, owed the Defendants more than $12 million. *Id.* ¶¶ 130-31, ECF No. 4 at

23-24.  Beginning in January of 2019, the Defendants convened regular meetings with LeClair's

chief financial officer and other members of LeClair's board of directors to discuss cash flow and

to address installment payments for the Defendants.  *Id.* ¶¶ 147-48, ECF No. 4 at 26.  During these

meetings, the Defendants' representatives would decide which key vendors needed to be paid and

demand weekly payments totaling at least $2 million per month, regardless of what other vendor

payments were outstanding.  *Id.* ¶¶ 150-154, ECF No. 4 at 26-27.  From November of 2018 until

September of 2019, the payables due and owing by LeClair to ULXP decreased by approximately

30.7%, whereas its payables due and owing to all other creditors increased by approximately

181%.  *Id.* ¶ 152, ECF No. 4 at 27.  At times, LeClair failed to pay expenses such as client court

fees or lease payments at the direction of the Defendants.  *Id.* ¶ 159, ECF No. 4 at 28.  In certain

instances, individual attorneys had to pay for client fees out of pocket to avoid missing client

deadlines.  *Id.* ¶ 160, ECF No. 4 at 28.  In other instances, LeClair failed to pay vendors who were

handling aspects of clients' cases, even though the client had tendered funds to LeClair for the

purpose of paying those expenses.  *Id.* ¶ 161, ECF No. 4 at 161.  As to these funds, the Defendants

encouraged LeClair to commingle the funds tendered by clients for specific expenses with

operational funds that were used for other payments, despite warnings from LeClair's chief legal

officer.  *Id.* ¶¶ 162-68, ECF No. 4 at 28-29.

  To further address the Defendants' concerns regarding LeClair's financial condition, on

April 4, 2019, LeClair and ULXP executed an *Outstanding Deferred Loan Promissory Note* (the

"ULXP Note")[5] and an accompanying *Security Agreement* (the "ULXP Security Agreement"),[6]

both of which were made effective as of December 20, 2018.  *Id.* ¶¶ 132-33, ECF No. 4 at 24.  At

---

[5] The ULXP Note is attached to the Complaint as Exhibit 19.  *See* ECF No. 4-19.

[6] The ULXP Security Agreement is attached to the Complaint as Exhibit 20.  *See* ECF No. 4-20.

this time, LeClair was undercapitalized.  *Id.* ¶¶ 136-38, ECF No. 4 at 24.  Under the ULXP Note, LeClair agreed to pay ULXP the principal amount of $8 million for alleged fees owed by LeClair under the MSA, with repayment to begin on June 30, 2023.  *Id.* ¶¶ 134-35, ECF No. 4 at 24.  The ULXP Note exclusively covered funds previously advanced by the Defendants and was secured by the ULXP Security Agreement.  *Id.* ¶¶ 136-38, ECF No. 4 at 24.  Although the Defendants characterized the ULXP Note as a loan, LeClair arranged with its senior secured lender to treat it as equity for the purposes of its leverage ratio calculation.  *Id.* ¶¶ 140-141, ECF No. 4 at 25.  The Defendants were aware of this arrangement with the senior secured lender.  *Id.* ¶¶ 142-43, ECF No. 4 at 25.  LeClair never made a single payment under the ULXP Note.  *Id.* ¶ 146, ECF No. 4 at 25.

Later in 2019, LeClair and the Defendants began to explore a new transaction, contemplating the wind-down of LeClair and the creation of a new law firm, free from LeClair's debts and liabilities.  *Id.* ¶¶ 169-78, ECF No. 4 at 29-30.  The new law firm would assume the debts owed to UnitedLex but would not assume other debts, including the debts owed to former shareholders and landlords.  *Id.* ¶¶ 175-76, ECF No. 4 at 30.  Ultimately, LeClair's senior secured lender refused to provide funding for the new venture, causing the deal to fall apart.  *See id.* ¶¶ 185-86, ECF No. 4 at 31.  On July 29, 2019, LeClair's members voted to formally wind-down LeClair, and on September 3, 2019 (the "Petition Date"), LeClair filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the above-captioned bankruptcy case in this Court.  *Id.* ¶¶ 187-88, ECF No. 4 at 31-32.  In total, LeClair had transferred at least $19,357,282.51 to ULXP from August 1, 2018, through the Petition Date, including at least $17,425,405.50 within one year of the Petition Date.  *Id.* ¶¶ 189-90, ECF No. 4 at 32.

## Analysis

The Complaint alleges fourteen causes of action.[7] Counts I, II, and III seek avoidance and recovery of fraudulent transfers pursuant to sections 548 and 544 of the Bankruptcy Code.  *See id*. ¶¶ 191-228, 256-64, ECF No. 4 at 32-36, 39-40.  Count IV seeks avoidance of preferential transfers under section 547 of the Bankruptcy Code.  *See id.* ¶¶ 229-41, ECF No. 4 at 36-37.  Counts V and VI seek avoidance of ULXP's lien and the ULXP Note, and recovery of fraudulent and preferential transfers under the ULXP Note pursuant to section 550 of the Bankruptcy Code.  *See id.* ¶¶ 242-64, ECF No. 4 at 37-40.  Count VII seeks disallowance of ULXP's secured claim pursuant to section 502(d) of the Bankruptcy Code.  *See id.* ¶¶ 265-70, ECF No. 4 at 40.  Count VIII seeks recharacterization of ULXP's claim as equity.  *See id.* ¶¶ 271-77, ECF No. 4 at 41.  Count IX claims that the Defendants aided and abetted breaches of fiduciary duty by the LeClair directors and officers.  *See id.* ¶¶ 278-84, ECF No. 4 at 41-42.  Counts X and XI claim that the Defendants committed statutory and common-law civil conspiracy in violation of Virginia law.  *See id.* ¶¶ 285-306, ECF No. 4 at 42-45.  Counts XII and XIII allege conversion and unjust enrichment against the Defendants.  *See id.* ¶¶ 302-311, ECF No. 4 at 45-46.  Finally, Count XIV seeks to hold UnitedLex jointly and severally liable as an alter ego of ULXP.  *See id.* ¶¶ 312-20, ECF No. 4 at 46-47.  By their Motion, the Defendants seek dismissal of Counts I through III and V through XI of the Complaint.

---

[7]    Although the Motion devotes considerable time to the argument that the Trustee is pursuing a claim for "deepening insolvency," the Trustee has not alleged such a claim.  Moreover, this Court has previously held that there is no independent tort for deepening insolvency.  *Schnelling v. Crawford* (*In re James River Coal Co.*), 360 B.R. 139, 180 (Bankr. E.D. Va. 2007) ("The harms sought to be remedied by the Trustee's claim of deepening insolvency necessarily must be addressed under his claim for breach of fiduciary duty.  This Court does not believe that the Supreme Court of Virginia would adopt this new independent tort.").

*Counts I, II, and III – Avoidance of Fraudulent Transfers*

By Counts I and III of the Complaint, the Trustee seeks to avoid intentional fraudulent transfers[8] against the Defendants pursuant to sections 548(a)(1)(A)[9] and 544[10] of the Bankruptcy Code, respectively.[11]  The Defendants argue that each of these counts must be dismissed because the Trustee fails to allege the requisite intent and for lack of compliance with Civil Rule 9(b).  Civil Rule 9(b), as made applicable to this Adversary Proceeding by Bankruptcy Rule 7009, provides in pertinent part: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009.

Courts have recognized that it is "disingenuous for the defendants to attempt to shield themselves from liability based upon the allegation that the Trustee has failed to plead with sufficient particularity where, as here, the defendants possess knowledge regarding the subject transactions and the Trustee has limited access to such information without discovery."  *In re James River Coal Co.*, 360 B.R. at 163.  Accordingly, the standard required by Bankruptcy Rule

---

[8]   The term "transfer" is broadly defined in the Bankruptcy Code to include "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D).

[9]   For Counts I and III, in order to establish a *prima facie* case under section 548(a)(1)(A) of the Bankruptcy Code, a plaintiff must show that the debtor made a transfer of an interest of the debtor in property "with actual intent to hinder, delay, or defraud" creditors.  *Id.* § 548(a)(1)(A).

[10]   Under section 544(b) of the Bankruptcy Code, a "trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim."  *Id.* § 544(b).

[11]   The Motion requests dismissal of Count VI of the Complaint, which seeks the avoidance and recovery of certain transfers associated with the ULXP Note under section 544 of the Bankruptcy Code.  The Defendants' pleadings fail to distinguish Count VI from Counts I and III, and, as such, seeks dismissal for failure to allege intent and for lack of compliance with Civil Rule 9(b).  For the reasons stated herein for Counts I and III, the Court finds that the Trustee has set forth a viable cause of action in Count VI.  To the extent that the Trustee seeks to recover any such avoidable transfers, for the reasons stated herein *infra* in connection with Count V, the Court finds that the Trustee has also sufficiently pled such facts.

7009 is relaxed in the context of a complaint filed by a bankruptcy trustee. *Arrowsmith v. Mallory* (*In re Health Diagnostic Lab'y, Inc.*), Nos. 15-32919, 16-03271, 2017 Bankr. LEXIS 2230, at *29 (Bankr. E.D. Va. Aug. 9, 2017) (citing *Messer v. Collins* (*In re Collins*), 540 B.R. 54, 59 (Bankr. E.D.N.Y. 2015); then citing *Friedman v. Am. Cap., LTD* (*In re Barton-Cotton, Inc.*), Case No. 09-12066-DK, 2012 WL 2803742, at *3, 2012 Bankr. LEXIS 3114, at *9 (Bankr. D. Md. July 10, 2012)). Despite the disparity in knowledge, the Trustee has alleged sufficient facts to support her fraudulent transfers claims. As long as "a fraudulent transfer claim details the transfers alleged to be fraudulent, the reasons the transfers are fraudulent, and the roles of the defendants in the transfers, it has been pled with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b)." *In re James River Coal Co.*, 360 B.R. at 162.

In this case, the parties do not dispute that the Trustee "alleges the details of the transfers by pleading the approximate date of the transfer, the transferor, the initial transferee, the beneficiary and/or subsequent transferee, and the approximate amount of each transfer." *See id.*; Mem. in Supp. Mot. to Dismiss § D.1, ECF No. 18 at 38 ("[T]he Trustee provides details of the dates, amounts, and recipients of the transfers at issue."). The only issue is whether the Complaint sufficiently alleges why the transfers are fraudulent.

A plaintiff may establish the existence of fraudulent intent "by showing the presence of so-called 'badges of fraud,' those circumstances surrounding an allegedly fraudulent transfer that are indicative of a debtor's state of mind." *Huennekens v. The Gilcom Corp. of Va.*, (*In re SunSport, Inc.*), 260 B.R. 88, 110-12 (Bankr. E.D. Va. 2000) (citing *Moore v. Manson* (*In re Springfield Furniture, Inc.*), 145 B.R. 520, 535 (Bankr. E.D. Va. 1992)). The "badges of fraud" include:

> (1) A relationship between the debtor and the transferee; (2) Lack of consideration for the conveyance; (3) Debtor's insolvency or indebtedness; (4) Transfers of debtor's entire estate; (5) Reservation of benefits, control, or dominion by the debtor; (6) Secrecy or

> concealment of the transaction; and (7) Pendency or threat of
> litigation at the time of transfer.

*Tavenner v. Smoot* (*In re Smoot*), 265 B.R. 128, 142 (Bankr. E.D. Va. 1999), *aff'd*, 257 F.3d 401

(4th Cir. 2001). "The presence of just one of the above listed factors can warrant a court's

conclusion that a transfer was fraudulently made, and, certainly, the presence of several factors

'can lead inescapably to the conclusion that the debtor possessed the requisite intent.'"

*Zanderman, Inc. v. Sandoval* (*In re Sandoval*), 153 F.3d 722 (4th Cir. 1998) (citation omitted).

Fraudulent intent of an officer or director may be imputed to the debtor for purposes of recovering

an intentional fraudulent transfer. *See In re James River Coal Co.*, 360 B.R. at 161.

Here, the Complaint alleges, inter alia, that five months before the Petition Date, LeClair

and ULXP entered into the ULXP Note, secured by the ULXP Security Agreement, whereby

ULXP sought to elevate its prior advances under an unsecured credit line to secured status over

other unsecured creditors. *See* Compl. ¶¶ 132-37, ECF No. 4 at 24. The Complaint further alleges

that in the months preceding the Petition Date, the Defendants routinely met with LeClair, at which

meetings the Defendants decided whom LeClair should pay. *Id.* ¶¶ 147-51, ECF No. 4 at 26.

Regardless of LeClair's other obligations, the Trustee alleges that the Defendants demanded

weekly payments to curtail the ULXP Note, thereby decreasing "payables due and owing from the

Debtor to ULXP . . . by approximately 30.7% while the Debtor's payables due and owing to all

other creditors increased by approximately 181%." *Id.* ¶¶ 152-54, ECF No. 4 at 27. Accordingly,

much like *In re James River Coal*, the Trustee has

> allege[d] sufficient and detailed facts regarding the roles of the
> defendants in connection with the transfers and the reasons why the
> transfers are fraudulent. Each of the [transfers] at issue represents a
> situation in which insiders'[12] interests allegedly became superior to

---

[12] The Bankruptcy Code defines the term "insider" in section 101(31). The definition indicates that statutory list is
not intended to be exhaustive. A person may be considered to be an insider if there is a closeness of the

the claims of trade creditors with the latter receiving no value, but
instead having their interests severely impaired.  This fact, if proved,
is, in and of itself, grounds to avoid the transactions in question.

360 B.R. at 162.  As such, the Motion is denied as to Counts I and III.

Separately, the Defendants seek dismissal of Count II of the Complaint – avoidance of
fraudulent transfers pursuant to section 548(a)(1)(B) of the Bankruptcy Code – on the grounds that
the Debtor received reasonably equivalent value.  *See* 11 U.S.C. § 548(a)(1)(B) (requiring that the
debtor "received less than a reasonably equivalent value in exchange for such transfer or
obligation").  "The elements of [section] 548(a)(1)(B) of the Bankruptcy Code involve questions
of fact that may not be resolved through a motion to dismiss."  *In re James River Coal Co.*, 360
B.R. at 166.  "'Reasonably equivalent value' is a question of fact and it is not appropriate for the
Court to determine the element at this point."  *In re Health Diagnostic Lab'y, Inc.*, 2017 Bankr.
LEXIS 2230, at *43. Accordingly, the Motion is denied as to Count II.

*Counts V and VI – Avoidance of Lien and Recovery of Avoided Transactions*

By Counts V and VI of the Complaint, the Trustee seeks to use section 550 of the
Bankruptcy Code[13] to recover the fraudulent transfers and preferences avoided under sections 548,
544(b) and/or 547 of the Bankruptcy Code, including but not limited to the ULXP Note and ULXP
Security Agreement.  Based on their request to dismiss Counts I, II, and III, the Defendants request
that Counts V and VI be dismissed or limited to any preference recovered.  As the Court has
already concluded that Counts I, II, and III are viable claims seeking the avoidance of fraudulent

---

relationship between the debtor and the transferee and if the transactions between the transferee and the debtor
were not conducted at arm's length.  *See Hirsch v. Tarricone* (*In re A. Tarricone, Inc.*), 286 B.R. 256, 262 (Bankr.
S.D.N.Y. 2002).

[13]   Under section 550 of the Bankruptcy Code, a trustee may recover property avoided under sections 544, 547, and
548 of the Bankruptcy Code from the initial transferee, the entity for whose benefit the transfer was made, or any
immediate or mediate transferee of the initial transferee.  *See* 11 U.S.C. § 550.

transfers and as the Defendants have not challenged Count IV seeking avoidance of preferential transfers, the Trustee may seek to recover any avoided transactions pursuant to section 550 of the Bankruptcy Code.  *See In re James River Coal Co.*, 360 B.R. at 169.  Therefore, the Motion is denied as to Counts V and VI.

*Count VII – Disallowance of Claims*

By Count VII of the Complaint, the Trustee seeks to disallow any and all claims of the Defendants against the Debtor's estate pursuant to section 502(d) of the Bankruptcy Code.  That section provides that "the court shall disallow any claim of any entity from which property is recoverable under section . . . 550, . . . or that is a transferee of a transfer avoidable under section . . . 544, . . . 547, [or] 548 . . . , unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable."  11 U.S.C. § 502(d); *see also In re Health Diagnostic Lab'y, Inc.*, 2017 Bankr. LEXIS 2230, at *65 ("A court must disallow a claim to the extent that an entity that has filed a claim has property that is recoverable under sections 547 or 548 of the Bankruptcy Code.").  The Court has concluded that Counts I and II are viable claims seeking recovery of fraudulent transfers pursuant to section 548 of the Bankruptcy Code, Counts III and VI are viable claims seeking recovery of fraudulent transfers pursuant to section 544 of the Bankruptcy Code, and Counts V and VI are viable claims seeking the recovery of avoidable transfers.  Moreover, the Defendants have not challenged Count IV seeking avoidance of preferential transfers pursuant to section 547 of the Bankruptcy Code. Accordingly, the Trustee may seek disallowance of the Defendants' claims under section 502.  *See In re Health Diagnostic Lab'y, Inc.*, 2017 Bankr. LEXIS 2230, at *65.

14

*Count VIII – Recharacterization of Debt as Equity*

By Count VIII of the Complaint, the Trustee seeks to recharacterize the ULXP Note as an equity investment. "The Fourth Circuit has recognized that it is within the bankruptcy court's equitable powers to recharacterize loans made by shareholders to a corporation as equity investments." *Id.* at *59. In determining whether to recharacterize a loan as equity, a court may consider the following factors:

> (1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments.

*Fairchild Dornier GmbH v. Official Comm. of Unsecured Creditors* (*In re Dornier Aviation (N. Am.), Inc.*), 453 F.3d 225, 233 (4th Cir. 2006). "This test is a highly fact-dependent inquiry that will vary in application from case to case." *Id.* at 234; *see also In re Health Diagnostic Lab'y, Inc.*, 2017 Bankr. LEXIS 2230, at *60 ("The inquiry is highly fact dependent and none of the factors are dispositive.").

The Court rejects the Defendants' argument that this count must fail as a matter of law. The Trustee alleges that no payments were to be made on the ULXP Note until its June 2023 maturity date. Compl. ¶ 135, ECF No. 4 at 24. The Trustee also alleges that LeClair was undercapitalized at the time that the ULXP Note and the ULXP Security Agreement were executed. *Id.* ¶¶ 138-39, ECF No. 4 at 24. Finally, the Trustee alleges that the ULXP Note and ULXP Security Agreement – securing prior advances and contributing no new cash, *see id.* ¶ 136,

ECF No. 4 at 24 – was subordinate only to the Debtor's senior pre-Petition Date lender and, most

significantly, that the ULXP Note was designed to appear like an equity investment in the Debtor.

*Id.* ¶¶ 140-43, ECF No. 4 at 25.  In light of the foregoing, the Trustee has adequately pled an action

for recharacterization.

*Count IX – Aiding and Abetting Breach of Fiduciary Duty*

In Count IX of her Complaint, the Trustee alleges that the Defendants aided and abetted

breaches of fiduciary duty by one or more of LeClair's officers and directors.  Compl. ¶ 279, ECF

No. 4 at 41-42.  This Court, relying on precedent from the Fourth Circuit and Virginia courts, has

previously recognized a cause of action for aiding and abetting a breach of fiduciary duty.  *See*

*Arrowsmith v. Mallory* (*In re Health Diagnostic Lab'y, Inc.*), Nos. 15-32919, 17-04300, 2018 WL

4676339, at *11 (Bankr. E.D. Va. Sept. 26, 2018).  More recently, two District Court judges from

other divisions of this Court have held otherwise.  In *Infinity Technology, LLC v. Burney*, the

District Court dismissed a plaintiff's claim for aiding and abetting a breach of fiduciary duty and

misappropriation of trade secrets on the grounds that "neither the Supreme Court of Virginia nor

the Virginia General Assembly has adopted an independent cause of action for aiding and abetting

a tort."  Civil Action No. 1:19-cv-01507, 2020 WL 6387378, at *6, 2020 U.S. Dist. LEXIS 206604,

at *15-16 (E.D. Va. June 4, 2020).  Similarly, in *Studco Building System U.S., LLC v. 1st*

*Advantage Federal Credit Union*, the District Court dismissed a plaintiff's cause of action for

failure to state a claim of aiding and abetting a breach of fiduciary duty.  Civil Action No. 2:20-

cv-417, 2020 WL 7482840, at *7, 2020 U.S. Dist. LEXIS 238945, at *21 (E.D. Va. Dec. 18, 2020).

In both cases, the District Court recognized that although "[n]either Virginia law, Virginia State

Courts, nor the United States Court of Appeals for the Fourth Circuit have recognized aiding and

abetting . . . as a separate tort," a defendant may be liable for the underlying breach as a joint

tortfeasor.[14]  *See id.* at \*6-7, 2020 U.S. Dist. LEXIS 238945, at \*18-20; *Infinity Tech., LLC*, 2020

WL 6387378, at \*6, 2020 U.S. Dist. LEXIS 206604, at \*16.    Given the more recent

pronouncements on this issue, the Court, adhering to the principle of stare decisis, will follow the

District Courts' analysis in *Infinity Technology* and *Studco*.    Accordingly, Count IX will be

dismissed.

*Counts X and XI – Statutory and Common-Law Civil Conspiracy*

Next, Counts X and XI of the Complaint allege statutory and common-law civil conspiracy

under Virginia law against the Defendants. "A claim for statutory civil conspiracy under Virginia

law must allege (1) two or more persons combined, associated, agreed or mutually undertook

together to (2) willfully and maliciously injury another in his reputation, trade, business, or

profession."  *T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 845

(4th Cir. 2004) (first citing Va. Code Ann. §§ 18.2-499, 500; and then citing *Mich. Mut. Ins. Co.*

*v. Smoot*, 128 F. Supp. 2d 917, 924-25 (E.D. Va. 2000)).  Likewise, a claim for common-law civil

conspiracy must allege that "two or more persons combined to accomplish, by some concerted

action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful

means."  *Id.* (citing *Com. Bus. Sys., Inc. v. Bellsouth Servs., Inc.*, 453 S.E.2d 261, 267 (Va. 1995)).

Importantly,

> [a] claim of civil conspiracy is not actionable in its own right.
> Instead, civil conspiracy is a mechanism for spreading liability
> among coconspirators for damages sustained "as a result of an
> underlying act that is itself wrongful or tortious."  Consequently, an
> action for civil conspiracy will not lie unless the predicate unlawful
> act independently imposes liability upon the primary wrongdoer.
> Only then can that liability be spread to the remaining
> coconspirators.

---

[14]    The Trustee does not allege that the Defendants are liable as joint tortfeasors.  *Cf.* Jordan v. Osmun, No. 1:16-CV-501, 2016 WL 7173784, at \*4-6, 2016 U.S. Dist. LEXIS 170239, at \*10-16 (E.D. Va. Dec. 8, 2016).

*La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 805 S.E.2d 399, 405-06 (Va. 2017)

(quoting *Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 317 (Va. 2014)).  As to

Count X, the Complaint alleges that the Defendants conspired with one or more non-defendant

LeClair officers or directors to breach the fiduciary duties that the officers and directors owed to

LeClair, its shareholders, clients, and creditors by

> entering into the ULXP joint venture which gave control of
> [LeClair] to a non-lawyer, authorizing and directing [LeClair] to
> enter into the Conversion, terminating the firm's Deferred
> Compensation    and    Supplemental    Retirement    plans,
> misappropriating funds tendered to [LeClair] by its clients for
> specific expenses, facilitating fraudulent and preferential transfers,
> and/or making misleading or false statements to professional
> consultants.

Compl. ¶ 288, ECF No. 4 at 43.  The Complaint further alleges that the foregoing unlawful acts

were undertaken willfully and intentionally, were aimed directly at damaging LeClair and its

creditors, and directly and proximately caused LeClair to suffer damages in excess of $42.7

million.[15]  *Id.* at ¶¶ 289-94, ECF No. 4 at 43-44.  As to Count XI, the Complaint alleges that the

Defendants acted in concert with one or more of the LeClair officers or directors to breach the

fiduciary duties that the officers and directors owed to LeClair, its shareholders, clients, and

creditors by

> entering into the ULXP joint venture which gave control of
> [LeClair] to a non-lawyer, authorizing and directing [LeClair] to
> enter into the Conversion, terminating the firm's Deferred
> Compensation    and    Supplemental    Retirement    plans,
> misappropriating funds tendered to [LeClair] by its clients for
> specific expenses, facilitating fraudulent and preferential transfers,
> and/or making misleading or false statements to professional
> consultants.

---

[15]    The Trustee seeks to recover treble damages, as well as reasonable attorneys' fees and costs, pursuant to section
18.2-500 of the Virginia Code.  Compl. ¶ 295, ECF No. 4 at 44.

*Id.* at ¶¶ 297-98. ECF No. 4 at 44-45.  The Complaint further alleges that the Defendants, along with the non-defendant officers and directors, "intentionally combined to accomplish these unlawful purposes, or even if determined to be lawful purposes, accomplish them through illegal or unlawful means."  *Id.* at ¶ 299, ECF No. 4 at 45.  As a direct and proximate result of this conspiracy, LeClair suffered damages "including but not limited to millions of dollars in unpaid obligations" and totaling at least $42.7 million.  *Id.* at ¶¶ 300-301, ECF No. 4 at 45.

The Trustee bases her conspiracy claims on a breach of fiduciary duty by one or more unidentified officers and/or directors of LeClair.  In Virginia, a breach of fiduciary duty, if properly alleged, "is an unlawful act on which a conspiracy claim can rest."  *CSX Transp., Inc. v. Norfolk S. Ry. Co.*, Civil Action No. 2:18-cv-530, 2019 WL 4564564, at *17, 2019 U.S. Dist. LEXIS 161339, at *53 (E.D. Va. Sept. 9, 2019) (citing *Feddeman & Co., C.P.A., P.C. v. Langan Assocs., P.C.*, 530 S.E.2d 668, 674 (Va. 2000)).  To properly allege a breach of fiduciary duty as the predicate unlawful act for her conspiracy claims, the Trustee must point to one or more "plausible wrongful acts" that constitute the alleged breach.  *Id.*  Entering into a joint venture, converting the business from a professional corporation to a professional limited liability company, terminating the firm's deferred compensation and supplemental retirement plans, and making misleading or false statements to third-party professional consultants are not themselves unlawful acts, nor does the Trustee allege any unlawful means through which these acts were accomplished.  Furthermore, in Virginia, a fraudulent conveyance cannot be the predicate act for a conspiracy claim.  *La Bella Dona Skin Care, Inc.*, 805 S.E.2d at 406.

That leaves two allegations which may give rise to a breach of fiduciary duty.  First is the misappropriation of funds, *See Jordan v. Osmun*, Civil Action No. 1:16-cv-501, 2016 WL 7173784, at *8, 2016 U.S. Dist. LEXIS 170239, at *21 (E.D. Va. Dec. 8, 2016) (finding that claim

for breach of fiduciary duty based on misappropriation of funds survived a motion to dismiss). In the case at bar, the Trustee has alleged that the Defendants willfully conspired with the non-defendant board members and officers of LeClair to breach the fiduciary duties owed by the officers and directors through the misappropriation of client funds.

Second is the unauthorized practice of law. The Trustee has alleged that the Defendants willfully conspired with the non-defendant board members and officers of LeClair to breach the fiduciary duties owed by the officers and directors by giving "control of [LeClair] to a non-lawyer." *See* Compl. ¶ 288, ECF No. 4 at 43. While a violation of the Virginia Rules of Professional Conduct is not, by itself, an unlawful act that can give rise to a conspiracy claim, *see Nasser v. Waller*, Civil Action No. 5:16-cv-00032, 2017 WL 913816, at *7, 2017 U.S. Dist. LEXIS 32177, at *20 (W.D. Va. Mar. 7, 2017) ("[A]ll . . . claims premised on violations of ethical rules are subject to dismissal because a violation of a rule of professional conduct . . . does not give rise to a private cause of action."); *see also* Va. Sup. Ct. R. pt. 6, § II, Preamble ("Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached."), the unauthorized practice of law, if proven, may be an unlawful act that can give rise to a conspiracy claim, *see* Va. Code Ann. § 54.1-3904 ("Any person who practices law without being authorized or licensed shall be guilty of a Class 1 misdemeanor.").

Therefore, the Court finds that the Trustee has adequately pled claims for statutory and common law civil conspiracy under Virginia law.

**Conclusion**

For the foregoing reasons, the Court will dismiss Count IX of the Complaint. As to all

other counts, the Motion will be denied for the reasons stated herein. A separate Order shall issue.


Dated: ___July 20, 2021___          ___/s/ Kevin R. Huennekens_____
                                     UNITED STATES BANKRUPTCY JUDGE


                                     Entered on Docket: July 20, 2021_____