## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Richmond Division)

| | |
|---|---|
| In re:<br><br>**LECLAIRRYAN PLLC,**<br><br>　　　　　**Debtor.** | **Chapter 7**<br><br>**Case No. 19-34574 (KRH)** |
| **Lynn L. Tavenner, as Chapter 7 Trustee,**<br><br>　　　　　**Plaintiff,**<br><br>vs.<br><br>**ULX Partners, LLC, ULX Manager LLC,**<br>**UnitedLex Corporation, and Gary LeClair,**<br><br>　　　　　**Defendants.** | **Adv. Proc. No. 20-03142-KRH** |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS ULX PARTNERS, LLC'S, ULX MANAGER LLC'S AND UNITEDLEX CORPORATION'S <u>MOTION TO PARTIALLY DISMISS THE FIRST AMENDED COMPLAINT</u>

Defendants ULX Partners, LLC ("**ULXP**"), ULX Manager, LLC ("**ULX Manager**") and UnitedLex Corporation ("**UnitedLex**") (collectively, "**Defendants**"), by counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, hereby file this Memorandum of Law in support of their *Motion to Partially Dismiss the First Amended Complaint* ("**Motion to Dismiss**") seeking dismissal of Counts XXIII (Misappropriation of Trade Secrets Under the Virginia Uniform Trade Secrets Act), XXIV (Breach of Fiduciary Duty), XXVII (Statutory Conspiracy), XXVIII (Common Law Conspiracy), XXIX (Statutory Conspiracy), and XXX (Common Law Conspiracy), as pled and served by Plaintiff Lynn L. Tavenner, as Chapter 7 Trustee (the "**Trustee**" or "**Plaintiff**") of the bankruptcy estate of LeClairRyan PLLC ("**LeClairRyan**" or "**LCR**" or the "**Debtor**").[1]

## INTRODUCTION

Following this Court's July 20, 2021 ruling on Defendant's Motion to Dismiss [Docket No. 57] (the "**Motion to Dismiss Opinion**") that eviscerated the bulk of the Trustee's theories and claims in this case, the Trustee is now desperately seeking to revive her claims by doubling down – improperly reasserting some of her old rejected theories, enlarging the complaint by over 230 allegations, and adding twenty (20) new counts against the ULX Entities[2] and Mr. LeClair.[3] Yet

---

[1] As set forth herein, the Defendants are only seeking to dismiss certain counts of the Trustee's Amended Complaint. Defendants continue to reserve all arguments set forth in Defendants' Motion to Dismiss, filed in connection with the original complaint, to the extent such arguments are applicable to the Amended Complaint. Further, Defendants reserve the right to file an Answer to all claims, including those that are not subject to this Motion to Dismiss, within the time provided for in the Federal Rules once the Court rules upon this Motion to Dismiss, if not before. *See Godlewski v. Affiliated Computer Servs., Inc.*, 210 F.R.D. 571, 572 (E.D. Va. 2002) ("the filing of a motion that only addresses part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion.").

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Amended Complaint.

despite allegedly reviewing hundreds of thousands, if not millions, of documents from LCR and the Defendants and conducting various interviews, including Rule 2004 examinations of two of UnitedLex's principals, the Trustee has again traded fact for fiction, seeking to weave a tale of sensationalism out of a well-intended outsourcing business transaction.

After sifting through all of the many irrelevant allegations, however, it is clear that all the Trustee is left with on certain claims are conclusory allegations that are undermined by both law and fact. The Trustee, for example, alleges that Defendants violated the Virginia Uniform Trade Secrets Act by acquiring LeClairRyan's trade secrets through improper means. (Amended Complaint, ¶¶ 480, 481). Yet the Trustee fails to identify what those trade secrets are and fails to allege any acts that could even remotely be considered as "improper means." And the Trustee is on additional notice given this Court's prior ruling on Defendants' Motion to Dismiss, where the Court noted that many of the allegations asserted by the Trustee as a basis to support her conspiracy claims on a breach of fiduciary duty theory were "not themselves unlawful acts" nor alleged to have been accomplished through "any unlawful means". (Motion to Dismiss Opinion, ¶ 19). In her Amended Complaint, the Trustee similarly alleges that all three of the ULX Entities breached fiduciary duties to the Debtor as members of the joint venture – ignoring the fact that only <u>one</u> of those entities was a member as well as the plain language of the governing Operating Agreement that eliminates all such duties – and disregards the conclusions set forth in the Court's Motion to Dismiss Opinion by including references to alleged predicate claims that the Court has expressly rejected.

For all of these reasons, among others, Counts XXIII, XXIV, XXVII, XXVIII, XXIX and XXX should be dismissed.

---

[3] Defendants contend that many of these new allegations are irrelevant to this case and the asserted claims.

## FACTUAL BACKGROUND
## RELEVANT FOR PURPOSES OF THE MOTION TO DISMISS[4]

By this time, the Court is well-acquainted with the Debtor and the underlying joint venture transaction.  In April 2018, LeClairRyan divested itself of the non-legal aspects of its business, transferring its back office and support personnel as well as responsibility for the services previously provided by them to a newly formed LLC, ULXP.  (Amended Complaint, ¶¶ 3, 156, 166).  Through the arrangement, ULXP was tasked with providing secretarial support, business recommendations, cash flow analyses, and personnel recommendations, among other services, to LCR's Chief Executive Officer and Board of Directors for their consideration, review, and, significantly, final decision.  (Amended Complaint, ¶ 162).

The ULXP joint venture was entered into on April 4, 2018 following months of diligence, discussion, and negotiations.  (Amended Complaint, ¶ 169).  As a potential closing date on the transaction approached in March 2018, LCR's CEO, Erik Gustafson, sought to summarize the transaction's status for LCR's members and did so through a March 19, 2018 Executive Summary, a copy of which is attached as **Exhibit A** (the "**March Executive Summary**").[5] While not yet reflective of the final terms of the deal, the March Executive Summary disclosed to the firm's members contemplated material terms, such as executing a master services agreement and transferring LCR's intellectual property to the joint venture, and the overall

---

[4] The facts set forth herein are based upon those set forth in the Amended Complaint, and are accepted as true solely for purposes of this Motion to Dismiss.

[5] *See Witthohn v. Fed. Ins. Co.*, 164 Fed.Appx. 395, 396 (4th Cir. 2006) (On a motion to dismiss, a court "may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed.").  The Trustee cites and relies upon the March Executive Summary in her Amended Complaint.  *See* Amended Complaint, ¶¶ 141-143.  The March Executive Summary was also attached as Exhibit 6 to the Trustee's original complaint in this matter.

purpose of the joint venture – including creating a foundation for a future constellation of firms.[6]

(Exhibit A, pp., 5, 8).  Specifically, Mr. Gustafson wrote:

> It is contemplated that going forward, additional law firms will sign separate
> master services agreements with the JV, eventually creating a constellation of law
> firms with contractual relationships with the JV (but not with each other).
> However, the JV will initially be focused on a successful launch of the
> relationship with LR before approaching other firms to join the constellation.
>
> Exhibit A, p.6 (emphasis added).

The March Executive Summary also notes that LeClairRyan engaged the well-regarded

ethics law firm of Hinshaw & Culbertson, LLP ("**Hinshaw**") to provide legal advice regarding

the proposed structure of the joint venture.   Accordingly, after evaluating the transaction and

material terms, Hinshaw provided multiple letters to LCR with respect to the subject joint

venture in which Hinshaw opined that the proposed transaction complied with LCR's ethical

obligations.[7]  Copies of the letters are attached as **Exhibit B**.[8]

With approval by ethics counsel in hand, the parties moved forward with finalizing the

terms of the joint venture.   More specifically, the parties established ULXP as an LLC in

Delaware (Amended Complaint, ¶ 27) and they executed various documents, including the

---

[6] LeClairRyan received a 1% profits interest in ULXP.  *See* Amended Complaint, ¶ 159.

[7] The Trustee tries to undermine this by alleging, in conclusory fashion, that LCR's management
and Defendants made false and/or misleading statements to Hinshaw regarding the joint venture.
*See* Amended Complaint, ¶¶ 501, 511.  The Trustee, however, has had ample time and notice of
her deficiencies and still fails to provide factual support for these allegations and thus, they are to
be ignored by this Court for purposes of the Motion to Dismiss. *See, e.g.*, *Rashad v. Jenkins*, No.
15-cv-655, 2016 WL 901279, at *4 (E.D. Va. Mar. 3, 2016) (stating that a court "'need not
accept conclusory allegations encompassing the legal effects of the pleaded facts.'") (quoting
*Chamblee v. Old Dominion Sec. Co., L.L.C.*, No. 13-cv-820, 2014 WL 1415095, at *4 (E.D. Va.
Apr. 11, 2014)).

[8] The Trustee attached the March 27, 2018 and March 28, 2018 letters from Hinshaw to
LeClairRyan as Exhibits 9 and 10 to her original complaint.  The Trustee cites to and relies upon
these letters from Hinshaw in the Amended Complaint as well.  *See* Amended Complaint, ¶¶
148-152.

ULXP Operating Agreement (the "**Operating Agreement**"), the Master Services Agreement (the "**MSA**"), and the Contribution Agreement, all dated April 4, 2018 (attached as **Exhibits C, D, and E,** respectively).[9]  These agreements and others provided for, among other things, the transfers of assets and intellectual property, the description of services to be provided, and the calculation of fees relating to the same.

Pursuant to the terms of the MSA, ULXP provided services to LeClairRyan throughout 2018, and even after LeClairRyan filed for bankruptcy protection on September 3, 2019.

## STANDARD OF REVIEW

Federal Rule 12(b)(6), made applicable to this adversary proceeding by Bankruptcy Rule 7012(b), requires courts to dismiss a claim that "fail[s] to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b); *see also Islam v. Jackson*, 782 F. Supp. 1111, 1113 (E.D. Va. 1992).  A court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership*, 213 F.3d 175, 180 (4th Cir. 2000).  And, while a court reviewing a complaint on a Rule 12(b)(6) motion must accept well-pleaded factual allegations as true, it need not accept as true legal conclusions disguised as factual allegations.  *Washington v. Veritiss, LLC*, No. 14-cv-1250 (JCC/TCB), 2015 WL 965931, at *2, *5 (E.D. Va. Mar. 4, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679-81 (2009)).  A Court "can further put aside any 'naked assertions devoid of further factual enhancement.'" *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015) (quoting *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014)).  A plaintiff must allege more than a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[9] These agreements are repeatedly referenced and relied upon throughout the Trustee's Amended Complaint. *See* Amended Complaint, ¶¶ 161, 169, 186, 267.

## ARGUMENT

**A.**   **The Trustee Fails to State a Claim for Misappropriation of Trade Secrets Under the Virginia Uniform Trade Secrets Act (Count XXIII)**

In order to state a claim under the Virginia Uniform Trade Secrets Act (the "**VUTSA**"), a plaintiff "must allege sufficient facts to establish '(1) that the information at issue is a trade secret and (2) that the defendant misappropriated it.'"   *See All Bus. Solutions, Inc. v. NationsLine, Inc.*, 629 F.Supp.2d 553, 558 (W.D. Va. 2009).    The VUTSA defines "misappropriation" as, "(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) Disclosure or use of a trade secret of another without express or implied consent . . . ."  Va. Code 59.1-336. The Trustee makes no allegation that the ULX Entities "disclosed" trade secrets, and thus, the Trustee's claims focuses solely on alleged "acquisition" by the ULX Entities.   (Amended Complaint, ¶ 481).  The Trustee fails to state a claim of misappropriation.

**(i)**   **The Trustee fails to identify the trade secrets at issue.**

As noted in *MicroStrategy Inc. v. Business Objects, S.A.*, 331 F.Supp.2d 396 (E.D. Va. 2004), in a complaint asserting a VUTSA violation,

> [T]he alleged trade secret must be described in sufficient detail to establish each element of a trade secret . . . .  <u>A plaintiff must identify, with particularity, each trade secret it claims was misappropriated</u>.  This must be done to allow the finder of fact to distinguish that which is legitimately a trade secret from other information that is simply confidential but not a trade secret, or is publicly available information.

*Id.* at 418 (internal quotations and cites omitted) (emphasis added); *see also Knowesis, Inc. v. Herrera*, No. CL-2019-2807, 2019 WL 11813618, at *4 (Cir. Ct. Fairfax Oct. 2, 2019) ("Making specific allegations as to the trade secrets misappropriated and the means of misappropriation is <u>critical</u> to stating a VUTSA claim.") (emphasis added); *see also Preferred Sys. Solutions, Inc. v. GP Consulting, LLC*, 732 S.E.2d 676, 688-89 (Va. 2012) (sustaining a

demurrer to a trade secret misappropriation claim for failing to identify what trade secrets were misappropriated).

Despite making 558 allegations that go on for 90 pages, the Trustee has not used a single one of those allegations to identify **any** information that constitutes a trade secret.  Rather, she alleges only that the ULX Entities "had access to valuable trade secrets and confidential information . . . through its access to LeClairRyan's documents and systems following the transfer of LeClairRyan's back-office group to ULXP," and that the ULX Entities engaged in "misappropriating trade secrets and client relationships that belonged to LeClairRyan." (Amended Complaint, ¶¶ 478, 518, 529).  Nowhere does the Trustee identify which trade secrets the ULX Entities allegedly accessed or misappropriated.  The requisite particularity is missing.

The case of *All Bus. Solutions, Inc.* is instructive.  In that case, the District Court dismissed a VUTSA claim because it was "premised on the single, conclusory assertion that [the defendant] 'sought . . . to appropriate and disclose the names of [plaintiff's] customers, along with other [of plaintiff's] trade secrets and confidential information.'"  629 F.Supp.2d at 558-59. The court explained that "[t]he second amended complaint contains no additional factual allegations that support this assertion or otherwise 'plausibly suggest an entitlement to relief' under the VUTSA."  *Id.* at 559.  "Because *Twombly* and *Iqbal* make clear that '"naked assertion[s]" devoid of "further factual enhancement"' are insufficient to withstand a motion to dismiss," the court dismissed the VUTSA claim.  *Id.*  The Trustee's claim in her Amended Complaint should be subject to the same fate.

**(ii)    The Trustee fails to allege "improper means".**

In order to be actionable under the VUTSA as misappropriation, an acquisition of the trade secrets of another must have been by "improper means."  Va. Code 59.1-336.  The VUTSA

defines "improper means" to include "theft, bribery, misrepresentation, use of a computer or computer network without authority, breach of a duty or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." *Id.* A complaint must contain specific allegations as to the "improper means" employed. *See Preferred Sys. Solutions, Inc.*, 732 S.E.2d at 689 (sustaining demurrer based in part upon the plaintiff failing to identify the improper means used to acquire the trade secrets and instead only making a conclusory allegation that the defendant "used improper means"); *see also Knowesis, Inc.*, 2019 WL 11813618, at *4 ("Making specific allegations as to the trade secrets misappropriated and the means of misappropriation is <u>critical</u> to stating a VUTSA claim.").

The Trustee's Amended Complaint offers nothing more than a single allegation that says only, "[t]he ULX Entities knew or had reason to know that the Debtor's trade secrets had been acquired by improper means." (Amended Complaint, ¶ 481). Neither this conclusory allegation, nor any other allegation in the Amended Complaint, is sufficient to state a claim. Similarly, to the extent the Trustee alleges that intellectual property received by ULXP through the joint venture transaction, and specifically through the Contribution Agreement, constitutes the trade secrets at issue in this claim, "[t]here can be no misappropriation where acquisition, disclosure, and use of a trade secret have been expressly authorized by contract." *Babcock & Wilcox Co. v. Areva NP, Inc.*, 788 S.E. 2d 237, 260 (Va. 2016). The Contribution Agreement expressly provided that all of LeClairRyan's title and interests in assets identified in Schedule 2.01(a) of the Contribution Agreement were transferred to ULXP, and LeClairRyan's intellectual property as identified in Schedule 2.01(b) of the Contribution Agreement was licensed to ULXP such that ULXP "shall have the right to use [it] only in connection with the operation of its business." Exhibit E. Moreover, the ULX Entities' acts are all consistent with the purpose of the joint

venture as described and disclosed by LCR's CEO to the firm's members – "creating a constellation of law firms with contractual relationships with the JV . . . ." Exhibit A.

**B.**    **Count XXIV for Breach of Fiduciary Duty Should Be Dismissed**

In Count XXIV of the Amended Complaint, the Trustee alleges that "[a]s <u>members</u> of a joint venture, the ULX Entities owed the Debtor a fiduciary duty of loyalty and care . . . ." (Amended Complaint, ¶ 485) (emphasis added).  In fact and law, however, none of the ULX Entities owed a fiduciary duty to the Debtor.

**(i)**    **ULX Partners, LLC and UnitedLex Corporation are not members of the joint venture.**

The Trustee's sole basis for any alleged fiduciary duty is that each of the ULX Entities – meaning, UnitedLex, ULXP, and ULX Manager – were allegedly members of the joint venture. (Amended Complaint, ¶ 485).  A review of the ULXP Operating Agreement confirms, however, that only ULX Manager was a member.[10]  *See* Operating Agreement, Schedule A, attached as Exhibit C.[11]  Accordingly, the Court may ignore the Trustee's incorrect allegation that UnitedLex and ULXP are "members" of the joint venture.  *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) (providing that when the bare allegations of the complaint conflict with any exhibits or other documents, whether attached or adopted by reference, the exhibits or documents prevail).  The Trustee has alleged no other grounds upon which to find the existence of a fiduciary duty as to UnitedLex or ULXP, and thus, Count XXIV should be dismissed as to them on this basis alone.

---

[10] Section 8.01 of the Operating Agreement names "UnitedLex" as the Managing Member of ULXP.  On page 10 of the Operating Agreement, however, "UnitedLex" is defined as "ULX Manager LLC," and <u>not</u> as UnitedLex Corporation.  *See* Exhibit C.

[11] *See Witthohn*, 164 Fed.Appx. at 396 (On a motion to dismiss, a court "may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed.").

(ii)    **The Operating Agreement eliminates any fiduciary duties.**

As noted in *In re South Canaan Cellular Investments, LLC*, "Delaware common law does not impose fiduciary and other related duties to members of LLCs who are neither managers nor controlling members."  427 B.R. 85, 102-03 (Bankr. E.D. Pa. 2010).  And to the extent any such duty is imposed by statute, including on a managing member, Delaware law permits parties to restrict and dispose of such duties through the operating agreement.  In *Feeley v. NHAOCG, LLC*, for example, the court noted that "Section 1101(c) of the [Delaware Limited Liability Company] Act . . . empowers the drafters of a limited liability company to expand, restrict, or eliminate a member or manager's duties, including fiduciary duties."  62 A.3d 649, 663 (Del. Ch. Nov. 28, 2012); *see also* 6. Del. C. § 18-1101.

As provided for under Delaware law, Section 13.02 of the ULXP Operating Agreement eliminates any fiduciary duty among members.  More specifically, the provision states:

> (a)    **Limitation of Liability.**  <u>This Agreement is not intended to, and does not, create or impose any fiduciary duty on any Covered Person.</u>[12] <u>Furthermore, each of the Members and the Company hereby waives any and all fiduciary duties that, absent such waiver, may be implied by Applicable Law, and in doing so, acknowledges and agrees that the duties and obligation of each Covered Person to each other and to the Company are only as expressly set forth in this Agreement</u>.  The provisions of this Agreement, to the extent that they restrict the duties and liabilities of a Covered Person otherwise existing at law or in equity, are agreed by the Members to replace such other duties and liabilities of such Covered Person.

> (b)    **Duties.**  Whenever in this Agreement a Covered Person is permitted or required to make a decision (including a decision that is in such Covered Person's "discretion" or under a grant of similar authority or latitude, the

---

[12] Although page 5 of the Operating Agreement states that "Covered Person" has the meaning set forth in Section 14.01(a), the definition is actually set forth in Section 13.01(a).  "Covered Person" is defined therein to mean "(i) each Member, (ii) the Managing Member, the Partnership Representative or a liquidating trustee, in each case in his or its capacity as such, (iii) each officer, director, shareholder, partner, member, controlling Affiliate, employee, agent or representative of each Member, and each of their controlling Affiliates, and (iv) each Officer, employee, agent or representative of the Company."  Exhibit C.

Covered Person shall be entitled to consider only such interests and factors as such Covered Person desires, including its own interests, and <u>shall have no duty or obligation to give any consideration to any interest of or factors affecting the Company or any other Person</u>. Whenever in this Agreement a Covered Person is permitted or required to make a decision in such Covered Person's "good faith," the Covered Person shall act under such express standard and shall not be subject to any other or different standard imposed by this Agreement or any other Applicable Law.

Exhibit C, Section 13.02 (emphasis added).

In light of Section 13.02 of the Operating Agreement, the Trustee's claim for breach of fiduciary duty against the ULX Entities must be dismissed.

## C.    The Trustee Cannot Reassert Her Previously-Rejected Conspiracy Claims in Counts XXVII and XXVIII

Despite the Court expressly narrowing the potential bases for the Trustee's alleged conspiracy claims in the Motion to Dismiss Opinion, the Trustee seeks to, however discretely, re-inject some of the theories that the Court previously rejected. Such previously-litigated issues, however, should be barred. *See Walker v. S.W.I.F.T. SCRL*, 517 F.Supp.2d 801, 807 (E.D. Va. 2007) ("'[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'") (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988)); *see also Blick v. Shapiro & Brown, LLP*, No. 16-CV-00070, 2017 U.S. Dist. LEXIS 1826, at *10 (W.D. Va. Jan. 5, 2017) ("[A] motion to amend the compliant to reassert those same claims would be barred by the law of the case doctrine and futile under Rule 15.").

In Counts XXVII and XXVIII of the Amended Complaint, the Trustee alleges that the ULX Entities "conspired to breach the fiduciary duties the LCR Officers and Directors owed to the Debtor and its shareholders, clients, and creditors by, among other things,

(i)    entering into the ULXP joint venture which gave control of LeClairRyan to a non-lawyer;

(ii)     misappropriating funds tendered to the Debtor by its clients for specific expenses;

(iii)    facilitating fraudulent and preferential transfers; and/or

(iv)     making misleading or false statements to professional consultants."[13]

(Amended Complaint, ¶¶ 501, 511).

Each one of the foregoing alleged actions were previously offered by the Trustee in her original complaint as a basis for statutory and common law conspiracy claims, and three of the four were subsequently rejected by the Court in its Motion to Dismiss Opinion. *See* Original Complaint, ¶¶ 288, 297-98. More specifically, in the Motion to Dismiss Opinion, the Court held:

> Entering into a joint venture, converting the business from a professional corporation to a professional limited liability company, terminating the firm's deferred compensation and supplemental retirement plans, and making misleading or false statements to third-party professional consultants are not themselves unlawful acts, nor does the Trustee allege any unlawful means through which these acts were accomplished. Furthermore, in Virginia, a fraudulent conveyance cannot be the predicate act for a conspiracy claim.

Motion to Dismiss Opinion, p.19 (emphasis added).[14]

Accordingly, the law of the case doctrine bars all of the Trustee's alleged predicate acts in Paragraphs 501 and 511 of the Amended Complaint, except for the alleged misappropriation of client expense funds.[15]

---

[13] The Amended Complaint lacks any specificity with respect to the alleged "false or misleading" statements and therefore such cannot constitute a basis for an alleged conspiracy or breach of fiduciary duty.

[14] The Court did go on to state that misappropriation of the client expense funds was one of two acts that could potentially serve as predicate acts for purposes of a conspiracy claim. *Id.* The other allegation that could provide a basis for conspiracy was the unauthorized practice of law. *Id.*

[15] To the extent necessary, Defendants incorporate their Memorandum in Support of Motion to Dismiss Complaint [Docket No. 18] and Reply in Support of Motion to Dismiss Complaint [Docket No. 26], as well as the arguments made by Defendants' counsel at the June 24, 2021

Moreover, to the extent the Trustee seeks to rely upon the alleged unauthorized practice of law as a predicate act underlying her conspiracy claims, such effort must be similarly rejected. First, the Trustee makes no reference of the unauthorized practice of law in the conspiracy counts of the Amended Complaint.  And second, the Amended Complaint is devoid of any allegations that could suggest that the ULX Entities were engaged in the practice of law as defined in Part 6, Section I, 2, of the Rules of the Supreme Court of Virginia.[16]  Rather, the Trustee makes only a conclusory allegation in its *Breach of Fiduciary* claim against the ULX Entities (Count XXIV) that the ULX Entities breached their duties of loyalty to the Debtor by "engaging in the unauthorized practice of law."  (Amended Complaint, ¶ 486).  In other words, not only is such allegation insufficient due to its conclusory nature, but it appears that the Trustee is no longer pursuing such theory as an alleged predicate act underlying her conspiracy claims.  Further, despite being on ample notice, and having had well over a year to come up with facts to allege damages specifically flowing from the unauthorized practice of law, the Trustee does not allege one wit of such a damage allegation.  Such claims and theories should therefore be dismissed.

---

hearing on the same, in support of their request for dismissal of the conspiracy counts of the Amended Complaint.

[16] Part 6, Section I, 2 of the Rules of the Supreme Court of Virginia states that "[a] person or entity engages in the practice of law when representing to another, by words or conduct, that one is authorized to do any of the following:

    A. Undertake for compensation, direct or indirect, to give advice or counsel to an entity or person in any matter involving the application of legal principles to facts.
    B. Select, draft or complete legal documents or agreements which affect the legal rights of an entity or person.
    C. Represent another entity or person before a tribunal.
    D. Negotiate the legal rights or responsibilities on behalf of another entity or person.

**D.    The Trustee's Claims for Alleged Conspiracies Between Mr. LeClair and the ULX Entities in Counts XXIV and XXX Also Fail to Allege Predicate Acts**

As noted in Defendants' previous Motion to Dismiss, to state a claim for common law conspiracy (Count X), the Trustee must allege that "two or more persons combined to accomplish, by some concerted action, an unlawful purpose or some lawful purpose by unlawful means." *In re James River Coal Co.*, 360 B.R. 139, 174-75 (Bankr. E.D. Va. 2007). Similarly, a claim for Virginia statutory conspiracy (Count XI) requires a showing of "(1) two or more persons combining, agreeing, or mutually undertaking to (2) willfully and maliciously injure another in his reputation, trade, business or profession." *Id.* at 175. A claim of civil conspiracy, however, is not actionable in its own right and instead requires a predicate unlawful act. *See La Bella Dona Skin Care, Inc. v. Belle Femme Enterprises, LLC*, 805 S.E.2d 399, 406 (Va. 2017). "'The gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use unlawful means.'" *Id.* at 405-06 (quoting *Gallop v. Sharp*, 19 S.E.2d 84, 86 (Va. 1942)). The Trustee's new claims of Mr. LeClair and the ULX Entities conspiring to injure the Debtor lack actionable predicate acts.

In Paragraphs 518 and 529, the Trustee alleges that "[t]he unlawful, illegal, and/or oppressive acts [underlying the conspiracy claims] include, but are not limited to,"

(i)     misappropriation of the Debtor's assets and back-office work force;

(ii)    misusing confidential information for their own personal gains and benefits;

(iii)   misappropriating trade secrets and client relationships that belonged to LeClairRyan;

(iv)    misrepresenting to one or more of the LCR Officer and Directors the potential benefits of the ULXP benefits of the ULXP joint venture; and/or

(v)     making misleading or false statements to professional consultants.

None of the foregoing, however, suffice as requisite predicate acts.  First, as noted above, the Debtor's assets and back-office work force were properly transferred to the joint venture through the governing agreements, including the Contribution Agreement.  Similarly, the use of such assets and back-office work force, or any other alleged confidential information, was permitted by the same agreements.  Second, allegations of misappropriating trade secrets and client relationships are inadequate because, as noted in Section A above, the Trustee fails to identify any of the alleged information at issue or the improper means through which it was allegedly acquired.  And finally, as noted in Section C above, the Court has already ruled in the Motion to Dismiss Opinion that "making misleading or false statements to professional consultants" is not unlawful.  (Motion to Dismiss Opinion, p.19).  In light of the foregoing, Counts XXIX and XXX should be dismissed.

## RESERVATION OF RIGHTS

Pursuant to Fed. R. Bankr. P. 7012(b), Defendants respectfully state that they do not consent to the entry of final orders or judgment by the Bankruptcy Court.

## CONCLUSION

WHEREFORE, Defendants respectfully request that the Court grant this Motion to Dismiss, and dismiss Counts XXIII (Misappropriation of Trade Secrets Under the Virginia Uniform Trade Secrets Act), XXIV (Breach of Fiduciary Duty), XXVII (Statutory Conspiracy), XXVIII (Common Law Conspiracy), XXIX (Statutory Conspiracy), and XXX (Common Law Conspiracy) of the Amended Complaint, and grant such other relief as may be just and proper.

Dated:  August 25, 2021                              Respectfully submitted,

                                                    /s/ Thomas J. McKee, Jr.
                                                    Thomas J. McKee, Jr. (VSB No. 68427)
                                                    David G. Barger (VSB No. 21652)
                                                    Greenberg Traurig, LLP
                                                    1750 Tysons Boulevard, Suite 1000
                                                    McLean, Virginia 22102
                                                    Telephone: (703) 749-1300
                                                    Facsimile: (703) 749-1301
                                                    Email: mckeet@gtlaw.com
                                                            bargerd@gtlaw.com

                                                    and

                                                    J. Gregory Milmoe (admitted pro hac vice)
                                                    Greenberg Traurig, LLP
                                                    One International Place, Suite 2000
                                                    Boston, MA 02110
                                                    Telephone: (617) 310-6064
                                                    Email:  milmoeg@gtlaw.com

                                                    *Counsel to Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of August, 2021, I caused a true and correct copy of *Defendants' Motion to Partially Dismiss the First Amended Complaint* to be served on Ms. Lynn L. Tavenner, as the Chapter 7 Trustee of LeClairRyan PLLC, c/o Quinn Emanuel Urquhart & Sullivan LLP, as the Trustee's special litigation counsel, via electronic mail to: Erika L. Morabito (erikamorabito@quinnemanuel.com) and Brittany J. Nelson (brittanynelson@quinnemanuel.com).  I further certify that I caused a true and correct copy of the foregoing to be served on Gary D. LeClair c/o Gentry Locke, via electronic mail to: William A. Broscious (wbroscious@brosciouslaw.com, J. Scott Sexton (sexton@gentrylocke.com) and Andrew M. Bowman (bowman@gentrylocke.com).

/s/ Thomas J. McKee, Jr.
Thomas J. McKee, Jr. (VSB No. 68427)
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Telephone:  (703) 749-1300
Facsimile:   (703) 749-1301
Email: mckeet@gtlaw.com

*Counsel to Defendants*