J. Scott Sexton (VSB No. 29284)
Andrew M. Bowman (VSB No. 86754)
GENTRY LOCKE
P.O. Box 40013
Roanoke, Virginia 24022
Telephone:    540.983.9300
Email:    sexton@gentrylocke.com
              bowman@gentrylocke.com

William A. Broscious (VSB No. 27436)
William A. Broscious, Esq., PLC
P.O. Box 71180
Henrico, Virginia 23255
Telephone:    804.533.2734
Email:    wbroscious@brosciouslaw.com

*Counsel for Gary D. LeClair*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| In re:<br><br>**LeClairRyan, PLLC,**<br><br>Debtor. | **Case No.: 19-34574-KRH**<br><br>**Chapter 7** |
| **Lynn L. Tavenner, as Chapter 7 Trustee,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**ULX Partners, LLC, ULX Manager, LLC, UnitedLex Corporation, and Gary LeClair**<br><br>**Defendants.** | **Adv. Proc. No.: 20-03142-KRH** |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## GARY D. LECLAIR'S MOTION TO DISMISS

Gary D. LeClair ("GDL"), by counsel, pursuant to Local Rule 9013-1(G), files this

Memorandum of Points and Authorities in Support of his Motion to Dismiss pursuant to Federal

Rules of Civil Procedure 12(b)(6) and 12(b)(7), made applicable to adversary proceedings pursuant

to Federal Rule of Bankruptcy Procedure 7012(b).

29646/1/10094367v1

## SUMMARY OF ARGUMENT

Over 94 pages and 558 paragraphs of allegations, the Amended Complaint contains dozens of false and misleading statements attempting to manufacture a conspiracy involving GDL, the purpose of which was to destroy LeClairRyan, PLLC—the firm GDL founded, put his name to, and invested in personally, professionally, and financially for more than 30 years. These allegations defy human nature and logic, and are simply untrue. But for purposes of this Motion, we must accept well-pleaded factual allegations in the Amended Complaint, however specious they may be.

What the Amended Complaint lacks in factual basis, it also lacks in legal merit. The Trustee asserts conspiracy claims this Court has previously dismissed, breach of fiduciary duty claims that are barred by the statute of limitations (and a release), and various state law claims that do not state the elements of a cause of action under Virginia law. In the wake of this Court's July 2021 ruling, the Trustee has alleged a new Virginia state law claim for misappropriation of trade secrets—but she failed to recognize that the Supreme Court of Virginia has expressly rejected such a claim where, as here, the alleged trade secrets are conveyed by contract.

The Trustee's bankruptcy preference and avoidance claims fare no better. The Trustee seeks to claw back ordinary salary and benefits payments (compensation that every other employee received), mandatory, non-discretionary stock dividends (purchased over a decade ago), and payments to a third party for a life insurance policy that inured only to the Firm's benefit (not GDL's).

For these reasons, as set forth below, the Court should dismiss Counts X - XIX, XXIII, XXVI, and XXIX – XXXI.

2

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), made applicable to

adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7012(b), tests the legal

sufficiency of the allegations in the complaint. *See Harrison v. Westinghouse Savannah River Co.*,

176 F.3d 776, 783 n.5 (4th Cir. 1999). The Federal Rules of Civil Procedure require "a short and

plain statement of the claim showing the pleaded is entitled to relief, in order to give the defendant

fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (quotation and alteration omitted). The complaint must contain "more

than labels and conclusions." *Id.* Moreover, "only a complaint that states a plausible claim for

relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

All properly pled facts must be taken as true and in the light most favorable to the plaintiff.

*See United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir.

2013); *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 212 (4th Cir. 2019). "Legal

conclusions enjoy no such deference." *Lucas v. Henrico Cnty. Pub. Sch. Bd.*, No. 3:18-cv-402-

HEH, 2019 U.S. Dist. LEXIS 193385, at *5 (E.D. Va. Nov. 6, 2019).

In addition to properly pled facts in the operative complaint, "it is well established that a

document attached to a motion to dismiss may be considered when evaluating a motion to dismiss

if the document was 'integral to the complaint and authentic.'" *Goines v. Valley Cmty. Servs. Bd.*,

822 F.3d 159, 164 (4th Cir. 2016) (quoting *Sec'y of State for Def. v. Trimble Nav. Ltd.*, 484 F.3d

700, 705 (4th Cir. 2007)). A document is integral where is explicitly relied on in the complaint.

*Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004). "[I]n the event of

conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit

3

prevails." *Goines*, 822 F.3d at 166. The court may also consider public records and other matters of which it may take judicial notice. *Walker v. Serv. Corp. Int'l*, No. 4:10CV00048, 2011 U.S. Dist. LEXIS 39856, at *10-11 (W.D. Va. Apr. 12, 2011).

## FACTUAL BACKGROUND

### GDL's employment with the Debtor.

GDL founded the Debtor in 1988 along with Dennis Ryan.[1] GDL served as the Debtor's CEO until June 30, 2011.[2] GDL's 23 year tenure was marked by disciplined financial management—the firm met (and often exceeded) its financial objectives every year, while having low debt and high cash balances. After stepping down as CEO, GDL served as Chair through December 31, 2015.[3] This was a non-management role, focusing on attorney mentorship, community service, and business development; GDL had no signatory or personnel authority as Chair. GDL's term on the Debtor's Board of Directors (the "Board") concluded on January 31, 2016.[4] Thereafter, GDL was not an officer or Board member. While GDL remained a shareholder, he had no management authority or leadership role whatsoever—he did not even serve on any committees.

---

[1] *See* Am. Compl. ¶ 34.

[2] *See* Am. Compl. ¶ 23.

[3] *See* Am. Compl. ¶ 23.

[4] *See* Debtor's 2016 Annual Report filed with the Virginia State Corporation Commission (attached as **Exhibit 1**).

4

Initially, the Debtor operated as a Virginia professional corporation.[5] As a professional

corporation, it operated in accordance with its articles of incorporation.[6] In March 2018, the

Debtor converted to a professional limited liability company ("PLLC").[7] As a PLLC, the Debtor

was governed by its operating agreement.[8] This conversion took place more than two years after

GDL was no longer involved in management of the Debtor.

**GDL purchased the Debtor's preferred stock.**

As a professional corporation, the Debtor's shareholders owned voting common stock.[9]

Beginning in July 2008, the shareholders approved the issuance of preferred stock. Shares of

preferred stock carried mandatory, non-discretionary dividend obligations, initially at a rate of 8%

per annum.[10]

On December 3, 2009, the Debtor and GDL entered into a Subscription Agreement,[11]

whereby GDL agreed to purchase 125 shares of preferred stock in five annual installments of 25

shares each from 2009 through 2014. GDL purchased additional shares of preferred stock in May

2010, May 2011, January 2012, February 2013, December 2013, and March 2016. The purchase

---

[5] Virginia State Corporation Commission, LeClairRyan, A Professional Corporation,
https://cis.scc.virginia.gov/EntitySearch/BusinessInformation?businessId=1140&source=FromEntityResult&isSeries%20=%20false

[6] A copy of the Second Amended Articles of Incorporation, dated February 20, 2014, is attached as **Exhibit 2**.

[7] Virginia State Corporation Commission, LeClairRyan PLLC,
https://cis.scc.virginia.gov/EntitySearch/BusinessInformation?businessId=1002296&source=FromEntityResult&isSeries%20=%20false

[8] A copy of the Fourth Amended and Restated Shareholders Agreement of LeClairRyan, a Professional Corporation,
and Operating Agreement of LeClairRyan, PLLC is attached as **Exhibit 3**.

[9] **Ex. 3**, at 2.

[10] **Ex. 3**, at 3 (Article V(1.1)). The Debtor subsequently reduced preferred stock dividends to 4% per annum, and
then zero.

[11] A copy of the Subscription Agreement is attached as **Exhibit 4**.

of preferred stock gave rise to the Debtor's mandatory, non-discretionary dividend payments to GDL set forth on Exhibit 3 to the Amended Complaint.[12]

### The Debtor's Banner Life Policy on GDL

On December 12, 2011, the Debtor, with Board approval, purchased a "key person" life insurance policy (Policy No. 180508796) on GDL through Banner Life Insurance Company  (the "Banner Life Policy").[13] The Debtor was the owner of the Banner Life Policy.[14] The Debtor was also the beneficiary under the Banner Life Policy.[15] The Debtor paid the premiums on the Banner Life Policy directly to Banner Life. GDL did not receive these premium payments, nor did he receive the benefit from a claim under the Policy. After GDL's resignation, it was allowed to lapse.

### The Debtor's Supplemental Retirement Plan

In 2004, the Debtor implemented a supplemental retirement plan (the "SR Plan") for its shareholders, including GDL.[16] The SR Plan contained two accounts—a deferral account and a secular trust—with the primary difference being vesting.[17]

The deferral account held a participant's unvested contributions.[18] The Debtor maintained rights over a participant's deferral account (*i.e.*, the unvested contributions), which were subject

---

[12] *See* ECF No. 86-3, at 1.

[13] *See* ECF No. 86-3, at 1.

[14] A copy of the Banner Life Policy is attached as **Exhibit 5**.

[15] **Ex. 5**.

[16] A copy of the SR Plan is attached as **Exhibit 6**.

[17] **Ex. 6**, at 14.

[18] **Ex. 6**, at 3; *see also* **Ex. 6**, at 14 (Section 4.06, "Deferral Account").

to the Debtor's general creditors.[19] The participant could not make withdrawals from the deferral account, and would forfeit such amounts if he/she left the Debtor's service prior to vesting.[20]

By contrast, the secular trust held a participant's vested contributions.[21] Unlike the deferral account, the Debtor did *not* maintain rights over a participant's secular trust (*i.e.*, vested contributions), which "shall <u>not</u> be subject to the claims of the Firm's general creditors."[22] As unvested contributions in a participant's deferral account became vested, they were added to the corpus of the participant's secular trust.[23] Participants were permitted to withdraw amounts held in his/her secular trust.[24]

As noted by the Trustee on Exhibit 3, GDL withdrew vested amounts from his secular trust on December 31, 2014; January 28, 2016; September 23, 2016; July 7, 2016; October 17, 2016; and January 19, 2017. The Debtor then elected to terminate the SR Plan effective December 31, 2017, at a time when GDL was not an officer or Board member. Upon termination of the SR Plan, the amounts in the deferral account became 100% vested and transferred to the secular trust.[25] On December 31, 2018. GDL's vested balance in the secular trust was paid to him (like every other participant in the SR Plan).

---

[19] **Ex. 6**, at 20 (Section 8.02, "Supplemental Retirement Plan Trust").

[20] **Ex. 6**, at 18 (Section 6.06, "Forfeitures").

[21] **Ex. 6**, at 7; *see also* **Ex. 6**, at 14 (Section 4.07, "Secular Trust").

[22] **Ex. 6**, at 20-21 (Section 8.03, "Secular Trusts") (emphasis in original).

[23] **Ex. 6**, at 18 (Section 6.05, "Vested Account Balance Transfer").

[24] **Ex. 6**, at 16 (Section 6.02(a), "Withdrawals").

[25] **Ex. 6**, at 22 (Section 9, "Amendment and Termination") ("Upon termination of the Plan, distribution of any portion of the Deferral Account balance . . . shall be made to Participants and beneficiaries in the manner and at the time described in Section 6.05 ["Vested Account Balance Transfer"].").

**The Debtor Breached GDL's Soft Landing Contract**

As the Debtor grew and expanded with additional offices, so did the demands on management. By 2004, the Debtor was planning for growth, which required a plan that would encourage leaders to allocate more time away from their law practices and instead focus on leadership. In 2005, the Strategy Committee recommended the formation of a written leadership compensation policy. The Board formed a 7-shareholder Ad Hoc Committee to develop and recommend such a policy, with the assistance of an industry consultant. The result was the August 1, 2005 Extraordinary Leadership Compensation Policy, which was approved by the Board and shareholders. In 2007, the Board requested that GDL—one of the Debtor's top producers—agree to devote his full-time efforts towards firm management, acknowledging that such a commitment would result in the atrophy in his legal skills and network of referral sources. GDL agreed to serve in that capacity, but only through September 30, 2010, reflecting GDL's desire to step down from such roles at age 55, return to the full time practice of law, and retire in 2022 (age 67). Consistent with the Debtor's Extraordinary Leadership Compensation Policy, the Debtor's Board approved a Soft Landing Contract with GDL ("SLC") dated December 31, 2007. The SLC was thereafter amended on five occasions—each of which were approved by the Debtor's Board—reflecting concessions by GDL. One such concession by GDL allowed the Debtor to take a loan against the cash value of a Northwestern Mutual Life ("NML") insurance policy held in his deferred compensation account, and use it to fund operations.

8

The Fifth Amendment to the SLC was executed on December 28, 2016.[26] This amendment is notable in three respects. *First*, GDL agreed to reduce his compensation by approximately $1.8 million through its remaining term.[27] *Second*, the Debtor agreed to repay the loan on GDL's NML policy by April 30, 2018.[28] *Third*, the amendment contained broad mutual release provisions (the "Release").[29]

The Debtor breached its obligation to repay the loan on the NML policy by April 30, 2018.[30] The Debtor and GDL attempted to resolve that breach until March 14, 2019, when the Debtor terminated discussions. On March 22, 2019, GDL issued a Forbearance Memo to the Debtor's CEO, COO, and general counsel, stating that he was entitled to immediately terminate employment with the Debtor but would refrain from doing so and continue working on a month-to-month basis in exchange for the Debtor's monthly repayment of the NML Loan.[31] Thereafter, GDL continued to work, and the Debtor made payments on the NML Loan. GDL provided value to the Debtor on a monthly basis – with his 2019 seven month running total of collected fees (*i.e.*, cash to the Debtor) of $1,405,172.60 (*i.e.*, an average of over $200,000 per month).[32]

---

[26] *See* Am. Compl. ¶ 264. A copy of the Fifth Amendment to the SLC is attached as **Exhibit 7**.

[27] **Ex. 7**, Addendum A.

[28] **Ex. 7**, at 4.

[29] **Ex. 7**, at 4-6.

[30] *See* Am. Compl. ¶ 258. A copy of the Forbearance Memo is attached as **Exhibit 8**.

[31] *See* Am. Compl. ¶ 258; **Ex. 8**, at 1.

[32] A copy of GDL's 2019 production statistics are attached as **Exhibit 9**.

## **ARGUMENT**

I.     **The Trustee fails to state a claim for avoidance of Release under 11 U.S.C. § 548 and 550 (Count XIV).**

Count XIV seeks to avoid the Release pursuant to Section 548(a)(1)(B) of the Bankruptcy Code. *See* Am. Compl. ¶ 404. Section 548(a), however, only permits the Trustee to avoid transfers "made or incurred on or within 2 years before the date of the filing of the petition." 11 U.S.C. § 548(a). Since the Debtor filed for bankruptcy on September 3, 2019, Section 548(a) only permits the Trustee to avoid transfers occurring between September 3, 2017 and September 3, 2019.

While the Trustee alleges in Count XIV the Release was made within two (2) years prior to the Petition Date, (Am Compl. ¶ 404), this is obviously incorrect because the Trustee also alleges the date of the Release – December 28, 2016. *See* Am. Compl. ¶ 264. Because the Release was executed outside the 2 year period set forth in Section 548(a), Count XIV fails to state a claim for avoidance of the Release.

II.    **The Trustee fails to state a claim for avoidance of the Release under 11 U.S.C. § 544(b) and 550 (Count XV).**

Count XV seeks to avoid the mutual Release pursuant to Section 544(b) of the Bankruptcy Code. *See* Am Compl. ¶ 420. Accordingly, Virginia state law applies. *See In re Hartman Paving, Inc.*, 745 F.2d 307, 309 (4th Cir. 1984). Virginia law provides for two types of fraudulent transfers: actual fraudulent transfers under Va. Code § 55.1-400, and constructive fraudulent transfers under Va. Code § 55.1-401.[33] The Trustee has not specified whether Count XV is an actual or constructive fraudulent transfer claim, but she has failed to state a claim under either.

---

[33] The applicable Virginia state law statutes are Virginia Code §§ 55-80 (actual fraudulent conveyances) and 55-81 (constructive fraudulent conveyances). On March 21, 2019, the Virginia legislature enacted Senate Bill 1080, which

10

A.      **The Trustee fails to state a claim for actual fraudulent transfer under Va. Code § 55.1-400.**

Virginia's actual fraudulent transfer statute allows avoidance of any transfer where (1) "the grantor intended to delay, hinder or defraud his creditors, and (2) the grantee had notice of the grantor's fraudulent intent." *La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 294 Va. 243, 254 (2017). Virginia recognizes six scenarios where a grantor's fraudulent intent may be presumed (*i.e.*, Virginia's "badges of fraud"):

> (1) retention of an interest in the transferred property by the transferor; (2) transfer between family members for allegedly antecedent debt; (3) pursuit of the transferor or threat of litigation by his creditors at the time of the transfer; (4) lack of or gross inadequacy of consideration for the conveyance; (5) retention or possession of the property by transferor; and (6) fraudulent incurrence of indebtedness after the conveyance.

*Id.* (quoting *Fox Rest Assocs., L.P. v. Little*, 282 Va. 277, 285 (2011)).

Insolvency is not a badge of fraud under Virginia law. *See Shoemaker v. Chapman Drug Co.*, 112 Va. 612, 614 (1911) ("Conceding the relationship of the parties and the insolvency of the grantor, these conditions do not of themselves constitute badges of fraud."); *Grayson v. Westwood Bldgs., L.P.*, 859 S.E.2d 651, 674 (Va. 2021) ("Even if both [defendants] were insolvent at the

---

repealed Title 55 of the Code of Virginia and replaced it with the new Title 55.1. Section 5 of Senate Bill 1080 provides that the repeal of Title 55 is ***not*** retroactive. *See* 2018 Va. SB 1080 § 5 ("That the repeal of Title 55 and § 18.2-324.1, effective as of October 1, 2019, shall not affect any act or offense done or committed, or any penalty incurred, or any right established, accrued, or accruing on or before such date, or any proceeding, prosecution, suit, or action pending on that day. Except as otherwise provided in this act, neither the repeal of Title 55 nor the enactment of Title 55.1 shall apply to offenses committed prior to October 1, 2019, and prosecution for such offenses shall be governed by the prior law, which is continued in effect for that purpose. For the purposes of this enactment, an offense was committed prior to October 1, 2019, if any of the essential elements of the offense occurred prior thereto.") Thus, Virginia Code §§ 55-80, 55-81 apply to alleged offenses that occurred on or before October 1, 2019, and Virginia Code §§ 55.1-400, 55.1-401 apply to alleged offense that occurred on or after October 2, 2019. Despite this distinction, these statutes are the substantively identical.

11

time of the alleged transfers, we need not cite authority to show that in this state it is lawful for a

debtor, ***though insolvent***, to prefer certain of his creditors . . . and that such preference is neither

fraudulent per se ***nor a badge of fraud***[.]") (emphasis added) (quotation omitted).

Here, the Trustee has not pled a single badge of fraud recognized under Virginia law. The

Trustee has not pled (and cannot plead) that the Debtor (1) retained an interest in the Release; (2)

had a familial relationship with GDL; (3) acted under a threat of litigation by creditors; (5) retained

possession of the Release; or (6) incurred debt fraudulently after the transfer. Rather, the Trustee

seems to rely on the fourth badge of fraud (lack or gross inadequacy of consideration). *See* Am.

Compl. ¶ 412. But this allegation fails as a matter of law based on the terms of the Release, which

include the mutual exchange of promises. *See Price v. Taylor*, 251 Va. 82, 85 (1996) ("[T]he

mutual exchange of promises alone is sufficient to constitute consideration for the contract.").

Moreover, the Fifth Amendment to the SLC (containing the Release) reflects valuable monetary

consideration on its face through substantial compensation reductions—over $1.8 million in

reduced compensation over the term of the SLC. *See* **Ex. 6**. This is a far cry from grossly

inadequate consideration and merely reciting such a legal conclusion is insufficient for the Trustee

to state a claim for actual fraudulent transfer in Count XV.

**B.    The Trustee fails to state a claim for constructive fraudulent transfer under
Va. Code § 55.1-401.**

Virginia's constructive fraudulent transfer statute voids any transfer by an insolvent

transferor "that is not upon consideration deemed valuable in law." Va. Code Ann. § 55.1-401. As

this Court has recognized, the "requirement of consideration deemed valuable at law . . . is a

substantially lower standard than that required under 11 U.S.C. § 548(a)(1)(B)." *Arrowsmith v.*

*Lemberg Law, LLC (In re Health Diagnostics Lab., Inc.)*, 571 B.R. 182, 197 (Bankr. E.D. Va.

2017) (quoting *In re LandAmerica Fin. Grp., Inc.*, No. 10-03819-KRH, 2014 Bankr. LEXIS 2213,

at *5 (Bankr. E.D. Va. May 19, 2014)). Known as the "peppercorn theory," "if something is gained,

that is enough to prevent avoidance of the transaction under Virginia Code §55-81," the

predecessor statute to Virginia Code Ann. § 55.1-401. *Id.* (internal alteration omitted).

Virginia law recognizes that "the mutual exchange of promises" is sufficient consideration.

*See Price*, 251 Va. at 85. The Release plainly meets this standard—it is a mutual release wherein

GDL released the Debtor, and the Debtor released GDL. *See* **Ex. 6**. This mutual exchange of

promises is consideration deemed valuable in law. For this reason, the Trustee has failed to state a

claim for constructive fraudulent transfer in Count XV.

### III.     The Trustee fails to state a claim for conversion (Count XVII).

#### A.     Trustee's conversion claim is barred by GDL's Release.

Even assuming the Trustee can state a viable claim for conversion—and she cannot—the

Trustee's claim is barred by the Release. The Trustee alleges GDL converted the "Contingent

Income Payments." *See* Am. Compl. ¶¶ 432-35. The Debtor made these payments in 2014, 2015,

and 2016. *See* Am. Compl. ¶ 92. All such payments occurred before December 28, 2016, the date

of the Release. *Compare* Am. Compl. Ex. 3, *with* Am. Compl. ¶ 264. Accordingly, the Trustee's

conversion claim relating to such payments is barred by the Release. *See, e.g.*, *Jeffrey M. Brown*

*Assocs. v. Rockville Ctr., Inc.*, 7 Fed. Appx. 197, 206 (4th Cir. 2001) (affirming district court's

dismissal of conversion claim pursuant to Rule 12(b)(6) because the claim was barred by a release).

13

### B.    Trustee cannot plead a claim for conversion.

To properly plead a claim for conversion under Virginia law, the Trustee must allege: "(1) the ownership or right to possession of the property at the time of the conversion; and (2) the wrongful exercise of dominion or control by the defendant over the plaintiff's property, thus depriving the plaintiff of possession." *Gyetvay v. Hooper*, Case No. 4:20-cv-78, 2020 U.S. Dist. LEXIS 151860, at *17 (E.D. Va. Aug. 20, 2020). The gravamen of a conversion claim is "***the taking of personal property***." *Id.* at *16-17. The "voluntary relinquishment" of that property precludes a claim for conversion. *Id.* at *18 (holding the plaintiff's voluntary payment of $150,000 to the defendant precluded her from asserting a claim for conversion of those funds).

The Trustee alleges the Debtor approved the Contingent Income Payments to GDL and other shareholders. *See* Am. Compl. ¶¶ 77-78, 92. She does not allege the Debtor did not act voluntarily, nor can she as the payments were approved by the Debtor's 13-person Board and a majority vote of the Debtor's shareholders (which consisted of over 100 highly skilled lawyers). *See* Am. Compl. ¶¶ 77-78. The Trustee does not allege that GDL stole the Contingent Income Payments, and she alleges absolutely no wrongful taking by GDL. Rather, the Debtor freely, voluntarily, and willingly made the payments to GDL and numerous other shareholders. Such conduct precludes the Trustee's claim for conversion. *See Gyetvay*, 2020 U.S. Dist. LEXIS, at *18.

## IV.    <u>The Trustee fails to state a claim for unjust enrichment (Count XVIII).</u>

### A.    Trustee's unjust enrichment claim is barred by GDL's Release.

The Trustee also seeks damages for the Contingent Income Payments under a theory of unjust enrichment. Even assuming, the Trustee can state a viable claim for unjust enrichment —

14

and, again, she cannot—the Trustee's claim is barred by the Release, for the reasons discussed in Section III(A), *supra*. The Court should dismiss Count XVIII with prejudice.

### B.      Trustee cannot plead a claim for unjust enrichment

A claim for unjust enrichment under Virginia law has three elements: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit and should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value. *See Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116 (2008). Such situations ordinarily arise when a person accepts property or receives services from another without paying for their value. *See, e.g.*, *Po River Water & Sewer Co. v. Indian Acres Club*, 255 Va. 108, 114 (1998). The law, then, gives effect to an implied contract (a quasi-contract) whereby the recipient of the goods or services must make reasonable compensation therefor. *Id.*

In Virginia, "[o]ne may not recover under a theory of implied contract simply by showing a benefit to the defendant, without adducing other facts to raise an implication that the defendant promised to pay the plaintiff for such benefit." *Nedrich v. Jones*, 245 Va. 465, 476 (1993); *see also Schmidt*, 276 Va. at 116. Therefore, a party's failure to allege a promise to repay is fatal to a claim for unjust enrichment. *See, e.g.*, *Schmidt*, 276 Va. at 116 (dismissing unjust enrichment claim where plaintiff failed to allege a promise to repay).

Here, the Trustee has not alleged that GDL promised to repay the Contingent Income Payments, nor has she pled facts from which such a promise may be inferred. The Trustee cannot state a claim for unjust enrichment under Virginia law. For this independent reason, the Court should dismiss Count XVIII with prejudice.

15

**V.    The Trustee fails to state a claim for misappropriation of trade secrets under the Virginia Uniform Trade Secrets Act (Count XXIII).**

A claim under the Virginia Uniform Trade Secrets Act ("VUTSA") requires a showing that a trade secret was "misappropriated." Va. Code Ann. § 59.1-338. VUTSA defines "misappropriation" as consisting of three types of acts: acquisition, disclosure or use. *See* Va. Code Ann. § 59.1-336. Where the trade secret was acquired or learned through "improper means," any of these three acts may constitute misappropriation. *See* Va. Code Ann. § 59.1-336. Absent "improper means," misappropriation requires disclosure or use, without express or implied consent, after acquisition in violation of a duty to maintain secrecy, or by accident or mistake. *See* Va. Code Ann. § 59.1-336.

The Trustee's vague and conclusory allegations seem to suggest two types of misappropriation: (A) the ULX Entities' acquisition by improper means; and (B) GDL's disclosure without consent. The Trustee has failed to plead both types of misappropriation claims.

**A.    The Trustee has failed to plead improper means.**

VUTSA defines "improper means" as "theft, bribery, misrepresentation, use of a computer or computer network without authority, breach of a duty or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." Va. Code Ann. § 59.1-336. The complaint must specifically identify the improper means allegedly employed; the "naked assertion" of improper means, "devoid of further factual enhancements," is not enough. *All Bus. Sols., Inc. v. NationsLine, Inc.*, 629 F. Supp. 2d 553, 558-59 (W.D. Va. 2009) (granting motion to dismiss VUTSA claim where plaintiff failed to provide any factual support for its misappropriation allegation).

16

Here, the Trustee has forgone such requirements, simply alleging: "The ULX Entities knew or had reason to know that the Debtor's trade secrets had been acquired by improper means." Am. Compl. ¶ 481. The Trustee does not identify what improper means were allegedly employed. Her failure to specify the alleged "improper means," or provide any supporting facts, is fatal to the trade secret misappropriation claim. And the Trustee's own allegations belie her bald contention.

The purpose of the ULX transaction was to outsource the Debtor's back-office operations. Thus, as alleged by the Trustee, the Debtor was <u>required</u> to contribute its back-office operation to the outsourced services provider—a newly created entity with ULX—pursuant to the April 4, 2018 Contribution Agreement. *See* Am. Compl. ¶¶ 156, 169, 267. Specifically, Section 2.01(b) of the Contribution Agreement required the Debtor to contribute its intellectual property to the outsourced services provider. *See* ECF No. 88-5, at 5-6; *see also* ECF No. 88-5, at 27-32 (listing the intellectual property). There was no unlawful taking of the intellectual property—it was conveyed via contract.

The Supreme Court of Virginia has expressly held: "**[t]here can be no misappropriation where acquisition, disclosure, and use of a trade secret have been expressly authorized by contract.**" *Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 206-7 (2016). Thus, the Debtor's contribution of its intellectual property to the ULX joint venture under the Contribution Agreement cannot, as a matter of law, constitute misappropriation. For this reason alone, the Court should dismiss Count XXIII.

### B.    The Trustee has failed to plead disclosure.

Alternatively, the Trustee contends that GDL "caused the Debtor's trade secrets to be disclosed . . . without the Debtor's full knowledge and consent." Am. Compl. ¶ 480. However,

17

even if true, such disclosure does not constitute misappropriation because it was expressly authorized by the Contribution Agreement. *See id.*

But the Trustee's own allegations—and the facts—once again disprove this bald conclusion. No one contests that the Debtor disclosed its intellectual property pursuant to Section 2.01(b) of the Contribution Agreement. *See* ECF No. 88-5, at 5-6. And the Debtor disclosed the specific intellectual property in Appendix 1 to Schedule 2.01(b) of the Contribution Agreement— a list prepared by the Debtor's CEO, Erik Gustafson. *See* ECF No. 88-5, at 27-32 (listing the intellectual property). The Debtor's CEO also executed the Contribution Agreement—the agreement itself was prepared by the Debtor's Corporate Secretary, Dwight Hopewell.



*See* ECF No. 88-5. Additionally, the Debtor's Board and Shareholders each adopted a resolution approving of the ULX joint venture, including the Contribution Agreement. It defies imagination that the Debtor's Board (comprising 13 attorneys), its over 100 shareholders (all attorneys), and its CEO (also, an attorney) would all approve the execution of the Contribution Agreement without knowledge of its contents. The Court must reject any such implausible inferences. *See Davis v. White*, Case No. 4:16-cv-18, 2017 U.S. Dist. LEXIS 202584, at *11-12 (E.D. Va. Dec. 8, 2017). The Court should dismiss Count XXIII.

29646/1/10094367v1

**VI.**   <u>**The Trustee fails to state a claim for breach of fiduciary duty (Count XXVI).**</u>

**A.**   **The Trustee's alleged breaches of fiduciary duty occurring before September 3, 2017 are barred by the statute of limitations.**

The Trustee alleges that GDL breached certain fiduciary duties to the Debtor as Chairman of the firm. *See* Am. Compl. ¶ 494. GDL served as Chairman "through 2015." Am. Compl. ¶ 23. The statute of limitations on breach of fiduciary duty claims is two years. *Plumbers & Steamfitters Union Local No. 10 v. Waters*, 451 F. Supp. 3d 543, 550-51 (E.D. Va. 2020) (citing Va. Code Ann. § 8.01-284). Accordingly, the statute of limitations bars any breach of fiduciary duty claims arising out of conduct occurring on or before September 3, 2017—two years prior to the Debtor's Petition Date.

**B.**   **The Trustee's alleged breaches of fiduciary duty occurring before December 28, 2016 are also barred by the Release.**

Any claims for breach of fiduciary duty for anything through December 28, 2016 are also barred by the Release for the reasons discussed in Section III(B), *supra*. For this independent reason, the Court should dismiss Count XXVII with prejudice.

**C.**   **The Trustee substantively fails to state a claim for breach of fiduciary duty.**

The Trustee alleges that GDL breached fiduciary duties as a <u>shareholder and member</u> of the Debtor. *See* Am. Compl. ¶ 494. This claim, therefore, spans two discrete time periods: (1) the Debtor's status as a Virginia professional corporation through March 31, 2018; and (2) the Debtor's status as a professional limited liability company after March 31, 2018. *See* Am. Compl. ¶ 132. The Trustee has failed to state claims for breach of fiduciary duties during both periods.

19

1.     **GDL did not owe a fiduciary duty as a corporate shareholder of the Debtor.**

GDL was not an officer or director of the Firm during the relevant time periods. GDL ended

his tenure as Chairman on December 31, 2015, and his term on the Board ended on January 31,

2016. *See* Am. Compl. ¶ 23. From that date forward, GDL was merely a shareholder of the Firm,

a Virginia corporation.

The Supreme Court of Virginia has never recognized a cause of action for breach of

fiduciary duty against mere shareholders (*i.e.*, not officers and directors) of a corporation. On the

contrary, that Court has rejected the argument that shareholders owed a fiduciary duty to the

corporation, and has reversed attempts to impose such a duty. *See, e.g.*, *O'Hazza v. Exec. Credit

Corp.*, 246 Va. 111, 120 (1993) (holding "[n]either the record, ***nor the case law*** relied upon by the

trial court and by ECC, supports the trial court's holding that the [shareholders] breached a

fiduciary duty to the corporation.") (emphasis added); *see also Contract Assocs. v. Atalay*, Case

No. 1:14-cv-882, 2015 U.S. Dist. LEXIS 54822, at *4 (E.D. Va. Apr. 27, 2015) (expressly

rejecting such a claim, finding "it would be improper for this Court to fashion a new cause of

action under Virginia law in the first instance"); *Schnelling v. Crawford (In re James River Coal

Co.)*, 360 B.R. 139, 171 (Bankr. E.D. Va. 2007) (holding a former board member  "cannot be held

liable for board actions taken while not on the board"). Accordingly, the Court should dismiss

Count XXVI with prejudice.

2.     **GDL did not owe a fiduciary duty as LLC member of the Debtor.**

GDL was never a manager of the Debtor, as a PLLC. Section 9.01 of the Debtor's

Operating Agreement states that "the members of the Board shall be 'managers', as such term is

20

defined in the PLLC Act." *See* **Ex. 2**, at 59. GDL's term on the Debtor's Board ended on January

31, 2016—years prior to the Debtor's conversion to a PLLC. Accordingly, GDL was not a manager

of the Debtor on or after March 31, 2018, the date of conversion—GDL was merely a member of

the PLLC.

The Virginia Limited Liability Company Act dictates that managers (and only managers)

have a fiduciary duty of "good faith business judgment of the best interests of the limited liability

company." *See* Va. Code Ann. § 13.1-1024.1(A). This Court has observed: "[t]here is ***no such***

***provision concerning members*** of a limited liability company; therefore, unlike partnerships,

***there are no fiduciary obligations among members***." *KMK Factoring, L.L.C. v. McKnew (In re*

*McKnew)*, 270 B.R. 593, 628-29 (Bankr. E.D. Va. 2001) (emphasis added). Similarly, the Supreme

Court of Virginia has expressly held that LLC members do not owe fiduciary duties. *Remora Invs.,*

*L.L.C. v. Orr*, 277 Va. 316, 324 (2009) ("Nothing in the statutory provisions relating to L.L.C.s

provide for fiduciary duties between members of an L.L.C. or between a member and a manager

of an L.L.C.").

Virginia LLCs "are statutory creations, not common-law creations like partnerships." *In re*

*Garrison-Ashburn, L.C.*, 253 B.R. 700, 709 n.7 (Bankr. E.D. Va. 2000). The rights, duties, and

obligations of the LLC, its manager(s), or member(s), to the extent they exist, are set forth by

statute. If the Virginia legislature intended to impose a fiduciary duty on members of an LLC, it

would have enacted such a statutory provision. As this Court has held: "The absence of any

statutory fiduciary obligation of one member to another or to the company is significant." *Id.*

Accordingly, members do not owe fiduciary duties to the LLC. Indeed, they ***cannot*** have fiduciary

duties to the LLC because the Virginia LLC Act expressly authorizes members to transact business

with the LLC in the same manner, and with the "same rights and obligations . . . as a person who is not a member." *See* Va. Code Ann. § 13.1-1026. This is reflected in the Debtor's Operating Agreement, which provides that a member of the Debtor "shall not be liable to the [Debtor] or its Members for monetary damages." **Ex. 2**, § 9.09(a).[34]

There is no viable allegation of fiduciary duty in the Trustee's Amended Complaint. Accordingly, the Court should dismiss Count XXVI with prejudice.

## VII. The Trustee failed to state a claim for statutory conspiracy and common law civil conspiracy (Counts XXIX and XXX).

### A. The Trustee has not a plead a predicate unlawful act.

The gist of the Trustee's statutory and common law conspiracy claims is that GDL conspired with the ULX Entities and the Debtor's current officers and directors to extract money and property from the Debtor through outsourcing the firm's non-legal back office—which she equates to the malicious injury to the Debtor's business under Virginia's business conspiracy statute, Va. Code § 18.2-499 (Count XXIX), and which she claims was furthered by unlawful or illegal acts for a common law civil conspiracy (count XXX).[35] Both logic-defying efforts fail to state a claim.

---

[34] Prior to the March 31, 2018 conversion, Article VI(1) of the Debtor's Articles of Incorporation contained similar waivers, providing "a director or officer of the [Debtor] shall not be liable to the [Debtor] or its shareholders for monetary damages." Thus, hypothetically, even assuming the Trustee can state a claim for breach of fiduciary duty (she cannot), and assuming she develops supporting facts (there are none) and prevails at trial (she will not), the Trustee cannot recover any damages from GDL.

[35] The same claims are asserted against the ULX Parties for statutory conspiracy with then-current directors and officers (Count XXVII) and common law conspiracy (Count XXXVIII). The allegations in those counts precede and are incorporated by reference in Counts XXXIX and XXX. These claims are also asserted against CVC Capital Partners and various other individuals in a separate adversary proceeding. *See* Complaint at 31-34, *Tavenner v. CVC Capital Partners*, Adv. Proc. No. (Counts III and IV).

29646/1/10094367v1

As this Court has previously observed, a "claim for statutory conspiracy under Virginia law must allege (1) two or more persons combined, associated, agreed or mutually undertook together to (2) willfully and maliciously injur[e] another in his reputation, trade, business, or profession." ECF No. 57, at 17 (internal quotation omitted). "Likewise, a claim for common-law civil conspiracy must allege that two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means." *Id.*

> Importantly, a claim of civil conspiracy is not actionable in its own right. Instead, civil conspiracy is a mechanism for spreading liability among coconspirators for damages sustained as a result of an underlying act that is itself wrongful or tortious. **Consequently, an action for civil conspiracy will not lie unless the predicate unlawful act independently imposes liability upon the primary wrongdoer.** Only then can that liability be spread to the remaining coconspirators.

*Id.* (emphasis added). The failure to plead sufficient facts to establish the elements of a predicate act "would require the amended complaint be dismissed." *Walters v. McMahen*, 684 F.3d 435, 440 (4th Cir. 2012); *see, e.g.*, *Station #2, LLC v. Lynch*, 280 Va. 166, 175 n.8 (2010) (dismissing statutory conspiracy claim for failure to plead predicate unlawful act).

The Trustee has alleged the following predicate acts as the basis of both conspiracy claims:

i)   misappropriation of the Debtor's assets and back-office work force;

ii)  misusing confidential information for personal gains and benefits;

iii) misappropriating trade secrets and client relationships that belonged to LeClairRyan;

iv)  misrepresenting to one or more LCR Officers and Directors the potential benefits of the ULXP joint venture; and

23

v) making misleading or false statements to professional consultants.

*See* Am. Compl. ¶¶ 518; 529. None of the foregoing are "criminal or unlawful" predicate acts.

*First*, it is unclear what criminal or unlawful act the Trustee is alleging with respect to "misappropriation" of certain assets and personnel. Virginia has never recognized a crime or generalized tort of "misappropriation." To the extent the Trustee means misappropriation of trade secrets under VUTSA (which is duplicative of Count XXIII, discussed above, and other predicate acts), she has not alleged unlawful conduct. *See supra*, Section V; *Babcock & Wilcox Co.*, 292 Va. at 206 ("[t]here can be no misappropriation where acquisition, disclosure, and use of a trade secret have been expressly authorized by contract."). Additionally, the VUTSA preempts any other tort claims arising out of the trade secrets. *See* Va. Code Ann. § 59.1-341. To the extent the Trustee's "misappropriation" allegation means the tort of conversion (a claim she has not plead in this context), these assets were conveyed to the ULX joint venture pursuant to Section 2.10(a) of the Contribution Agreement. There can be no "wrongful exercise of dominion or control" where Debtor voluntarily contributed these assets to the ULX joint venture. *See Gyetvay*, 2020 U.S. Dist. LEXIS 151860, at *17-18.

*Second*, the Debtor expressly granted ULX access to its confidential information under Section 10.01(a) of the joint venture's operating agreement. *See* ECF No. 88-3, at 31-32. This is not unlawful. And despite 94 pages and 558 paragraphs of allegations, the Trustee has not identified what confidential information was accessed, how it was allegedly misused, or how ULX and—more importantly, GDL—received any personal gain or benefit. Such allegations are conspicuously absent.

24

*Third*, the Trustee's trade secrets allegations cannot constitute "misappropriation" under VUTSA, as discussed herein and in Section V, above.

*Fourth*, the Trustee has not plead a single allegation that GDL made a misrepresentation to one of the Debtor's officers or directors concerning the ULXP transaction. Under *Iqbal* and *Twombly*, GDL is entitled "fair notice" of the basis for the Trustee's (factually unsupported) allegation. Without more, this bare label and conclusion does not pass muster. *Bell Atl. Corp.*, 550 U.S. at 555 (2007).

*Finally*, this Court has previously held that making misleading or false statements to professional consultants is not an unlawful act." *See* ECF No. 57, at 19. This is the law of the case and "continue[s] to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983).

The Trustee has not alleged a single viable predicate act to support her far-fetched conspiracy claims. This is fatal to both her statutory conspiracy and common law conspiracy claims. *See Walters*, 684 F.3d at 440. Accordingly, the Court should dismiss Counts XXIX and XXX.

### B.  The intercorporate immunity doctrine bars the Trustee's recovery.

GDL was an employee and shareholder/member of the Debtor at the time of the alleged "conspiracy." *See* Am. Compl. ¶ 23. The Debtor was the principal, and GDL was its agent. *See* Am. Compl. ¶ 23. So too, the officers and directors of the Debtor were its agents. Under Virginia law, the principal and agent are treated as one unit for purposes of a conspiracy. *See Fox v. Deese*, 234 Va. 412, 428 (1997). Therefore, the Debtor, GDL, and the Debtor's officers and directors are treated as one entity – the Debtor – for purposes of conspiracy allegations. Accordingly, when she

25

alleges that ULX Parties conspired with GDL or the Debtor's officers and directors, she is alleging that the ULX Parties conspired with her. GDL's actions are those of the Debtor.

### C.     The doctrine of *in pari delicto* bars the Trustee's recovery.

Even if GDL's alleged actions are not deemed actions of the Debtor, the doctrine of *in pari delicto* "precludes a plaintiff who participated in the same wrongdoing as the defendant from recovering damages from that wrongdoing." *Grayson Consulting, Inc. v. Wachovia Sec., Inc. (In re Derivium Capital LLC)*, 716 F.3d 335, 367 (4th Cir. 2013). The Trustee "stands in the shoes of the debtor" and "is, of course, **subject to the same defenses** as could have been asserted against the debtor." *Id.* (emphasis in original). This includes the defense of *in pari delicto*. *Id.* ("we agree with the district court and bankruptcy court that Grayson's status as the trustee's assignee does not afford it protection from the application of *in pari delicto*").

Here, the Amended Complaint alleges that the Debtor was a party to the ULX Joint Venture, which was approved by the Debtor and executed by authorized representatives of the Debtor. *See* ECF No. 88-4, at 4 (Section 4(d) states: "the execution of this Agreement by its representative whose signature is set forth at the execution hereof has been duly authorized by all necessary corporate action of the Party"); *see also* ECF No. 88-5 (Section 3.02); *and* ECF No. 88-3, at 46.

To the extent the Trustee alleges GDL participated in this alleged conspiracy, so too did the Debtor. The doctrine of *in pari delicto* bars the Trustee from recovering damages from a conspiracy in which the Debtor participated. *Grayson Consulting, Inc.*, 716 F.3d at 367 (affirming bankruptcy court's dismissal of trustee's claims under doctrine of *in pari delicto*).

26

Having alleged that the Debtor itself participated in the "conspiracy" (and such facts being otherwise evident from the documents), *in pari delicto* bars the Trustee's claim. Accordingly, the Court should dismiss Counts XXIX and XXX.

## VIII.   <u>The Trustee has failed to state avoidance action claims.</u>

In Counts X, XI, XII, and XIII, the Trustee seeks to avoid 78 transactions related to GDL under various theories. The transactions are subdivided into seven groups: (A) premium payments for a Banner Life policy; (B) GDL's withdrawals under his supplemental retirement plan; (C) three payments towards the NML Loan; (D) GDL's member salary draws; (E) dividends paid on the Debtor's preferred stock; and (F) certain incentive compensation. The Trustee asserts one or more theories for each of these transactions: (1) avoidance of preferential transfers under Section 547(b) (Count XIII); (2) avoidance of actual fraudulent transfers under Section 548(a)(1)(A) (Count X); (3) avoidance of constructive fraudulent transfers under Section 548(a)(1)(B) (Count XI); and/or (4) avoidance of actual fraudulent transfers under Section 544(b) and Virginia Code § 55.1-400 (Count XII).

### A.   **The Trustee has not pled a "transfer" with respect to the Banner Life insurance premiums.**

In Counts X, XI, and XII, the Trustee asserts claims under Section 548(a), and 544(b) against GDL with respect to the premiums paid by the Debtor to Banner Life Insurance Company. However, the Trustee has failed to plead a necessary predicate for these claims: a transfer to GDL.

Sections 548(a) and 544(b) of the Bankruptcy Code each require a "transfer." *See* 11 U.S.C. § 548(a)(1) ("The trustee may avoid any transfer . . ."); 11 U.S.C. § 544(b) ("the trustee may avoid any transfer . . ."). This requires a transfer from the Debtor to the defendant, here GDL, or for his

27

benefit. *See Ivey v. Swofford (In re Whitley)*, 463 B.R. 775, 780 (Bankr. M.D.N.C. 2012) ("Plaintiff must show that Defendant received a transfer of an interest of the Debtor.").

Here, the Debtor's payments under the Banner Life Policy were made to Banner Life Insurance Company. GDL was not a recipient of these payments, nor was he a beneficiary of these payments—the Debtor was the owner and beneficiary on the policy. *See* **Ex. 4.** Accordingly, the Trustee has failed to plead a necessary predicate to a claim under Sections 548(a)(1) and 544(b)— a transfer ***to GDL***. The Trustee has not, and cannot, state a claim against GDL to avoid the Banner Life premium payments.

> **B.     The Trustee has not pled "an interest in the debtor in property" was transferred with respect to the December 31, 2018 SR Plan distributions.**

In Counts X, XI, XII, and XIII, the Trustee asserts claims under Sections 547(b), 548(a)(1)(A), 548(a)(1)(B), and 544(b) against GDL with respect to the distributions of vested balance from the SR Plan's secular trust. However, the Trustee has failed to plead a necessary predicate for these claims: a transfer of the Debtor's property.

Sections 547(b), 548(a)(1)(A), 548(a)(1)(B), and 544(b) each provide that the Trustee may only avoid a transfer "of an interest of the debtor." *See* 11 U.S.C. § 547(b); *see also* 11 U.S.C. § 548(a)(1) ("any transfer . . . of an interest of the debtor"); 11 U.S.C. § 544(b). As this Court has held, however, the assets of a debtor's retirement plan—particularly, a plan operating as a secular trust—is not property of the debtor. *See In re Springfield Furniture, Inc.*, 145 B.R. 520, 528 (Bankr. E.D. Va. 1992).

Here, GDL was paid the vested balance from the SR Plan on December 31, 2014; January 28, 2016; September 23, 2016; July 7, 2016; October 17, 2016; January 19, 2017; and December

28

31, 2018. Each of these transfers originated from the secular trust—a separate legal entity. *See* **Ex. 5**, at 20-21 (Section 8.03, "Secular Trusts"). The payment GDL received was, therefore, not the Debtor's property; it was *his* property held within the secular trust. The Trustee cannot avoid these payments because they were not a transfer "of an interest of the debtor" as required by Sections 547(b), 548(a)(1)(A), 548(a)(1)(B), and 544(b). For this reason, the Trustee has failed to state a claim to avoid the SR Plan withdrawals.

**C.    The Trustee cannot state a claim under Sections 547(b) and 548(a)(1)(B) for the NML Loan repayments.**

**1.    The Trustee has failed to plead that GLD was an "insider"**

The Trustee alleges that GDL was an "insider" and, therefore, is subject to the one year lookback period under Section 547(b)(4)(B). The Trustee's asserts two bases: that GDL was a statutory insider—*i.e.*, the "managing agent of the Debtor;" and that GDL was a "non-statutory insider." *See* Am. Compl. ¶¶ 386-87. Both fail.

As an initial matter, the Amended Complaint alleges zero factual details pertaining to how GDL was purportedly a "non-statutory insider." To adequately allege "non-statutory insider" status, the Amended Complaint must allege facts showing "the alleged insider [] exercise[d] sufficient authority and control over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets." *Arrowsmith v. Mallory (In re Health Diagnostic Lab, Inc.)*, 2017 Bankr. LEXIS 2230, at *63-4 (Bankr. E.D. Va. Aug. 9, 2017). Nothing of the sort is alleged in the Amended Complaint, nor could it be. The Amended Complaint simply slaps the "insider" label on GDL without regard for any factual predicate. But the "mere labeling of transferees as insiders is not enough to establish a reasonable inference of insider status." *Angell v. BER Care,*

29

*Inc. (In re Caremerica, Inc.)*, 409 B.R. 737, 753 (Bankr. E.D.N.C. 2009). The Trustee must allege

"facts showing that the alleged relationship is plausible." *Id.* The Trustee has failed to meet her

pleading burden. Indeed, the Trustee cannot—the March 22, 2019 Forbearance Memo clearly

shows the Debtor freely rejected GDL's proposals in 2018 and 2019. *See* **Ex. 8**, at 1 ("The Firm

and I have not been able to reach an agreement regarding how to address the Payment Failure.").

Accordingly, the Court should dismiss the "non-statutory insider" claim.

The Trustee also alleges GDL was a statutory insider under Section 101(31)(F)—*i.e.*, the

Debtor's managing agent. *See* Am Compl. ¶ 386. The Bankruptcy Code does not define "managing

agent." To the extent this statutory term could be construed to mean a "manager" under the

Virginia LLC Act, Section 9.01 of the Debtor's Operating Agreement states "the members of the

Board shall be 'managers', as such term is defined in the PLLC Act." *See* **Ex. 2**, at 59. GDL was

not a member of the Board at the time of the conversion or at any time leading up to it or after it.

Therefore, there is no basis such an allegation. Two recent cases also establish that a "managing

agent" is one who exercises "actual dominion" over the debtor. *Bircher v. Funding Metrics, LLC

(In re A Goodnight Sleepstore, Inc.)*, 2019 Bankr. LEXIS 190, at *20 (Bankr. E.D.N.C. Jan. 25,

2019). This requires operational control of the business—"deciding when to buy inventory, which

creditors were paid, whether to close under-performing [branches], or which employees to hire

and fire." *Id.* at *21; *see also Palmdale Hills Prop. v. Argent Mgmt., LLC (In re Palmdale Hills

Prop.)*, 2017 Bankr. 3534, at *30-34 (Bankr. C.D. Cal. Oct. 12, 2017) (holding a "managing agent"

must have "operational control over the Debtor.").

The "managing agent" statutory insider analysis is virtually identical to the "non-statutory

insider" analysis. To qualify as a non-statutory insider, the person "must exercise sufficient

authority over the debtor so as to **unqualifiably dictate** corporate policy and the disposition of corporate assets. *Arrowsmith*, 2017 Bankr. LEXIS 2230, at \*63-4 9 (citing *Butler v. David Shaw, Inc.* 72 F.3d 437, 433 (4th Cir.1996)) (emphasis added). Thus, the Fourth Circuit has rejected the argument that a person was a non-statutory insider where "[h]e did not make personnel decisions, did not handle the payroll or accounts receivable, and was otherwise uninvolved in the management of the business." *Id*. It is "simply not the case" that such person was a non-statutory insider. *Id.*

The Eastern District of Virginia, affirming this Court, similarly analyzed—and rejected—the argument that a law firm founder who had "relinquished all management authority pursuant to [an] Agreement" was both a statutory and non-statutory insider. *Smith v. Porter*, 416 B.R. 264, 272 (E.D. Va. 2009). The defendant, J. Ridgely Porter, III, founded the law firm of Carr & Porter, LLC based in Portsmouth. *Id.* at 266. In February 2005, Porter agreed to transition the law firm to two of its younger attorneys pursuant to a written Agreement. *Id.* That transition formally began on March 31, 2005. *Id.*  The law firm "subsequently experienced financial difficulties and filed a petition in bankruptcy on February 8, 2007." *Id.* The trustee argued that Porter was both a statutory insider (a managing agent) and a non-statutory insider. *Id.* at 270.

Both this Court and the District Court rejected the trustee's argument. While the law firm still bore Porter's name, he had "relinquished all management authority pursuant to [an] Agreement." *Id.* at 272. The Court noted that, at most, the trustee had established "Porter continued to be employed by the Debtor, that he assisted in financial matters, including advising the bookkeeper and contacting the bank about financing, and that he continued to interact with the

31

most significant client." *Id.* This Court held these facts were insufficient to establish Porter's insider status, both on a statutory and non-statutory basis. *Id.*

The present case, and GDL's situation, is virtually indistinguishable from *Porter*. Even accepting the Trustee's allegations as true, GDL relinquished all management authority in the Debtor when his term as Chairman ended on December 31, 2015, and his term on the Board ended on January 31. 2016. *See* Am. Compl. ¶ 23. GDL continued to work as an attorney for the Debtor, and was a significant source of the Firm's revenue. *See* **Ex. 8**. GDL did not have free access to the Debtor's financial information—he was provided with periodic financial reports by the Debtor's management, just like all of the Debtor's over 100 shareholders. *See, e.g.*, *Tavenner v. Grayson*, Adv. Proc. No. 21-03055 (Paragraph 30 of Trustee's Complaint alleging the "Firm's financials were not kept a secret from all shareholders, including [Grayson]."); *see also Tavenner v. Lange*, Adv. Proc. No. 21-03070 (same); *Tavenner v. Zappia*, Adv. Proc. No. 21-03071 (same); *Tavenner v. Gustafson*, Adv. Proc. No. 21-03074 (same); *Tavenner v. Inge*, Adv. Proc. No. 21-03085 (same); *Tavenner v. Thompson*, Adv. Proc. No. 21-03087 (same); *Tavenner v. Acee*, Adv. Proc. No. 21-03091 (same).

The Amended Complaint's remaining allegations that GDL "directed the debtor's decision-making process" are flatly contradicted by the Debtor's Operating Agreement and other allegations that the Debtor was managed by its Board of Directors (of which GDL was not a part). *See* Am. Compl. ¶ 22. For example, the Debtor's Board (comprising 13 attorneys, and not GDL) voted to approve the ULX transaction at the very center of the Trustee's allegations. *See* Am. Compl. ¶ 149. GDL simply did not—and could not—"unqualifiably dictate corporate policy and the disposition of corporate assets" or exert "operational control" when each and every decision

concerning the Debtor's governance had to be independently approved by its Board, and in which GDL took no part.

Moreover, the Trustee's own allegations establish that the Debtor's significant decisions were also approved by a majority vote of its over 100 shareholders. *See, e.g.*, Am. Compl. ¶ 74 (shareholders determined pre-2014 compensation); ¶¶ 77-78 (shareholders approved 2015 compensation). GDL, like any other shareholder, had only 1 vote. Given independent voting by the Debtor's Board and its shareholders, the Trustee cannot, as a matter of law, establish GDL "unqualifiably dictate[d]" or had "operational control" over the Debtor's affairs. To hold otherwise would be "to expand the statutory definition of the term 'insider' in a manner that leads to an unduly litigious result." *Butler*, 72 F.3d at 442. Accordingly, the Trustee has failed to plead that GDL was an "insider" under Section 547(b). The Court should dismiss the Trustee's preference claims relating to transactions outside the 90 day period (*i.e.*, occurring on or before June 4, 2019).

**2.      The Trustee's Section 547(b) preference claim is barred by new value.**

Recall that the Debtor borrowed against GDL's NML policy (held in the Debtor's Deferred Compensation Plan). In Count XIII, the Trustee asserts a claim under Section 547(b) to avoid three NML Loan repayments the Debtor made towards that debt in June and July 2019. The NML Loan repayments are fully protected by GDL's provision of new value for the same. *See* **Ex. 8**.

Section 547(c) of the Bankruptcy Code prohibits the Trustee from avoiding a transfer to the extent it was "(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange." 11 U.S.C. § 547 (c)(1). The statutory definition of "new value" includes "money's worth in . . . services." 11 U.S.C. § 547(a)(2).

33

"When evaluating a new value defense, the key question is whether the alleged preferential transfer diminished the debtor's estate, *i.e.*, whether the debtor in fact acquired a new asset that offset the loss in value to the estate when the debtor transferred existing assets to acquire the new asset at issue." *Campbell v. Hanover Ins. Co. (In re ESA Envtl. Specialists)*, 709 F.3d 388, 398 (4th Cir. 2013). For example, the Fourth Circuit has affirmed the dismissal of a Section 547(b) avoidance of preferences claim where a debtor received contracts valued at $3.9 million in exchange for a $1.375 million payment. *See id.* at 399.

Here, the new value GDL provided was services and revenue generated as an attorney employee. While GDL had the right to immediately terminate his employment based on the Debtor's breach of his SLC, GDL forbore this right and continued to provide legal services to the Debtor's clients. This resulted in the Debtor receiving hundreds of thousands of dollars  in fees received from his work—including more than $280,000 in July 2019 alone. *See* **Ex. 8.** This new value far exceeded the $120,156 of NML Loan repayments during that time. Under *Campbell*, Section 547(c) bars the Trustee's preferences claim. Accordingly, the Court should dismiss Count XIII relating to the NML Loan repayments.

> **3.**       **The Trustee's Section 548(a)(1)(B) claim is barred by reasonably equivalent value.**

In Count XI, the Trustee seeks to avoid the NML Loan repayments under Section 548(a)(1)(B). This claim fails because the NML Loan repayments are supported by reasonably equivalent value.

Affirming this Court's ruling, the Eastern District of Virginia District Court held that the "reasonably equivalent value" standard is satisfied "so long as 'the value of the benefit received

by the debtor approximate the value of the property or obligation he has given up," and, thus, "the transfer was not fraudulent." *LandAmerica Fin. Grp., Inc. v. Southern Cal. Edison Co.*, 525 B.R. 308, 314 (E.D. Va. 2015). Where the debtor has received more than the funds it disbursed, "the unsecured creditors are no worse off because [the debtor], and consequently the estate, has received an amount reasonably equivalent to [or even more than] what it paid." *Id.* at 315.

As discussed above, the Debtor received value of approximately $1.4 million in GDL's collected revenue in just the first seven months of 2019, a condition for which that it pay $120,156 in NML Loan repayments. *See* **Ex. 8.** This readily satisfies the "reasonably equivalent value" standard. Accordingly, the Court should dismiss Count XI related to the NML Loan repayments.

**D.      The Trustee cannot recover the member draws under Section 548(a)(1)(B).**

When the Debtor converted from a professional corporation to a professional limited liability company on March 31, 2018, its shareholders became LLC members. As such, each member received his or her salary as a "Draw Amount." *See* **Ex. 2**, at 54 (Section 8.02(b) governing "Draws"). This "Draw Amount" constituted the LLC member's standard salary and was paid bi-weekly in the same manner as any other regular employee's salary.

The Trustee now alleges that the Debtor "did not receive reasonably equivalent value in exchange for" these salary payments. While the Trustee acknowledges GDL worked for the Debtor and provided legal services to the Debtor's clients from the date of the Debtor's conversion, March 2018, through his withdrawal and resignation on July 26, 2019, *see* Am. Compl. ¶ 23, she did not attach (or discuss) the documents showing exactly how much value GDL provided to the Debtor during this time. This value is evident in his collections. For example, in 2018, GDL generated over $2.1 million in revenue for the Debtor, and his salary was only 27% of his production. In the

35

first seven months of 2019, he generated $1.4 in revenue for the Debtor, and received less than

15% of that in compensation. *See* Am. Compl., Ex. 3. Under this Court's rubric, this is "reasonably

equivalent value." *LandAmerica Fin. Grp., Inc.*, 525 BR. at 314-15.

Moreover, GDL's member draw in 2018 and 2019 was established under the Fifth

Amendment to his Soft Landing Contract. *See* **Ex. 6**, Addendum A. The Debtor's obligation to

pay GDL's member draw arose at the time this amendment executed on December 28, 2016—

which occurred outside the two-year lookback period under Section 548(a). While the Debtor paid

GDL's member draw within the two-year period prior to the Petition Date, these salary payments

were made in satisfaction of the antecedent debt created by the Fifth Amendment to GDL's Soft

Landing Contract. This Court has rejected this Trustee's prior attempts to use Section 548(a) to

avoid payments on a valid antecedent debt. *See Tavenner v. Wells Fargo Bank, N.A. (In re*

*Ferguson)*, 2014 Bankr. LEXIS 1046, at *17 (Bankr. E.D. Va. Mar. 18, 2014). The Court should

do so here.

E.    **The Trustee cannot recover mandatory, non-discretionary dividend**
      **payments on preferred stock as they were paid in satisfaction of an**
      **antecedent debt.**

The Trustee seeks to avoid two quarterly mandatory, non-discretionary dividend payments

on the Debtor's preferred stock occurring on September 28, 2017 and December 28, 2017 under

Section 548(a)(1)(B). Section 548(a)(1)(B) precludes the Trustee from avoiding a transfer where

the Debtor received reasonably equivalent value. Section 548(d)(2)(A) states that "value" includes

the satisfaction of an antecedent debt of the Debtor. It has long been recognized that stock carrying

dividend obligations are an antecedent debt owed by the corporation. *See Caleb & Co. v. E.I. Du*

*Pont de Nemours & Co.*, 615 F. Supp. 96, 105 (S.D.N.Y. 1985). Thus, the corporation's payment

36

of those dividends satisfies the corporation's antecedent debt—*i.e.*, provides "value" under Section 548(d). "It follows that the satisfaction of an antecedent debt fails to constitute a constructively fraudulent transfer" under Section 548(a)(1)(B). *Angel v. BER Care Inc. (In re Caremerica, Inc.)*, 2009 Bankr. LEXIS 1789, at *7-8 (Bankr. E.D.N.C. June 30, 2009); *Tavenner*, 2014 Bankr. LEXIS 1046, at *12 (transfer in satisfaction of an antecedent debt raises a presumption that the transfer was in exchange for reasonably equivalent value). Accordingly, the Trustee has failed to state an avoidance action claim under Count XI with respect to the dividend payments. The Court should dismiss this claim.

F.      **The Trustee has failed to state a claim under Section 544(b) and Virginia Code Ann. § 55.1-400 (Counts XII and XVI).**

The Trustee finally seeks to avoid all the transfers set forth on Exhibit 3 to the Amended Complaint pursuant to her strong-arm powers under Section 544(b) and Virginia's actual fraudulent transfer statute, Virginia Code Ann. § 55.1-400. To state such a claim, the Trustee must allege at least one badge of fraud recognized under Virginia law. *Stern Agree Grp., Inc. v. Robinson (In re Anderson & Strudwick, Inc.)*, 2015 Bankr. LEXIS 1157, at *28 (Bankr. E.D. Va. Apr. 8, 2015). The Trustee purports to allege three badges of fraud: (i) GDL's alleged insider status; (ii) the incurrence of new liabilities; and (iii) insolvency. *See* Am. Compl. ¶ 378. However, none of these allegations have been recognized as a "badge of fraud" by the Supreme Court of Virginia. *See La Bella Dona Skin Care, Inc.*, 294 Va. at 254. Absent allegations of at least one of the six badges of fraud recognized under Virginia law, the Trustee cannot state a claim under Virginia Code Ann. § 55.1-400 and, thus, Section 544(b). For this reason, the Court should dismiss Counts XII and XVI in their entirety.

37

IX.     **The Court should dismiss the disallowance claim under Count XIX.**

As the Trustee as failed to state an avoidance action claim under Sections 544, 547, and 548 for the reasons set forth herein, she cannot state a cause of action for disallowance of claims under 11 U.S.C. § 502(d). Accordingly, the Court should dismiss Count XIX.

X.     **The Court should dismiss the equitable subordination claim under Count XXXI.**

As this Court has recognized, "equitable subordination is an extraordinary remedy which is applied sparingly." *Wilson v. Moir (In re Wilson)*, 359 B.R. 123, 138 (Bankr. E.D. Va. 2006). The Fourth Circuit applies the Fifth Circuit's test set forth in *Benjamin Diamond (In re Mobile Steel Corp.)*, 563 F.2d 692 (5th Cir. 1977). *See id.* Under *Mobile Steel*, the Trustee must establish (1) GDL engaged in some type of inequitable conduct; (2) this misconduct resulted in injury to the creditors or conferred an unfair advantage on GDL; and (3) equitable subordination must not be inconsistent with the bankruptcy code. 563 F.2d at 700. Inequitable conduct "encompasses three categories of misconduct (1) fraud, illegality, and breach of fiduciary duties; (2) undercapitalization; or (3) claimant's use of the debtor as a mere instrumentality or alter ego." *Wilson*, 359 B.R. at 138.

Here, the Trustee has not alleged fraud, nor has she alleged undercapitalization or that the Debtor is a mere instrumentality or alter ego. Rather, the Trustee's equitable subordination claim is based solely on her prior allegations against GDL in Counts X - XIX, XXIII, XXVI, and XXIX - XXX. None of these counts state a valid cause of action, let alone the requisite level of "inequitable conduct." For this reason, the Trustee has failed to state a claim under 11 U.S.C. § 510(c), and the Court should dismiss Count XXXI.

29646/1/10094367v1

**XI.    The Court should dismiss the Amended Complaint for failure to join indispensable
parties.**

Federal Rule of Civil Procedure 12(b)(7), made applicable to adversary proceedings by

Federal Rule of Bankruptcy Procedure 7012(b), provides a complaint shall be dismissed for failure

to join a party required under Federal Rule of Civil Procedure 19. "[C]ourts must first ask 'whether

a party is necessary to a proceeding because of its relationship to the matter under consideration'

pursuant to Rule 19(a)." *Owens-Illinios, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999). Rule

19(a) states a party is necessary if:

> that person claims an interest relating to the subject of the action and
> is so situated that disposing of the action in the person's absence
> may: (i) as a practical matter impair or impede the person's ability
> to protect the interest; or (ii) leave an existing party subject to a
> substantial risk of incurring double, multiple, or otherwise
> inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(B). A primary consideration upon which the Fourth Circuit relies is

whether there is an "increased potential for inconsistent judgments." *Owens-Illinois, Inc.*, 186 F.3d

at 441.

In this case, the  Trustee has alleged a conspiracy between the ULX entities, GDL, CVC

Capital Partners, Daniel Reed, and the Debtor's officers and directors at the time. *See generally*

Am. Compl., at 83-87 (Counts XXVIII-XXX). The Trustee did not join CVC Capital Partners and

Daniel Reed to the present adversary proceeding. Instead, the Trustee filed a separate adversary

proceeding against them asserting identical conspiracy claims and expressly alleging GDL took

part in the conspiracy. *See* Complaint at 31-34, *Tavenner v. CVC Capital Partners*, Adv. Proc. No.

(Counts III and IV). Similarly, the Trustee did not join the unnamed Debtor's officers and directors to the present adversary proceeding.[36]

The potential for inconsistent judgments is plain: the Trustee is litigating identical conspiracy claims in separate adversary proceedings against each of the alleged coconspirators. This is fundamentally unfair to each of the alleged coconspirators because the alleged conspiratorial conduct of CVC Capital Partners and Mr. Reed is being judged in the present proceeding in which they are not a party. This "clearly impair[s] or impede[s] the person's ability to protect the[ir] interest." Fed. R. Civ. P. 19(a)(1)(B)(i). The factual and legal determinations in the present proceeding will then have downstream implications on the conspiracy claims in the adversary proceeding directly against CVC Capital Partners and Mr. Reed. Similarly, the Trustee seeks to litigate GDL's alleged conspiratorial conduct in the CVC Capital Partners proceeding—a case in which he is not a party. This clearly prejudices GDL's rights and ability to protect his interests. As the Fourth Circuit has observed: "This potential for factual and legal 'whip-saw' weighs heavily in favor of having one court adjudicate **the entire case with all of the affected parties before it**." *Owens-Illinois, Inc.*, 186 F.3d at 441 (emphasis added). For this reason, the Court should dismiss the conspiracy claims in the present proceeding (Counts XXVII-XXX).

---

[36] If the Trustee somehow prevails, each of these unnamed coconspirators are jointly and severally liable for the claim. *See Gelber v. Glock*, 293 Va. 497, 534 (2017); *Worrie v. Boze*, 198 Va. 533, 540 (1956). Accordingly, each of the unnamed conspirators should be permitted to defend their interests in this proceeding.

## CONCLUSION

WHEREFORE, Defendant Gary D. LeClair respectfully requests the Court grant this

Motion to Dismiss; dismiss Counts X - XIX, XXIII, XXVI, and XXIX – XXXI of the Amended

Complaint, and dismiss such other relief as may be just and proper.

Respectfully submitted this 27th day of September, 2021.

GARY D. LECLAIR

/s/ Andrew M. Bowman

J. Scott Sexton (VSB No. 29284)
Andrew M. Bowman (VSB No. 86754)
GENTRY LOCKE
P.O. Box 40013
Roanoke, Virginia 24022
Telephone:  540.983.9300
Fax:           540.983.9400
Email:        sexton@gentrylocke.com
                 bowman@gentrylocke.com

William A. Broscious (VSB No. 27436)
William A. Broscious, Esq., PLC
P.O. Box 71180
Henrico, Virginia 23255
Telephone: 804.533.2734
Email:        wbroscious@broscilaw.com

*Counsel for Gary D. LeClair*

41

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of September, 2021, I electronically filed the

foregoing with the Clerk using the CM/ECF system which will send notification of such filing to

all counsel of record.

/s/ Andrew M. Bowman

29646/1/10094367v1