**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)**

| | |
|---|---|
| In re:<br><br>**LeClairRyan PLLC,**[1]<br><br>              **Debtor.** | **Chapter 7**<br><br>**Case No. 19-34574 (KRH)** |
| **Lynn L. Tavenner, as Chapter 7 Trustee,**<br><br>              **Plaintiff,**<br><br>v.<br><br>**ULX Partners, LLC, ULX Manager, LLC, UnitedLex Corporation, and Gary LeClair,**<br><br>              **Defendants.** | **Adv. Proc.: 20-03142-KRH** |

**OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS TO
DISMISS THE FIRST AMENDED COMPLAINT FILED BY ULX PARTNERS, LLC,
ULX MANAGER, LLC, UNITEDLEX CORPORATION AND GARY LECLAIR**

---

1        The principal address of the Debtor as of the petition date was 4405 Cox Road, Glen Allen, Virginia 23060, and the last four digits of the Debtor's federal tax identification number are 2451.

---

Erika L. Morabito (VSB No. 44369)
Brittany J. Nelson (VSB No. 81734)
QUINN EMANUEL URQUHART & SULLIVAN LLP
1300 I Street, N.W., Suite 900
Washington, DC 20005
(202) 538-8334 (telephone)
Email:  erikamorabito@quinnemanuel.com
          brittanynelson@quinnemanuel.com

*Special Counsel to Lynn L. Tavenner, Chapter 7 Trustee*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

RELEVANT FACTS ................................................................................................... 4

    A.     The ULX Entities ....................................................................................... 4

    B.     Gary LeClair ................................................................................................ 6

    C.     Procedural Background ............................................................................... 7

LEGAL STANDARD ................................................................................................. 8

ARGUMENT .............................................................................................................. 8

    A.     The Amended Complaint Adequately States a Claim for Misappropriation
        of Trade Secrets ......................................................................................... 8

        1.     The Amended Complaint Sufficiently Identifies The At Issue
              Trade Secrets .................................................................................... 9

        2.     The Amended Complaint Sufficiently Alleges The Trade Secrets
              Were Acquired And Used By Improper Means ................................ 11

    B.     The Amended Complaint Sufficiently Alleges Claims For Conspiracy ............. 13

        1.     The Law-Of-The-Case Doctrine Has No Application ............................ 14

        2.     The Amended Complaint Sufficiently Alleges Predicate Acts To
              Give Rise For Conspiracy Under Counts XXIV and XXX ..................... 17

    C.     The Amended Complaint States Claims For Breach of Fiduciary Duty ............. 18

        1.     The ULX Entities Owed Fiduciary Duties To LeClairRyan ................... 19

        2.     The Operating Agreement Imposes a Duty Of Good Faith ..................... 21

        3.     Mr. LeClair Breached The Fiduciary Duties He Owed To
              LeClairRyan And To Its Creditors ........................................................ 24

             a)     Mr. LeClair Owed Fiduciary Duties From 2014 through
                   January 2016 .......................................................................... 24

             b)     Mr. LeClair Owed Fiduciary Duties From February 2016
                   through the Petition Date ......................................................... 25

             c)     Mr. LeClair Breached His Fiduciary Duties ................................ 27

             d)     The Debtor And Its Creditors Were Damaged by Mr.
                   LeClair's Breaches ................................................................. 28

         4.     Mr. LeClair's Fraudulent Actions Toll the Statute of Limitations ........... 28

    D.     The Trustee States a Claim for Avoidance of Gary LeClair's Release
        Under 11 U.S.C. §§ 544(B) And 550 (Count XV) ................................. 29

E.     The Trustee Has Sufficiently Pleaded Transfer Claims Under the
       Bankruptcy Code and State Law.................................................................. 31

       1.     Mr. LeClair's Member Draws Are Subject To Recovery Under
              Section 548(a)(1)(B) ................................................................... 31

       2.     Dividend Payments Are Subject To Recovery Under Section
              548(a)(1)(B) ................................................................................ 33

       3.     The Trustee Has Pled that the December 31, 2018 SR Plan
              Distributions Were An Interest in Property ............................... 34

       4.     The Trustee Has Adequately Stated Claims Under Section 544(b)
              and Virginia Code Ann. § 55.1-400........................................... 34

       5.     The Trustee States a Claim under Both 547(b) and 548(a)(B) for
              the NML Loan Repayments ....................................................... 37

       6.     The Trustee Has Properly Pled A Transfer with Respect to the
              Banner Life Insurance Premiums ............................................... 39

       7.     The Complaint States A Cause of Action for Conversion ......... 39

       8.     The Trustee Has Sufficiently Pled an Unjust Enrichment Cause of
              Action ......................................................................................... 41

       9.     The Court Should Not Dismiss the Disallowance Claims or
              Equitable Subordination Claims Under Count XIX and XXXI............... 42

F.     The Complaint Should Not Be Dismissed For Failure To Join
       Indispensable Parties................................................................................ 42

CONCLUSION ......................................................................................................... 45

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Marine Enters., Inc. v. PRC Inc.*,
256 Va. 106, 501 S.E.2d 148 (Va. 1998) .............................................................................. 14

*All Bus. Solutions, Inc. v. NationsLine, Inc.*,
629 F. Supp. 2d 553 (W.D. Va. 2009) ................................................................. 9, 11, 13, 17

*Allen Realty Corp. v. Holbert*,
227 Va. 441 (1984) ............................................................................................................... 25

*Alstom Power, Inc. v. Graham*,
2016 WL 354754 (E.D. Va. 2016) ....................................................................................... 18

*Arrowsmith v. Warnick (In re Health Diagnostic Lab., Inc.)*,
2018 Bankr. LEXIS 2963 (E.D. Va. 2018) .......................................................................... 27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................ 8

*Auriga Cap. Corp. v. Gatz Properties*,
40 A.3d 839 (Del. Ch. 2012) ................................................................................................ 21

*Babcock & Wilcox Co. v. Areva NP, Inc.*,
788 S.E. 2d 237 (Va. 2016) .................................................................................................. 12

*Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*,
2009 WL 1124451 (Del. Ch. 2009) ..................................................................................... 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................ 8

*Bigelow/Diversified Secondary P'ship Fund 1990 v. Damson/Birtcher Partners*,
2001 WL 1641239 (Del. Ch. 2001) ..................................................................................... 19

*Blick v. Shapiro & Brown, LLP*,
2017 WL 58864 (W.D. Va. 2017) ........................................................................................ 16

*Carrington Gardens Assocs. v. United States*,
49 F. App'x 427 (4th Cir. 2002) .......................................................................................... 30

*In re Carrington Gardens Assocs.*,
248 B.R. 752 (Bankr. E.D. Va. 2000) .................................................................................. 30

*Chase v. Dep't of Pub. Safety & Corr. Servs.*,
  2020 WL 1914811 (D. Md. 2020) ...................................................................... 15

*Matter of Claxton*,
  30 B.R. 199 (E.D. Va. 1983)............................................................................... 36

*Commercial Business Sys., Inc. v. BellSouth Servs., Inc.*,
  453 S.E.2d 261 (Va. 1995)................................................................................. 14

*Cont. Assocs., Inc. v. Atalay*,
  2015 WL 1916551 (E.D. Va. Apr. 27, 2015) ...................................................... 26

*In re Cotton Yarn Antitrust Litig.*,
  505 F.3d 274 (4th Cir. 2007) .............................................................................. 43

*CSX Transp., Inc. v. Norfolk S. Ry. Co.*,
  2019 WL 4564564 (E.D. Va. Sept. 9, 2019)......................................................... 7

*Curley v. Dahlgren Chrysler-Plymouth, Dodge, Inc.*,
  245 Va. 429 (1993) ............................................................................................. 25

*Darden v. George G. Lee Co.*,
  204 Va. 108 (1963) ............................................................................................. 31

*FDIC v. Sea Pines Corp.*,
  692 F.2d 973 (4th Cir. 1982) .............................................................................. 24

*Feeley v. NHAOCG, LLC*,
  62 A.3d 649 (Del. Ch. 2012)............................................................................... 19

*Fessler v. Int'l Bus. Machines Corp.*,
  959 F.3d 146 (4th Cir. 2020) ................................................................................ 8

*Flame S.A. v. Freight Bulk Pte. Ltd.*,
  807 F.3d 572 (4th Cir. 2015) .............................................................................. 35

*Forman v. Kelly Capital, LLC*,
  (*In re Nat'l Serv. Indus., Inc.*), 2015 WL 3827003.............................................. 20

*Friedman v. Am. Capital, Ltd.*,
  (*In re Barton-Cotton, Inc.*), 2012 WL 2803742............................. 4, 9, 11, 13, 17, 18

*Galaxy Comput. Servs., Inc. v. Baker*,
  325 B.R. 544 (E.D. Va. 2005)............................................................................. 14

*GEP Interactive, Inc. v. Exhibition You GMBH & Co. Kg.*,
  2020 WL 6379511 (E.D. Va. 2020)..................................................................... 36

*Gianotti v. Hamway*,
239 Va. 14 (1990) ............................................................................................... 27

*Graves v. Lioi*,
930 F.3d 307 (4th Cir. 2019) ............................................................................. 15

*Grayson v. Westwood Buildings, L.P.*,
859 S.E.2d 651 (Va. 2021) ................................................................................. 40

*Gyetvay v. Hooper*,
2020 WL 4926162 (E.D. Va. Aug. 21, 2020) ...................................................... 41

*Hair Club for Men, LLC v. Lailuma Ehson And Illusion Day Spa, LLC*,
2016 WL 4577019 (E.D. Va. 2016) ..................................................................... 10

*Hawks and Culpeper National Bank v. Tidewater Improvement Co., Inc.*,
89 S.E. 118 (1916) .............................................................................................. 28

*Hazbun Escaf v. Rodriquez*,
191 F. Supp. 2d 685 (E.D. Va. 2002) ................................................................. 43

*In re Health Diagnostic Lab'y, Inc.*,
2018 WL 4676339 (Bankr. E.D. Va. 2018) ......................................................... 14

*Healy v. Chesapeake Appalachia*,
2011 WL 24261 (W.D. Va. Jan. 5, 2011) ............................................................ 29

*James G. Davis Const. Corp. v. FTJ, Inc.*,
298 Va. 582 (2020) ............................................................................................. 42

*In re James River Coal Co.*,
360 B.R. 139 (Bankr. E.D. Va. 2007) ................................................. 14, 26, 27, 37

*Jordan v. Osmun*,
2017 WL 2837143 (E.D. Va. 2017) ............................................................... 18, 42

*Jordan v. Osmun*,
2017 WL 2837143 (E.D. Va. June 29, 2017) ...................................................... 42

*King v. Rubenstein*,
825 F.3d 206 (4th Cir. 2016) ............................................................................... 8

*Knowesis, Inc. v. Herrera*,
2019 WL 11813618 (Cir. Ct. Fairfax 2019) ....................................................... 13

*La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*,
294 Va. 243 (Va. 2017) .................................................................................. 35, 36

*LandAmerica Fin. Grp. v. Southern Cal. Edison, Co, Inc.*,
    525 B.R. 308 (E.D. Va. 2015) ................................................................. 32

*Largo Legacy Group, LLC v. Charles*,
    2021 WL 2692426 (Del Ch. June 30, 2021) ....................................... 20

*Largo Legacy Grp., LLC v. Charles*,
    2021 WL 2692426 (Del. Ch. 2021) ..................................................... 18

*Lawyers Title Ins. Corp. v. P.R.T. Enterprises, Inc.*,
    2004 WL 1714892 (Va. 2004) ............................................................. 34

*Lowe v. Wells Fargo Bank, N.A.*,
    2018 WL 3748418 (E.D. Va. July 9, 2018) ......................................... 40

*Mackey v. McDannald*,
    298 Va. 645 (2020) ............................................................................. 40

*In re Marketxt Holdings Corp.*,
    361 B.R. 369 (Bankr. S.D.N.Y. 2007) ................................................... 4

*McCarthy v. Giron*,
    2014 WL 2696660 (E.D. Va. 2014) ..................................................... 36

*McClintock v. Royall*,
    173 Va. 408 (Va. 1939) ....................................................................... 36

*In re McKnew*,
    270 B.R. 593 (Bankr. E.D. Va. 2001) ................................................. 26

*MicroStrategy Inc. v. Bus. Objects, S.A.*,
    331 F. Supp. 2d 396 (E.D. Va. 2004) ................................................. 10

*MicroStrategy, Inc. v. Li*,
    268 Va. 249 (Va. 2004) .......................................................... 11, 28, 39

*Musacchio v. United States*,
    577 U.S. 237 (2016) ............................................................................ 15

*Nedrich v. Jones*,
    245 Va. 465 (1993) ............................................................................. 41

*Newman v. Walker*,
    618 S.E.2d 336 (Va. 2005) .................................................................. 28

*O'Hazza v. Exec. Credit Corp.*,
    246 Va. 111 (1993) ............................................................................. 25

*Official Comm. of Unsecured Creditors of HH Liquidation, LLC v. Comvest Grp. Holdings, LLC et al.*,
590 B.R. 211 (Bankr. D. Del. 2018) ...................................................................... 21

*Owens-Illinois, Inc. v. Meade*,
186 F.3d 435 (4th Cir. 1999) .............................................................................. 44

*Paige Capital Mgmt., LLC v. Lerner Master Fund, LLC*,
2011 WL 3505355 (Del. Ch. 2011) ................................................................ 19, 20

*PGI, Inc. v. Rathe Productions, Inc.*,
265 Va. 334 (2003) .............................................................................................. 40

*Poth v. Russey*,
281 F. Supp. 2d 814 (E.D. Va. 2003) ................................................................. 24

*Plumbers & Steamfitters Union Local No. 10 v. Waters*,
451 F. Supp. 3d 543 (E.D. Va. 2020) ................................................................. 28

*Preferred Sys. Solutions, Inc. v. GP Consulting, LLC*,
732 S.E.2d 676 (Va. 2012) ................................................................................. 13

*Price v. Taylor*,
251 Va. 82 (1996) ................................................................................................ 30

*Ray v. Roane*,
948 F.3d 222 (4th Cir. 2020) ................................................................................ 8

*Remora Invs., L.L.C. v. Orr*,
277 Va. 316 (2009) .............................................................................................. 26

*Republican Party of N.C. v. Martin*,
980 F.2d 943 (4th Cir. 1992) ................................................................................ 8

*Rosetta Stone Ltd. v. Google, Inc.*,
676 F.3d 144 (4th Cir. 2012) .............................................................................. 42

*Schmidt v. Household Finance Corp., II*,
276 Va. 108 (2008) .............................................................................................. 41

*Schnelling v. Crawford (In re James River Coal Co.)*,
360 B.R. 139 (Bankr. E.D. Va. 2007) ................................................................. 24

*Skye Min. Invs., LLC v. DXS Cap. (U.S.) Ltd.*,
2020 WL 881544 (Del. Ch. 2020) ...................................................................... 23

*In re South Canaan Cellular Investments, LLC*,
427 B.R. 85 (Bankr. E.D. Pa. 2010) ................................................................... 22

*Space Sys./Loral, LLC v. Orbital ATK, Inc.*,
 306 F. Supp. 3d 845 (E.D. Va. 2018) ................................................................. 13

*Sterne Agee Group, Inc. v. Robinson*,
 (*In re Anderson & Strudwick, Inc.*), 2015 WL 1651146 ....................................... 8

*Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*,
 330 F. Supp. 2d 668 (E.D. Va. 2004) ................................................................. 13

*Tavenner v. Wells Fargo Bank, N.A. (In re Furguson)*,
 2014 Bankr. LEXIS 1046 (Bankr. E.D. Va. 2014) ............................................... 33

*TFOR LLC v. Virtustream, Inc.*,
 2017 WL 11505355 (E.D. Va. 2017) ................................................................... 11

*Tobey v. Jones*,
 706 F.3d 379 (4th Cir. 2013) ................................................................................ 8

*In re Truland Grp., Inc.*,
 588 B.R. 447 (Bankr. E.D. Va. 2018) ................................................................. 38

*In re USA Cafes, L.P. Litigation*,
 600 A.2d 43 (Del. Ch. 1991) ............................................................................... 19

*Variable Annuity Life Ins. Co. v. Coreth*,
 2021 WL 1566447 (E.D. Va. 2021) ..................................................................... 12

*Walker v. S.W.I.F.T. SCRL*,
 517 F. Supp. 2d 801 (E.D. Va. 2007) ................................................................. 16

*Wilson P. Abraham Constr. Corp. v. Tex. Indus., Inc.*,
 604 F.2d 897 (5th Cir. 1979) .............................................................................. 43

*In re Worldwide Wholesale Lumber, Inc.*,
 372 B.R. 796 (Bankr. D.S.C. 2007) ..................................................................... 15

**Statutes**

11 U.S.C. § 101(54)(D) ......................................................................................... 39

11 U.S.C. § 544(B) ................................................................................................ 29

11 U.S.C. § 547(c)(1)(B) ....................................................................................... 39

11 U.S.C. § 547(c)(1)(A) ....................................................................................... 39

11 U.S.C. § 547(g) ................................................................................................ 38

**Rules**

Fed. R. Bankr. P. 7012(b) ........................................................................................... 8

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 8

Fed. R. Civ. P. 19(a)(1) ............................................................................................. 43

Fed. R. Civ. P. 19(a)(1)(B) ....................................................................................... 44

Fed. R. Civ. P. 19(a)(2) ............................................................................................. 44

Plaintiff, Lynn L. Tavenner, solely in her capacity as the Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of LeClairRyan PLLC ("LeClairRyan," "LCR" or the "Debtor") respectfully submits this Omnibus Memorandum of Law in Opposition to (i) the Motion to Partially Dismiss the First Amended Complaint, dated August 25, 2021 [Docket No. 88] (the "ULX Motion") filed by ULX Partners, LLC ("ULXP"), ULX Manager, LLC ("ULX Manager") and UnitedLex Corporation ("UnitedLex," and together with ULXP and ULX Manager, the "ULX Entities"), and (ii) the Motion to Dismiss the First Amended Complaint, dated September 27, 2021 [Docket No. 105] (the "LC Motion," or the "LeClair Motion" and with the ULX Motion, the "Motions") filed by Gary LeClair ("Mr. LeClair," and with the ULX Entities, "Defendants").[2]

## PRELIMINARY STATEMENT

In the lead up to LeClairRyan's bankruptcy filing, the ULX Entities took for themselves LeClairRyan's "non-legal" administrative business without paying any new money to the law firm.  After securing LeClairRyan's workforce and valuable intellectual property, UnitedLex, guided by its principal Daniel Reed and co-conspirator, Gary LeClair, and with critical assistance from venture capitalist, CVC Capital Partners ("CVC"), entrusted its newly appointed Chief Financial Officer, Nicholas Hinton, with the task of pulling out the profitable parts of LeClairRyan's business, while disposing of the rest.  Mr. Hinton had explicit instructions to "be as aggressive as possible" and "Gordon Gecko like on [partnership] cuts."  Soon after, LeClairRyan filed for bankruptcy.

---

[2]      Capitalized terms not defined herein shall have the meanings ascribed to them in the First Amended Complaint, dated August 25, 2021 [Docket No. 86] (the "Am. Compl.").

As longstanding business partners, the ULX Entities knew that LeClairRyan was in the "red zone" when they first took over LeClairRyan's back-office operations. The ULX Entities also knew that going forward, LeClairRyan would be unable to continue as a going concern without financial support from the ULX Entities. The ULX Entities nonetheless saw the joint venture as an opportunity to take for themselves valuable assets, using LeClairRyan's distressed financial state as leverage to exert additional and overwhelming control on LeClairRyan's members and shareholders. The fact that the ULX Entities implemented a "restructuring framework" for LeClairRyan in August 2018, just a few months after the ULXP transaction closed, only underscores that the ULX Entities had no plans to actually grow and build a genuine partnership with the law firm.

The arguments advanced by Defendants in the ULX Motion and the LeClair Motion (many of which mirror each other) do not invite a different result. First, the Amended Complaint more than sufficiently identifies the trade secrets at issue to support claims for misappropriation. In this regard, the Trustee cites specifically to contractual provisions (that were never finalized) that purportedly gave the ULX Entities free and unfettered access to LeClairRyan's assets, including its systems and personnel. The Amended Complaint also alleges numerous facts to support the conclusion that Defendants improperly exploited LeClairRyan's assets for their own use, forming and building valuable professional relationships along the way.

Second, the substance of the Trustee's conspiracy claims are well-pled. The law-of-the-case doctrine simply has no application to claims re-alleged in an amended complaint, particularly given the pages of new allegations made by the Trustee. Moreover, a number of additional specific predicate acts are alleged in the Amended Complaint to support conspiracy-based claims against Defendants.

Third, each of the ULX Entities and Mr. LeClair owed fiduciary duties to LeClairRyan. The fact that UnitedLex was not a "member" of ULXP does not shield it from fiduciary responsibilities under applicable law; this is especially true given the ULX Entities' overlapping relationships, which give rise to claims for alter ego liability (Count XXXIV). Nor does the Operating Agreement relieve the ULX Entities or Mr. LeClair of these duties. To the contrary, the Operating Agreement expressly imposed obligations of good faith.

Finally, Mr. LeClair owed a fiduciary duty to the Debtor, no matter what his "official" title may have been. As alleged in the Amended Complaint, Mr. LeClair's purported and self-serving release does not insulate him from the Trustee's clawback claims. As a result, this defense fails and the bankruptcy avoidance claims, as well as state law claims against Mr. LeClair, are properly pled.

There can be no mistaking, the ULX Entities and Mr. LeClair played a major role in sealing the fate of an already distressed LeClairRyan. For both the reasons set forth in her previous briefing,[3] and for the reasons set forth herein, the Motions should be denied in their entirety.

---

[3]   The Trustee incorporates her "Plaintiff's Opposition to Defendants' Motion to Partially Dismiss the Complaint" ("First Opposition") (Dkt No. 25) as if fully set forth herein.

# RELEVANT FACTS[4]

## A.    The ULX Entities

UnitedLex is a global technology and legal services company that provides back-office support to law firms and corporate legal departments.  Am. Compl. ¶ 45.  UnitedLex exercised control over LeClairRyan's legal practice through its 99% ownership interest in ULXP, the joint venture formed between LeClairRyan and the ULX Entities in April 2018.  *Id*. ¶¶ 115, 160.  Less than two months after the transaction closed, UnitedLex staffed a team of complicit employees and engineered a restructuring designed to strip LeClairRyan's value for Defendants' benefit.  *Id*. ¶ 8.  Daniel Reed, the founder and CEO of UnitedLex, told employees to be "Gordon Gecko like on cuts" and "as aggressive as possible."  *Id*. ¶ 215.

UnitedLex is the sole managing member of ULX Manager, a shell limited liability company formed on April 4, 2018.  *Id*. ¶¶ 26, 215.  ULX Manager controls and manages ULXP.  *Id*. ¶¶ 26-27.  UnitedLex is financially backed by the private equity firm, CVC.  *Id*. ¶ 25.  CVC, through a team of investment bankers stationed in India, played "a big part" in formulating the joint venture's "economic design."  *Id*. ¶ 178.

The relationship among the ULX Entities and LeClairRyan was purportedly governed by a series of agreements, including an Amended and Restated Limited Liability Company Agreement among ULXP, ULX Manager and LeClairRyan (as members), and UnitedLex (as guarantor) [ULX Mot. Ex. C] (the "Operating Agreement"), a Master Services Agreement

---

[4]    Although the Trustee submits that she does not need to rely on the "relaxed" pleading standards afforded to bankruptcy trustees to meet the heightened pleading requirements of [Civil] Rule 9(b) (*Friedman v. Am. Capital, Ltd. (In re Barton-Cotton, Inc.)*, 2012 WL 2803742, at *3 (Bankr. D. Md. July 10, 2012))—a standard that Defendants do not even seek to invoke—discovery received to date has no bearing on this issue.  Bankruptcy trustees are afforded special pleading latitude not because they have access to "hundreds of thousands, if not millions, of documents" (ULX Mot. 2), but because they necessarily have only "*second-hand knowledge*."  *See In re Marketxt Holdings Corp.*, 361 B.R. 369, 395 (Bankr. S.D.N.Y. 2007) (emphasis added).

between ULXP and LeClairRyan [ULX Mot. Ex. D] (the "MSA") and a Contribution Agreement between ULXP and LeClairRyan [ULX Mot. Ex. E] (the "Contribution Agreement"). Each contract is governed by the law of the State of Delaware. ULX Mot. Ex. C § 14.11; Ex. D ¶ 31; Ex. E § 7.13. Daniel Reed signed each agreement on behalf of ULXP, ULX Manager and UnitedLex. ULX Mot. Ex. C at 40; Ex. D at 20; Ex. E at 20.

ULX Manager and LeClairRyan signed the operative Operating Agreement on April 4, 2018. ULX Mot. Ex. C. UnitedLex also signed the Operating Agreement as guarantor of "additional capital contributions" required to be made by ULX Manager to (i) fund ULXP's operations and (ii) satisfy Class B redemption rights. *Id.* §§ 5.02-5.03. The Operating Agreement provides that the "Guaranty shall be a continuing one without in any way being affected by the bankruptcy or insolvency of the Company or by any disaffirmance or abandonment by a trustee or receiver of [ULXP]." *Id.* § 5.03. ULX Manager is the "Managing Member" under the Operating Agreement, agreeing to "perform its duties and undertake its responsibilities as set forth in this Agreement and to act in good faith and in the best interests of [ULXP]." *Id.* § 8.01.

Under the MSA, ULXP took control of "Legal Operations & Administration," "Client Relations & Business Development," "Marketing & Communications," "Conflicts & Engagement Management," "Value Pricing & Legal Project\Management," "Human Resources," "Talent Development," and "Technology, Data & Security." Am. Compl. ¶ 161. The MSA "granted the ULX Entities unprecedented control over the operation of [LeClairRyan]." *Id.* ¶ 170. In exchange for these services, LeClairRyan paid ULXP $3.6 million per month, $1.5 million more per year than LeClairRyan paid to fund its back-office services directly. *Id.* ¶¶ 6, 156.

Relatedly, the Contribution Agreement transferred LeClairRyan's intellectual property and administrative support staff to ULXP in exchange for a 1% ownership stake in ULXP. *Id.* ¶ 159. The contributed intellectual property is specifically listed on Schedule 2.01 of the Contribution Agreement, as acknowledged by the ULX Entities (*see* ULX Mot. Ex. E at 21), and includes administrative resources for (i) lateral attorneys; (ii) training; (iii) personnel; (iv) marketing and business development; (v) pricing; (vi) program management; (vii) information technology and tools; (viii) legal industry collaboration and insight; (ix) industry research and analysis (x) risk management in operations and templets; (xi) library and research services; (xii) operations; and (xiii) attorney development. Am. Compl. ¶ 157. At the time, these assets had a value of at least $18.5 million. *Id.* ¶ 187.

## B.   Gary LeClair

Gary LeClair formed LeClairRyan in 1988. *Id.* ¶ 23. Starting in 2006, LeClairRyan entered a period of massive expansion. *Id.* ¶ 35. At its peak, LeClairRyan had twenty-five offices across the country and employed hundreds. *Id.* ¶ 38.

Mr. LeClair officially served as LeClairRyan's CEO from inception until April 30, 2011. Mr. LeClair also officially served as Chairman through 2015. *Id.* ¶ 23. Mr. LeClair secured soft-landing contracts for himself and other legacy shareholders. *Id.* ¶ 39.

In August 2012, even though not the titular CEO, Mr. LeClair was the firm representative to inform shareholders that "for the first time, [LeClairRyan] did not achieve [its] year end collection target" and could not pay "projected 2012 Shareholder Salaries." *Id.* ¶ 69. Furthermore, in November 2012, Mr. LeClair clearly assisted in the management of LeClairRyan's finances. *Id.* ¶ 23. By the end of 2014 (if not earlier) LeClairRyan was insolvent. *Id.* ¶ 73. Nonetheless, certain members of leadership, including Mr. LeClair, approved making

payments to shareholders in violation of the law firm's internal policies. *See, e.g.*, *id.* ¶¶ 77, 78, 80, 87.

Starting as early as November 2018, Mr. LeClair engaged in one-on-one negotiations with UnitedLex and CVC in connection with entering the ULXP transaction. *Id.* ¶ 111. Erik Gustafson, then CEO of LeClairRyan, was not included in many of those conversations. *See, e.g.*, *id.* ¶¶ 111, 112, 124.

**C.     Procedural Background**

On September 3, 2019, LeClairRyan filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Court"). The chapter 11 was converted to a case under chapter 7 of the Bankruptcy Code on October 4, 2019. Am. Compl. ¶ 21.

The Trustee initiated this action on October 26, 2020. The ULX Entities filed a Motion to Partially Dismiss the Complaint on January 11, 2021. Docket No. 17. The Court decided the Motion to Dismiss on July 20, 2021 [Docket No. 57] (the "MTD Opinion"). Among other things, the Court dismissed in part the Trustee's claims for conspiracy, finding:

> To properly allege a breach of fiduciary duty as the predicate unlawful act for her conspiracy claims, the Trustee must point to one or more "plausible wrongful acts" that constitute the alleged breach. [citing *CSX Transp., Inc. v. Norfolk S. Ry. Co.*, Civil Action No. 2:18-cv-530, 2019 WL 4564564, at *17, 2019 U.S. Dist. LEXIS 161339, at *53 (E.D. Va. Sept. 9, 2019)]. Entering into a joint venture, converting the business from a professional corporation to a professional limited liability company, terminating the firm's deferred compensation and supplemental retirement plans, and making misleading or false statements to third-party professional consultants ***are not themselves unlawful acts***, nor does the Trustee allege any unlawful means through which these acts were accomplished.

MTD Opinion at 19 (emphasis added).

On August 5, 2021, the Trustee filed a Motion to Amend the Complaint. Docket No. 66. The Court granted that motion on August 24, 2021. Docket No. 85. The ULX Entities filed the

ULX Motion the following day.  Docket No. 88.  Pursuant to the Court's scheduling order, Mr.

LeClair filed his motion on September 27, 2012.  Docket No. 105.

## LEGAL STANDARD

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), as

incorporated by Federal Rule of Bankruptcy Procedure 7012(b), "[the court] must 'accept as true

all of the factual allegations contained in the complaint and draw all reasonable inferences in

favor of the plaintiff.'"  *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *King v.

Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)).  "To survive a motion to dismiss, [the court]

require[s] 'only enough facts to state a claim to relief that is plausible on its face.'"  *Fessler v.

Int'l Bus. Machines Corp.*, 959 F.3d 146, 152 (4th Cir. 2020) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)).  "'A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged.'"  *Sterne Agee Group, Inc. v. Robinson (In re Anderson & Strudwick,

Inc.)*, 2015 WL 1651146, at *4 (Bankr. E.D. Va. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009)).  A motion under Rule 12(b)(6) "'does not resolve contests surrounding facts, the

merits of a claim, or the applicability of defenses.'"  *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir.

2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).  "A

complaint need only 'give the defendant fair notice of what the … claim is and the grounds upon

which it rests.'"  *Ray*, 948 F.3d at 226 (alteration in original) (quoting *Tobey*, 706 F.3d at 387).

## ARGUMENT

A.   **The Amended Complaint Adequately States A Claim For Misappropriation Of
     Trade Secrets**

Under the Virginia Uniform Trade Secrets Act (the "Act"), a claim for misappropriation

of a trade secret requires showing: "'(1) that the information at issue is a trade secret and (2) that

the defendant misappropriated it.'" *See All Bus. Solutions, Inc. v. NationsLine, Inc.*, 629 F. Supp.

2d 553, 558 (W.D. Va. 2009).   The ULX Entities challenge the sufficiency of the Trustee's

allegations with respect to both elements.   ULX Mot. at 7-9.   Mr. LeClair, implicitly conceding

that the information at issue constitutes trade secrets, challenges only the second part of the test.

LC Mot. at 16.   Ultimately, all Defendants fail in arguing for dismissal.

      1.    <u>The Amended Complaint Sufficiently Identifies Trade Secrets</u>

     The ULX Entities assert that the Amended Complaint fails to "identify **any** information

that constitutes a trade secret."   ULX Mot. at 7 (emphasis in original).   According to the ULX

Entities, the Trustee has failed to identify "which trade secrets the ULX Entities allegedly

accessed or misappropriated."   *Id*. at 8.   But the ULX Entities ignore entire sections of the

Amended Complaint and advance the wrong standard.   The court should reject the ULX Entities'

argument.

     The Act defines "trade secret" as information, including, but not limited to, a formula,

pattern, compilation, program, device, method, technique or process, that:

> 1. Derives independent economic value, actual or potential, from not being
> generally known to, and not being readily ascertainable by proper means by, other
> persons who can obtain economic value from its disclosure or use, and
>
> 2. Is the subject of efforts that are reasonable under the circumstances to maintain
> its secrecy.

Va. Code § 59.1-336.   Moreover, "[t]he case law is clear that just about anything can constitute a

trade secret under the right set of facts," including "customer lists, pricing information,

marketing and sales techniques, [and] information about products."   *MicroStrategy Inc. v. Bus.

Objects, S.A.*, 331 F. Supp. 2d 396, 416 (E.D. Va. 2004).

     The Amended Complaint easily satisfies this broad standard.   Among other things, the

Amended Complaint alleges in specific detail the trade secrets at issue, including:

- LeClairRyan transferred a "'turn-key' back office" operation "sufficient to service a large, national law firm" to ULXP, which the ULX Entities intended to "sell to other law firms," Am. Compl. ¶¶ 3, 156;

- The transferred property consisted of "administrative resources for (i) lateral attorneys; (ii) training; (iii) personnel; (iv) marketing & business development; (v) pricing; (vi) program management; (vii) information technology and tools; (viii) legal industry collaboration & insight; (ix) industry research & analysis (x) risk management in operations and templets; (xi) library and research services; (xii) operations; and (xiii) attorney development," *id*. ¶ 157; and

- The ULX Entities used information from LeClairRyan to form profitable relationships for themselves, including relationships with Latham & Watkins, Ford and Credit Suisse. *Id*. ¶¶ 9, 181.[5]

These allegations more than suffice to properly put the ULX Entities on notice of which trade secrets are at issue.[6]

In any event, whether information constitutes a trade secret is a highly factual question. *See, e.g., Hair Club for Men, LLC v. Lailuma Ehson And Illusion Day Spa, LLC*, 2016 WL 4577019, at *6 (E.D. Va. 2016) ("[T]he determination whether a trade secret exists ordinarily presents a question of fact to be determined by the fact finder from the greater weight of the evidence.") (citing *MicroStrategy, Inc. v. Li*, 268 Va. 249, 264 (Va. 2004)).  Consideration of this issue at this stage of the proceedings is premature.

---

[5]    The ULX Entities cannot credibly argue that the Amended Complaint fails to put them on notice of the trade secrets in question.  In the very next section of the ULX Motion, the ULX Entities admit that assets transferred and/or licensed to the ULX Entities are "identified in Schedule 2.01(a) of the Contribution Agreement" (ULX Mot. at 8), which further belies their claim that the Trustee's allegations are inadequate.

[6]    Nor is *All Bus. Solutions, Inc. v. NationsLine, Inc.* 629 F.Supp.2d 553 (W.D. Va. 2009) "instructive."  ULX Mot. at 7.  In that case, the amended complaint had "no additional factual allegations" supporting the assertion that "NationsLine 'sought ... to appropriate and disclose the names of ABS customers, along with other ABS trade secrets and confidential information.'"  629 F. Supp. 2d at 558-59.  As detailed above, that is not the case here.

2.     The Amended Complaint Sufficiently Alleges The Trade Secrets Were Acquired And Used By Improper Means

Defendants contend that the Trustee has not alleged acquisition of trade secrets by "improper means" because the alleged trade secrets were transferred to ULXP pursuant to the terms of the Contribution Agreement.  *See* ULX Mot. at 7-9; LC Mot. at 16-17.  Mr. LeClair also argues that the Trustee has "failed to plead" disclosure.  LC Mot. at 17-18.

Here, allegations that the ULX Entities used confidential information to extract a valuable back office "to sell to other law firms" at a non-competitive rate supports a misappropriation charge.  For example, the Amended Complaint alleges, among other things, that LeClairRyan entered into the Contribution Agreement based on misrepresentations made by Mr. LeClair, the ULX Entities and CVC.[7]  *Id.* ¶¶ 3, 8, 179-185.  These allegations alone are sufficient to assert "improper means."  *See TFOR LLC v. Virtustream, Inc.*, 2017 WL 11505355, at *10 (E.D. Va. 2017) ("Obtaining a trade secret by misrepresentation constitutes 'improper means' under VUTSA.").

The Amended Complaint also alleges that the ULX Entities sourced LeClairRyan's relationships, causing at least one LeClairRyan partner to leave the firm for another "where my Ford relationship is respected."  Am. Compl. ¶¶ 9, 181.  These types of allegations also satisfy pleading requirements under the Federal Rules.[8]  *See Variable Annuity Life Ins. Co. v. Coreth*,

---

[7]     Contrary to Mr. LeClair's suggestion, each individual shareholder did not "adopt[ ] a resolution approving of the ULX joint venture."  LC Mot. at 18.  Rather, LeClairRyan's board determined that "[m]ember approval [was] no longer required because the transaction no longer include[d] a new credit facility."  Moreover, the board resolution approving the joint venture is dated April 5, 2018—a day *after* the relevant agreements were entered into.

[8]     The ULX Entities claim that there is no "improper means" because the material terms of the joint venture were "disclosed … to the firm's members" in the March Executive Summary.  ULX Mot. at 9 (citing Ex. A).  This is incorrect.  For one, the March Executive Summary identifies "one key deal element" as the "upfront loan [LeClairRyan] will receive as part of the transaction," which, among other things, would be used to repay "capital obligations to Members," to address "client cost advance and reimbursement needs" and to pay JV related tax liabilities.  *Id.* Ex A at 1, 7.  However, as alleged in the Amended Complaint

2021 WL 1566447, at *10 (E.D. Va. 2021) (a complaint that alleged that defendants used "trade secrets to solicit Protected Customers in an effort to induce them to move their business away from the VALIC Companies" is sufficient to state a claim for misappropriation).

Defendants argue that the aforementioned acts were not "improper" because LeClairRyan's trade secrets were transferred to ULXP pursuant to the terms of the Contribution Agreement.[9]  ULX Mot. at 7; LC Mot. at 16.  But as a "Condition to Closing," the Contribution Agreement required that on or before April 19, 2018, the parties obtain a satisfactory appraisal report valuing (i) the transferred assets, and (ii) LeClairRyan's class B ownership interest.  ULX Mot. Ex. C. § 2.03.  As alleged in the Amended Complaint, that appraisal report was never finalized (Am. Compl. ¶ 191), invalidating any transfers made to ULXP under the Contribution Agreement.  In addition, the Amended Complaint alleges, upon information and belief, that in December 2018 the structure of the Contribution Agreement changed from the granting "of a perpetual license to an outright assignment/transfer" of LeClairRyan's assets.  *Id*. ¶ 194.  There is no contract governing an outright assignment.

Mr. LeClair also asserts that the Trustee has failed to allege improper "disclosure" of LeClairRyan's assets.  LC Mot. at 17.  However, the misappropriation applies to improper acquisition and use of trade secrets, in addition to disclosure.  *See Tao of Sys. Integration, Inc. v.*

---

LeClairRyan never actually received this funding.  Am. Compl. ¶¶ 6, 154.  Moreover, the March Executive Summary states that "the JV will initially be focused on a successful launch of the relationship with [LeClairRyan] before approaching other firms to join the constellation."  *Id*. Ex. A at 1.  This is another misrepresentation.  UnitedLex sent Latham & Watkins the ULXP press release before the ULXP transaction even closed.  Am. Compl. ¶ 178.  By January 2019, UnitedLex was promoting Latham & Watkins as its "strategic partner" to the media, reporting that it had "inked deals worth an eventual $1.5 billion in revenue" in the last 18-month period, including with DXC, GE and Ford.  *Id*. ¶¶ 196, 197.  Those articles make no mention of LeClairRyan.

[9]    For this reason, the primary case cited by the ULX Entities (ULX Mot. at 8) and Mr. LeClair (LC Mot. at 17) is distinguishable.  *See Babcock & Wilcox Co. v. Areva NP, Inc.*, 788 S.E. 2d 237, 260 (Va. 2016) (finding that a "***valid*** contractual acquisition" of trade secrets does not constitutes "improper means") (emphasis added).

*Analytical Servs. & Materials, Inc.*, 330 F. Supp. 2d 668, 677 (E.D. Va. 2004), *aff'd*, 141 F. App'x 129 (4th Cir. 2005) ("While defendant's argument, if accepted by the court, would negate a claim that AS & M had misappropriated the flutter test results by 'disclosing' them, it would not address claims that AS & M had misappropriated the results by 'using' them in proposals or presentations, or that the various defendants had improperly 'acquired' the results. Thus, defendants' argument fails to address two of the three acts which can constitute VUTSA misappropriation.").

Finally, the Amended Complaint does allege improper disclosure.[10] The Amended Complaint states that UnitedLex employees (who were not fully devoted to LeClairRyan) had access to LeClairRyan's systems. Am. Compl. ¶ 202. This too is enough to allege improper means. *See Space Sys./Loral, LLC v. Orbital ATK, Inc.*, 306 F. Supp. 3d 845, 854 (E.D. Va. 2018) (allegations that "employee of another contractor accessed files on NASA's NX server beyond the files the employee was authorized to view" were sufficient to state a claim for misappropriation).

**B.       The Amended Complaint Sufficiently Alleges Claims For Conspiracy**

Under Virginia law, a claim for civil conspiracy is stated when the plaintiff alleges facts showing: "two or more persons combined to accomplish, by some concerted action, an unlawful purpose or some lawful purpose by unlawful means." *In re James River Coal Co.*, 360 B.R. 139, 174-75 (Bankr. E.D. Va. 2007). Virginia statutory conspiracy consists of two or more persons combining, agreeing, or mutually undertaking to willfully and maliciously injure another in his

---

[10]       The other two cases cited by the ULX Entities (ULX Mot. at 6-7) did not involve the same level of detail as the Amended Complaint alleges here. *See Knowesis, Inc. v. Herrera*, 2019 WL 11813618, at *4 (Cir. Ct. Fairfax 2019) (acquiring "trade secrets within the scope of [ones] employment" without more does not give rise to a misappropriation claim); *Preferred Sys. Solutions, Inc. v. GP Consulting, LLC*, 732 S.E.2d 676, 688-89 (Va. 2012) (referencing "a laundry list of items" that were allegedly obtained and used by "improper means" is insufficient to state a claim for misappropriation).

reputation, trade, business or profession.   *Commercial Business Sys., Inc. v. BellSouth Servs., Inc.,* 453 S.E.2d 261, 266-67 (Va. 1995).

Common law civil conspiracy "is an intentional tort requiring a specific intent to accomplish the contemplated wrong." *Galaxy Comput. Servs., Inc. v. Baker*, 325 B.R. 544, 555 (E.D. Va. 2005).   This specific intent does not require malice, but only knowledge of the wrongful act and actions in furtherance of that act.   *Id*. (citing *Advanced Marine Enters., Inc. v. PRC Inc.*, 256 Va. 106, 501 S.E.2d 148, 154 (Va. 1998)).   Similarly, for statutory conspiracy, "the plaintiff is not required to prove actual malice.  Sections 18.2–499 and –500 do not require a plaintiff to prove that a conspirator's primary and overriding purpose is to injure another in his trade or business. Rather, these statutes merely require proof of legal malice, that is, proof that the defendant acted intentionally, purposefully, and without lawful justification." *Id*.  If the intent to injure another's trade or business was merely one reason for the defendant's actions, the statutory standard is met. *In re Health Diagnostic Lab'y, Inc.*, 2018 WL 4676339, at *12 (Bankr. E.D. Va. 2018).

Defendants largely rely on the "law of the case" doctrine in arguing that the Trustee's claims for conspiracy are insufficient.  ULX Mot. at 11; LC Mot. at 25.  Defendants also argue that the Trustee has failed to allege "predicate unlawful acts" to support her theories.  ULX Mot. at 13; LC Mot. at 22.  These arguments are both legally and factually incorrect.

1.    The Law-Of-The-Case Doctrine Has No Application

The ULX Entities claim that "the law of the case doctrine bars all of the Trustee's alleged predicate acts" with respect to Counts XXVII and XXVIII, stating that "three of the four [predicate acts] were subsequently rejected by the Court in its Motion to Dismiss Opinion." ULX Mot. at 12.  Mr. LeClair similarly claims that the Court has already found that "making

14

misleading or false statements to professional consultants is not an unlawful act" and therefore barred by the law-of-the-case doctrine.  LC Mot. at 25.

The law-of-the-case doctrine "generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  *Musacchio v. United States*, 577 U.S. 237, 244–45 (2016).  Yet it is a "flexible" doctrine that carries different weight depending on the stage of the case.  *See Graves v. Lioi*, 930 F.3d 307, 318 (4th Cir. 2019) (The doctrine "poses no bar to the assessment of past holdings based on a different procedural posture when … later review expands the court's inquiry based on development of actual facts underlying a plaintiff's claims.").

Courts in the Fourth Circuit routinely reject motions seeking to apply prior rulings under the law-of-the-case doctrine to amended complaints.  *See, e.g.*, *Chase v. Dep't of Pub. Safety & Corr. Servs.*, 2020 WL 1914811, at *12–13 (D. Md. 2020) ("[W]hen a defendant moves for dismissal of an amended complaint, the analysis wholly concerns the adequacy of the allegations contained in that filing"; "because 'different facts will lead to a different legal analysis" the doctrine does not apply when the "factual milieu has expanded since the court's initial ruling"); *In re Worldwide Wholesale Lumber, Inc.*, 372 B.R. 796, 809–10 (Bankr. D.S.C. 2007) ("The law of the case doctrine does not bar the litigation of the issues raised in the amended complaint since these issues were not properly before the Court on the [prior motion] and therefore were not determined by the Court.").

What Defendants fail to acknowledge is that the Trustee did refine her legal theories in light of the Court's findings in relation to the original complaint.  In the MTD Opinion, the Court found that four categories of allegations—"[e]ntering into a joint venture, converting the business from a professional corporation to a professional limited liability company, terminating

15

the firm's deferred compensation and supplemental retirement plans, and making misleading or false statements to third-party professional consultants"—were not on their own unlawful acts. Given this ruling, the Trustee removed allegations relating to LeClairRyan's conversion, deferred compensation and supplemental retirement plans with respect to the ULX Entities.

As to the other two categories of acts, the additional facts alleged in the Amended Complaint provide ample grounds for those claims. Among other things, the Trustee alleges that Defendants used false information to induce LeClairRyan into entering the joint venture including by (i) providing false promises to new client relationships (Am. Compl. ¶¶ 8, 179-185), (ii) soliciting reports from third-party professionals based on misinformation[11] (*id*. ¶¶ 151, 188-191), and (iii) using the joint venture to improperly extract value from LeClairRyan for their own use and benefit (*id*. ¶¶ 214-215; 257-258). Therefore, even if the Court were inclined to apply the law-of-the-case doctrine here, it should decline to do so because the allegations in the Amended Complaint are not the same.[12] Instead, the Trustee's claims should be assessed considering these additional charges.

---

[11]    The ULX Entities argue that the Court should ignore the Trustee's "conclusory" allegations concerning the "false and/or misleading statements" provided to Hinshaw. ULX Mot. at 4 n.7. But this argument is factually inaccurate, *see, e.g.*, Am. Comp. ¶ 149 (alleging that the Hinshaw "Letter was premised upon facts relevant to earlier versions of the deal and not the terms actually under negotiation at the time it was issue"); ULX Mot. Ex. C at 2 (assuming LeClairRyan would receive a $33 million loan and "a line of credit available to support [its] business").

[12]    Neither of the two cases cited by the ULX Entities hold otherwise. *See* ULX Mot. at 11. In *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801 (E.D. Va. 2007), the court found that the law of the case doctrine prevented review of an order from a "parallel trial court" observing that "reconsideration of [another] court's rulings is inappropriate under the law of the case doctrine unless those rulings are clearly erroneous." *Id*. at 808. No prior rulings from alternative jurisdictions are at issue here. Likewise, in *Blick v. Shapiro & Brown, LLP*, 2017 WL 58864 (W.D. Va. 2017), the court applied the law of the case doctrine on a motion to amend where "claims against the original defendants [had been] dismissed *with prejudice*" and where plaintiff had not alleged any additional "facts to support [his] contention[s]." *Id*. at *4 (emphasis added). The claims at issue here were not dismissed with prejudice. To the contrary, the Trustee's motion to file an amended complaint—which contains scores of new factual allegations to support the Trustee's claims—was granted. *See* Docket No. 85.

2.      The Amended Complaint Sufficiently Alleges Predicate Acts To Give Rise For Conspiracy Under Counts XXIV and XXX

Contrary to Defendants' assertions, the Amended Complaint sets forth ample details of how the ULX Entities conspired with, *inter alia*, Messrs. Reed, LeClair and CVC to induce LeClairRyan's shareholders and members to acquiesce to the ULXP transaction.  Defendants still claim that the conspiracy alleged in Counts XXIV and XXX fails to include "requisite predicate acts."  ULX Mot. at 14; LC Mot. at 24.  The ULX Entities did this knowing full well that their actions enabled Mr. LeClair to conceal the true value of the transaction from LeClairRyan and its shareholders.  In exchange, the ULX Entities got to keep the assets they received, for little to no consideration.

First, the ULX Entities argue that "[LeClairRyan's] assets and back-office work force were properly transferred to the joint venture" and that the ULX Entities use of LeClairRyan's "confidential information" was permitted by the JV Agreements.  But the Amended Complaint alleges the opposite:  that these assets were transferred for inadequate consideration, and, as the ULX Entities admit, some assets were transferred via license, which upon information and belief, the ULX Entities continue to exploit as their own.

Second, the ULX Entities contend that allegations of misappropriating trade secrets and client relationships are inadequate because "the Trustee fails to identify any of the alleged information at issue or the improper means through which it was allegedly acquired."  But as explained in Section IV.A above, that simply is not true.  The Trustee names specific relationships and acts to take confidential information from LeClairRyan.

Third, Defendants again claim that the "the Court has already ruled in the Motion to Dismiss Opinion that 'making misleading or false statements to professional consultants' is not unlawful."  ULX Mot. at 15.  But that is not what the Court held.  Instead, the Court found that

making misleading or false statements to professional consultants is not in and of itself an "unlawful act." The Amended Complaint contains additional facts and allegations showing that those false statements were made to fraudulently induce LeClairRyan to enter the joint venture. *See* Am. Compl. ¶ 179 ("To get shareholders in LeCairRyan on board, Mr. Reed had promised them business deals and opportunities, but never delivered."); ¶ 180 (LeClairRyan noting that it "could receive $24 million in annual billings from DXC"; a month later the relationship ended in a "carnival gone bad"); ¶ 181 (a LeClairRyan partner explaining that the "UnitedLex people were finally going to get me into the loop ASAP on Ford. That was a lie. … I think I should look into other firms where my Ford relationship is respected."); ¶ 199 (another LeClairRyan partner observing, "they are just using our firm and our reputation to benefit themselves in trying to win millions of dollars of work that they will keep all of.").[13]

## C.    The Amended Complaint States Claims For Breach Of Fiduciary Duty

It is well-settled that "[a] claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty." *Largo Legacy Grp., LLC v. Charles*, 2021 WL 2692426, at *12 (Del. Ch. 2021); *see also Jordan v. Osmun*, 2017 WL 2837143, at *4 (E.D. Va. 2017) ("The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a duty; (2) a breach of the duty; and (3) damages proximately caused by that breach." (*citing Alstom Power, Inc. v. Graham*, 2016 WL 354754, at *2 (E.D. Va. 2016)). The ULX Entities argue that the Trustee's claim should be dismissed because (i) only "members of a joint venture" owe fiduciary duties to other members and only "ULX Manager was a member" (ULX Mot. at 9); and (ii) "the Operating Agreement eliminates

---

[13]    The Court should reject Mr. LeClair's reliance on the affirmative defenses of the intra-corporate immunity doctrine and *in pari delicto* for the same reasons that it previously rejected UnitedLex's reliance on these two doctrines. *See* MTD Opinion at FN 3.

any fiduciary duty among members" of ULXP.   *Id.* at 10.   Mr. LeClair, in turn, incorrectly

contends that he did not owe fiduciary duties because he was neither a director nor a managing

LLC member during the relevant time.   LC Mot. 20-21.   These arguments are unpersuasive.

### 1.   The ULX Entities Owed Fiduciary Duties To LeClairRyan

An entity owes a fiduciary duty to a company if "that [entity] controls a manager of the

LLC or otherwise has a fiduciary relationship to the LLC."   *Feeley v. NHAOCG, LLC*, 62 A.3d

649, 662-63 (Del. Ch. 2012).   This principle has been repeatedly recognized in Delaware under a

line of cases beginning with *In re USA Cafes, L.P. Litigation*, 600 A.2d 43 (Del. Ch. 1991).   *See*

*Paige Capital Mgmt., LLC v. Lerner Master Fund, LLC*, 2011 WL 3505355, at *30 (Del. Ch.

2011) ("[*USA Cafes*] and its progeny have established that a director, member, or officer of a

corporate entity serving as the general partner of a limited partnership ... who exercises control

over the partnership's property owes fiduciary duties directly to the partnership and its limited

partners.") (citation omitted); *see also Bigelow/Diversified Secondary P'ship Fund 1990 v.*

*Damson/Birtcher Partners*, 2001 WL 1641239, at *6 (Del. Ch. 2001) (denying motion to dismiss

complaint against general partners' "upstream" affiliates where limited partner sued general

partners of limited partnership and those affiliates alleging that the affiliates exercised control

over the limited partnership's property).

The same principle has been extended to cases in which an LLC is acting as the

managing member.   *See Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*, 2009 WL

1124451, at *1 (Del. Ch. 2009) (finding that an individual who was the owner and manager of

the LLC that served as the managing member of a second LLC owed fiduciary duties directly to

the other members of the second LLC because that person exerted control over the assets owned

by the second LLC); *see also Paige Capital Mgmt., LLC v. Lerner Master Fund, LLC*, 2011 WL

3505355, at *30 (Del. Ch. 2011) (finding that allegations that managing member of the hedge

fund's general partner had exerted control over hedge fund's assets were sufficient to allege fiduciary duties on the part of managing member).

The Amended Complaint alleges that UnitedLex controlled ULX Manager and ULX Manager controlled ULXP. These allegations are adequate to state claims against UnitedLex. *See Forman v. Kelly Capital, LLC (In re Nat'l Serv. Indus., Inc.)*, 2015 WL 3827003, at *6 (Bankr. D. Del. 2015) (finding that trustee's claims for breach of fiduciary duties sufficiently pled where trustee alleged that defendants "engaged in self-interested transactions, namely directing the Debtor to transfer funds to them and their related entities for no legitimate business reason and with no expectation that they would be repaid.").

In the limited liability context, as in the corporate context, the duty of loyalty mandates that the best interest of the company and its stakeholders trump any interest possessed by the manager and not shared by the stakeholders generally. Managers are "not permitted to use their position of trust and confidence to further their private interests. Nor can fiduciaries intentionally act with a purpose other than that of advancing the best interests of the corporation. … such fiduciary duties include the duty not to cause the corporation to effect a transaction that would benefit the fiduciary at the expense of the minority stockholders." *Largo Legacy Group, LLC v. Charles*, 2021 WL 2692426 at *13 (Del Ch. June 30, 2021).

Yet this is exactly what the ULX Entities did. *See* Am. Compl. ¶ 8 (observing a need to "shrink" LeClairRyan in October 2018 after the UnitedLex deal closed with CVC); ¶ 163 ("Once the ULXP transaction was consummated, LeClairRyan was no longer able to function on its own without the support of the ULX Entities"); ¶ 170 ("Together, the JV Agreements granted the ULX Entities unprecedented control over the operation of the Debtor law firm."); ¶ 214 (UnitedLex directing employees not to "be a bull in the china shop, even though we have the

power to do so."); ¶ 215 (UnitedLex directing employees to be "as aggressive as possible in reforming LR and ULX Partners" and "Gordon Gecko like on cuts"); ¶ 212 (UnitedLex employee noting a need to "consider carefully … how we push partners to achieve our plan."). *See Auriga Cap. Corp. v. Gatz Properties*, 40 A.3d 839, 870 (Del. Ch. 2012) *aff'd*, 59 A.3d 1206 (Del. 2012) ("A fiduciary may not play 'hardball' with those to whom he owes fiduciary duties, and [Delaware] law provides recourse against disloyal fiduciaries or controllers who use their power to coerce the minority into economic submission.").

2.   The Operating Agreement Imposes a Duty Of Good Faith

It is the case that "[c]ourts recognize contractual agreements where the fiduciary duties have been limited." *Official Comm. of Unsecured Creditors of HH Liquidation, LLC v. Comvest Grp. Holdings, LLC et al. (In re HH Liquidation, LLC)*, 590 B.R. 211, 272 (Bankr. D. Del. 2018) (citation omitted).   Under Delaware law, members of an LLC may adopt an exculpatory provision in their operating agreement limiting "'"any and all liabilities for breach ... of duties (including fiduciary duties)' with the exception of 'any act or omission that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing.'" *Id.* (citing 6 Del. C. § 18-1101(e)).   While exculpatory provisions may immunize directors, officers and managers from liability on duty of care claims, they do not for the breach of the duty of loyalty or good faith claims.  *Id.* (citing *Stone*, 911 A.2d at 369-70).

The ULX Entities argue that the Operating Agreement eliminates all common law fiduciary duties among the members of ULXP.[14]   ULX Mot. at 10.   They make this argument

---

[14]     The ULX Entities also claim that Delaware law does not impose fiduciary duties on "members of LLCs who are neither managers nor controlling members."  *See* ULX Mot. at 10 (citing *In re South Canaan Cellular Investments, LLC*, 427 B.R. 85, 102-03 (Bankr. E.D. Pa. 2010).  Even if this were true—it is not— the ULX Entities owned 99% of the joint venture.

based on section 13.02 of the Operating Agreement, which states, in relevant part, "This Agreement is not intended to, and does not, create or impose any fiduciary duty on any Covered Person."[15]  ULX Mot. Ex. C § 13.02(a).  However, this language does not disclaim duties owed by any Covered Person; instead, it clarifies that Covered Persons are not transformed into fiduciaries by the Operating Agreement.

Section 13.02 then states that "each of the Members and the Company hereby waives any and all fiduciary duties that, absent such waiver, may be implied by Applicable Law, and in doing so, acknowledges and agrees that the duties and obligation of each Covered Person to each other and to the Company *are only as expressly set forth in this Agreement*."  ULX Mot. Ex. C § 13.02(a) (emphasis added).  Far from disclaiming all fiduciary duties, this provision makes clear that the Operating Agreement expressly imposes fiduciary duties.

Section 13.02(b) titled "Duties" states:

> *Whenever in this Agreement a Covered Person is permitted or required to make a decision* … the Covered Person shall be entitled to *consider only such interests and factors as such Covered Person desires*, including its own interests, and shall have no duty or obligation to give any consideration to any interest of or factors affecting the Company or any other Person. Whenever in this Agreement a Covered Person is permitted or required to make a decision in such Covered Person's "*good faith*," the Covered Person shall act under such express standard and shall not be subject to any other or different standard imposed by this Agreement or any other Applicable Law.

This provision makes clear that when a Covered Person is *making a decision under the Operating Agreement*, they have latitude to "consider such interests and factors as [they] desire."  But this decision-making authority has limits.

---

[15]     "Covered Person" is defined in section 13.01(a) to mean "(i) each Member, (ii) the Managing Member, the Partnership Representative or a liquidating trustee, in each case in his or its capacity as such, (iii) each officer, director, shareholder, partner, member, controlling Affiliate, employee, agent or representative of each Member, and each of their controlling Affiliates, and (iv) each Officer, employee, agent or representative of the Company."  ULX Mot. Ex. C § 13.01(a).

For example, section 8.01 goes on to state that: "Whenever in this Agreement a Covered Person is **permitted or required to make a decision** in such Covered Person's 'good faith,' the Covered Person **shall act [in good faith]** and shall not be subject to any other or different standard imposed by this Agreement or any other Applicable Law." Good faith means the actual, subjective belief that the course of conduct is in, and not opposed to, the best interests of the Company. "To the extent that an Agreement purports to insulate a [fiduciary] from liability even for acts of bad faith ... it should do so in the most painstakingly clear terms." *Skye Min. Invs., LLC v. DXS Cap. (U.S.) Ltd.*, 2020 WL 881544, at *26 (Del. Ch. 2020). The Operating Agreement also states that "[ULX Manager] accepts and agrees to perform its duties and undertake its responsibilities as set forth in this Agreement and **to act in good faith and in the best interests of [ULXP]**." ULX Mot. Ex. C. Given the overlapping control between UnitedLex and ULX Manager, this good faith obligation extends to all the ULX Entities.

The Operating Agreement also imposes duties on "Covered Persons." For example, section 13.01(b) titled "Standard of Care" states that "[n]o Covered Person shall be liable to the Company or any other Covered Person for any loss, damage or claim incurred by reason of any action taken or omitted to be taken … so long as such action or omission **does not constitute fraud or willful misconduct** by such Covered Person." *Id*. § 13.03(b). Likewise, section 13.03(a)(ii) provides indemnification to a "Covered Person" provided that "such Covered Person acted in good faith and in a manner believed by such Covered Person to be in, or not opposed to, the best interests of the Company…" *Id*. § 13.03(a)(ii). It is obvious that the ULX Entities engaged in fraudulent practices and willful misconduct in taking control of ULXP (and LeClairRyan) solely for their own benefit and specifically to the detriment of LeClairRyan's creditors, members and shareholders.

3.    <u>Mr. LeClair Breached The Fiduciary Duties He Owed To LeClairRyan And To Its Creditors</u>

Despite his protests to the contrary, Mr. LeClair, by both his official positions and his controlling actions, continuously owed a fiduciary duty to LeClairRyan—and eventually to LeClairRyan's creditors—from at least 2014 through the Petition Date.  And he continuously and repeatedly breached these fiduciary duties resulting in damages to LeClairRyan.  The Trustee's Amended Complaint adequately alleges all of these breaches.

### a)    Mr. LeClair Owed Fiduciary Duties From 2014 Through January 2016

It is unquestioned that in Virginia, "corporate directors have a fiduciary duty to the corporation and to its shareholders, and they must govern themselves accordingly." *Schnelling v. Crawford* (*In re James River Coal Co.*), 360 B.R. 139, 170 (Bankr. E.D. Va. 2007). Furthermore, "when a corporation becomes insolvent, or in a failing condition, the officers and directors no longer represent the stockholders, but by the fact of insolvency, become trustees for the creditors, and that they cannot by transfer of its property or payment of cash, prefer themselves or other creditors." *Poth v. Russey*, 281 F. Supp. 2d 814, 826 (E.D. Va. 2003) (citing *FDIC v. Sea Pines Corp.*, 692 F.2d 973, 977 (4th Cir. 1982)), aff'd 99 Fed. Appx. 446 (4th Cir. 2004)).

From at least 2014 through January 2016, Mr. LeClair was a director of LeClairRyan, even serving as Chairman for all but one month of that tenure.  As much as Mr. LeClair's Motion seeks to distract the Court's attention from this fact, it is inescapable that Mr. LeClair owed a fiduciary duty to LeClairRyan through January 2016—and further owed a duty to LeClairRyan's creditors once it entered the zone of insolvency.

### b) **Mr. LeClair Owed Fiduciary Duties From February 2016 Through The Petition Date**

In Virginia, a fiduciary relationship exists "when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence." *Allen Realty Corp. v. Holbert*, 227 Va. 441, 446 (1984). Thus, in the context of a corporation's affairs, corporate titles are not dispositive; rather, if shareholders "assume[s] the roles of directors and officers," they "assume[] not only the authority and fiduciary responsibilities of directors, but also the liabilities resulting from the exercise of those role." *Curley v. Dahlgren Chrysler-Plymouth, Dodge, Inc.*, 245 Va. 429, 434 (1993). That is precisely what the Trustee's well-pleaded Amended Complaint alleges: regardless of title, Mr. LeClair exercised dominion and control of his namesake law firm and orchestrated the transactions, like the joint venture with ULX, that harmed LCR.

Against this factual backdrop and well-established law, it is hardly surprising that Mr. LeClair's arguments seek to elevate form over substance. Portraying himself as a "mere" shareholder before the Debtor's conversion to a PLLC, and as a non-managing member after the conversion, the thrust of Mr. LeClair's arguments is that he never held a position after stepping down as Chairman that, by virtue of its title, would have imposed a fiduciary obligation. But these arguments at most challenge the Trustee's allegations about his *de facto* control of the Debtor, and thus at most raise an issue of fact that would be inappropriate to resolve at the pleading stage.

Mr. LeClair also overreaches on the law in contending that shareholders can never owe fiduciary duties to the corporation. In *O'Hazza v. Exec. Credit Corp.*, 246 Va. 111, 119 (1993), the shareholders "were not involved in, and did not exercise any direction or control over, the corporation's activities." *Cont. Assocs., Inc. v. Atalay*, 2015 WL 1916551, at *2 (E.D. Va. Apr.

27, 2015), turned on the court also being "unpersuaded that [the defendant] was ever a shareholder."   And the court in *James River* noted that if shareholders have "assumed the authority and fiduciary responsibilities of directors," they also assume "the liabilities resulting from the exercise of those roles."   *In re James River Coal*, 360 B.R. at 171.   What these cases boil down to is the uncontroversial proposition that a defendant's mere status as a shareholder cannot impose a fiduciary obligation.   Here, by contrast, Mr. LeClair was a decisionmaker driving the acts that harmed LCR and its creditors.

Mr. LeClair fares no better with his reading of the law governing LLCs.   As an initial matter, he does not contest that "managers" owe fiduciary obligations to the company.   His only argument is that for a member to be a "manager," the corporation's operating agreement must specifically convey that label upon the member.   Indeed, under Mr. LeClair's reasoning, a controlling member of an LLC can disclaim a fiduciary obligation simply by having the operating agreement characterize no member as a "manager."   The Virginia Code is to the contrary.   It provides that "the term 'manager' ***shall be deemed to include*** any member that is participating in the management of the limited liability company."   *Va. Code Ann.* § 13.1-1024.1.D (emphasis added).   Mr. LeClair's cited cases do not hold otherwise and instead concern the inapposite situation when one member seeks to assert fiduciary duty claims against another member or the manager.   *See In re McKnew*, 270 B.R. 593, 628-29 (Bankr. E.D. Va. 2001) (declining to find fiduciary duty between members of Virginia LLC); *Remora Invs., L.L.C. v. Orr*, 277 Va. 316, 324 (2009) (similar).   Here, by contrast, Mr. LeClair's duties ran to the company because of his *de facto* management of it.   Thus, at best for Mr. LeClair, his argument only contests whether he in fact managed the firm.   That is again a question of fact that cannot be resolved on the pleadings at this juncture.

### c)      **Mr. LeClair Breached His Fiduciary Duties**

Not surprisingly, Mr. LeClair's motion focuses on his tenuous claims that he did not owe a fiduciary duty to LeClairRyan or to its creditors rather than whether he acted against the best interests of his firm.  Indeed, Mr. LeClair's motion does not once deny that his actions as alleged in the Amended Complaint reflect breaches of the duty of good faith.

In Virginia, a fiduciary duty is breached if a fiduciary fails to "discharge his or her duties . . . in accordance with his or her good faith business judgment of the best interests of the corporation.  *Va. Code Ann.* § 13.1–690(A).  Directors may enjoy a presumption of good faith, but they shall be "called to account for their actions [] when they are shown to have engaged in self-dealing [,] fraud or have acted in bad faith.  *Gianotti v. Hamway*, 239 Va. 14, 24 (1990).  The line is ever more clear in the context of an insolvent company, where directors of insolvent corporations "cannot by transfer of its property or payment of cash, prefer themselves or other creditors." *Arrowsmith v. Warnick (In re Health Diagnostic Lab., Inc.),* 2018 Bankr. LEXIS 2963, *15 (E.D. Va. 2018).  This is especially true with respect to a motion to dismiss, where pleading that insiders engaged in transactions "in which they were self-interested . . . and which preferred shareholders over creditors . . . properly allege[s] a claim for breach of fiduciary duty." *Schnelling*, 360 B.R. at 171.

Here, the Trustee has meticulously set out a litany of fraudulent transfers initiated and/or approved by Mr. LeClair, all of which went directly into his pockets—and the pockets of other shareholders.  *See, e.g.*, Am. Compl. ¶¶ 77, 78, 87.  Whether it is the approval of discretionary spending for shareholder retirement programs, egregious bonus payments or shareholder dividends—all of which were made when LeClairRyan could not pay its most basic of operating expenses—Mr. LeClair has no answer for the Trustee's pleading.

### d) **The Debtor And Its Creditors Were Damaged By Mr. LeClair's Breaches**

Again, the Trustee's pleading here is unanswered because Mr. LeClair cannot dispute that the fraudulent transfers and other breaches of fiduciary duty further crippled LeClairRyan as it was struggling under the weight of its own debt.  The Amended Complaint makes clear and precise allegations that the improper transfers to shareholders and the giveaways to United Lex and ULXP left the Debtor and its creditors with nothing but mountains of debt.  Accordingly, the Trustee has more than adequately pleaded the Mr. LeClair flagrantly and repeatedly breached the fiduciary duties he owed to LeClairRyan.

### 4.   Mr. LeClair's Fraudulent Actions Toll The Statute Of Limitations

Mr. LeClair correctly states that, as a general rule, breach of fiduciary duty claims in Virginia are subject to the state's catch-all two-year statute of limitations found at *Va. Code Ann.* § 8.01-248. *See Plumbers & Steamfitters Union Local No. 10 v. Waters*, 451 F. Supp. 3d 543 (E.D. Va. 2020).  What Mr. LeClair fails to mention is that the Virginia Code also tolls the statute of limitations in certain circumstances.  *See Va. Code Ann.* § 8.01-229. Indeed, when a party engages in fraudulent concealment that prevents a party from either knowing about or asserting claims, the statute of limitations may be tolled.  *See Newman v. Walker*, 618 S.E.2d 336, 339 (Va. 2005).  In particular, if a party's actions "consist of affirmative acts of misrepresentation . . . be of that character that involves moral turpitude, and [] have the effect of debarring or deterring the plaintiff from his action," then a statute of limitations should be tolled. *Id.* at 340 (quoting *Hawks and Culpeper National Bank v. Tidewater Improvement Co.*, Inc., 89 S.E. 118, 121 (1916)).

Here, the Trustee has made colorable claims of fraudulent transfer, supported by Mr. LeClair's own documents, that suggest that Mr. LeClair's affirmative acts—in conjunction with

those of the ULX Entities—deceived LeClairRyan's creditors and delayed or forestalled claims against LeClairRyan or Mr. LeClair himself.  Specifically, Mr. LeClair, as an insider of the Debtor, arranged for and approved a series of transfers, including a fraudulently induced release, that benefitted himself and other insiders while, at the same time, affirmatively concealing evidence of LeClairRyan's insolvency from its creditors.  The Amended Complaint not only pleads no less than three badges of fraud associated with the transfers, but sets out numerous affirmative acts—*e.g.,* improper use of client funds to pay unrelated invoices and willful concealment of covenant breaches from lenders—that delayed the ability of LeClairRyan's creditors to discover the insolvency and the claims associated with LeClairRyan's looming bankruptcy.

Such detailed pleadings are more than sufficient to defeat LeClair's Motion.  *See Healy v. Chesapeake Appalachia*, 2011 WL 24261 (W.D. Va. Jan. 5, 2011) (finding that allegations that defendants provided false information to prevent discovery of cause of action were sufficient to survive a motion to dismiss regarding the statute of limitations).  And even if Mr. LeClair had brought forth additional facts to rebut the allegations of fraudulent concealment—which he has not—such information would only be "relevant on the factual issue of whether the court should apply the fraudulent concealment . . . doctrine[] to toll the statute of limitations." *Id.*  This factual dispute would not be appropriate before the Court at this juncture.

**D.**     **The Trustee States A Claim For Avoidance Of Gary LeClair's Release Under 11 U.S.C.  § §  544(B) And 550 (Count XV)**

As to constructive fraudulent transfer under the Virginia Code (Va. Code § 55.1-401), Mr. LeClair errs in contending (LC Mot. at 13) that the "mutual" nature of the Release amounts to "consideration deemed valuable at law" and requires dismissal of the Trustee's claim.  The Court has already held that the analogous element of reasonably equivalent value "is a question

of fact" that would be inappropriate to decide on the pleadings.  MTD Opinion at 13.  The conclusion is the same here, even if the Virginia Code's requirement of "consideration" is a lesser standard than that of the Bankruptcy Code, because both statutory elements involve a determination of value.  *In re Carrington Gardens Assocs.*, 248 B.R. 752, 779 (Bankr. E.D. Va. 2000), *aff'd*, 258 B.R. 622 (E.D. Va. 2001), *aff'd sub nom. Carrington Gardens Assocs. v. United States*, 49 F. App'x 427 (4th Cir. 2002) ("[T]he question of whether the requisite offer, acceptance, and consideration exists to make a valid contract is generally a factual matter.").  Mr. LeClair's citation to *Price v. Taylor*, 251 Va. 82, 88 (1996), moreover, does not come close to showing otherwise because that case did not involve a release of claims (of debatable value); instead, the "mutuality" the court found to be sufficient consideration was a buyer's agreement to buy and the seller's corresponding agreement to sell.  Here, by contrast, it is a question of fact whether Mr. LeClair had any claims against LCR and thus gave up anything of value.

Mr. LeClair's arguments as to intentional fraudulent transfer (Va. Code § 55.1-400) are unconvincing for similar reasons.  He does not dispute that "lack of or gross inadequacy of consideration" may amount to a badge of fraud under Virginia law.  Thus, in addition to precluding dismissal of a claim for constructive fraudulent transfer, the fact question of whether Mr. LeClair provided anything of value also makes it inappropriate to resolve whether the Trustee alleges a badge of fraud.  It is also a question of fact whether "[a]n inference of fraud" arises because the "insolvent corporate debtor [was] under the 'complete control' of" Mr. LeClair "who is himself a stockholder and creditor of the corporation and the corporate debtor prefers that creditor-director."  *Grayson v. Westwood Bldgs. L.P.*, 859 S.E.2d 651, 670 (Va. 2021) (citing *Darden v. George G. Lee Co.*, 204 Va. 108 (1963)).  The Trustee's claim should thus be sustained.

**E.**     **The Trustee Has Sufficiently Pleaded Transfer Claims Under The Bankruptcy Code And State Law**

Contrary to Mr. LeClair's contentions, the Trustee has adequately alleged transfer claims under the Bankruptcy Code and state law.

1.     Mr. LeClair's Member Draws Are Subject To Recovery Under Section 548(a)(1)(B)

Mr. LeClair does not challenge the Trustee's claims seeking to avoid his member draws under Sections 548(a)(1)(A) or 547(b).  Instead, his only argument is that the Trustee does not state a claim under Section 548(a)(1)(B) or the Virginia Code.  *See* LC Mot. 35-36; *see also infra* § VI.4 (regarding Mr. LeClair's challenge to the Trustee's claim under the Virginia Code). Claims related to Mr. LeClair's member draws will thus proceed even if his motion to dismiss is granted.

In any event, Mr. LeClair's arguments about Section 548(a)(1)(B) are wrong.  He first errs in contending that his member draws constituted "salary" that LCR paid in exchange for the revenue he allegedly generated.  Aside from raising factual issues, Mr. LeClair's assertion that his draw was a "salary" is baseless.  The Fourth A&R Shareholder Agreement specifically limited the Debtor's ability to distribute member draws to particular circumstances—none of which were met. LC Mot. Ex. 3 at 54.  In short, the Debtor was barred from paying out more than it earned.  Nor was the Debtor allowed to borrow funds from future years and future partners to cover member draws.

Yet that is exactly what the Debtor did and Mr. LeClair's self-serving statements that member draws were actually salary cannot change the simple fact that—consistent with the basic tenets of limited liability companies—LLC members are paid solely from profits and must share losses.  As a matter of the governing documents, Mr. LeClair was simply not entitled to member draws, a matter subject to the Board of Managers' "sole discretion."  LC Mot. Ex. 3 at 54.

Any suggestion that Mr. LeClair's conclusory suggestion that revenue he "generated" for the firm qualifies as reasonably equivalent value is similarly unconvincing. First, and most significantly, this Court has already held in this case that "reasonably equivalent value is a question of fact and it is not appropriate for the Court to determine the element at this point." MTD Opinion at 6. *LandAmerica Fin. Grp. v. Southern Cal. Edison, Co, Inc.*, 525 B.R. 308 (E.D. Va. 2015), cited by Mr. LeClair as setting a "rubric" for determining reasonably equivalent value is also inapposite. The decision in that case was on a motion for summary judgment, not at the pleading stage. *See id.* at 313. In *LandAmerica*, moreover, the court examined transfers between the debtor and an unaffiliated third party. *See id.* at 315. The case did not hold, as Mr. LeClair suggests, that an LLC member provides reasonably equivalent value for a draw so long as he or she generates revenue for the LLC. Indeed, no matter how much revenue a member generates, there still may not be any proper distributions (or draws) if, as here, the company is not profitable. Simply put, Mr. LeClair's argument conflates two distinct financial concepts (revenue versus profit) and should be rejected.

Mr. LeClair is also wrong in characterizing his draws as being on account of antecedent debt. *See* LC Mot. at 36. His draws again were subject to the Board of Manager's "sole discretion." The draws, moreover, were not mandatory. That contract instead provided metrics by which to measure his "Regular Salary" and "Year-End Amount" *before* LCR converted to a PLLC. Those metrics were "subject to" the then-existing "Shareholder Compensation Policy." As alleged in the Amended Complaint, Mr. LeClair's draws, by contrast, were provided for in an entirely separate, and later, contract—the Fourth A&R Shareholder Agreement. The draws thus had nothing to do with Mr. LeClair's Soft Landing Contract and were not on account of antecedent debt. *Tavenner v. Wells Fargo Bank, N.A. (In re Furguson)*, 2014 Bankr. LEXIS

32

1046 (Bankr. E.D. Va. 2014), which dealt with promissory notes, not a defendant's claim that a distribution was for allegedly unpaid salary, is thus entirely distinguishable. And even if there was some theory that the SLC provided antecedent debt, the resulting conflict with the Fourth A&R Shareholder Agreement would merely create a factual controversy that cannot be resolved at this stage.

2.    Dividend Payments Are Subject To Recovery Under Section 548(a)(1)(B)

Mr. LeClair does not move to dismiss the Trustee's claim under Count X to claw back two dividends he received in late 2017 under Section 548(a)(1)(A). *See* LC Mot. at 36-37. That claim will thus proceed. He instead argues that these dividends are not recoverable under Section 548(a)(1)(B). That argument is wrong. As to the other dividends he received in 2017 and earlier, Mr. LeClair also errs in contending that the Trustee has not stated claims under Section 544 and the Virginia Code. *See infra* § VI.4.

Mr. LeClair's Section 548 (a)(1)(B) argument is incorrect because LCR's dividend payments to shareholders were not on account of antecedent debt. As with the other raft of transfers that were undertaken throughout the period of the Debtor's insolvency, the dividend payments were another self-interested transaction that drained significant value from the Debtor for the sole purpose of enriching Mr. LeClair and his fellow insiders. Here, the Debtor took on additional capital through preferred stock with the promise to pay 8% dividends that it could not afford—a classical element of the Ponzi scheme that Debtor had become.

Mr. LeClair's further suggestion that the dividends must be recognized as an antecedent debt that is paid in exchange for equivalent value does not follow from the case-law. Indeed, none of the cases Mr. LeClair cites holds that dividend payments by a debtor are *per se* antecedent debt that provide the required reasonably equivalent value. Rather, Mr. LeClair asks the Court to perform feats of logical gymnastics to stretch to his desired conclusion. Moreover,

Mr. LeClair's Motion ignores the contrary finding that dividends made more than two years prior to a petition date are subject to a fact-specific determination as to whether they qualify as consideration deemed valuable in law. *See Lawyers Title Ins. Corp. v. P.R.T. Enterprises, Inc.*, 65 Va. Cir. 271, 2004 WL 1714892, at *5 (Va. 2004) (holding that *de facto* shareholder dividends constituted a voluntary conveyance in contravention of Virginia Code Section 55-81 (now 55.1-401)).

3.    The Trustee Has Pled That The December 31, 2018 SR Plan Distributions Were An Interest In Property

Mr. LeClair concludes, without evidence and in direct contradiction to the Trustee's allegations in the Amended Complaint, that he was "paid the vested balance from the SR Plan on December 31, 2014; January 28, 2016, July 7, 2016; October 17, 2016; January 19, 2017; and December 31, 2018. Each of these transfers originated from the secular trust." LC Mot. at 28-29. However, the Amended Complaint does not allege that such transfers were made from the secular trust. Indeed, not only would the Trustee actively dispute that each of these payments were made from the secular trust, but entries in the very document Mr. LeClair cites, Am. Comp. at Ex. 3, clearly state the Trustee's assertion that SR Plan payments to Mr. LeClair originated from the deferral account—not the secular trust. At this juncture, the Court must accept the well-pled allegations of the Trustee. Whether or not these payments were made from the secular trust is a matter for discovery, not a matter to be decided on a motion to dismiss.

4.    The Trustee Has Adequately Stated Claims Under Section 544(b) And Virginia Code Ann. § 55.1-400

While Mr. LeClair's Motion asserts that the Trustee has failed to plead any of Virginia's badges of fraud, he conspicuously fails to note the acceptable badges of fraud. If he had, it would become obvious that the Trustee has met the simple threshold of not only pleading at least

one badge of fraud but also noting additional mitigating factors in pleading fraudulent conveyance.

The Fourth Circuit has summarized the badges of fraud under Virginia law to include "the relationship of the parties, the grantor's insolvency, pursuit of the grantor by creditors at the time of the transfer, want of consideration, retention of the property by the grantor, fraudulent incurrence of indebtedness after the conveyance, gross inadequacy of price, and lack of security." *Flame S.A. v. Freight Bulk Pte. Ltd.*, 807 F.3d 572, 589 (4th Cir. 2015). "Proof of a single badge of fraud is sufficient to establish a prima facie case of fraudulent conveyance." *La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 294 Va. 243, 254 (Va. 2017).

In fact, the Amended Complaint pleads three of these enumerated badges: (1) fraudulent incurrence of indebtedness after the conveyance; (2) the grantor's insolvency; and (3) the relationship of the parties.  First, the Amended Complaint sets out multiple examples of LCR's fraudulent actions that incurred additional significant debt for the Firm, including the ULX Transfers as well as continuous transfers to insiders—including Mr. LeClair—between 2014 and the Petition Date.  Am. Compl. ¶¶ 87,137, 265-267.  Second, the Trustee has made a clear pleading that LCR was insolvent at the time of the LeClair Transfers.  *Id.* ¶¶ 365, 369, 378. Third, the Amended Complaint contains significant facts to establish that, titles notwithstanding, Mr. LeClair consistently exercised managerial control over LCR, creating a special relationship that encourages a finding of fraudulent intent.  *Id.* ¶¶ 8, 13-14, 147, 155, 188, 189, 214, 215.

Although fraudulent incurrence of indebtedness after the conveyance is clearly established by Virginia state courts as a badge of fraud, see *La Bella Dona Skin Care, Inc.*, 294 Va. at 254, a point that Mr. LeClair does not have an answer for, Mr. LeClair appears to suggest that insolvency and the relationship between transferring parties are not themselves badges of

fraud.  LC Mot. at 37.  While the Supreme Court of Virginia has not directly addressed this

point, it has never rejected insolvency as a badge of fraud.  Moreover, courts in the Eastern

District of Virginia have repeatedly recognized that insolvency is a badge of fraud under Virginia

law.  *See, e.g.*, *McCarthy v. Giron,* 2014 WL 2696660, *12 (E.D. Va. 2014); *Matter of Claxton*,

30 B.R. 199, 212 (E.D. Va. 1983); *GEP Interactive, Inc. v. Exhibition You GMBH & Co. Kg*.,

2020 WL 6379511, *3 (E.D. Va. 2020). Similarly, a close or controlling relationship between

transferring parties has been considered by courts as a badge of fraud, and, even where not found

to be singularly determinative, it still "calls upon the court for careful examination of the

transaction." *In re Claxton*, 30 B.R. at 212; *see also, McCarthy*, 2014 WL 2696660, at *14.

Indeed, even accepting Mr. LeClair's assertion that insolvency and the relationship between the

parties have not been recognized as specific badges of fraud by the Supreme Court of Virginia,

factors such as insolvency and the relationship between transferring parties have long been

recognized as "material circumstance[s]" to be considered in connection with other

circumstances that tend to show a fraudulent intention.  *McClintock v. Royall*, 173 Va. 408, 415

(Va. 1939).

Thus, in conjunction with the badge of fraudulent incurrence of indebtedness after the

conveyance, LCR's insolvency and LeClair's controlling actions help emphasize that the

circumstances surrounding the LeClair Transfers have satisfied the requirements for a prima

facie pleading of fraudulent transfer.

What is more, Mr. LeClair ignores that the particularity standards with which fraud

claims must be pled are "relaxed" when such claims are pursued by a bankruptcy trustee. *See*

MTD Opinion at 11; , *Arrowsmith*, 2017 Bankr. LEXIS 2230, at *29 ("Bankruptcy courts have

consistently held that the heightened pleading requirements of [Civil] Rule 9(b) should be

relaxed in cases brought by a third party trustee because of the trustee's inevitable lack of

knowledge concerning acts of fraud previously committed against the debtor, a third party."). As

the Court previously found, "as long as 'a fraudulent transfer claim details the transfers alleged

to be fraudulent, the reasons the transfers are fraudulent, and the roles of the defendants in the

transfers, it has been pled with sufficient particularity to satisfy Federal Rule of Civil Procedure

9(b).'" MTD Opinion at 11 (citing *In re James River Coal Co.*, 360 B.R. at 162). Accordingly,

Mr. LeClair's Motion fails to undermine the adequacy of the Trustee's pleadings for any of Mr.

LeClair's fraudulent transfers.

     5.     The Trustee States A Claim Under Both 547(b) And 548(a)(B) For The NML
          <u>Loan Repayments</u>

Mr. LeClair asserts three purported grounds for dismissal of the Trustee's claims under

the Bankruptcy Code relating to the NML Loan Repayments. He contends first that he is not an

"insider" subject to the one-year lookback period under Section 547(b)(4)(B); second, that he

allegedly provided "contemporaneous" "new value" in exchange for the transfers under Section

547(c)(1); and third, that what he allegedly provided also constitutes reasonably equivalent value

under Section 548(a)(1)(B). *See* LC Mot. 29-35. None of these arguments is convincing.

First, Mr. LeClair is an insider and therefore subject to the one-year lookback period.

*Supra* § IV.E(4). (And, even he was not, the last of the three NML Loan Repayments was on

July 18, 2019, or well within the 90-day lookback period.)

Second, the Court has already held that the defense of reasonably equivalent value raises

factual issues that cannot be resolved at the pleading stage. *Supra* § IV.D. Mr. LeClair provides

no reason to depart from this ruling.

Third, the Court's holding in that regard applies with equal force to Mr. LeClair's "new

value" defense under Section 547(c)(1). *See, e.g.*, *In re Toys "R" Us*, 2020 WL 2765046, at *4

(E.D. Va. May 26, 2020) ("an affirmative defense such as the execution of a release is not appropriately considered on a motion to dismiss.") (internal citations omitted); *In re Truland Grp., Inc.*, 588 B.R. 447, 459 (Bankr. E.D. Va. 2018), *aff'd*, 604 B.R. 258 (E.D. Va. 2019) ("The 'substantially contemporaneous' standard is a flexible one, requiring the Court to take into account the particular facts and circumstances of each case.").  Questions about the alleged "value" Mr. LeClair provided are especially fact-intensive given that the value he claims he provided for the NML Loan Repayments—his continued employment with LCR—is also the reasonably equivalent value he claims he provided in exchange for his member draws.

Mr. LeClair, moreover, does not come close to meeting his burden that he provided "contemporaneous" "new value" in exchange for the transfers. *See* 11 U.S.C. 547(g) (defendant bears burden of proof on a Section 547(c) defense).  The new value, his argument goes, was his purported forbearance from terminating his employment.  Even if that could be considered new value, *see In re 360networks (USA) Inc.*, 338 B.R. 194, 205 (Bankr. S.D.N.Y. 2005) ("Forbearance alone does not constitute new value"), Mr. LeClair does not identify any agreement with LCR that his forbearance was in exchange for the NML Loan Repayments; he instead points only to a so-called Forbearance Memo that he authored.  Indeed, Mr. LeClair simultaneously claims that his continued employment was in exchange for something else, namely his member draws.  That hardly demonstrates an "intent" by LCR to agree to a "contemporaneous exchange" of the NML Loan Repayments for his continued employment.  *See* 11 U.S.C. 547(c)(1)(A) (applying only "to the extent that such transfer was (A) intended by the debtor and the creditor…to be a contemporaneous exchange").  Any purported exchange also was not "contemporaneous": Mr. LeClair's alleged forbearance was in March 2019, whereas the first of the NML Loan Repayments was not until three months later.  *Compare* LC Mot., Ex. 8

*with* Am. Compl., Ex. 2.  Any new value thus was not "in fact a substantially contemporaneous exchange."  11 U.S.C. § 547(c)(1)(B).

  6.  The Trustee Has Properly Pled A Transfer With Respect To The Banner Life
     Insurance Premiums

   Mr. LeClair incorrectly contends that the Trustee does not allege a "transfer" with respect to the Banner Life Insurance premiums because, according to him, the premiums were not for his benefit.  *See* Mot. 27-28.  To the contrary, the transfers were for his benefit.  As documented in an agreement between him and LCR, LCR "acquired" the Banner Life Insurance Policy solely to "finance" purported obligations to *him* under the then operative shareholders' agreement and his Soft-Landing Contract.  Ex. 1 at 1.  For that reason, Mr. LeClair also had a security interest in the "Death Proceeds" payable under that policy.  *See id.* at 2 ¶ 1(a).  The continuation of the policy was thus for his benefit, and LCR's payments to fund that policy for his benefit meet the broad definition of "transfer" under the Bankruptcy Code.  *See* 11 U.S.C. § 101(54)(D) (defining transfer to include "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property.").

  7.  The Complaint States A Cause of Action For Conversion

   The LeClair Motion fails to acknowledge, as it must, that the Amended Complaint alleges that, by taking possession of the contingent income payments when he had no right to do so, LeClair's conduct constituted conversion.  These allegations are sufficient to state a claim for conversion.  Although LeClair seeks to argue that the contingent income payments were voluntary, therefore defeating the conversion claim, such a factual allegation (even if it were proper at this juncture), does not change the fact that LeClair had no right to the money he received through the contingent income payments.

"Conversion is… any act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." *Mackey v. McDannald*, 298 Va. 645, 659 (2020). Virginia courts have repeatedly found that money is property that can be subject to conversion. *See Grayson v. Westwood Buildings, L.P.*, 859 S.E.2d 651, 679 (Va. 2021). As the Amended Complaint alleges, when Mr. LeClair received the contingent income payments, those monies were the property of LCR. Am. Comp. ¶¶ 75-77; 85-87; and 92-93.

Mr. LeClair attempts to (improperly) argue that his receipt of the contingent income payments was a voluntary payment by LCR, but does not argue that the pre-existing Board Resolution no longer determined the rights of the parties.  Indeed, a pre-existing agreement determines the rights of the parties to money for purposes of conversion. *See PGI, Inc. v. Rathe Productions, Inc.* 265 Va. 334, 344 (2003) (applying a joint venture agreement's "split profits" provision to a subsequent settlement entered by one of the joint venturers); *Lowe v. Wells Fargo Bank, N.A.*, 2018 WL 3748418, at *13 (E.D. Va. July 9, 2018) ("the alleged charges… would be wrongful because [they are] inconsistent with contractual promises"). The Amended Complaint is replete with examples that the contingent income payments were "more than [the LCR partners] earned." *See, e.g.,* Am. Comp.  ¶¶ 86, 91-92.

It is immaterial that the payment was voluntarily made when it contradicted the established property rights of the parties.  *Lowe,* 2018 WL 3748418, at *13 (finding that, when Defendant charged Plaintiff for arrearages in violation of their contract, "Wells Fargo's alleged dominion over the funds would be wrongful regardless of the voluntary nature of the Lowes' payment").[16]      Because the Amended Complaint alleges, among other things, that LeClair

---

[16]      This case is distinguishable from *Gyetvay v. Hooper*, 2020 WL 4926162 (E.D. Va. Aug. 21, 2020), cited by Mr. LeClair. In that case, there was no pre-existing agreement between the parties when Plaintiff voluntarily paid Defendant based on allegedly fraudulent statements.

received the contingent income payments in violation of LCR's established rights, LCR has properly pled a claim for conversion.

8.      The Trustee Has Sufficiently Pled An Unjust Enrichment Cause Of Action

The Amended Complaint also successfully pleads an unjust enrichment cause of action against Mr. LeClair; his receipt of improper contingent income payments from LCR forms a valid unjust enrichment claim.   Under Virginia law, there are three elements of an unjust enrichment claim: (1) the receipt of a benefit by the defendant, (2) the defendant knows of the benefit and should reasonably expect that the plaintiff expects compensation, and (3) the defendant retains the benefit without providing plaintiff's expected compensation.  *Schmidt v. Household Finance Corp., II*, 276 Va. 108, 116 (2008). LeClair only argues that LCR has not properly pled the second element of this claim, because there was no agreement for LeClair to repay LCR. LC Mot. at 15. That argument plainly fails.

LeClair's assertion that the second element of an unjust enrichment claim requires a promise by the Defendant to pay for the benefit received contradicts well-established Virginia law.[17] As courts have found, "There need be no actual agreement between the parties or even an implicit promise to pay for services in order to sustain a cause of action for unjust enrichment." *Jordan v. Osmun*, 2017 WL 2837143, at *6 (E.D. Va. June 29, 2017) (*citing Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 165 (4th Cir. 2012)). *See also James G. Davis Const. Corp. v. FTJ,*

---

[17]      Mr. LeClair's primary case in support of this argument, *Nedrich v. Jones*, 245 Va. 465 (1993), is much more limited in its scope than Mr. LeClair implies. In that case, the court found that an unjust enrichment claim was inappropriate where plaintiff sought additional compensation under an *existing and express* employment agreement. *Nedrich*, 245 Va. at 477 ("The law will not impose an implied contractual relationship upon parties in contravention of an express contract."). If anything, this authority supports the Trustee's argument by demonstrating that LeClair should have expected to still be bound by the conditions under which he would receive the contingent income payments.

*Inc.*, 298 Va. 582, 598 (2020) (finding that the second element of an unjust enrichment claim was satisfied while expressly acknowledging the absence of an agreement between the parties).

This Court's past applications of the Virginia test for unjust enrichment establish that a massive, unearned payout to a fiduciary should cause that fiduciary to reasonably expect that compensation is required.  In *Jordan v. Osmun*, 2017 WL 2837143 (E.D. Va. June 29, 2017), the defendant, vested with a durable power of attorney for an elderly client, paid herself an amount vastly in excess of her past compensation.  The Court held that the elements of unjust enrichment had been satisfied where Defendant "took receipt of the funds under circumstances in which she knew the amounts exceeded reasonable compensation and *therefore required repayment*." *Jordan*, 2017 WL 2837143, at *6 (emphasis added).

LeClair's receipt of the contingent income payments is closely analogous to the facts in *Jordan*. LeClair should have known that the contingent income payments were not based on the satisfaction of any other conditions that warranted the additional payments.  Therefore, given the circumstances LeClair should have expected to repay the contingent income payments, satisfying the second element of LCR's unjust enrichment claim and allowing that claim to survive LeClair's Motion.

9.      The Court Should Not Dismiss The Disallowance Claims Or Equitable Subordination Claims Under Count XIX And XXXI

Finally, because the Trustee has stated avoidance claims under Sections 544, 547, and 548 for the reasons stated herein, the Court should not dismiss the disallowance or equitable subordination claims.

**F.      The Complaint Should Not Be Dismissed For Failure To Join Indispensable Parties**

Mr. LeClair also prays for the Court to dismiss the Amended Complaint for failure to join certain "indispensable parties," in particular, CVC Capital Partners, Daniel Reed and Debtor's

other former officers and directors.  Mr. LeClair again misses the mark, citing inapplicable and distinguishable authority which, according to Mr. LeClair's theory, would seemingly require either joinder or dismissal with almost any cases that arise from the same set of facts.  In fact, not only is joinder of indispensable parties reserved for very specific circumstances—which do not present themselves here—but dismissal is an extreme remedy that would defy logic here.

Rule 19(a) does allow that a court may order joinder of a non-party, but the initial test for determining whether joinder is appropriate is "if the [absent] party's presence is needed to afford complete relief to those already parties." *Hazbun Escaf v. Rodriquez*, 191 F. Supp. 2d 685, 691 (E.D. Va. 2002) (citing Fed. R. Civ. Pro. 19(a)(1)). Further, the Fourth Circuit has held that "co-conspirators are not necessary parties; a plaintiff can prove the existence of a conspiracy in an action against just one of the members of the conspiracy." *In re Cotton Yarn Antitrust Litig*., 505 F.3d 274, 284 (4th Cir. 2007) (emphasis added). This is true even where co-conspirators are jointly and severally liable for potential damages.  *See Wilson P. Abraham Constr. Corp. v. Tex. Indus., Inc.,* 604 F.2d 897, 904 n.15 (5th Cir. 1979).

This unmistakably clear case law lines up squarely against Mr. LeClair's suggestion of compelled joinder.  Here, the Trustee has chosen to pursue separate actions against multiple defendants, some of whom shared certain key facts in Mr. LeClair's scheme with United Lex— *e.g.*, CVC and Daniel Reed—and others who shared, and breached, fiduciary duties together with Mr. LeClair. Each of these cases brought by the Trustee is appropriate.  Indeed, the Trustee is free to choose to pursue co-conspirators in separate actions and Mr. LeClair has demonstrated no facts that would suggest that complete relief is unavailable to the parties in this suit without CVC, Mr. Reed or any former directors and officers.

Thus, as a last resort, Mr. LeClair seeks to shoehorn the completely different set of facts from *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 438 (4th Cir. 1999), into the current circumstances.  This attempt fails for three reasons.

First, Mr. LeClair suggests that the *Owens-Illinois* court's reliance on Rule 19(a)(1)(B) applies here.  It does not.  Rule 19(a)(1)(B) is relevant only where the potentially indispensable non-party "claims an interest relating to the subject of the action." Fed. R. Civ. Pro. 19(a)(1)(B). Here, the only way Mr. LeClair's argument can succeed is if Mr. Reed, CVC or some other third party affirmatively seeks joinder into the instant matter.  In short, this is not Mr. LeClair's argument to make and so his plea of potential "inconsistent obligations" under Rule 19(a)(1)(B) is irrelevant.

Second, even to the extent there is any concern about inconsistency in process or results, *Owens-Illinois* presented a significantly different scenario to that facing this Court. There, the potential for contradictory rulings or obligations was created by the tension between separate actions possibly being brought in federal court, state court and even in arbitration.  No such concerns are evident here.  Rather, all actions are being brought in the same court before the same judge under the same docket.  If any circumstance is prepared to avoid inconsistent results, the current matter is it.

Finally, Mr. LeClair suggests that *Owens-Illinois* compels a complete dismissal of the Amended Complaint. However, even if one were to accept Mr. LeClair's mind-stretching interpretation of Rule 19(a)(1), the appropriate remedy is set out clearly in the Rules: joinder by court order.  *See* Fed. R. Civ. Pro. 19(a)(2). The court in *Owens-Illinois* dismissed the matter there because the indispensable party could not "be joined because its joinder destroy[ed] diversity," depriving the court of jurisdiction.  Here, Mr. LeClair has suggested no such outcome

would result from the joinder of any party.  Accordingly, Mr. LeClair's motion with respect to joinder under Rule 19(a)(1) must fail.

**<u>CONCLUSION</u>**

For the reasons stated herein, the Trustee respectfully requests that this Court deny the ULX Entities and Mr. LeClair's Motions to Dismiss.

Dated:          October 12, 2021          Respectfully submitted,

/s/ *Erika L. Morabito*_____
Erika L. Morabito (VSB No. 44369)
Brittany J. Nelson (VSB No. 81734)
QUINN EMANUEL URQUHART & SULLIVAN
1300 I Street, N.W., Suite 900
Washington, DC 20005
(202) 538-8334 (telephone)
Email:          erikamorabito@quinnemanuel.com
                brittanynelson@quinnemanuel.com

*Special Counsel to Lynn L. Tavenner, Chapter 7 Trustee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of October 2021, I served a true and correct copy of

the foregoing via the Court's Electronic Case Filing System upon all registered users.


/s/ *Erika L. Morabito* _____