**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

In re:  LECLAIRRYAN PLLC,

                Debtor.

Case No. 19-34574-KRH
Chapter 7

LYNN L. TAVENNER,
as Chapter 7 Trustee,

                Plaintiff,

v.

ULX PARTNERS, LLC,
ULX MANAGER LLC,
UNITEDLEX CORPORATION, and
GARY LECLAIR,

                Defendants.

Adv. Pro. No. 20-03142-KRH

## <u>MEMORANDUM OPINION</u>

       This matter comes before the United States Bankruptcy Court for the Eastern District of

Virginia (this "Court") upon the *Defendants ULX Partners, LLC's, ULX Manager LLC's, and*

*UnitedLex Corporation's Motion to Partially Dismiss the First Amended Complaint* [ECF No. 87]

(the "ULX Motion") filed by ULX Partners, LLC ("ULXP"), ULX Manager LLC ("ULX

Manager"), and UnitedLex Corporation ("UnitedLex," and together with ULXP and ULX

Manager, the "ULX Entities") and *Gary D. LeClair's Motion to Dismiss* [ECF No. 104] (the "GDL

Motion" and, together with the ULX Motion, the "Motions")[1] filed by Gary LeClair ("LeClair"

---

[1]    The ULX Entities and LeClair each filed a memorandum in support of their Motions.  *See* Mem. of Law in Supp.
of Defs. ULX Partners, LLC's, ULX Manager LLC's & UnitedLex Corp.'s Mot. to Partially Dismiss the First
Am. Compl., ECF No. 88; Mem. of P. & A. in Supp. of Gary D. LeClair's Mot. to Dismiss, ECF No. 105.

and, together with ULX Entities, the "Defendants"). The Defendants seek to have dismissed a number of the counts included in the *First Amended Complaint* [ECF No. 86] (the "Amended Complaint") filed by Lynn L. Tavenner (the "Trustee"), in her capacity as Chapter 7 trustee for the bankruptcy estate of LeClairRyan PLLC (the "Debtor"), in the above-captioned adversary proceeding (the "Adversary Proceeding"). The Trustee filed an omnibus response [ECF No. 106], addressing both Motions. The ULX Entities filed a reply [ECF No. 109]; LeClair likewise filed a reply [ECF No. 108]. The Court conducted a hearing (the "Hearing") on the Motions on October 19, 2021. At the conclusion of the Hearing, the Court took the Motions under advisement. After due consideration of the arguments of counsel at the Hearing, the pleadings, and the authorities cited by the parties in their memoranda of law, the Court will deny the Motions for the reasons set forth below.

## Jurisdiction and Venue

The Court has subject matter jurisdiction under 28 U.S.C. § 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia (the "District Court") dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), (F), (H), (K), and (O).[2] Venue is appropriate pursuant to 28 U.S.C. § 1409(a).

## Legal Standard

The Defendants' Motions ask the Court to dismiss certain of the thirty-four counts pled by the Trustee in her Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedures (the "Civil Rules") as made applicable to this proceeding by Rule 7012(b) of the

---

[2]  The District Court previously held that "all of the Trustee's claims against the [ULX Entities] constitute core claims." *ULX Partners, LLC v. Tavenner*, No. 3:21cv77 (DJN), 2021 WL 2188955, at *8, 2021 U.S. Dist. LEXIS 101766, at *27 (E.D. Va. May 28, 2021). LeClair has not contested whether the claims brought against him are core claims, nor did LeClair timely move to withdraw the reference.

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for "failure to state a claim upon which relief can be granted."[3]  Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A motion to dismiss under [Civil Rule] 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  "Because only the legal sufficiency of the complaint, and not the facts in support of it, are tested under a [Civil Rule] 12(b)(6) motion, [the Court] assume[s] the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations."  *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020).  "Ultimately, '[t]o survive a motion to dismiss, a claim must contain factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Edley-Worford v. Va. Conf. of United Methodist Church*, 430 F. Supp. 3d 132, 139 (E.D. Va. 2019) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

## Procedural History and Factual Allegations

The Trustee initially brought a fourteen-count complaint [ECF No. 4] (the "Original Complaint") against ULXP and UnitedLex in this Adversary Proceeding.  On July 20, 2021, the

---

[3]    LeClair additionally seeks dismissal pursuant to Civil Rule 12(b)(7), arguing that the Trustee has failed to join indispensable parties.  *See* Fed. R. Civ. P. Rule 12(b)(7); Fed. R. Bankr. P. 7012.  "Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result."  *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999).  "Such a decision 'must be made pragmatically, in the context of the substance of each case' . . . by considering 'the practical potential for prejudice' to all parties."  *Id.* (internal citations omitted) (quoting first *Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 118 n.16 (1968), and then quoting *Schlumberger Indus., Inc. v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1286 (4th Cir. 1994)).  The Court finds that there is no prejudice to LeClair.  As all of the litigation stemming from the Debtor's bankruptcy is before this Court, there is little "potential for [the] factual and legal 'whipsaw'" that would arise if different courts were adjudicating various of the proceedings.  *Id.* at 441.

Court entered an *Order* [ECF No, 58] (the "Order Ruling on Motion to Dismiss"), granting ULXP

and UnitedLex's motion to dismiss as to one count, but otherwise denying the motion as to the

remaining thirteen counts.[4]  In response to the Order Ruling on Motion to Dismiss, the Trustee

timely filed her Amended Complaint, which added ULX Manager and LeClair as parties, added

or enhanced certain factual allegations, and asserted twenty additional counts.

LeClair jointly founded the Debtor in 1988.  Am. Compl. ¶ 34, ECF No. 86 at 9.  Beginning

in 2006, the Debtor began rapidly expanding, adding offices over the East Coast.  *See id.* ¶ 24,

ECF No. 86 at 9.  At its peak, the Debtor had 25 offices nationwide and 385 employees.  *Id.* ¶ 38,

ECF No. 86 at 9.  As part of its rapid expansion, the Debtor acquired a law firm which had a

discovery center, known as "DSP."  *Id.* ¶¶ 36-37, ECF No. 86 at 9.  DSP had many significant

clients such as Johnson & Johnson and Ford.  *Id.* ¶ 37, ECF No. 86 at 9.  In 2013, DSP generated

revenues of $31.7 million.  *Id.*

Contemporaneously with this rapid expansion, LeClair negotiated soft-landing contracts

for himself and other legacy shareholders, which, inter alia, provided guaranteed compensation

without benchmarks.  *Id.* ¶ 39, ECF No. 86 at 9-10.  Although other shareholders were aware of

the existence of these golden parachute contracts, the specific compensation terms were not

disclosed.  *Id.*

The period of rapid expansion was cut short by the financial crisis of 2008.  As a way to

continue growth, LeClair decided to attract funding from outside non-lawyer capital investors.

LeClair was convinced that he could either change the law prohibiting non-lawyers from holding

---

[4]    The Court issued a *Memorandum Opinion* [ECF No. 57] in which the Court explained the reasons for its Order
Ruling on Motion to Dismiss, issued contemporaneously therewith.  The Court incorporates by reference its
discussion of the factual allegations from its July 20, 2021, *Memorandum Opinion*, as supplemented and modified
herein.  *Tavenner v. ULX Partners, LLC* (*In re LeClairRyan PLLC*), Adv. Pro. No. 20-03142-KRH, 2021 WL
3073801, 2021 Bankr. LEXIS 1917 (Bankr. E.D. Va. July 20, 2021).

economic interests in law firms or figure out a way to circumvent the law. *See id.* ¶¶ 41-42, ECF No. 86 at 10. The Debtor invested heavily in terms of both time and money developing and pursuing a strategic plan for obtaining outside capital. *Id.* ¶ 43, ECF No. 86 at 10.

In October 2012, the Debtor and UnitedLex began discussing the possibility of forming a joint partnership. *Id.* ¶ 54, ECF No. 86 at 12. UnitedLex is a global technology and legal services company that provides back-office support to law firms and corporate legal departments. LeClair and the UnitedLex CEO decided to move forward with a pilot program in Spring 2013. *Id.* ¶ 55, ECF No. 86 at 13. Ultimately, that pilot program morphed into the creation of the "LeClairRyan Knowledge Center."[5] *Id.* ¶¶ 56-57, ECF No. 86 at 13. As part of this transaction, the Debtor received access to the LeClairRyan Knowledge Center and $3.4 million from United Lex. *Id.* ¶ 61, ECF No. 86 at 14. In exchange, the Debtor conveyed DSP to United Lex. *Id.* UnitedLex then leveraged the business connections that the Debtor and LeClair had developed, as well as the technology of DSP, to grow the client base of UnitedLex. *Id.* ¶¶ 67-68, ECF No. 86 at 15.

As these transactions unfolded, the Debtor began to experience financial difficulty. In August 2012, LeClair announced that the firm had not met its yearly targets and would not pay projected shareholder salaries. *Id.* ¶ 69, ECF No. 86 at 16. Despite a mandatory preferred stock offering which raised approximately $2.5 million in new capital, the Debtor continued to miss its financial projections. *Id.* ¶¶ 70-73, ECF No. 86 at 16.

Notwithstanding the Debtor's financial difficulties, Debtor's management, including LeClair, proposed and authorized certain contingent payments to shareholders. *Id.* ¶¶ 77-78, 85-86, ECF No. 86 at 17, 18. These contingent payments were supposed to be triggered only once

---

[5]    Although an ethics opinion from UnitedLex was a required condition for the transaction, no opinion letter was ever issued. *Id.* ¶¶ 60, 64, ECF No. 86 at 14, 15.

the Debtor had met certain financial metrics.  *Id.* ¶¶ 75-76, ECF No. 86 at 16.  Even though the

conditions precedent were never satisfied, the Debtor made these payments in violation of the

firm's internal policies.  *Id.* ¶¶ 74-78, 85-86, ECF No. 86 at 16-17, 18.  The contingent payments

were made to the shareholders at a time when the Debtor was generally not paying its debts as they

became due.  *See id.* ¶¶ 73, 79, ECF No. 86 at 16, 17.  The Debtor structured the timing of the

contingent payments to avoid breaching a covenant with its lender.[6]  *Id.* ¶¶ 79, 81-84, ECF No. 86

at 17-18.  In total, the Debtor transferred $459,687 to LeClair in contingent payments in 2014,

2015, and 2016 (the "Contingent Income Payments").  *Id*. ¶ 92, ECF No. 86 at 19.

In 2016, LeClair stepped down as chairman of the Debtor.  *Id.* ¶ 96, ECF No. 86 at 20.

LeClair did not relinquish control of the Debtor, nor did he abandon his vision for the use of outside

capital.  Beginning in October 2017, LeClair led negotiations on behalf of the Debtor to formally

partner with UnitedLex.  *See id.* ¶¶ 109-11, ECF No. 86 at 23.

In April 2018, the Debtor and UnitedLex finalized an agreement to create a joint venture,

ULXP.  The Debtor contributed all of its non-legal intellectual property and administrative support

staff to the joint venture. This included its administrative resources for (i) lateral attorneys;

(ii) training; (iii) personnel; (iv) marketing & business development; (v) pricing; (vi) program

management; (vii) information technology and tools; (viii) legal industry collaboration & insight;

(ix) industry research & analysis (x) risk management in operations and templets; (xi) library and

research services; (xii) operations; and (xiii) attorney development.  *Id.* ¶ 157, ECF No. 86 at 32.

ULXP thereby took control of the Debtor's "Legal Operations & Administration," "Client

Relations & Business Development," "Marketing & Communications," "Conflicts & Engagement

---

[6]     The Debtor is alleged to have engaged in other chicanery to hide its true financial picture, including requesting
dummy invoices, inflating accounts receivable with uncollectible accounts, and misusing earmarked funds.  *Id.*
¶¶ 88-89, 94, ECF No. 86 at 19, 20.

Management," "Value Pricing & Legal Project\Management," "Human Resources," "Talent Development," and "Technology, Data & Security." *See id.* ¶ 161 ECF No. 86 at 32-33.  In order to utilize these essential services (which it formerly owned), the Debtor entered into a Master Services Agreement[7] whereunder the Debtor paid a monthly fee of $3.6 million to ULXP plus a percentage of its net profits.  *Id.* ¶¶ 161-68, ECF No. 86 at 32-35.  As the joint venture was ultimately structured, the Debtor only received a 1% equity interest in ULXP.  *Id*. ¶ 159, ECF No. 86 at 32.[8]

As a result of the ULXP transaction, the Debtor was unable to function autonomously without the support of the ULX Entities. *Id.* ¶ 163, ECF No. 86 at 34.  Much like it did after the creation of the LeClairRyan Knowledge Center, the ULX Entities leveraged the ULXP transaction to obtain new clients, resulting in an estimated $1.5 billion in new revenue.  *Id.* ¶¶ 173-78, 196, ECF No. 86 at 36-37, 40.  However, the Debtor was unable to obtain the same benefits from the ULX Entities.  *See id.* ¶¶ 179-85, ECF No. 86 at 37-38.  Instead, the Debtor continued to struggle financially.  ULXP took further control of the Debtor, relying heavily on LeClair's input.  *See id.* ¶¶ 200-15, ECF No. 86 at 41-44. The Trustee alleges that the ULX Entities held the Debtor in a financial vise, requiring the Debtor to prefer the ULX Entities at the expense of other creditors, *see id.* ¶¶ 216-56, ECF No. 86 at 44-50, all as more fully detailed in this Court's prior *Memorandum Opinion*, *In re LeClairRyan PLLC*, 2021 WL 3073801, at \*2-4, 2021 Bankr. LEXIS 1917, at \*4-14.

---

[7]     The Debtor also executed a number of other agreements with the ULX Entities, including a contribution agreement (the "Contribution Agreement").  *Id.* ¶¶ 169-70, ECF No. 86 at 35.

[8]     The Debtor was supposed to receive a $20 million loan from United Lex along with a possible $13 million cash infusion to take out the Debtor's existing loan facility.  *Id.* ¶¶ 117-18, ECF No. 86 at 24-25.  UnitedLex restructured the deal to reduce the financial benefits to the Debtor.  UnitedLex withdrew the entire proposed capital infusion of $33 million, *id*. ¶¶ 153-54, ECF No. 86 at 31, and reduced the Debtor's equity stake in ULXP to 1 percent, *id*. ¶ 159, ECF No. 86 at 32.

Meanwhile, LeClair began making his own demands upon the Debtor. On March 22, 2019, LeClair threatened to terminate his employment with the Debtor in a manner that would trigger payments under his soft-landing contract unless the Debtor executed various transfers connected to his life insurance policy and an outstanding loan made against it. *Id*. ¶ 258, ECF No. 86 at 51. LeClair announced his departure from his namesake firm on July 25, 2019. *Id*. ¶ 259, ECF No. 86 at 51. Four days later, the members of the Debtor voted to wind-down the Debtor's operations. *Id*. Just over a month later, on September 3, 2019 (the "Petition Date"), the Debtor commenced its bankruptcy case. *Id.* ¶ 260, ECF No. 86 at 51.

Between 2014 and the Petition Date, Debtor transferred at least $2,363,965 to LeClair (the "LeClair Transfers"). *Id*. ¶ 263, ECF No. 86 at 52. LeClair received $1,379,158 from the Debtor in the two-year period prior to the Petition Date (the "Two-Year LeClair Transfers"). *Id*. ¶ 261, ECF No. 86 at 51. LeClair received $515,224 in transfers from the Debtor on account of antecedent debt in the one-year period preceding the Petition Date (the "LeClair Preferential Transfers"). *Id*. ¶ 262, ECF No. 86 at 52.

## Analysis

The Amended Complaint alleges thirty-four causes of action. The ULX Motion seeks dismissal of Counts XXIII,[9] XXIV,[10] and XXVII through XXX[11] of the Amended Complaint. The

---

[9]   Count XXIII alleges misappropriation of trade secrets under the Virginia Uniform Trade Secrets Act against the Defendants. Am. Compl. ¶¶ 477-83, ECF No. 86 at 78-79.

[10]   Count XXIV alleges breach of fiduciary duty against the ULX Entities. *Id.* ¶¶ 484-88, ECF No. 86 at 79-80.

[11]   Counts XXVII through XXX all concern various conspiracy counts against the Defendants. Counts XXVII alleges statutory conspiracy against the ULX Entities pursuant to section 18.2-499 of the Virginia Code. *Id*. ¶¶ 498-508, ECF No. 86 at 82-83. Count XXVIII alleges common law conspiracy against the ULX Entities. *Id*. ¶ 509-14, ECF No. 86 at 83-84. Count XXIX alleges statutory conspiracy against the ULX Entities and LeClair pursuant to section 18.2-499 of the Virginia Code. *Id*. ¶¶ 515-26, ECF No. 86 at 84-86. Count XXX alleges common law conspiracy against the ULX Entities and LeClair. *Id.* ¶¶ 527-32, ECF No. 86 at 86-87.

GDL Motion seeks dismissal of Counts X through XIX,[12] XXIII,[13] XXVI,[14] and XXIX through

XXXI[15] of the Amended Complaint.

*Count X – Avoidance of Fraudulent Transfers Pursuant to*
*Sections 548(a)(1)(A) and 550 of the Bankruptcy Code*
*(Against LeClair)*

By Count X, the Trustee seeks to avoid and recover the Two-Year LeClair Transfers to

LeClair as fraudulent transfers pursuant to sections 548(a)(1)(A) and 550 of the Bankruptcy Code.

"In order to establish a prima facie case under [section] 548(a)(1)(A), a plaintiff must show that

the debtor made a transfer of an interest of the debtor in property 'with actual intent to hinder,

delay, or defraud . . . 'creditors." *Arrowsmith v. Mallory* (*In re Health Diagnostic Lab'y, Inc.*),

Nos. 15-32919, 16-03271, 2017 Bankr. LEXIS 2230, at *34 (Bankr. E.D. Va. Aug. 9, 2017)

(quoting 11 U.S.C. § 548(a)(1)(A)).  Actual intent can be established through the presence of

badges of fraud such as:

> (1) The retention of an interest in the transferred property by the transferor;
> (2) A family or insider relationship;

---

[12]  Counts X and XI seek avoidance of fraudulent transfers pursuant to sections 548 and 550 of the Bankruptcy Code. *Id.* ¶¶ 354-72, ECF No. 86 at 63-65.  Count XII seeks avoidance and recovery of fraudulent transfers against LeClair pursuant to sections 544 and 550 of the Bankruptcy Code and section 55.1-400 of the Virginia Code.  *Id.* ¶¶ 373-82, ECF No. 86 at 66-67.  Count XIII seeks avoidance of preferential transfers against LeClair pursuant to section 547 of the Bankruptcy Code.  *Id.* ¶¶ 383-94, ECF No. 86 at 67-68.  Count XIV seeks avoidance of releases and exculpation rights against LeClair pursuant to sections 548 and 550 of the Bankruptcy Code.  *Id.* ¶¶ 395-407, ECF No. 86 at 68-69.  Count XV seeks avoidance of releases and exculpation rights against LeClair pursuant to sections 544 and 550 of the Bankruptcy Code.  *Id.* ¶¶ 408-22, ECF No. 86 at 70-71.  Count XVI seeks avoidance and recovery of distributions of contingent income against LeClair pursuant to sections 544 and 550 of the Bankruptcy Code and section 55.1-400 of the Virginia Code.  *Id.* ¶¶ 423-30, ECF No. 86 at 71-72.  Count XVII alleges conversion against LeClair on account of the contingent income payments that he received.  *Id.* ¶¶ 431-35, ECF No. 86 at 73.  Count XVIII claims unjust enrichment against LeClair for the same contingent income payments. *Id.* ¶¶ 436-42, ECF No. 86 at 73-74.  Count XIX seeks disallowance of LeClair's proofs of claim against the estate pursuant to section 502(d) of the Bankruptcy Code.  *Id.* ¶¶ 443-48, ECF No. 86 at 74.

[13]  *See supra* note 9.

[14]  Count XXVI alleges breach of fiduciary duty against LeClair.  Am. Compl. ¶¶ 493-97, ECF No. 86 at 81.

[15]  *See supra* note 11.  Count XXXI seeks equitable subordination against all Defendants pursuant to section 510(c) of the Bankruptcy Code.  Am. Compl. ¶¶ 533-38, ECF No. 86 at 87-88.

    (3) Pursuit of litigation or the threat of litigation by creditors against the transferor at the time of transfer;

    (4) Lack of or inadequacy of consideration for the conveyance;

    (5) Being insolvent at the time of the transfer or becoming insolvent because of the transfer; and

    (6) The fraudulent incurrence of indebtedness after the conveyance.

*See, e.g.*, *Huennekens v. Gilcom Corp. of Va.* (*In re Sunsport, Inc.*), 260 B.R. 88, 111 (Bankr. E.D. Va. 2000); *In re Porter*, 37 B.R. 56, 63 (Bankr. E.D. Va. 1984)). "An additional badge of fraud . . . is the concealment of facts and false pretenses by the transferor." *In re Sunsport, Inc.*, 260 B.R. at 111. (citing *Brown v. Third Nat'l Bank* (*In re Sherman*), 67 F.3d 1348, 1354 (8th Cir. 1995)).

The Trustee has pled sufficient allegations to establish a prima facie case. The Trustee alleges the Debtor transferred $1,379,158 of its property, i.e., the Two-Year LeClair Transfers, to LeClair in the two-year period preceding the Petition Date. The Trustee alleges that each of the Two-Year LeClair Transfers was made with the intent to hinder, delay, or defraud creditors and entities to which the Debtor would become indebted. The Trustee alleges at least three badges of fraud in support of these assertions: that LeClair was an insider, that the Debtor was taking on new debts and liabilities, and that the Debtor was or became insolvent when each transfer occurred.

LeClair disputes these allegations, arguing that some of the transfers were not of the Debtor's property. He argues, for example, that the supplemental retirement account payments were made from a secular trust which was property of LeClair – and not from the deferral account which remained property of the Debtor. "While 'interest of the debtor in property' is not defined in the Bankruptcy Code, it has been interpreted to mean 'property belongs to the debtor . . . if the transfer will deprive the bankruptcy estate of something which could otherwise be used to satisfy the claims of creditors.'" *Arrowsmith v. Lemberg Law, LLC* (*In re Health Diagnostics Lab'y, Inc.*), 571 B.R. 182, 195 (Bankr. E.D. Va. 2017) (quoting *In re Merchs. Grain by & Through*

*Mahern*, 93 F.3d 1347, 1352 (7th Cir. 1996)).  The source of the Two-Year LeClair Transfers is a factual question that is not appropriate for determination in a motion to dismiss. *See Republican Party of N.C.*, 980 F.2d at 952 ("A motion to dismiss under [Civil Rule] 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").

Likewise, the question whether LeClair was an insider is a factual dispute.  "Insider" is a defined term under the Bankruptcy Code.  "[U]se of the word 'includes' in the definition of the term 'insider' renders the definition as a non-exhaustive list." *In re Health Diagnostic Lab'y, Inc.*, 2017 Bankr. LEXIS 2230, at \*63.  "The test in the Fourth Circuit is that the alleged insider must exercise sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets." *Id.* at \*63-64 (internal quotation marks omitted) (quoting *Dorula v. Holmes* (*In re Starlight Grp., LLC*), 531 B.R. 611, 635 (Bankr. E.D. Va. 2015)).  The Trustee alleges facts to describe a relationship between LeClair and the Debtor, such that LeClair had sufficient control over corporate policy and disposition of assets to qualify as an insider.  For the foregoing reasons, as to Count X, the GDL Motion is denied.

*Count XI – Avoidance of Fraudulent Transfers Pursuant to
Sections 548(a)(1)(B) and 550 of the Bankruptcy Code
(Against LeClair)*

By Count XI, the Trustee seeks to avoid fraudulent transfers against LeClair pursuant to sections 548(a)(1)(B) and 550.  "Section 548(a)(1)(B) of the Bankruptcy Code allows the trustee to avoid any transfer of 'an interest of the debtor in property' made within two years before the date of filing the petition if the following elements are established: (1) the '[d]ebtor must have "received less than a reasonably equivalent value in exchange for such transfer . . . ;"' and (2) 'the transfer must either have been made while Debtor was insolvent, or have itself rendered Debtor insolvent.'" *In re Health Diagnostics Lab'y, Inc.*, 571 B.R. at 195 (alteration in original) (quoting

*Anderson & Assocs., PA v. Simchon* (*In re S. Textile Knitters*), 65 F. App'x 426, 436 (4th Cir. 2003)).  To survive a motion to dismiss, "[o]nly the statutory elements need be pled." *Id.* at 196.

The Trustee alleges that the Two-Year LeClair Transfers to LeClair were transfers of an interest in the Debtor's property and that the Debtor did not receive reasonably equivalent value in exchange for the Two-Year LeClair Transfers.  The Trustee further alleges that the Debtor was insolvent at the time of the transfers, the transfers left the Debtor with property unreasonably small in relation to its business, the Debtor intended to incur debt beyond its ability to pay, and that these transfers were made for the benefit of LeClair – an insider.  Accordingly, the Trustee has pled sufficient facts to survive the GDL Motion.

LeClair again disputes that he was an insider.  He maintains that he was a mere shareholder during the relevant time period.  For the reasons discussed in the Court's consideration of Count X *supra*, the issue over LeClair's insider status is a factual dispute inappropriate for determination on a motion to dismiss.  LeClair further argues that he provided reasonably equivalent value in exchange for the transfers that he received.  As this Court previously recognized, "'[t]he elements of [section] 548(a)(1)(B) of the Bankruptcy Code involve questions of fact that may not be resolved through a motion to dismiss.'  '"Reasonably equivalent value" is a question of fact and it is not appropriate for the Court to determine the element at this point.'"  *In re LeClairRyan PLLC*, 2021 WL 3073801, at *6, 2021 Bankr. LEXIS 1917, at *18 (first quoting *Schnelling v. Crawford* (*In re James River Coal Co.*), 360 B.R. 139, 166 (Bankr. E.D. Va. 2007); then quoting *In re Health Diagnostic Lab'y, Inc.*, 2017 Bankr. LEXIS 2230, at *43).  The determination of "reasonably equivalent value" and insider status are fact-bound inquiries that are not appropriate to decide in a motion to dismiss.  The GDL Motion as to Count XI is denied.

*Count XII – Avoidance and Recovery of the LeClair Transfers as*
*Actual Fraudulent Transfers Pursuant to Sections 544(b) and 550*
*of the Bankruptcy Code and Section 55.1-400 of the Virginia Code*
*(Against LeClair)*

Pursuant to section 544(b) of the Bankruptcy Code, a trustee may avoid "any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim . . . ."  11 U.S.C. § 544(b).  "The statute allows the trustee to utilize laws available to a creditor to avoid a debtor's transfer of property outside of bankruptcy, such as state creditors' rights statutes."  *In re Health Diagnostics Lab'y, Inc.*, 571 B.R. at 196–97 (citing *Shaia v. Meyer* (*In re Meyer*), 244 F.3d 352, 355 (4th Cir. 2001)).  Here, the Trustee seeks to utilize section 55.1-400 of the Virginia Code, which provides, in pertinent part:

> Every (i) gift, conveyance, assignment, or transfer of, or charge upon, any estate, real or personal, (ii) action commenced or order, judgment, or execution suffered or obtained, and (iii) bond or other writing given with intent to delay, hinder, or defraud creditors, purchasers, or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, purchasers, or other persons or their representatives or assigns, be void.

Va. Code § 55.1-400.[16]  In pursuing a cause of action under section 55.1-400 of the Virginia Code, "a plaintiff may make a prima facie, circumstantial case based on factors surrounding the transfer," using the same badges of fraud as under § 548(a)(1)(A) of the Bankruptcy Code.  *Phillips v. Moazzeni* (*In re Tarangelo*), 378 B.R. 128, 134 (Bankr. E.D. Va. 2007).

For the reasons discussed in the Court's consideration of Count X *supra*, the Trustee alleges sufficient facts to survive a motion to dismiss.  The Trustee describes three badges of fraud

---

[16]   Effective October 1, 2019, Title 55 of the Virginia Code was repealed and replaced with Title 55.1.  Former section 55-80 was replaced with section 55.1-400.  *Compare* Va. Code § 55-80 (repealed 2019), *with* Va. Code § 55.1-400.

surrounding the Two-Year LeClair Transfers:  LeClair's status as an insider, the Debtor's

insolvency, and the new debts and liabilities the Debtor incurred at this time.  In response, LeClair

re-asserts his previous argument that he is not an insider and urges dismissal on this ground.  As

insider status is a factual inquiry, it may not be decided on a motion to dismiss.  The GDL Motion

as to Count XII is denied.

*Count XIII – Avoidance of LeClair Preferential Transfers*
*Pursuant to Section 547(b) of the Bankruptcy Code*
*(Against LeClair)*

The Trustee seeks to avoid the LeClair Preferential Transfers pursuant to section 547(b) of

the Bankruptcy Code.

> To state a cause of action to avoid a preferential transfer pursuant to
> 11 U.S.C. § 547(b), the Trustee must (1) identify the nature and
> amount of each antecedent debt and each alleged preferential
> transfer by date, name of debtor/transferor, name of transferee, and
> amount of the transfer and (2) state such transfers (a) were made
> within 90 days or, if to an insider, within one year prior to petition
> date; (b) on account of antecedent debt; (c) while the debtor was
> insolvent; (d) allowed creditors to receive more than they would
> have received under liquidation; and, with respect to insiders, state
> that the transfer was (e) to, or for, benefit of insiders, and otherwise
> sufficiently plead insider status.

*In re James River Coal Co.*, 360 B.R. at 168.  The Trustee alleges that the LeClair Preferential

Transfers were transfers of the Debtor's interest in property, in the amount of $515,224, made in

the year before the Petition Date.  The Trustee further alleges that the transfers were made on

account of antecedent debt owed to LeClair, an insider, while the Debtor was insolvent.

Accordingly, the Trustee has pled each of the required elements as to the LeClair Preferential

Transfers.

In response, LeClair again disputes that he was an insider.  For the reasons discussed in the

Court's consideration of Count X *supra*, the determination of insider status is a fact-specific

inquiry that is not an appropriate consideration in connection with a motion to dismiss. At this

stage, the Court must accept as true all of the Trustee's allegations.  As to Count XIII, the GDL

Motion is therefore denied.

*Count XIV – Avoidance of Releases and Exculpation Rights*
*Pursuant to Sections 548 and 550 of the Bankruptcy Code*
*(Against LeClair)*

By Count XIV, the Trustee seeks to avoid LeClair's Release and Exculpation Rights as an

intentionally fraudulent transfer pursuant to section 548(a)(1)(B) of the Bankruptcy Code.  LeClair

alleges that the Trustee may only utilize section 548(a) to avoid transfers made between September

3, 2017, and September 3, 2019.  As the Release and Exculpation Rights were granted to LeClair

on December 28, 2016, LeClair seeks dismissal of this Count as barred by the statute of limitations.

The statute of limitations is an affirmative defense under Bankruptcy Rule 7008(a).  *Banks*

*Auto Parts, Inc. v. Banks Invs. I, LC* (*In re Banks Auto Parts, Inc.*), 385 B.R. 142, 149 (Bankr.

E.D. Va. 2008).

> A motion [to dismiss] under Rule 12(b)(6) is intended to test the
> legal adequacy of the complaint, and not to address the merits of any
> affirmative defenses.  In the limited circumstances where the
> allegations of the complaint give rise to an affirmative defense, the
> defense may be raised under Rule 12(b)(6), but only if it clearly
> appears on the face of the complaint.

*In re James River Coal Co.*, 360 B.R. at 157 (quoting *Richmond, Fredericksburg & Potomac R.R.*

*Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).

The Trustee alleges that the statute of limitations has been tolled.  The Court finds that "[i]t

would be premature for the Court to deprive the Trustee of any of the asserted causes of action

unless it is clear on the face of the Amended Complaint that the count is barred by the statute of

limitations."  *Id.* at 160.  The factual record needs to be developed to determine whether the

statutory period was tolled.  "Therefore, the statute of limitations may not be used at this phase of

the case to defeat any of the Trustee's claims." *Id.*  As such, the GDL Motion is denied as to Count

XIV.

*Count XV – Avoidance of Releases and Exculpation Rights*
*Pursuant to Sections 544 and 550 of the Bankruptcy Code,*
*and Applicable State Law*
*(Against LeClair)*

In Count XV, the Trustee seeks to avoid the Release and Exculpation Rights under section

544 of the Bankruptcy Code and applicable state law.  LeClair correctly points out that the Trustee

has not identified whether applicable state law upon which the Trustee is relying refers to section

55.1-400 or 55.1-401 of the Virginia Code.[17]  Section 55.1-401 of the Virginia Code provides:

> Every gift, conveyance, assignment, transfer, or charge that is not
> upon consideration deemed valuable in law, or that is upon
> consideration of marriage by an insolvent transferor or by a
> transferor who is thereby rendered insolvent, shall be void as to
> creditors whose debts were contracted at the time such gift,
> conveyance, assignment, transfer, or charge was made but shall not,
> on that account merely, be void as to creditors whose debts have
> been contracted, or as to purchasers who have purchased, after such
> gift, conveyance, assignment, transfer, or charge was made.

Va. Code § 55.1-401.[18]  While a transfer may be avoided under section 55.1-400 of the Virginia

Code upon a sufficient showing of actual or constructive fraud, section 55.1-401 "does not require

proof of a fraudulent intent."  *In re Tarangelo*, 378 B.R. at 137.  A voluntary conveyance under

section 55.1-401 of the Virginia Code is predicated upon a transfer not supported by "consideration

deemed valuable in law."  *See* Va. Code § 55.1-401.  "[T]he 'consideration deemed valuable in

law' standard set forth in Virginia Code § 55–81 [now, section 55.1-401] is different from the

---

[17]  Arguably, the Trustee may be referring to some other "applicable state law."  For the avoidance of doubt, the Court's findings herein are not intended to limit the Trustee from pursuing alternative theories which the Court has not identified.

[18]  *See supra* note 16.  Former section 55-81 was replaced with section 55.1-401.  *Compare* Va. Code § 55-81 (repealed 2019), *with* Va. Code § 55.1-401.

'reasonably equivalent value' standard employed in the Bankruptcy Code." *In re James River Coal Co.*, 360 B.R. at 167 (citing *C-T of Va., Inc. v. Euroshoe Assocs. Ltd. P'ship*, 953 F.2d 637 (4th Cir. 1992) (per curiam)).

Regardless of whether the Trustee is pursuing a theory based upon section 55.1-400 or 55.1-401 of the Virginia Code, the Trustee has alleged sufficient facts.  LeClair maintains that the Debtor did receive consideration for the Releases and the Exculpation Rights.  Whether consideration was given in connection with an action brought under section 55.1-401 of the Virginia Code is a factual question.  Similarly, the determination of the adequacy of consideration in connection with an action brought under section 55.1-400 of the Virginia Code requires a fact-specific inquiry.  *Id.* ("[V]alue and sufficiency of that benefit is a question of fact.").  For the reasons discussed in the Court's consideration of Counts X and XI *supra*, it is inappropriate for the Court to decide factual issues in connection with a motion to dismiss.  Accordingly, the GDL Motion as to Count XV is denied.

*Count XVI – Avoidance and Recovery of Distributions of
Contingent Income as Actual Fraudulent Transfers Pursuant to
Sections 544 and 550 of the Bankruptcy Code and Section
55.1-400 of the Virginia Code
(Against LeClair)*

By Count XVI, the Trustee seeks to avoid the Contingent Income Payments to LeClair as fraudulent conveyances under section 55.1-400 of the Virginia Code.  As explained *supra*, to plead a cause of action under section 55.1-400 of the Virginia Code, the Trustee may plead actual "intent to delay, hinder, or defraud creditors," Va. Code § 55.1-400, or may plead badges of fraud, *see In re Tarangelo*, 378 B.R. at 134.

LeClair does not contest whether the Trustee has sufficiently plead these elements and the Court finds that she has.  Rather, LeClair disputes the characterization of the Contingent Income Payments, alleging an adequate exchange of value.  LeClair raises again a factual dispute.  For the

reasons discussed in the Court's consideration of Counts X and XI *supra*, contests surrounding the facts are inappropriate for determination on a motion to dismiss.  As the Amended Complaint states "a claim to relief that is plausible on its face," *Edley-Worford*, 430 F. Supp. 3d at 139, the GDL Motion as to Count VI is denied.

*Counts XVII and XVIII– Conversion and Unjust Enrichment*
*for Contingent Income Payments*
*(Against LeClair)*

"Under Virginia law, '[c]onversion is the wrongful assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights.'" *Halart, L.L.C. v. Indep. Auto Warehouse, Inc.* (*In re Twin B. Auto Parts, Inc.*), 271 B.R. 71, 82 (Bankr. E.D. Va. 2001) (alteration in original) (quoting *Economopoulos v. Kolaitis*, 528 S.E.2d 714, 719 (Va. 2000)).  "To establish a prima facie case of unjust enrichment, the movant must demonstrate '(1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) [a]cceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value.'" *Id.* at 84 (alteration in original) (quoting *Nossen v. Hoy*, 750 F. Supp. 740, 744-45 (E.D. Va. 1990)).

The Trustee has pled all necessary elements to maintain plausible claims for conversion and unjust enrichment.  The Trustee alleges that the Contingent Income Payments were payable only when the Debtor achieved certain financial benchmarks – notably, net profits (i.e., being cash-flow solvent).  The Trustee further alleges that the Debtor did not achieve the required benchmarks.  There was never any obligation for the Debtor to make the Contingent Income Payments.  The Trustee further alleges that, although the Contingent Income Payments were not due and owing, LeClair wrongfully received and retained the Contingent Income Payments.

In response, LeClair contends that the Debtor had satisfied the necessary conditions precedent.  LeClair disputes the Trustee's allegation that such payments were only triggered when the Debtor generated net profits.  Whether LeClair "earned" the contingent income payments that were paid to him is a factual dispute inappropriate for determination on a motion to dismiss.  As such, the GDL Motion as to Counts XVII and XVIII is denied.

*Count XIX – Disallowance of Claims Pursuant to*
*Section 502(d) of the Bankruptcy Code*
*(Against LeClair)*

By Count XIX of the Amended Complaint, the Trustee seeks to disallow any and all claims of LeClair against the Debtor's estate pursuant to section 502(d) of the Bankruptcy Code.  "That section provides that 'the court shall disallow any claim of any entity from which property is recoverable under section . . . 550, . . . or that is a transferee of a transfer avoidable under section . . . 544, . . . 547, [or] 548 . . . unless such entity or transferee has paid the amount or turned over any such property, for which such entity or transferee is liable.'"  *In re LeClairRyan PLLC*, 2021 WL 3073801, at *6, 2021 Bankr. LEXIS 1917, at *19 (quoting 11 U.S.C. § 502(d)) (citing *In re Health Diagnostics Lab'y, Inc.*, 2017 Bankr. LEXIS 2230, at *65 ("A court must disallow a claim to the extent that such an entity that has filed a claim has property that is recoverable under sections 547 or 548 of the Bankruptcy Code.")).  The Court has concluded that Counts X, XI, and XIV are viable claims seeking recovery of fraudulent transfers pursuant to section 548 of the Bankruptcy Code. Counts XII, XV, and XVI are viable claims seeking recovery of fraudulent transfers under section 544 of the Bankruptcy Code.  Count XIII is a viable claim seeking avoidance of preferential transfers pursuant to section 547 of the Bankruptcy Code.  If any of these transfers are avoided, then they can be recovered under section 550 of the Bankruptcy Code.  Accordingly, the Trustee may seek disallowance of LeClair's claims under section 502.  *See id.*

*Count XXIII – Misappropriation of Trade Secrets Under the*
*Virginia Uniform Trade Secrets Act*
*(Against All Defendants)*

By Count XXIII of the Amended Complaint, the Trustee alleges that – based on LeClair's improper actions – the ULX entities willfully and maliciously misappropriated the Debtor's trade secrets in violation of the Virginia Uniform Trade Secrets Act (the "VUTSA"), Va. Code §§ 59.1-336 through 59.1-338.1.  For a VUTSA claim to survive a motion to dismiss, "a plaintiff must allege sufficient facts to establish '(1) that the information at issue is a trade secret and (2) that the defendant misappropriated it.'" *All Bus. Sols., Inc. v NationsLine, Inc.*, 629 F. Supp. 2d 553, 558 (W.D. Va. 2009) (quoting *S&S Computs. & Design, Inc. v. Paycom Billing Servs., Inc.*, Civil Action No. 5:00-CV-00058, 2001 WL 515260, at *2, 2001 U.S. Dist. LEXIS 25874, at *4 (W.D. Va.  Apr.  5,  2001)).[19]   A  "single,  conclusory  assertion"  is  insufficient,  but  "further  factual enhancement" can be sufficient to survive a motion to dismiss.  *Id.* at 558-59.

The first element of a VUTSA claim requires the plaintiff to allege that the information is a "trade secret."  *See id.* at 558.  A "trade secret" is a defined term under the Act and means

> information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that:
> 1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
> 2. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

---

[19]   The Defendants urge the Court to adopt a higher pleading standard.  However, the case law cited by the Defendants in their memoranda conflates what is necessary to be proven at trial or at summary judgment with what the Trustee must allege in her Amended Complaint to survive a motion to dismiss.  *See, e.g.*, *MicroStrategy, Inc. v. Bus. Objects, S.A.*, 331 F. Supp. 2d 396, 415-18 (E.D. Va. 2004) (in deciding a motion for judgment as a matter of law, giving the standard to prevail on a VUTSA claim at trial); *Babcock & Wilcox Co. v. Areva NP, Inc.*, 788 S.E.2d 237, 259-61 (Va. 2016) (setting aside jury verdict for VUTSA claim); *Knowesis, Inc. v. Herrera*, 103 Va. Cir. 175 (2019) (reciting the standard to prevail on a VUTSA claim on a motion for summary judgment).

Va. Code § 59.1-336. "The case law is clear that just about anything can constitute a trade secret under the right set of facts." *MicroStrategy*, 331 F. Supp. 2d at 416. "The list of information eligible for trade secret status detailed in the VUTSA is not exhaustive. . . . For example, a customer list, or a method of selling or marketing *could* be a trade secret." *Id*. (emphasis in original).

The second element required to state a claim under the VUTSA requires the plaintiff to allege that the defendant misappropriated the trade secret. "Misappropriation" is another defined term under the VUTSA and means:

1. Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
2. Disclosure or use of a trade secret of another without express or implied consent by a person who
   a. Used improper means to acquire knowledge of the trade secret; or
   b. At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was
      (1) Derived from or through a person who had utilized improper means to acquire it;
      (2) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;
      (3) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
      (4) Acquired by accident or mistake.

Va. Code § 59.1-336.

> To survive a motion to dismiss, [a plaintiff] need only plausibly plead that [the defendants] acquired the trade secrets at issue by "improper means," a broad term that includes not only deceptive acts . . . but also "breach[es] of confidence . . . and other means either wrongful in themselves or wrongful under the circumstances of the case."

*OROS, Inc. v. Dajani*, No. 1:19-cv-351 (LMB/IDD), 2019 WL 2361047, at *5, 2019 U.S. Dist.

LEXIS 93652, at *12 (E.D. Va. June 4, 2019) (certain alterations in original) (internal citations

omitted) (quoting Restatement (Third) of Unfair Competition § 43 & cmt. c (Am. Law Inst. 1995)).

The Trustee alleges that the Debtor's trade secrets included the "Debtor's financial and

other confidential information" as well as the Debtor's back-office systems. Am Compl. ⁋ 202,

ECF No. 86 at 41.  She alleges that such information had independent economic value, was not

known or readily ascertainable by proper means, and was subject to reasonable efforts to ensure

secrecy.  The Trustee further alleges the Defendants misappropriated these trade secrets first by

acquiring them through an invalid contract and then by improperly continuing to use these trade

secrets outside the scope of any license or agreement.

The Defendants argue that the Debtor's information does not qualify as trade secrets and

further argue that Defendants accessed this information under valid contractual agreements.

Defendants assert the appropriation of the Debtor's intellectual property followed under the

Contribution Agreement and therefore "[t]here can be no misappropriation where acquisition,

disclosure, and use of a trade secret have been expressly authorized by contract." *Babcock &

Wilcox Co.*, 788 S.E.2d at 260.   The Defendants' argument presumes the validity of the

Contribution Agreement.  However, the Trustee alleges that the Contribution Agreement was not

a valid contract. *See, e.g.*, Am. Compl. ⁋ 267, ECF No. 86 at 53 (asserting that the Debtor's assets

were transferred to ULX Entities "for which [the Debtor] received no consideration or value").

The validity of the Contribution Agreement is a fact-specific inquiry and is not appropriate to

decide in connection with a motion to dismiss.  For the reasons discussed in the Court's

consideration of Count X *supra*, it is inappropriate for the Court to consider factual disputes in a

motion to dismiss.  The Court finds that the Trustee has adequately pled the existence of trade

secrets and their misappropriation through improper acquisition and use and has therefore
adequately pled the VUTSA claim.  Therefore, the Motions are denied as to Count XXIII.

*Counts XXIV and XXVI – Breach of Fiduciary Duty*
*(Against the ULX Entities and LeClair, Respectively)*

By Count XXIV of the Amended Complaint, the Trustee seeks damages resulting from the
Defendants' alleged breaches of their fiduciary duties.  The ULX Entities first request dismissal
as to UnitedLex and ULX Manager because those two entities were not parties to the joint venture.
The ULX Entities argue that they owed no duties to the Debtor.  Second, the ULX Entities argue
that no breach is possible because the joint venture's Operating Agreement eliminated all fiduciary
duties, as permitted by Delaware law.  Similarly, LeClair seeks dismissal of this count on a variety
of grounds, including that he owed no fiduciary duty to the Debtor during the requisite time
periods.[20]

Although the ULX Entities argue that neither UnitedLex or ULX Manager were parties to
the joint venture and therefore owed no fiduciary duties to the Debtor, the Trustee alleges that
"ULXP and ULX Manager were alter egos of UnitedLex."  *Id.* ⁋ 550, ECF No. 86 at 89.  The
Trustee has further alleged that "UnitedLex is the sole managing member of ULX Manager,"
which owns "99% of ULXP."  *Id.* at ⁋ 552, ECF No. 86 at 89.  Under the Trustee's theory, whether
UnitedLex or ULX Manager were official members of the joint venture is immaterial.  "Alter ego

---

[20]  LeClair repeatedly asserts affirmative defenses as grounds to grant the GDL Motion.  As discussed in the Court's
consideration of Counts X *supra*, in the absence of clear relief on the face of a complaint, affirmative defenses
are inappropriate for consideration in connection with a motion to dismiss.  *See In re James River Coal Co.*, 360
B.R. at 157 (quoting *Forst*, 4 F.3d at 250).  The Court incorporates, by reference, its previous discussion of the
statute of limitations in Count XIV and declines to dismiss on this ground.  As to LeClair's argument that any
such breaches were released by the Release and Exculpation Rights, it is inappropriate to grant any relief until
this Court determines whether such Release and Exculpation Rights are avoided under Count XV.  Finally,
LeClair raises the affirmative defenses that the intracorporate immunity and *in pari delicto* bar the Trustee from
stating claims for breach of fiduciary duty. The Court is not inclined to consider these affirmative defenses at this
stage.

liability may attach where there is such unity between a corporation and an individual that the separateness of the corporation has ceased." *William v. AES Corp.*, 28 F. Supp. 3d 553, 562 (E.D. Va. 2014) (internal citation omitted).  The Court finds that the Trustee has alleged sufficient factual matter to support her assertion that UnitedLex and ULX Manager were alter egos of ULXP and, as such, may be liable for any breach of fiduciary duty committed by ULXP.

The ULX Entities further argue that they cannot have breached any fiduciary duties because the joint venture's Operating Agreement waived all fiduciary duties.[21]  The Trustee contests such a characterization of the Operating Agreement.  The Operating Agreement was not included in the Amended Complaint and as such it does not "clearly appear[ ] on the face of the complaint." *Forst*, 4 F.3d at 250.  Accordingly, this defense may not be raised under Rule 12(b)(6) and, for the reasons discussed in the Court's consideration of Count X *supra*, consideration of it here is inappropriate.  *Id.*; Fed. R. Civ. P. 12(b)(6).  This defense is "more properly reserved for consideration on a motion for summary judgment." *Forst*, 4 F.3d at 250.

In addition to his affirmative defenses, LeClair argues that he owes no fiduciary duties to the Debtor as a mere shareholder or member.  While LeClair's official title is one factor in determining what, if any, fiduciary duties he owed to the Debtor, it is not dispositive.  Rather, a shareholder may be liable for breach of fiduciary duty where the shareholder acts as a director and officer.  *Curley v. Dahlgren Chrysler-Plymouth, Dodge, Inc.*, 429 S.E.2d 221, 223 (Va. 1993)

---

[21]    While not properly before the Court, uncertainty shrouds the position advanced by the ULX Entities.  Under Delaware law, a "limited liability company agreement may provide for the limitation or elimination of any and all liabilities for breach of contract and breach of duties (including fiduciary duties)," however, the statute further provides that any such exculpation is only effective as to "a party to [the limited liability company agreement] or is otherwise bound by a limited liability company agreement." 6 Del. C. § 18-1101(e).  The Defendants do not address how such a provision would be effective as to a non-party or outsider to the agreement, such as the Trustee.  Nor do the ULX Entities address how such a limitation would be implicated by the Debtor's insolvency.  *Cf. Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 790 (Del. Ch. 1992) ("[F]iduciary duties to creditors arise at the moment of insolvency.").  Finally, the ULX Entities fail to address the interplay between the general exculpation provision and other specific contractual provisions in the Operating Agreement.

(holding shareholders could be liable for breach of fiduciary duty where they ran the business on

a daily basis, made acquisition and sales decisions, and authorized the incurrence of debt).  Here,

the Trustee alleges that LeClair played such a role with the Debtor as both a shareholder and a

member.  The Trustee has alleged sufficient facts to survive a motion to dismiss.  For these reasons,

the Motions as to Count XXIV and Count XXVI are denied.

*Counts XXVII Through XXX – Statutory Conspiracy*
*and Common Law Conspiracy*
*(Counts XXVII and XXVIII Against the ULX Defendants;*
*Counts XXIX and XXX Against All Defendants)*

In Counts XXVII and XXVIII of the Amended Complaint, the Trustee brings statutory and

common law conspiracy claims against the ULX Entities, as she did in the Original Complaint.  In

Counts XXIX and XXX of the Amended Complaint, the Trustee brings two new counts widening

her statutory and common law conspiracy claims against all Defendants.

The ULX Entities seek dismissal of Counts XXVII and XXVIII based upon a fundamental

misunderstanding of this Court's Order Ruling on Motion to Dismiss entered on July 20, 2021.

While the Court discussed in its *Memorandum Opinion* that the Original Complaint did not allege

sufficient facts to sustain a conspiracy claim as to certain theories, the Court did find that the

Original Complaint alleged sufficient facts to sustain a conspiracy claim as to other theories.  *In*

*re LeClairRyan PLLC*, 2021 WL 3073801, at *9, 2021 Bankr. LEXIS 1917, at *23-28.  As a result

of that discussion, the Court did not dismiss any claims, theories, or causes of action for statutory

or common law conspiracy in its Order Ruling on Motion to Dismiss.  It is axiomatic that a court

speaks through it orders.  *See Murdaugh Volkswagen, Inc. v. First Nat'l Bank of S.C.*, 741 F.2d

41, 44 (4th Cir. 1984) ("Basic to the operation of the judicial system is the principle that a court

speaks through its judgments and orders."). Thus, the Defendants' argument that the Trustee is resurrecting old claims or violating the law of the case is without merit.[22]

Similarly, the Motions as to Counts XXIX and XXX of the Amended Complaint are also without merit. As this Court previously discussed in its July 20, 2021, *Memorandum Opinion*, to state a claim for statutory conspiracy under Virginia law, the plaintiff much allege that "two or more persons . . . combine[d], associate[d], agree[d], mutually undert[ook] or concert[ed] together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will." Va. Code § 18.2-499; *see also In re LeClairRyan PLLC*, 2021 WL 3073801, at *8, 2021 Bankr. LEXIS 1917, at *23. To state a claim for common law conspiracy under Virginia law, the plaintiff must allege that "two or more persons combined to accomplish by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means." *T.G. Slater & Son v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 845 (4th Cir. 2004) (quoting *Com. Bus. Sys., Inc. v. Bellsouth Servs., Inc.*, 249 Va. 39, 48 (1995)); *see also In re LeClairRyan PLLC*, 2021 WL 3073801, at *8, 2021 Bankr. LEXIS 1917, at *23-24.

Expanding upon her earlier theories in the Original Complaint, the Trustee now alleges in her Amended Complaint that Defendants used false information to induce the Debtor into entering the joint venture including by (i) providing false promises to new client relationships, Am. Compl.

---

[22] The law-of-the-case doctrine is inapplicable to amended complaints in any regard. *See, e.g.*, *Chase v. Dep't of Pub. Safety & Corr. Servs.*, Civil Action No. ELH-18-2182, 2020 WL 1914811, at *12-13, 2020 U.S. Dist. LEXIS 68944, at *32, *34 (D. Md. Apr. 20, 2020) ("[W]hen a defendant moves for dismissal of an amended complaint, the analysis wholly concerns the adequacy of the allegations contained in that filing;" "because 'different facts will lead to a different legal analysis' the doctrine does not apply when the "factual milieu has expanded since the court's initial ruling"); *Vieira v. AGM II, LLC* (*In re Worldwide Wholesale Lumber, Inc.*), 372 B.R. 796, 809-10 (Bankr. D.S.C. 2007) ("The law of the case doctrine does not bar the litigation of the issues raised in the amended complaint since these issues were not properly before the Court on the [prior motion] and therefore were not determined by the Court.").

¶¶ 8, 179-185, ECF No. 86 at 4, 37-38; (ii) soliciting reports from third-party professionals based on misinformation, *id*. ¶¶ 151, 188-191, ECF No. 86 at 30, 39-40; and (iii) using the joint venture to improperly extract value from the Debtor for their own use and benefit, *id*. ¶¶ 214-215; 257-258, ECF No. 86 at 43-44, 50-51.

The Trustee alleges further that the ULX Entities and LeClair acted in concert to misappropriate the Debtor's trade secrets and other assets. *Id.* ¶ 518, ECF No. 86 at 85.  For the reasons stated herein, the Trustee has alleged sufficient facts to state a claim for the misappropriation of trade secrets under VUTSA.  As such, the Court finds that the Trustee has alleged sufficient predicate acts to sustain statutory and common law conspiracy claims against all Defendants.  For these reasons, the Court denies the Motions as to Counts XXVII through XXX.

*Count XXXI – Equitable Subordination Under Section 510(c)*
*(Against LeClair)*

By Count XXXI of the Amended Complaint, the Trustee seeks to subordinate each of the Defendants' claims pursuant to section 510(c) of the Bankruptcy Code.  That section provides that "the court may – (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim."  11 U.S.C. § 510(c).  Only LeClair has sought dismissal of this count for failure to state a claim, alleging that because Counts X through XIX, XXIII, XXVI, and XXIX through XXX should be dismissed, there is no grounds to equitably subordinate LeClair's claims.  As LeClair correctly identifies, "inequitable conduct" includes but is not limited to "(1) fraud, illegality, and breach of fiduciary duties; (2) undercapitalization; or (3) claimant's use of the debtor as a mere instrumentality or alter ego." *Wilson v. Moir* (*In re Wilson*), 359 B.R. 123, 138 (Bankr. E.D. Va. 2006) (quoting *Sender v. Bronze Grp., Ltd.* (*In re Hedged-Invs. Assocs., Inc.*), 380 F.3d 1292, 1301 (10th Cir. 2004)).  For the reasons stated herein, the Court has concluded that the Trustee has sufficiently alleged

inequitable conduct in the Amended Complaint to satisfy section 510(c).  The GDL Motion as to

Count XXXI is denied.

### Conclusion

For the foregoing reasons, the Court will deny the Motions on all counts.  A separate Order

shall issue.

Dated:    November 3, 2021          /s/ Kevin R. Huennekens
                                    UNITED STATES BANKRUPTCY JUDGE


                                    Entered on Docket:  Nov 3 2021