J. Scott Sexton (VSB No. 29284)        William A. Broscious (VSB No. 27436)
Andrew M. Bowman (VSB No. 86754)       William A. Broscious, Esq., PLC
GENTRY LOCKE                           P.O. Box 71180
P.O. Box 40013                         Henrico, Virginia 23255
Roanoke, Virginia 24022                Telephone:   804.533.2734
Telephone:   540.983.9300              Email:      wbroscious@brosciouslaw.com
Email:      sexton@gentrylocke.com
            bowman@gentrylocke.com

*Counsel for Gary D. LeClair*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| In re:<br><br>　**LeClairRyan, PLLC,**<br><br>　　Debtor. | **Case No.: 19-34574-KRH**<br><br>**Chapter 7** |
| **Lynn L. Tavenner, as Chapter 7 Trustee,**<br><br>　**Plaintiff,**<br><br>vs.<br><br>**ULX Partners, LLC, ULX Manager, LLC, UnitedLex Corporation, and Gary LeClair**<br><br>　**Defendants.** | **Adv. Proc. No.: 20-03142-KRH** |

## GARY D. LECLAIR'S ANSWER

Gary D. LeClair ("GDL"), by counsel, files this Answer to the First Amended Complaint filed by Lynn Tavenner, as Chapter 7 Trustee (the "Trustee") for LeClairRyan, PLLC (the "Debtor" or "LCR").

## PRELIMINARY STATEMENT

The Trustee's First Amended Complaint spins a fantastical tale of a conspiracy to destroy a law firm and strip it of all assets and value for personal gain. But the First Amended Complaint is just that—fantasy.

Over 95 pages and 558 paragraphs of allegations, the Trustee attributes the actions of a large, national law firm—with over 100 partners and an independent Board of Directors guiding its actions—to one man. In doing so, the Trustee contorts the facts, selectively quotes from documents, omits highly relevant context and backstory, draws negative inferences and motives at every turn, and spouts outright falsehoods. The Trustee even regurgitates discredited allegations from a disgruntled former employee that "left" the firm in 2016.

None of the Trustee's allegations survive contact with reality. GDL co-founded the firm, lent his name to it, and devoted more than 3,000 hours a year to it during most of his 31 years there. GDL also invested substantial money in the firm—over $2 million. After stepping down as CEO in 2011, GDL repeatedly reduced his own salary, eventually to less than half of market value, and allowed the firm to tap his retirement savings to fund budget shortfalls. Mr. LeClair was one of the firm's greatest supporters.

If, as the Trustee insists, GDL had only been focused on personal gain, all he had to do was not invest in the firm, insist on the salary he earned, or take a more lucrative position with another firm. As it is, the bankruptcy has rendered all of his investment worthless, at a cost to him of over two million dollars. The idea that he conspired with others to achieve this result is simply nonsensical.

The real story is one of a man who built a national law firm from the ground up. At its height, the firm had over 300 lawyers, over 100 shareholders, an independent board of directors, and over 20 offices stretching from coast-to-coast. In 2007, after nearly 20 years of GDL's hard work and leadership, the firm began to plan for his transition out of leadership, back to the full-time practice of law, and, eventually, retirement. The firm began this transition on June 30, 2011,

when GDL stepped down as CEO. GDL retained the title of Chairman—a non-management role focused on mentorship, community outreach, and business development—and he continued to serve on the Board. On December 31, 2015, GDL's term as Chairman ended, and on January 31, 2016, GDL's term on the Board ended. The firm completed a decade-long transition, and GDL passed the reigns to the next round of leaders.

Throughout the firm's expansion, it sought out ways to streamline its operations, increase its efficiencies, and decrease overhead. As early as 2004, the firm's board and shareholders approved outsourcing various aspects of its back-office operations, including technology, helpdesk, certain HR benefits, document processing and copying, among others. Later, in 2011, the firm's board and shareholders approved a strategy to outsource most of its remaining back-office services, including marketing, human resources, and non-lawyer support staff. The firm engaged in discussions with a handful of potential outsourcing partners, and established pilot programs with a few.

In 2012, the firm established one such pilot program with UnitedLex focused on outsourcing support functions for LCR's Discovery Solutions Practice ("DSP"). Apparently pleased with the relationship, UnitedLex attempted a takeover of the entire DSP group. LCR threatened litigation against UnitedLex—an effort lead by GDL under the direction of LCR's Board and LCR's Chief Legal Officer. On the eve of filing, a settlement was reached involving financial terms and a complete transition of DSP to UnitedLex.

The firm continued to investigate outsourcing its remaining back-office operations. In 2014, the firm's board approved a partnership with Elevate Services, Inc., but that relationship was deferred due to implementation challenges with its technology platform.

29646/1/10190135v1

Another opportunity presented itself in 2017 with UnitedLex. While UnitedLex initially contacted GDL, he made clear that he was no longer in LCR's management, and referred UnitedLex to LCR's CEO and Lead Director. The subsequent transaction was not stealthily orchestrated behind closed doors. It was a firm-wide decision to move forward with the UnitedLex transaction—one that was approved by LCR's board and its shareholders. This complex commercial transaction involved many of LCR's senior partners, its commercial transactional lawyers, and outside ethics counsel. When the agreements were executed in early April 2018, it represented not just months of work by LCR's lawyers, but the culmination of a longstanding plan to outsource the firm's back-office operations.

In the First Amended Complaint, the Trustee attempts to distort this transaction into a far-fetched "conspiracy." There was no conspiracy. This was an arms-length business transaction. Even if one were to pretend the Trustee's fantastical allegations have merit (and they do not), the Trustee alleges a conspiracy in which LCR's officers and directors took part. But the Trustee apparently fails to recognize that she stands in the shoes of the Debtor, and the law does not permit the Trustee to sue for damages flowing from a conspiracy in which Debtor took part.

The First Amended Complaint attempts to buttress her "conspiracy" with an even-more baseless claim for misappropriation of trade secrets. Setting aside the purely legal point that such claim cannot, as a matter of law, exist where a contract governs the transfer and/or use of trade secrets, the Trustee has not—and cannot—show GDL had ***anything*** to do with this. GDL did not draft the Contribution Agreement—LCR's Corporate Secretary did. *See* GDL_0005744. GDL did not prepare the list of property attached thereto—LCR's CEO did. *See* GDL_0005744. And LCR's

CEO signed the document on behalf of the firm. *See* GDL_0005744. GDL simply did not take part in this aspect of the UnitedLex transaction.

Finally, the First Amended Complaint's breach of fiduciary duty claim is even more bizarre. The mere notion that GDL actively worked against the best interests of the firm he worked for 30+ years to build defies logic. GDL did not do anything of the sort. Out of all LCR's shareholders, the Debtor's bankruptcy has hurt him the most—not just reputationally (the firm bears his name), but financially to the tune of over $2 million.

## <u>ANSWER</u>

1.     Paragraph 1 is immaterial, impertinent, and scandalous and should be stricken pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

2.     Paragraph 2 is immaterial, impertinent, and scandalous and should be stricken pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. GDL admits only that LCR filed for bankruptcy, and that UnitedLex Corporation ("UnitedLex") continues to do business. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

3.     To the extent Paragraph 3 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits that in June 2018, LCR announced it would be outsourcing its back-office staff to UnitedLex, but GDL denies he had any role in this

announcement. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

4.      GDL states that he had no role in the management of LCR at the time period referenced in Paragraph 4. Accordingly, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore denies the same.

5.      GDL admits only that he had discussions with Dan Reed in the second half of 2017 at the direction of, participation of, and with the full knowledge of LCR's executive officers, including, but not limited to, LCR's  Chief Executive Officer ("CEO") and Lead Director of LCR's Board. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 5.

6.      To the extent Paragraph 6 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL states that he had no role in the management of LCR at the times referenced in this paragraph, or ULX Partners, LLC ("ULXP"). To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

7.      To the extent Paragraph 7 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL states that he had no role in the management of LCR at the times referenced in this paragraph, or ULXP. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

8.      To the extent Paragraph 8 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the

29646/1/10190135v1

contrary. To the extent a response is required, GDL specifically denies that he concealed anything from LCR's shareholders. GDL further states that he had no role in the management of LCR at the times referenced in this paragraph, and he had no involvement in any planned or contemplated transaction with UnitedLex in August or September 2018. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

9.      GDL admits only that LCR filed for bankruptcy in September 2019. GDL states he had no role in the management of LCR at the times referenced in Paragraph 9. Accordingly, to the extent not expressly admitted, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore denies the same.

10.      Paragraph 10 is immaterial, impertinent, and scandalous and should be stricken pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. To the extent Paragraph 10 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

11.      GDL denies the first sentence of Paragraph 11. GDL admits only that LCR transitioned DSP to UnitedLex in late 2013 as part of a settlement of LCR's threatened litigation against UnitedLex relating to the breach of a confidentiality agreement. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

12.      Denied.

13.      To the extent Paragraph 13 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the

contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

14.    Denied.

15.    To the extent Paragraph 15 purports to interpret and/or paraphrase from the First Amended Complaint, such document speaks for itself, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

16.    Paragraph 16 states mere legal conclusions to which no response is required.

17.    Upon information and belief, GDL admits the allegations in Paragraph 17.

18.    Paragraph 18 states mere legal conclusions to which no response is required.

19.    Paragraph 19 states mere legal conclusions to which no response is required.

20.    To the extent Paragraph 20 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

21.    Admitted.

22.    GDL admits that LCR operated as a professional corporation organized under the laws of the Commonwealth of Virginia until March 4, 2018, that LCR was run by its Board of Directors while a professional corporation, that LCR operated as a professional limited liability company ("PLLC") organized under the laws of the Commonwealth of Virginia on and after March 4, 2018, that LCR was a manager-managed PLLC, and that LCR's Board was its manager.

29646/1/10190135v1

To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 22.

23.     GDL admits that he co-founded LCR in 1988 with Dennis Ryan, that he served as LCR's CEO until June 30, 2011 (with a gap of approximately 18 months in or about 2003), that he served as Chair until December 31, 2015, and that he served on the Board until January 31, 2016. As Chair, GDL had no management authority, had no signatory authority on behalf of LCR, and could not direct LCR's operations (including, but not limited to, employment decisions). GDL admits that, beginning in late 2012 through the end of 2013, he provided advice regarding the firm's finances, but the implementation of said advice was left to LCR's officers and directors at the time. GDL admits that he submitted his resignation from LCR on or about July 26, 2019, that his employment with LCR terminated on July 31, 2019, and that he currently practices law at Williams Mullen in Richmond, Virginia. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

24.     Admitted.

25.     Upon information or belief, GDL admits only that UnitedLex is a Delaware corporation. To the extent not expressly admitted, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 25 and, therefore, denies the same.

26.     GDL admits only that ULX Manager, LLC ("ULXM") is a Delaware limited liability company. To the extent not expressly admitted, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 26 and, therefore, denies the same.

27.     GDL admits only that ULXP is a Delaware limited liability company that was formed in 2018, and the LCR and ULXM are the only members of ULXP. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 27.

28.     Upon information and belief, GDL admits that Bruce Matson joined LCR in or about 1994, that Matson served as LCR's Chief Legal Officer from about 2012 through about 2016, that Matson began transitioning towards retirement in 2018, and that Matson was disciplined by the Virginia State Bar in 2020. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 28.

29.     Admitted.

30.     GDL admits that Micheal Hern joined LCR in 1994, that Hern served as LCR's Chief Operating Officer ("COO") until 2015, that Hern served as LCR's President until May 31, 2016, that Hern served on LCR's Board until May 31, 2016, that Hern held the honorary title of President Emeritus, and that Hern resigned from LCR in July 2019. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 30.

31.     GDL admits that Christopher Lange was a shareholder of LCR, that he held various management roles, including on the steering committee for the UnitedLex transaction, and that he left LCR in 2019. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 31.

32.     GDL admits that George Whitley was a shareholder of LCR, that he served on LCR's Board at various times, including as Lead Director, and that he left LCR in 2016. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 32.

29646/1/10190135v1

33.     To the extent Paragraph 33 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits that Jeffrey Brown was associated with LCR's DSP. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

34.     To the extent Paragraph 34 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits only that he co-founded LCR in 1988 with Dennis Ryan, and that LCR had offices in Virginia and Washington, D.C. in the 1990s. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

35.     GDL admits that LCR entered the New York market in 2006 at the request of its lawyers in the Securities/Regulatory Practice, that LCR merged with Seiden Wayne in 2007, and that Freinberg worked for Seiden Wayne at the time. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 35.

36.     GDL admits that LCR merged with Wright Robinson in 2008 at the request of its lawyers with litigation practices. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 36.

37.     GDL admits only that the discovery center became known within LCR as DSP, and that, upon information and belief, DSP had a significant year in 2013. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 37.

38.     Upon information and belief, GDL admits that at its peak, LCR had about 25 offices, approximately 385 lawyers, and about that many non-lawyer employees.

29646/1/10190135v1

39.    GDL admits only that, beginning in 2004, LCR's Partnership 2010 Committee recommended that LCR develop a policy to incentivize shareholders to serve in the firm's leadership positions and compensate the firm's leadership for their contributions, that LCR's Board formed a task for to develop such policy, that the task force hired an industry consultant to advise the task force on such policy, that the task force developed such a policy with input from the industry consultant, that the task force submitted a draft policy to LCR's Board, that LCR's Board unanimously approved the draft policy and recommended it to LCR's shareholders, and that LCR's shareholders voted to approve the policy. GDL further admits that, pursuant to the enacted policy, LCR's Compensation Committee initiated discussions with GDL regarding a soft-landing contract, that the Compensation Committee, with advice from an industry consultant, negotiated the soft-landing contract with GDL consistent with the policy, that the Compensation Committee recommended the soft-landing contract to LCR's Board, and that LCR's Board approved the soft-landing contract. GDL further admits that LCR operated on a closed compensation system (which he voted against) where compensation determinations were made by the Board, and each shareholder's compensation was not known by all other shareholders. Pursuant to the closed compensation system, GDL admits that LCR's Partnership 2010 Committee distributed copies of the proposed soft-landing contract to all of LCR's shareholders, wherein only the numerical compensation figures were redacted, and that the final, executed copy of the soft landing contract was freely available on LCR's intranet, again with the numerical compensation figures redacted pursuant to the firm's closed compensation system, as well as all amendments thereto. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 39.

29646/1/10190135v1

40.     To the extent Paragraph 40 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits only that he served as CEO until June 30, 2011 (with a gap of approximately 18 months in or about 2003). To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

41.     To the extent Paragraph 41 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits only that the "Partnership 2020 Report" was issued by LCR's Partnership 2020 Committee to LCR's Board, that it was unanimously approved by LCR's Board, and LCR's shareholders approved those portions of the "Partnership 2020 Report" that required their approval under LCR's governing documents. To the extent not expressly admitted, GDL denies any and all remaining allegations.

42.     Paragraph 42 states mere legal conclusions to which no response is required. To the extent a response is required, this paragraph purports to interpret, paraphrase, and/or quote from one or more documents which speak for themselves, and GDL denies all allegations to the contrary. To the extent any further response is required, GDL denies any and all remaining allegations in this paragraph.

43.     To the extent Paragraph 43 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

44.     Denied.

29646/1/10190135v1

45.     Upon information and belief, GDL admits that Mr. Reed and Ajay Agrawal founded UnitedLex, and that UnitedLex provides various non-legal services to law firms and legal departments. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 45.

46.     To the extent Paragraph 46 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is a required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

47.     To the extent Paragraph 47 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is a required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

48.     GDL admits only that he met Mr. Reed in or about 2012. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 48.

49.     To the extent Paragraph 49 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is a required, GDL admits, upon information and belief, only that Dewey & LeBoeuf, LLP filed for bankruptcy in May 2012. To the extent not expressly admitted, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

50.     To the extent Paragraph 50 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the

29646/1/10190135v1

contrary. To the extent a response is required, GDL admits only that LCR's Partnership 2020

Committee authored a report titled "Lessons from the Demise of Dewey" dated August 31, 2012.

To the extent not expressly admitted, GDL denies any and all remaining allegations in this

paragraph.

51.     To the extent Paragraph 51 purports to interpret, paraphrase, and/or quote from one

or more documents, such documents speak for themselves, and GDL denies all allegations to the

contrary. To the extent a response is required, GDL denies any and all remaining allegations in

this paragraph.

52.     To the extent Paragraph 52 purports to interpret, paraphrase, and/or quote from one

or more documents, such documents speak for themselves, and GDL denies all allegations to the

contrary. To the extent a response is required, GDL denies any and all remaining allegations in

this paragraph.

53.     To the extent Paragraph 53 purports to interpret, paraphrase, and/or quote from one

or more documents, such documents speak for themselves, and GDL denies all allegations to the

contrary. To the extent a response is required, GDL admits only that DSP became a separate

department, along within the corporate department and the litigation department, within LCR in

2013. To the extent not expressly admitted, GDL denies any and all remaining allegations in this

paragraph.

54.     To the extent Paragraph 54 purports to interpret, paraphrase, and/or quote from one

or more documents, such documents speak for themselves, and GDL denies all allegations to the

contrary. To the extent a response is required, GDL admits only that LCR and UnitedLex

participated in one or more telephones calls in October 2012, that LCR's Chief Information Officer

participated in such calls on behalf of LCR, and that LCR and UnitedLex subsequently entered into a confidentiality agreement. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

55.     To the extent Paragraph 55 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits that LCR and UnitedLex established a pilot out-sourcing program involving DSP in 2013 in which LCR outsourced certain DSP's non-lawyer support services (hosting/processing/etc.) to UnitedLex, and that LCR had established at DSP pilot programs with at least one other legal process outsourcer during that time. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

56.     GDL admits that certain lawyers in DSP announced their decision to leave LCR in October 2013, that LCR had hired outside counsel (Kaufman & Canoles, P.C.) to represent LCR, that LCR was prepared to file suit against UnitedLex if a settlement was not reached. To the extent not expressly admitted, GDL denies any and all remaining allegations.

57.     To the extent Paragraph 57 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits that, at the times referenced in this paragraph, LCR had hired outside counsel (Kaufman & Canoles, P.C.) to represent LCR, that LCR was prepared to file suit against UnitedLex if a settlement was not reached. In the context of LCR's threatened litigation, GDL further admits that, with full knowledge and approval of LCR's Chief Legal Officer and Board, GDL and LCR's President had one or more settlement meetings with Jeffrey Brown in 2013, that he had one or more separate settlement meetings with Mr. Reed in

2013, and that LCR was prepared to file suit against LCR if such settlement meetings were not successful. GDL admits that LCR, with oversight from its Board, negotiated a settlement, including financial consideration, with UnitedLex, that such settlement was approved by LCR's Board, and following such settlement, the LCR Knowledge Center was formed. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

58.     Denied.

59.     To the extent Paragraph 59 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all allegations in this paragraph.

60.     To the extent Paragraph 60 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits that LCR and UnitedLex issued a joint press release relating to the Knowledge Center. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

61.     To the extent Paragraph 61 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits, upon information and belief, that the settlement between LCR and UnitedLex was finalized in October or November 2013. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

62.     To the extent Paragraph 62 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits that one or more articles were published

29646/1/10190135v1

about the LCR Knowledge Center, and that he participated in a phone interview in November 2013. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

63.     To the extent Paragraph 63 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations.

64.     To the extent Paragraph 64 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits only that he had sporadic interactions with Mr. Reed following the settlement between LCR and UnitedLex, but GDL expressly denies such interactions occurred on a weekly basis. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

65.     Denied.

66.     To the extent Paragraph 66 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits only that he had sporadic interactions with Mr. Reed following the creation of the Knowledge Center, but GDL expressly denies such contacts were ever "routine." To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

67.     To the extent Paragraph 67 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits only that after the DSP practice group

transitioned to UnitedLex, he and the Litigation Department Chair gave a reference for the DSP practice group to Kaye Scholer, LLP. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

68.      To the extent Paragraph 68 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

69.      To the extent Paragraph 69 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations.

70.      Denied.

71.      Denied.

72.      Denied.

73.      Denied.

74.      GDL admits only that shareholder/member compensation was determined in accordance with LCR's governing documents. GDL further admits that LCR's Board adopted certain resolutions concerning compensation, but such resolution were not binding on LCR's shareholders. GDL further admits that LCR's shareholders voted on annual compensation policies, and if approved by LCR's shareholders, LCR would distribute compensation consistent with the approved annual policies. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 74.

29646/1/10190135v1

75.     To the extent Paragraph 75 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

76.     Denied.

77.     GDL admits only that LCR's Board and its shareholders approved the payment of certain compensation in 2014. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 77.

78.     To the extent Paragraph 78 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits only that LCR's Board and its shareholders approved the payment of certain compensation in 2014. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

79.     Denied.

80.     GDL admits only that LCR voted to award him certain year-end compensation in 2014, but GDL expressly denies such compensation was wrongfully paid. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 80.

81.     Denied.

82.     To the extent Paragraph 82 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

29646/1/10190135v1

83.    Paragraph 83 states mere legal conclusions to which no response is required. To the extent a response is required, GDL admits only that LCR's Board and shareholders approved the payment of certain compensation in 2015. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

84.    GDL admits only that LCR voted to award him certain year-end compensation in 2015, but expressly denies such compensation was wrongfully paid. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 84.

85.    To the extent Paragraph 85 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

86.    GDL admits only that LCR's Board and shareholders approved the payment of certain compensation in 2015. GDL lacks any information or belief concerning a check payable the firm in January 2016 that was back dated to December 2015. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 86.

87.    GDL admits only that LCR voted to award him certain year-end compensation in 2015, but expressly denies such compensation was wrongfully paid. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 87.

88.    To the extent Paragraph 88 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

29646/1/10190135v1

89.    To the extent Paragraph 89 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits only that Peter Mares raised potential concerns with LCR management in late 2015, but that none of Mr. Mares' concerns involved GDL. GDL states that LCR's Board investigated the concerns raised, formed a special committee to investigate certain concerns, which in turn hired outside counsel—Cadwalader, Wickersham & Taft LLP, spearheaded by former Assistant Attorney General Kenneth L. Wainstein—to assist in investigating this matter, that Mr. Mares' concerns were found to wholly lack merit, and that those subject to the investigation received written letters of exoneration. GDL further states that Mr. Mares' employment with LCR was terminated in March 2016. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

90.    To the extent Paragraph 90 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL states that LCR's audited balance sheet was 100% accurate, and that it reflected doubtful collections and write-offs. GDL further states that LCR's internal accounts receivable management reports did not reflect such doubtful collections and write-offs until approved by the responsible attorney, and, upon information and belief, many responsible attorneys were reluctant to write off old and doubtful accounts because some would ultimately be collected. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

29646/1/10190135v1

91.     To the extent Paragraph 91 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations.

92.     GDL admits only that LCR voted to award him certain year-end compensation in 2014, 2015, and 2016, but expressly denies such compensation was wrongfully paid. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 92.

93.     Denied.

94.     To the extent Paragraph 94 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL states that his term on LCR's Board ended on January 31, 2016, that he was not subsequently in a leadership position, and that he had no involvement in the handling of client funds. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

95.     To the extent Paragraph 95 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL states that his term on LCR's Board ended on January 31, 2016, that he was not subsequently in a leadership position, and that he had no involvement in the handling of client funds. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

96.     GDL admits only that Mr. Mares became COO in 2015, that C. Erik Gustafson became CEO in 2016, that GDL's term as Chair ended on December 31, 2015. GDL further admits that, beginning in 2016, GDL's term on LCR's Board ended on January 31, 2016, that Mr. Hern

29646/1/10190135v1

was presented with a Hobson's choice (resign or be removed as Vice Chair) and elected to resign in May 2016, and that George Whitley was also presented with a Hobson's choice (resign or be removed as Lead Director) and elected to resign from the Board in May 2016 and, ultimately, left LCR in September 2016. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 96.

97.     To the extent Paragraph 97 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL states that his exit from LCR's management and leadership was part of a longstanding objective dating back as far as 2003, that in 2007, he had informed LCR that he no longer wished to participate in LCR's management and, instead, wanted to return to the active practice of law, and that LCR's plan was to begin transitioning to new management beginning in October 2010. GDL further states that, in 2013, LCR's shareholders refused to approve a slate of Board members that did not include GDL, and, as a compromise, that GDL agreed to serve for one final term ending January 31, 2016. *See* GDL_0005489. GDL admits only that, consistent with that transition plan, his term as CEO ended on June 30, 2011 (with a gap of approximately 18 months in or about 2003), that his term as Chair ended on December 31, 2015, that his term on the Board ended on January 31, 2016, and thereafter he was no longer part of the management or leadership of LCR. GDL expressly denies that he left LCR's management for any purpose other than to return to the active practice of law. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

98.     Denied.

99.     GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 99 and, therefore, denies the same.

100.    Denied.

101.    To the extent Paragraph 101 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

102.    To the extent Paragraph 102 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

103.    To the extent Paragraph 103 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits only that, in mid-2017, UnitedLex followed up on prior (2014 and 2015) discussions between LCR and UnitedLex concerning the possibility of outsourcing LCR's back office operations in a manner consistent with the Rules of Professional Conduct, that GDL informed UnitedLex that he was no longer involved in LCR's management or leadership and that he would put UnitedLex in contact with LCR's CEO and that GDL promptly passed along this information to LCR's CEO. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

104.    To the extent Paragraph 104 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to

the contrary. To the extent a response is required, GDL admits, upon information and belief, Mr.

Reed and LCR's CEO spoke on August 5, 2017, and that Mr. Reed stated: "[LCR's CEO] has high

energy on the topics we discussed, and I believe feels the benefit of progressing discussions at an

up tempo pace." *See* GDL_0005506. To the extent not expressly admitted, GDL denies any and

all remaining allegations in this paragraph.

105.    To the extent Paragraph 105 purports to interpret, paraphrase, and/or quote from

one or more documents, such documents speak for themselves, and GDL denies all allegations to

the contrary. To the extent a response is required, GDL states that he did not take part in the alleged

meeting on August 23, 2017. Accordingly, GDL lacks sufficient information or belief to admit or

deny whether such meeting took place in this paragraph and, therefore, denies the same. To the

extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

106.    To the extent Paragraph 106 purports to interpret, paraphrase, and/or quote from

one or more documents, such documents speak for themselves, and GDL denies all allegations to

the contrary. To the extent a response is required, GDL denies any and all remaining allegations

in this paragraph.

107.    To the extent Paragraph 107 purports to interpret, paraphrase, and/or quote from

one or more documents, such documents speak for themselves, and GDL denies all allegations to

the contrary. To the extent a response is required, GDL denies any and all remaining allegations

in this paragraph.

108.    To the extent Paragraph 108 purports to interpret, paraphrase, and/or quote from

one or more documents, such documents speak for themselves, and GDL denies all allegations to

29646/1/10190135v1

the contrary. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

109.    Denied.

110.    To the extent Paragraph 110 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

111.    To the extent Paragraph 111 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies that he formally took the lead for LCR. To the extent not specifically admitted, GDL denies any and all remaining allegations in this paragraph.

112.    To the extent Paragraph 112 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits only that he received an email from Mr. Reed on November 2, 2017 and that said email copied two lawyers at Greenberg Traurig. *See* GDL_0005507. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

113.    GDL lacks sufficient information or belief to admit or deny the allegation that CVC's investment in UnitedLex was not formalized until September 2018 and, therefore, denies the same. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 113.

114.    To the extent Paragraph 114 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits he received an email from Mr. Reed on November 22, 2017. *See* GDL_0005509. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

115.    To the extent Paragraph 115 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegation that regarding Mr. Reed's statements on June 13, 2018 and, therefore, denies the same. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

116.    To the extent Paragraph 116 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

117.    To the extent Paragraph 117 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

118.    To the extent Paragraph 118 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits only that LCR considered a possible

29646/1/10190135v1

loan. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

119.    To the extent Paragraph 118 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

120.    GDL admits only that UnitedLex engaged in due diligence of LCR, that LCR's Corporate Secretary was tasked with LCR's due diligence of UnitedLex, and that LCR engaged in due diligence of UnitedLex. *See* GDL_0005542; GDL_000557. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

121.    GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 121 and, therefore, denies the same.

122.    Upon information and belief, admitted. *See* GDL_0005549.

123.    To the extent Paragraph 123 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

124.    To the extent Paragraph 124 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

125.    To the extent Paragraph 125 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

126.    To the extent Paragraph 126 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits Mr. Reed emailed LCR's CEO on March 21, 2018. *See* GDL_0005549. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

127.    To the extent Paragraph 127 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits Mr. Reed emailed LCR's CEO on March 21, 2018. *See* GDL_0005549. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

128.    To the extent Paragraph 128 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits that, on March 22, 2018, LCR's CEO responded to Mr. Reed's  March 21, 2018 email. *See* GDL_0005549. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

129.    To the extent Paragraph 129 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits that, on March 22, 2018, Mr. Reed

29646/1/10190135v1

responded to LCR's CEO's March 22, 2018 email. *See* GDL_0005544. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

130.    To the extent Paragraph 130 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

131.    Denied.

132.    GDL admits only that LCR converted from a professional corporation to a professional limited liability company on March 4, 2018. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

133.    Paragraph 133 states mere legal conclusions to which no response is required. To the extent a response is required, GDL, upon information and belief, admits the allegations in this paragraph.

134.    To the extent Paragraph 134 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits that, on March 22, 2018, LCR's CEO responded to Mr. Reed's  March 21, 2018 email. *See* GDL_0005549. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

135.    To the extent Paragraph 135 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits that, on March 22, 2018, LCR's

29646/1/10190135v1

CEO responded to Mr. Reed's  March 21, 2018 email. *See* GDL_0005549. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

136.    To the extent Paragraph 136 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

137.    GDL admits only that LCR's Board voted to terminate LCR's Deferred Compensation Plan and its Supplemental Retirement Plan effective December 31, 2017. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 137.

138.    Paragraph 138 states legal conclusions to which no response is required.

139.    GDL admits only that the IRS filed Proof of Claim No. 252 and that the Court authorized a proposed adjustment to conclude a related audit. To the extent not expressly admitted, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 139 and, therefore, denies the same.

140.    GDL admits LCR received legal advice from Hinshaw. GDL lacks sufficient information or belief to admit or deny the allegation in Paragraph 140 that UnitedLex received legal advice from Hinshaw and, therefore, denies the same. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

141.    To the extent Paragraph 141 purports to interpret, paraphrase, and/or quote from ECF No. 4-6 in this Action, such document speaks for itself, and GDL denies all allegations to the contrary.

29646/1/10190135v1

142.    To the extent Paragraph 142 purports to interpret, paraphrase, and/or quote from ECF No. 4-6 in this Action, such document speaks for itself, and GDL denies all allegations to the contrary.

143.    To the extent Paragraph 143 purports to interpret, paraphrase, and/or quote from ECF No. 4-6 in this Action, such document speaks for itself, and GDL denies all allegations to the contrary.

144.    To the extent Paragraph 144 purports to interpret, paraphrase, and/or quote from ECF No. 4-7 in this Action, such document speaks for itself, and GDL denies all allegations to the contrary.

145.    To the extent Paragraph 145 purports to interpret, paraphrase, and/or quote from ECF No. 4-7 in this Action, such document speaks for itself, and GDL denies all allegations to the contrary.

146.    To the extent Paragraph 146 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

147.    To the extent Paragraph 147 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits he received an email from Mr. Reed on January 26, 2018, and that he replied to Mr. Reed's email on January 26, 2018. *See* GDL_0005531. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

148.    To the extent Paragraph 148 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL states that he did not receive a copy of the March 27, 2018 or March 28, 2018 opinion letter prepared by Hinshaw. Accordingly, GDL lacks sufficient information or belief to admit or deny the allegations this paragraph and, therefore, denies the same.

149.    To the extent Paragraph 149 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL states that he did not receive a copy of the March 27, 2018 or March 28, 2018 opinion letter prepared by Hinshaw. Accordingly, GDL lacks sufficient information or belief to admit or deny the allegations this paragraph and, therefore, denies the same.

150.    To the extent Paragraph 150 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits that one potential name for the joint venture between LCR and UnitedLex was United Law Firm Solutions ("ULFS"). To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

151.    To the extent Paragraph 151 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

152.    To the extent Paragraph 152 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL states he was not involved in the amendment of any agreements between LCR and UnitedLex, including, but not limited to, the April 4, 2018 version of the Master Services Agreement or any proposed or contemplated amendments "in or around the end of 2018 and the beginning of 2019," and, therefore, he lacks sufficient information or belief to admit or deny such allegations in this paragraph and, therefore, denies the same. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

153.    GDL admits only that the transaction between LCR and UnitedLex was ultimately finalized in April 2018. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 153.

154.    To the extent Paragraph 154 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits only that the transaction between LCR and UnitedLex did not include a $33 million loan. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

155.    To the extent Paragraph 155 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

29646/1/10190135v1

156.    To the extent Paragraph 156 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits only that the "Contribution Agreement between ULX Partners, LLC and LeClairRyan PLLC" was executed on or about April 4, 2018 (the "Contribution Agreement"). To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

157.    To the extent Paragraph 157 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits only that Appendix 1 to Schedule 2.01(b) of the Contribution Agreement between LCR and ULXP lists various assets. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

158.    To the extent Paragraph 158 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits the allegations in this paragraph.

159.    To the extent Paragraph 159 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

160.    To the extent Paragraph 160 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

29646/1/10190135v1

161.    To the extent Paragraph 161 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits only that LCR and UnitedLex entered into a "Master Services Agreement" dated April 2, 2018. *See* GDL_0005599. GDL expressly denies that such version of the Master Services Agreement permitted ULXP, or UnitedLex, to "t[ake] control" of LCR in any way. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

162.    To the extent Paragraph 162 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL expressly denies ULXP, or UnitedLex, assumed control of LCR or its "core law firm functions." To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

163.    Denied.

164.    To the extent Paragraph 164 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent not expressly admitted, GDL denies any and all remaining allegations.

165.    GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 165 relating to the knowledge of UnitedLex or ULXP and, therefore, denies the same. GDL denies any and all remaining allegations in this paragraph.

166.    To the extent Paragraph 166 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to

the contrary. To the extent not expressly admitted, GDL denies any and all remaining allegations
in this paragraph.

167.    Denied.

168.    To the extent Paragraph 168 purports to interpret, paraphrase, and/or quote from
one or more documents, such documents speak for themselves, and GDL denies all allegations to
the contrary. To the extent not expressly admitted, GDL denies any and all remaining allegations
in this paragraph.

169.    GDL admits only that LCR and UnitedLex entered into a "Master Services
Agreement" dated April 2, 2018, a "Amended and Restated Limited Liability Company
Agreement" dated April 4, 2018, a "Subscription Agreement" dated April 4, 2018, and a
Contribution Agreement dated April 4, 2018. To the extent not expressly admitted, GDL denies
any and all remaining allegations in Paragraph 169.

170.    Denied.

171.    Denied.

172.    As GDL's term on LCR's Board ended on January 31, 2016, GDL lacks sufficient
information or belief to admit or deny the allegations in Paragraph 172 relating to the knowledge
of the LCR Board in 2018 and, therefore, denies the same. GDL expressly denies that LCR was
insolvent. To the extent not expressly admitted, GDL denies any and all remaining allegations in
this paragraph.

173.    To the extent Paragraph 173 purports to interpret, paraphrase, and/or quote from
one or more documents, such documents speak for themselves, and GDL denies all allegations to

the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

174.    To the extent Paragraph 174 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

175.    To the extent Paragraph 175 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

176.    To the extent Paragraph 176 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

177.    To the extent Paragraph 177 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

178.    To the extent Paragraph 178 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

29646/1/10190135v1

179.    To the extent Paragraph 179 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

180.    To the extent Paragraph 180 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

181.    To the extent Paragraph 181 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

182.    To the extent Paragraph 182 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

183.    GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 183 and, therefore, denies the same.

184.    GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 184 and, therefore, denies the same.

185.    To the extent Paragraph 185 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to

29646/1/10190135v1

the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

186.    GDL admits that LCR and UnitedLex hired Cornerstone Valuation LLC ("Cornerstone") on March 26, 2018. *See* GDL_0004368-4371. GDL further admits that the Contribution Agreement was executed on or about April 4, 2018. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

187.    To the extent Paragraph 187 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits only that he provided certain information to Cornerstone with the full knowledge and approval of certain LCR's officers or directors. *See, e.g.*, GDL_0004385;  GDL_0004400-4401;  *see also*  GDL_0004305; GDL_0004364;  GDL_0004374;  GDL_0004379-4382;  GDL_0004387-4399;  GDL_0004402; GDL_0004585. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

188.    GDL expressly denies that he manipulated the Cornerstone report in any way. GDL states that he provided certain information prepared by others to Cornerstone with the full knowledge and approval of LCR's officers or directors. *See, e.g.*, GDL_0004385; GDL_0004400-4401;  *see also*  GDL_0004305;  GDL_0004364;  GDL_0004374;  GDL_0004379-4382; GDL_0004387-4399; GDL_0004402; GDL_0004585. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

189.    To the extent Paragraph 189 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to

the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

190.    To the extent Paragraph 190 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

191.    To the extent Paragraph 191 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits that Cornerstone provided its valuation to LCR's CEO on or about April 18, 2018, and that Mr. Reed, UnitedLex's CEO, responded "Awesome." *See* GDL_0004404. GDL further admits that Cornerstone provided its "Opinion Letter" on April 25, 2018. *See* GDL_0004413-4583. GDL expressly denies that the Cornerstone report was never finalized. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

192.    To the extent Paragraph 192 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

193.    To the extent Paragraph 193 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

194.    To the extent Paragraph 194 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

195.    Denied.

196.    To the extent Paragraph 196 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

197.    To the extent Paragraph 197 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

198.    To the extent Paragraph 198 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

199.    To the extent Paragraph 199 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

200.    Denied.

29646/1/10190135v1

201.    To the extent Paragraph 201 purports to interpret, paraphrase, and/or quote from one or more documents, namely the various versions of the Master Services Agreement, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

202.    To the extent Paragraph 202 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits only that ULXP was permitted access to certain information, at minimum, pursuant to Section 10.01(a) of the "Amended and Restated Limited Liability Company Agreement" dated April 4, 2018 and Paragraph 7 of the "Master Services Agreement" dated April 2, 2018. To the extent not expressly admitted, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

203.    GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 203 and, therefore, denies the same.

204.    GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 204 and, therefore, denies the same.

205.    Upon information and belief, GDL admits LCR out-sourced certain of its non-lawyer back office functions to ULXP, including human resources, marketing, and business development. GDL expressly denies ULXP employees served on LCR's Board of Directors, were "managers" as such term is defined under the Virginia Limited Liability Company Act, or held any essential or "key" role to LCR's operations.  To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 205.

29646/1/10190135v1

206.     GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 206 and, therefore, denies the same.

207.     GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 207 and, therefore, denies the same.

208.     To the extent Paragraph 208 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

209.     To the extent Paragraph 209 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

210.     To the extent Paragraph 210 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

211.     To the extent Paragraph 211 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

212.     To the extent Paragraph 212 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to

29646/1/10190135v1

the contrary. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

213.    To the extent Paragraph 213 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

214.    To the extent Paragraph 214 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL expressly denies he had any role in the decision to hire Nicholas Hinton. GDL admits only that LCR was hired as legal counsel to represent UnitedLex in contract negotiations with Mr. Hinton. To the extent not expressly admitted, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

215.    To the extent Paragraph 215 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL expressly denies that he provided guidance to Mr. Reed, UnitedLex, or ULX on personnel decisions in October or November 2018. To the extent not expressly admitted, GDL lacks sufficient information or belief to admit or deny the remaining allegations in this paragraph and, therefore, denies the same.

216.    GDL admits that LCR continued to experience attorney and member departures and declining revenue through the end of 2018. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 216.

29646/1/10190135v1

217.    GDL lacks sufficient information or belief to admit or deny the allegations in
Paragraph 217 and, therefore, denies the same.

218.    GDL expressly denies that he took part in any meetings with ULXP, UnitedLex,
and/or other LCR Board members or staff regarding cash flow. Accordingly, GDL lacks sufficient
information or belief to admit or deny the allegations in Paragraph 218 and, therefore, denies the
same.

219.    GDL lacks sufficient information or belief to admit or deny the allegations in
Paragraph 219 and, therefore, denies the same.

220.    GDL lacks sufficient information or belief to admit or deny the allegations in
Paragraph 220 and, therefore, denies the same.

221.    GDL lacks sufficient information or belief to admit or deny the allegations in
Paragraph 221 and, therefore, denies the same.

222.    GDL lacks sufficient information or belief to admit or deny the allegations in
Paragraph 222 and, therefore, denies the same.

223.    GDL lacks sufficient information or belief to admit or deny the allegations in
Paragraph 223 and, therefore, denies the same.

224.    GDL lacks sufficient information or belief to admit or deny the allegations in
Paragraph 224 and, therefore, denies the same.

225.    GDL lacks sufficient information or belief to admit or deny the allegations in
Paragraph 225 and, therefore, denies the same.

29646/1/10190135v1

226.    Upon information and belief, GDL states LCR's credit card was not working in or about late July 2019. To the extent not expressly admitted, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 226 and, therefore, denies the same.

227.    GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 227 and, therefore, denies the same.

228.    GDL states that he co-founded LCR in 1988, that he served as Chair/CEO until June 30, 2011 (with a gap of approximately 18 months in or about 2003), that his term as Chair ended on December 31, 2015, that his term on the Board ended on January 31, 2016, and, thereafter, he had no role in the management or operations of LCR. As such, GDL has no involvement in LCR's handling of client funds, and GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 228 and, therefore, denies the same.

229.    GDL states that he co-founded LCR in 1988, that he served as Chair/CEO until June 30, 2011 (with a gap of approximately 18 months in or about 2003), that his term as Chair ended on December 31, 2015, that his term on the Board ended on January 31, 2016, and, thereafter, he had no role in the management or operations of LCR. As such, GDL has no involvement in LCR's handling of client funds, and GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 229 and, therefore, denies the same.

230.    GDL states that he co-founded LCR in 1988, that he served as Chair/CEO until June 30, 2011 (with a gap of approximately 18 months in or about 2003), that his term as Chair ended on December 31, 2015, that his term on the Board ended on January 31, 2016, and, thereafter, he had no role in the management or operations of LCR. As such, GDL has no

29646/1/10190135v1

involvement in LCR's handling of client funds, and GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 230 and, therefore, denies the same.

231.     Paragraph 231 states mere legal conclusions to which no response is required. To the extent a response is required, GDL states that he co-founded LCR in 1988, that he served as Chair/CEO until June 30, 2011 (with a gap of approximately 18 months in or about 2003), that his term as Chair ended on December 31, 2015, that his term on the Board ended on January 31, 2016, and, thereafter, he had no role in the management or operations of LCR. As such, GDL has no involvement in LCR's handling of client funds, and GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

232.     GDL states that he heard that LCR and ULXP had entered into a note and security agreement, but GDL was not involved in this transaction. Upon information and belief, GDL admits that LCR's members held a member meeting on July 29, 2019 to vote on various agenda items, including to approve the formation of a dissolution committee for the potential wind up, eventual dissolution, and liquidation of LCR. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 232.

233.     GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 233 and, therefore, denies the same.

234.     To the extent Paragraph 234 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

29646/1/10190135v1

235.    To the extent Paragraph 235 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

236.    Denied.

237.    Denied.

238.    Paragraph 238 states mere legal conclusions to which no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

239.    To the extent Paragraph 239 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

240.    GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 240 and, therefore, denies the same.

241.    To the extent Paragraph 241 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

242.    The allegations in Paragraph 242 are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

29646/1/10190135v1

243.    Denied.

244.    Denied.

245.    GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 245 and, therefore, denies the same.

246.    Denied.

247.    GDL expressly denies that he was involved in "Project Modern." Accordingly, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 247 and, therefore, denies the same.

248.    To the extent Paragraph 248 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits only that on May 18, 2018, LCR's CEO wrote an email to GDL which stated, in part: "partners would move back to a W-2 compensation model, there would be very modest personal capital requirements, bonuses would be based on specific and personalized management objectives, and additional longer term incentives, such as stock in UnitedLex, would be offered." *See* GDL_0004596. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

249.    Upon information and belief, GDL admits only that Novellus Law Group was intended to be a new entity. GDL states that he did not attend the June 24, 2019 meeting between UnitedLex and LCR's partners in which the details of Novellus Law Group were discussed. Accordingly, GDL lacks sufficient information or belief to admit or deny the remaining allegations in Paragraph 249 and, therefore, denies the same.

250.    Upon information and belief, GDL admits only that Novellus Law Group was intended to be a new entity. GDL states that he did not attend the June 24, 2019 meeting between UnitedLex and LCR's partners in which the details of Novellus Law Group were discussed. Accordingly, GDL lacks sufficient information or belief to admit or deny the remaining allegations in Paragraph 250 and, therefore, denies the same.

251.    Upon information and belief, GDL admits only that Novellus Law Group was intended to be a new entity. GDL states that he did not attend the June 24, 2019 meeting between UnitedLex and LCR's partners in which the details of Novellus Law Group were discussed. Accordingly, GDL lacks sufficient information or belief to admit or deny the remaining allegations in Paragraph 251 and, therefore, denies the same.

252.    GDL admits only that he received an indicative offer to join Novellus Law Group which contained "an equity component" as part of the offered long-term incentive compensation, but that the indicative offer did not specify whose equity would be provided. To the extent not specifically admitted, GDL lacks sufficient information or belief to admit or deny the remaining allegations in Paragraph 252 and, therefore, denies the same.

253.    GDL admits only that he received an indicative offer to join Novellus Law Group, that such offer states: "your Annual Compensation Target, which consists of base compensation ('Salary'), an ability to earn an annual bonus based on performance ('Annual Bonus'), long term incentive compensation ('LTI'), benefits and payroll taxes." *See* GDL_0004594. GDL expressly denies that such offer was superior to that of the traditional law firm model. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 253.

29646/1/10190135v1

254.    GDL admits only that a new legal entity would ordinarily need operating capital. Upon information and belief, UnitedLex spoke directly with VCF regarding financing for Novellus Law Group. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 254.

255.    GDL lacks sufficient information or belief to admit or deny the allegations in the first sentence of Paragraph 255 and, therefore, denies the same. GDL admits only that VCF did not provide funding for Novellus Law Group. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

256.    GDL admits only that Novellus Law Group did not come to fruition. GDL lacks sufficient information or belief to admit or deny the remaining allegations in Paragraph 256 and, therefore, denies the same.

257.    Denied.

258.    To the extent Paragraph 258 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits only that he permitted LCR to take a loan against his Northwestern Mutual Life insurance policy contained within his Deferred Compensation Plan account in order for LCR to purchase shares of Series B Preferred Stock. GDL further admits that LCR did not redeem the shares and repay that loan as required by the July 31, 2015 letter agreement, as modified by the Fifth Amendment to GDL's soft landing contract dated December 27, 2016, and that due to this breach, GDL issued the March 22, 2019 Forbearance Memorandum to LCR. *See* GDL_ 0004303. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

259. GDL admits that he issued his resignation from LCR on July 26, 2019, and that his last day at LCR was July 31, 2019. GDL further admits that LCR's members held a member meeting on July 29, 2019 to vote on various agenda items, including to approve the formation of a dissolution committee for the potential wind up, eventual dissolution, and liquidation of LCR. GDL states that, given his resignation, he did not attend the July 29, 2019 member meeting, and was not permitted to vote on the various agenda items. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 259.

260. Admitted.

261. Denied.

262. Denied.

263. Denied.

264. To the extent Paragraph 264 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits only that the Fifth Amendment to his December 31, 2007 GDL-SLC dated December 27, 2016 contains release provisions. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

265. The allegations in Paragraph 265 are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this and, therefore, denies the same.

266. The allegations in Paragraph 266 are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this and, therefore, denies the same.

29646/1/10190135v1

267.    The allegations in Paragraph 267 are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this and, therefore, denies the same.

## COUNT I
### Avoidance of Fraudulent Transfers Under 11 U.S.C. §§ 548(a)(1)(A) and 550
### (Against ULXP and UnitedLex)

268.    GDL incorporates by reference his responses to Paragraphs 1-267 as his response to Paragraph 268.

269.    The allegations in Count I are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 269 and, therefore, denies the same.

270.    The allegations in Count I are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 270 and, therefore, denies the same.

271.    The allegations in Count I are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 271 and, therefore, denies the same.

272.    The allegations in Count I are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 272 and, therefore, denies the same.

273.    The allegations in Count I are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 273 and, therefore, denies the same.

274.     The allegations in Count I are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 274 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 274 and, therefore, denies the same.

275.     The allegations in Count I are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 275 and, therefore, denies the same.

276.     The allegations in Count I are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 276 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

277.     The allegations in Count I are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 277 and, therefore, denies the same.

**COUNT II**
**Avoidance of Fraudulent Transfers Under 11 U.S.C. §§ 548(a)(1)(B) and 550**
**(Against ULXP And UnitedLex)**

278.     GDL incorporates by reference his responses to Paragraphs 1-277 as his response to Paragraph 278.

279.    The allegations in Count II are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 279 and, therefore, denies the same.

280.    The allegations in Count II are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 280 and, therefore, denies the same.

281.    The allegations in Count II are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 281 and, therefore, denies the same.

282.    The allegations in Count II are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 282 and, therefore, denies the same.

283.    The allegations in Count II are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 283 and, therefore, denies the same.

284.    The allegations in Count II are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 284 and, therefore, denies the same.

285.    The allegations in Count II are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 285 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL lacks sufficient

information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

286.     The allegations in Count II are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 286 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

287.     The allegations in Count II are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 287 and, therefore, denies the same.

288.     The allegations in Count II are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 288 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

289.     The allegations in Count II are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 289 and, therefore, denies the same.

290.     The allegations in Count II are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 290 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL lacks sufficient

information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

291.    The allegations in Count II are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 291 and, therefore, denies the same.

**COUNT III**
**Avoidance of Fraudulent Transfers Under 11 U.S.C. §§ 544(b), 550,**
**and Applicable State Law**
**(Against ULXP And UnitedLex)**

292.    GDL incorporates by reference his responses to Paragraphs 1-291 as his response to Paragraph 292.

293.    The allegations in Count III are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 293 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

294.    The allegations in Count III are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 294 and, therefore, denies the same.

295.    The allegations in Count III are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 295 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL lacks sufficient

Page 59 of 111

information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

296.    The allegations in Count III are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 296 and, therefore, denies the same.

297.    The allegations in Count III are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 297 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

298.    The allegations in Count III are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 298 and, therefore, denies the same.

299.    The allegations in Count III are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 299 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

300.    The allegations in Count III are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 300 and, therefore, denies the same.

29646/1/10190135v1

301.     The allegations in Count III are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 301 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

302.     The allegations in Count III are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 302 and, therefore, denies the same.

303.     The allegations in Count III are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 303 states mere legal conclusions to which no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

### COUNT IV
**Avoidance of Preferences Under 11 U.S.C. §§ 547(b) and 550**
**(Against ULXP and UnitedLex)**

304.     GDL incorporates by reference his responses to Paragraphs 1-303 as his response to Paragraph 304.

305.     The allegations in Count IV are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 305 and, therefore, denies the same.

29646/1/10190135v1

306.     The allegations in Count IV are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 306 and, therefore, denies the same.

307.     The allegations in Count IV are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 307 states mere legal conclusions to which no response is required. To the extent Any further response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

308.     The allegations in Count IV are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 308 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

309.     The allegations in Count IV are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 309 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

310.     The allegations in Count IV are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 310 and, therefore, denies the same.

311.    The allegations in Count IV are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 311 and, therefore, denies the same.

312.    The allegations in Count IV are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 312 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

313.    The allegations in Count IV are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 313 and, therefore, denies the same.

314.    The allegations in Count IV are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 314 and, therefore, denies the same.

315.    The allegations in Count IV are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 315 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

316.    The allegations in Count IV are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 316 and, therefore, denies the same.

**COUNT V**
**Avoidance of Lien and Recovery of Avoided Transactions**
**Under 11 U.S.C. §§ 544, 548, 550, and 551**
**(Against ULXP)**

317.    GDL incorporates by reference his responses to Paragraphs 1-316 as his response

to Paragraph 317.

318.    The allegations in Count V are not directed at GDL and, therefore, no response is

required. To the extent a response is required, GDL lacks sufficient information or belief to admit

or deny the allegations in Paragraph 318 and, therefore, denies the same.

319.    The allegations in Count V are not directed at GDL and, therefore, no response is

required. To the extent a response is required, GDL lacks sufficient information or belief to admit

or deny the allegations in Paragraph 319 and, therefore, denies the same.

320.    The allegations in Count V are not directed at GDL and, therefore, no response is

required. To the extent a response is required, GDL lacks sufficient information or belief to admit

or deny the allegations in Paragraph 320 and, therefore, denies the same.

321.    The allegations in Count V are not directed at GDL and, therefore, no response is

required. To the extent a response is required, GDL lacks sufficient information or belief to admit

or deny the allegations in Paragraph 321 and, therefore, denies the same.

322.    The allegations in Count V are not directed at GDL and, therefore, no response is

required. To the extent a response is required, GDL lacks sufficient information or belief to admit

or deny the allegations in Paragraph 322 and, therefore, denies the same.

29646/1/10190135v1

323.    The allegations in Count V are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 323 and, therefore, denies the same.

## COUNT VI
### Avoidance of Lien and Recovery of Avoided Transactions
### Under 11 U.S.C. §§ 547, 550, and 551
### (Against ULXP)

324.    GDL incorporates by reference his responses to Paragraphs 1-323 as his response to Paragraph 324.

325.    The allegations in Count VI are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 325 and, therefore, denies the same.

326.    The allegations in Count VI are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 326 and, therefore, denies the same.

327.    The allegations in Count VI are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 327 and, therefore, denies the same.

328.    The allegations in Count VI are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 328 and, therefore, denies the same.

29646/1/10190135v1

329.    The allegations in Count VI are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 329 and, therefore, denies the same.

330.    The allegations in Count VI are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 330 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

## <u>COUNT VII</u>
### Avoidance of Fraudulent Transfer Under §§ 544(b) and 550 and Applicable State Law (Against ULXP)

331.    GDL incorporates by reference his responses to Paragraphs 1-330 as his response to Paragraph 331.

332.    The allegations in Count VII are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 332 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

333.    The allegations in Count VII are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 333 and, therefore, denies the same.

334.    The allegations in Count VII are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 334 states mere legal conclusions to

which no response is required. To the extent any further response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

335.    The allegations in Count VII are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 335 and, therefore, denies the same.

336.    The allegations in Count VII are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 336 and, therefore, denies the same.

337.    The allegations in Count VII are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 337 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

338.    The allegations in Count VII are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 338 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

29646/1/10190135v1

**COUNT VIII**
**Disallowance of Claims under 11 U.S.C. § 502(d)**
**(Against ULXP and UnitedLex)**

339.    GDL incorporates by reference his responses to Paragraphs 1-338 as his response

to Paragraph 339.

340.    The allegations in Count VIII are not directed at GDL and, therefore, no response

is required. To the extent a response is required, Paragraph 340 states mere legal conclusions to

which no response is required. To the extent any further response is required, GDL lacks sufficient

information or belief to admit or deny the allegations in this paragraph and, therefore, denies the

same.

341.    The allegations in Count VIII are not directed at GDL and, therefore, no response

is required. To the extent a response is required, GDL lacks sufficient information or belief to

admit or deny the allegations in Paragraph 341 and, therefore, denies the same.

342.    The allegations in Count VIII are not directed at GDL and, therefore, no response

is required. To the extent a response is required, Paragraph 342 states mere legal conclusions to

which no response is required. To the extent any further response is required, GDL lacks sufficient

information or belief to admit or deny the allegations in this paragraph and, therefore, denies the

same.

343.    The allegations in Count VIII are not directed at GDL and, therefore, no response

is required. To the extent a response is required, GDL lacks sufficient information or belief to

admit or deny the allegations in Paragraph 343 and, therefore, denies the same.

344.    The allegations in Count VIII are not directed at GDL and, therefore, no response

is required. To the extent a response is required, Paragraph 344 states mere legal conclusions to

which no response is required. To the extent any further response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

### COUNT IX
### Re-Characterization of Debt as Equity
### (Against ULXP)

345.    GDL incorporates by reference his responses to Paragraphs 1-344 as his response to Paragraph 345.

346.    The allegations in Count IX are not directed at GDL and, therefore, no response is required. To the extent a response is required, upon information and belief, admitted.

347.    The allegations in Count IX are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 347 and, therefore, denies the same.

348.    The allegations in Count IX are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 348 purports to interpret, paraphrase, and/or quote from one or more documents which speak for themselves, and GDL denies all allegations to the contrary. To the extent not expressly admitted, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

349.    The allegations in Count IX are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 349 and, therefore, denies the same.

29646/1/10190135v1

350.    The allegations in Count IX are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 350 and, therefore, denies the same.

351.    The allegations in Count IX are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 351 purports to interpret, paraphrase, and/or quote from one or more documents which speak for themselves, and GDL denies all allegations to the contrary. To the extent any further response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

352.    The allegations in Count IX are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 352 and, therefore, denies the same.

353.    The allegations in Count IX are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 353 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

## COUNT X
**Avoidance of Fraudulent Transfers Under 11 U.S.C. §§ 548(a)(1)(A) and 550**
**(Against Mr. LeClair)**

354.    GDL incorporates by reference his responses to Paragraphs 1-353 as his response to Paragraph 354.

355.    Denied.

356.    Denied.

357.    Denied.

358.    Paragraph 358 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

359.    Paragraph 359 states mere legal conclusion to which no response is required. To the extent a response is required, GDL admits only that certain dates listed on Exhibit 1 to the First Amended Complaint (ECF No. 86) occurred between September 3, 2017 through September 3, 2019. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

360.    Denied.

361.    Denied.

## COUNT XI
### Avoidance of Fraudulent Transfers Under 11 U.S.C. §§ 548(a)(1)(B) and 550
### (Against Mr. LeClair)

362.    GDL incorporates by reference his responses to Paragraphs 1-361 as his response to Paragraph 362.

363.    Denied.

364.    Denied.

365.    Denied.

366.    Denied.

367.    Paragraph 367 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

29646/1/10190135v1

368.    Paragraph 368 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

369.    Denied.

370.    Paragraph 370 states mere legal conclusions to which no response is required. To the extent a response is required, GDL admits only that certain dates listed on Exhibit 1 to the First Amended Complaint (ECF No. 86) occurred between September 3, 2017 through September 3, 2019. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

371.    Denied.

372.    Denied.

## COUNT XII
**Avoidance and Recovery of the LeClair Transfers as Actual Fraudulent Transfers Under 11 U.S.C. §§ 544(b), 550, and Va. Code § 55.1-400**
**(Against Mr. LeClair)**

373.    GDL incorporates by reference his responses to Paragraphs 1-372 as his response to Paragraph 373.

374.    Paragraph 374 states a legal conclusion to which no response is required.

375.    Denied.

376.    Paragraph 376 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

377.    Denied.

378.    Paragraph 378 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

29646/1/10190135v1

379.    Denied.

380.    Paragraph 380 states mere legal conclusions to which no response is required. To the extent a response is required, GDL admits only that certain dates listed on Exhibit 3 to the First Amended Complaint (ECF No. 86) occurred between September 3, 2014 through September 3, 2019. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

381.    Denied.

382.    Denied.

## COUNT XIII
### Avoidance of LeClair Preferential Transfers Under 11 U.S.C. § 547(b)
### (Against Mr. LeClair)

383.    GDL incorporates by reference his responses to Paragraphs 1-382 as his response to Paragraph 383.

384.    GDL admits only that certain dates listed on Exhibit 2 to the First Amended Complaint (ECF No. 86) occurred between September 3, 2018 through September 3, 2019. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

385.    Denied.

386.    Paragraph 386 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

387.    Paragraph 387 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

388.    Paragraph 388 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

29646/1/10190135v1

389.   Denied.

390.   Paragraph 390 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

391.   Denied.

392.   Paragraph 392 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

393.   Denied.

394.   Denied.

## <u>COUNT XIV</u>
### Avoidance of Releases and Exculpation Rights Under 11 U.S.C. §§ 548 and 550
### (Against Mr. LeClair)

395.   GDL incorporates by reference his responses to Paragraphs 1-394 as his response to Paragraph 395.

396.   To the extent Paragraph 396 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits that the Fifth Amendment to December 31, 2007 GDL-SLC contained mutual release provisions—GDL released LCR, and LCR released GDL—as well as mutual monetary consideration—LCR paid GDL's attorneys' fees and GDL agreed to reduce his compensation. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

397.   Denied.

398.   Paragraph 398 states mere legal conclusions to which no response is required. To the extent a response is required, GDL admits that the Fifth Amendment to December 31, 2007

GDL-SLC was a transfer of an interest in LCR's property. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

399.    Denied.

400.    Denied.

401.    Denied.

402.    Paragraph 402 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

403.    Paragraph 403 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

404.    Paragraph 404 states mere legal conclusions to which no response is required. To the extent a response is required, GDL admits the  Fifth Amendment to December 31, 2007 GDL-SLC was dated December 27, 2016, that he signed said document on December 28, 2016, and that such dates do not occur between September 3, 2017 through September 3, 2019. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

405.    Paragraph 405 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

406.    Denied.

407.    Paragraph 407 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

29646/1/10190135v1

## COUNT XV
**Avoidance of Releases and Exculpation Rights Under 11 U.S.C. §§ 544 and 550
and Applicable State Law
(Against Mr. LeClair)**

408.    GDL incorporates by reference his responses to Paragraphs 1-407 as his response to Paragraph 408.

409.    Paragraph 409 states mere legal conclusions to which no response is required.

410.    Admitted.

411.    Paragraph 411 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

412.    Denied.

413.    Admitted.

414.    Denied.

415.    Denied.

416.    Denied.

417.    Paragraph 417 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

418.    Paragraph 418 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

419.    To the extent Paragraph 419 purports to interpret, paraphrase, and/or quote from one or more documents, such documents speak for themselves, and GDL denies all allegations to the contrary. To the extent a response is required, GDL admits that the Fifth Amendment to December 31, 2007 GDL-SLC contained mutual release provisions—GDL released LCR, and

29646/1/10190135v1

LCR released GDL—as well as mutual monetary consideration—LCR paid GDL's attorneys' fees

and GDL agreed to reduce his compensation. To the extent not expressly admitted, GDL denies

any and all remaining allegations in this paragraph.

420.    Paragraph 420 states a legal conclusion to which no response is required. To the

extent a response is required, GDL admits the  Fifth Amendment to December 31, 2007 GDL-SLC

was dated December 27, 2016, that he signed said document on December 28, 2016, and that such

dates do not occur between September 3, 2014 through September 3, 2019. To the extent not

expressly admitted, GDL denies any and all remaining allegations in this paragraph.

421.    Denied.

422.    Paragraph 422 states mere legal conclusions to which no response is required. To

the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

## COUNT XVI
**Avoidance and Recovery of Distributions of Contingent Income Made in Violation of Board
Resolutions and Compensation Policies as Actual Fraudulent Transfers Pursuant to 11
U.S.C. §§ 544, 550, and Va. Code § 55.1-400
(Against Mr. LeClair)**

423.    GDL incorporates by reference his responses to Paragraphs 1-422 as his response

to Paragraph 423.

424.    GDL admits only that LCR voted to award him certain year-end compensation in

2014, 2015, and 2016, but expressly denies such compensation was wrongfully paid. To the extent

not expressly admitted, GDL denies any and all remaining allegations in Paragraph 424.

425.    Denied.

426.    Denied.

427.    Denied.

29646/1/10190135v1

428.    Paragraph 428 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

429.    Admitted.

430.    Paragraph 430 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

## COUNT XVII
### Conversion for Contingent Income Payments
### (Against Mr. LeClair)

431.    GDL incorporates by reference his responses to Paragraphs 1-430 as his response to Paragraph 431.

432.    Denied.

433.    Denied.

434.    Denied.

435.    Denied.

## COUNT XVIII
### Unjust Enrichment for Contingent Income Payments
### (Against Mr. LeClair)

436.    GDL incorporates by reference his responses to Paragraphs 1-435 as his response to Paragraph 436.

437.    Denied.

438.    Denied.

439.    Denied.

440.    Denied.

441.    Denied.

442.    Denied.

## COUNT XIX
### Disallowance of Claims under 11 U.S.C. § 502(d)
### (Against Mr. LeClair)

443.    GDL incorporates by reference his responses to Paragraphs 1-442 as his response to Paragraph 443.

444.    Paragraph 444 states mere legal conclusions to which no response is required. To the extent a response is required, GDL admits only that he received some of the LeClair Transfers, as such term is defined in the First Amended Complaint (ECF No. 86). To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

445.    GDL admits only that the Trustee made a single demand to him on July 9, 2021, and that he has acted in accordance with the Court's FAO Procedures Order in response to such demand. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 445.

446.    Paragraph 446 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies the allegations in this paragraph.

447.    Paragraph 447 states mere legal conclusions to which no response is required. To the extent a response is required, GDL admits only that he has acted in accordance with the Court's FAO Procedures Order in response to the Trustee's July 9, 2021 demand. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

448.    Denied.

29646/1/10190135v1

**COUNT XX**
**Avoidance of Transfers Made In Connection with the Contribution Agreement**
**Under 11 U.S.C. §§ 548(A)(1)(A) and 550**
**(Against the ULX Entities)**

449.    GDL incorporates by reference his responses to Paragraphs 1-448 as his response to Paragraph 449.

450.    The allegations in Count XX are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 450 purports to interpret, paraphrase, and/or quote from one or more documents which speak for themselves, and GDL denies all allegations to the contrary. To the extent any further response is required, GDL admits only that UnitedLex, directly or indirectly, had a majority interest in ULXP. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

451.    The allegations in Count XX are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

452.    The allegations in Count XX are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 452 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL lacks sufficient information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

453.    The allegations in Count XX are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 453 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL lacks sufficient

information or belief to admit or deny the allegations in this paragraph and, therefore, denies the same.

454.    The allegations in Count XX are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 454 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL admits only that the Contribution Agreement was executed on April 4, 2018, and that such date occurs between September 3, 2017 through September 3, 2019. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

455.    The allegations in Count XX are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 455 and, therefore, denies the same.

456.    The allegations in Count XX are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 456 and, therefore, denies the same.

### <u>COUNT XXI</u>
**Avoidance of Fraudulent Transfers Under 11 U.S.C. §§ 548(A)(1)(B) and 550
(Against the ULX Entities)**

457.    GDL incorporates by reference his responses to Paragraphs 1-456 as his response to Paragraph 457.

458.    The allegations in Count XXI are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 458 purports to interpret, paraphrase, and/or quote from one or more documents which speak for themselves, and GDL denies all

allegations to the contrary. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

459.    The allegations in Count XXI are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 459 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL denies any and all remaining allegations in this paragraph.

460.    The allegations in Count XXI are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL denies any and all remaining allegations in Paragraph 460.

461.    The allegations in Count XXI are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL denies any and all remaining allegations in Paragraph 461.

462.    The allegations in Count XXI are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL denies any and all remaining allegations in Paragraph 462.

463.    The allegations in Count XXI are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 463 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL denies any and all remaining allegations in this paragraph.

464.    The allegations in Count XXI are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 454 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL admits only

29646/1/10190135v1

that the Contribution Agreement was executed on April 4, 2018, and that such date occurs between September 3, 2017 through September 3, 2019. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

465.    The allegations in Count XXI are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL denies any and all remaining allegations in Paragraph 465.

466.    The allegations in Count XXI are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL denies any and all remaining allegations in Paragraph 466.

**COUNT XXII**
**Avoidance of Fraudulent Transfers Under 11 U.S.C. § 544(b) and Applicable State Law**
**(Against the ULX Entities)**

467.    GDL incorporates by reference his responses to Paragraphs 1-466 as his response to Paragraph 467.

468.    The allegations in Count XXII are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 468 states mere legal conclusions to which no response is required.

469.    The allegations in Count XXII are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 469 purports to interpret, paraphrase, and/or quote from one or more documents which speak for themselves, and GDL denies all allegations to the contrary. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

29646/1/10190135v1

470.    The allegations in Count XXII are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 470 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL denies any and all remaining allegations in this paragraph.

471.    The allegations in Count XXII are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL denies any and all remaining allegations in Paragraph 471.

472.    The allegations in Count XXII are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

473.    The allegations in Count XXII are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 473 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL denies any and all remaining allegations in this paragraph.

474.    The allegations in Count XXII are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 470 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL admits only that the Contribution Agreement was executed on April 4, 2018, and that such date occurs between September 3, 2014 through September 3, 2019. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

29646/1/10190135v1

475.    The allegations in Count XXII are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL denies any and all remaining allegations in Paragraph 475.

476.    The allegations in Count XXII are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL denies any and all remaining allegations in Paragraph 476.

<u>**COUNT XXIII**</u>
**Misappropriation of Trade Secrets Under The Virginia Uniform Trade Secrets Act,**
**Va. Code §§ 59.1-336 et seq.**
**(Against the ULX Entities and Mr. LeClair)**

477.    GDL incorporates by reference his responses to Paragraphs 1-476 as his response to Paragraph 477.

478.    GDL admits only that the ULXP had access to certain of the Debtor's property pursuant to the "Contribution Agreement" dated April 4, 2018, and that ULXP was permitted access to certain information, at minimum, pursuant to Section 10.01(a) of the "Amended and Restated Limited Liability Company Agreement" dated April 4, 2018 and Paragraph 7 of the "Master Services Agreement" dated April 2, 2018. To the extent not expressly admitted, GDL denies any and all remaining allegations in Paragraph 478.

479.    Denied.

480.    Denied.

481.    Denied.

482.    Denied.

483.    Denied.

29646/1/10190135v1

## COUNT XXIV
### Breach of Fiduciary Duty
**(Against the ULX Entities)**

484.    GDL incorporates by reference his responses to Paragraphs 1-483 as his response to Paragraph 484.

485.    The allegations in Count XXIV are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 485 and, therefore, denies the same.

486.    The allegations in Count XXIV are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 486 and, therefore, denies the same.

487.    The allegations in Count XXIV are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 487 and, therefore, denies the same.

488.    The allegations in Count XXIV are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 488 and, therefore, denies the same.

## COUNT XXV
### Accounting
**(Against the ULX Entities)**

489.    GDL incorporates by reference his responses to Paragraphs 1-488 as his response to Paragraph 489.

29646/1/10190135v1

490.     The allegations in Count XXV are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 490 and, therefore, denies the same.

491.     The allegations in Count XXV are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 491 and, therefore, denies the same.

492.     The allegations in Count XXV are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 492 and, therefore, denies the same.

**<u>COUNT XXVI</u>**
**Breach Of Fiduciary Duty**
**(Against Mr. LeClair)**

493.     GDL incorporates by reference his responses to Paragraphs 1-492 as his response to Paragraph 493.

494.     Paragraph 494 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL admits only that the Chair of the Debtor owed it a fiduciary duty. To the extent not expressly admitted, GDL denies any and all remaining allegations in this paragraph.

495.     Denied.

496.     Denied.

497.     Denied.

Page 87 of 111

**COUNT XXVII**
**Statutory Conspiracy, Va. Code § 18.2-499, *et seq.***
**(Against the ULX Entities)**

498.    GDL incorporates by reference his responses to Paragraphs 1-497 as his response

to Paragraph 498.

499.    The allegations in Count XXVII are not directed at GDL and, therefore, no response

is required. To the extent a response is required, GDL states that he co-founded LCR in 1988, that

he served as Chair/CEO until June 30, 2011 (with a gap of approximately 18 months in or about

2003), that he served as Chair until December 31, 2015, that he served on the Board until January

31, 2016, and, therefore, GDL was not an officer or director of LCR during the time periods

relevant to this Count. Accordingly, GDL lacks sufficient information or belief to admit or deny

the allegations in Paragraph 499 and, therefore, denies the same.

500.    The allegations in Count XXVII are not directed at GDL and, therefore, no response

is required. To the extent a response is required, Paragraph 500 states mere legal conclusions to

which no response is required. To the extent any further response is required, GDL states that he

co-founded LCR in 1988, that he served as Chair/CEO until June 30, 2011 (with a gap of

approximately 18 months in or about 2003), that he served as Chair until December 31, 2015, that

he served on the Board until January 31, 2016, and, therefore, GDL was not an officer or director

of LCR during the time periods relevant to this Count. Accordingly, GDL lacks sufficient

information or belief to admit or deny the allegations in Paragraph 500 and, therefore, denies the

same.

501.    The allegations in Count XXVII are not directed at GDL and, therefore, no response

is required. To the extent a response is required, Paragraph 501 states mere legal conclusions to

which no response is required. To the extent any further response is required, GDL states that he co-founded LCR in 1988, that he served as Chair/CEO until June 30, 2011 (with a gap of approximately 18 months in or about 2003), that he served as Chair until December 31, 2015, that he served on the Board until January 31, 2016, and, therefore, GDL was not an officer or director of LCR during the time periods relevant to this Count. Accordingly, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 501 and, therefore, denies the same.

502.    The allegations in Count XXVII are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL states that he co-founded LCR in 1988, that he served as Chair/CEO until June 30, 2011 (with a gap of approximately 18 months in or about 2003), that he served as Chair until December 31, 2015, that he served on the Board until January 31, 2016, and, therefore, GDL was not an officer or director of LCR during the time periods relevant to this Count. Accordingly, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 502 and, therefore, denies the same.

503.    The allegations in Count XXVII are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL states that he co-founded LCR in 1988, that he served as Chair/CEO until June 30, 2011 (with a gap of approximately 18 months in or about 2003), that he served as Chair until December 31, 2015, that he served on the Board until January 31, 2016, and, therefore, GDL was not an officer or director of LCR during the time periods relevant to this Count. Accordingly, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 503 and, therefore, denies the same.

504.    The allegations in Count XXVII are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL states that he co-founded LCR in 1988, that he served as Chair/CEO until June 30, 2011 (with a gap of approximately 18 months in or about 2003), that he served as Chair until December 31, 2015, that he served on the Board until January 31, 2016, and, therefore, GDL was not an officer or director of LCR during the time periods relevant to this Count. Accordingly, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 504 and, therefore, denies the same.

505.    The allegations in Count XXVII are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 505 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL denies any and all remaining allegations in this paragraph.

506.    The allegations in Count XXVII are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 506 and, therefore, denies the same.

507.    The allegations in Count XXVII are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 470 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 507 and, therefore, denies the same.

508.    The allegations in Count XXVII are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 470 states mere legal conclusions to which no response is required. To the extent any further response is required, GDL lacks sufficient

information or belief to admit or deny the allegations in Paragraph 508 and, therefore, denies the same.

**COUNT XXVIII**
**Common Law Conspiracy**
**(Against the ULX Entities)**

509.    GDL incorporates by reference his responses to Paragraphs 1-508 as his response to Paragraph 509.

510.    The allegations in Count XXVIII are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL states that he co-founded LCR in 1988, that he served as Chair/CEO until June 30, 2011 (with a gap of approximately 18 months in or about 2003), that he served as Chair until December 31, 2015, that he served on the Board until January 31, 2016, and, therefore, GDL was not an officer or director of LCR during the time periods relevant to this Count. Accordingly, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 510 and, therefore, denies the same.

511.    The allegations in Count XXVIII are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL states that he co-founded LCR in 1988, that he served as Chair/CEO until June 30, 2011 (with a gap of approximately 18 months in or about 2003), that he served as Chair until December 31, 2015, that he served on the Board until January 31, 2016, and, therefore, GDL was not an officer or director of LCR during the time periods relevant to this Count. Accordingly, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 511 and, therefore, denies the same.

512.    The allegations in Count XXVIII are not directed at GDL and, therefore, no response is required. To the extent a response is required, Paragraph 512 states mere legal

conclusions to which no response is required. To the extent any further response is required, GDL denies any and all remaining allegations in this paragraph.

513.     The allegations in Count XXVIII are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL denies any and all remaining allegations in Paragraph 513.

514.     The allegations in Count XXVIII are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL denies any and all remaining allegations in Paragraph 514.

## COUNT XXIX
### Statutory Conspiracy, Va. Code § 18.2-499, *et seq.*
### (Against the ULX Entities and Mr. LeClair)

515.     Denied.

516.     Paragraph 516 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

517.     Paragraph 517 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

518.     Paragraph 518 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

519.     Denied.

520.     Denied.

521.     Denied.

522.     Denied.

523.     Denied.

29646/1/10190135v1

524.    Paragraph 524 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

525.    Denied.

526.    Denied.

## COUNT XXX
### Common Law Conspiracy
### (Against the ULX Entities and Mr. LeClair)

527.    GDL incorporates by reference his responses to Paragraphs 1-526 as his response to Paragraph 527.

528.    Paragraph 528 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

529.    Paragraph 529 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

530.    Paragraph 530 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

531.    Denied.

532.    Denied.

## COUNT XXXI
### Equitable Subordination Under 11 USC § 510(c)
### (Against All Defendants)

533.    GDL incorporates by reference his responses to Paragraphs 1-532 as his response to Paragraph 533.

534.    Denied.

535.    Denied.

536.    Paragraph 536 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

537.    Paragraph 537 states mere legal conclusions to which no response is required. To the extent a response is required, GDL denies any and all remaining allegations in this paragraph.

538.    Denied.

## COUNT XXXII
### Conversion
### (Against UnitedLex and ULXP)

539.    GDL incorporates by reference his responses to Paragraphs 1-538 as his response to Paragraph 539.

540.    The allegations in Count XXXII are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 540 and, therefore, denies the same.

541.    The allegations in Count XXXII are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 541 and, therefore, denies the same.

542.    The allegations in Count XXXII are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 542 and, therefore, denies the same.

543.    The allegations in Count XXXII are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 543 and, therefore, denies the same.

29646/1/10190135v1

**COUNT XXXIII**
**Unjust Enrichment And Disgorgement Of Expense Transfers**
**(Against the ULX Entities)**

544.    GDL incorporates by reference his responses to Paragraphs 1-543 as his response

to Paragraph 544.

545.    The allegations in Count XXXIII are not directed at GDL and, therefore, no

response is required. To the extent a response is required, GDL lacks sufficient information or

belief to admit or deny the allegations in Paragraph 545 and, therefore, denies the same.

546.    The allegations in Count XXXIII are not directed at GDL and, therefore, no

response is required. To the extent a response is required, GDL lacks sufficient information or

belief to admit or deny the allegations in Paragraph 546 and, therefore, denies the same.

547.    The allegations in Count XXXIII are not directed at GDL and, therefore, no

response is required. To the extent a response is required, GDL lacks sufficient information or

belief to admit or deny the allegations in Paragraph 547 and, therefore, denies the same.

548.    The allegations in Count XXXIII are not directed at GDL and, therefore, no

response is required. To the extent a response is required, GDL lacks sufficient information or

belief to admit or deny the allegations in Paragraph 548 and, therefore, denies the same.

**COUNT XXXIV**
**Alter Ego Liability**
**(Against UnitedLex and ULX Manager)**

549.    GDL incorporates by reference his responses to Paragraphs 1-548 as his response

to Paragraph 549.

550.    The allegations in Count XXXIV are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 550 and, therefore, denies the same.

551.    The allegations in Count XXXIV are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 551 and, therefore, denies the same.

552.    The allegations in Count XXXIV are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 552 and, therefore, denies the same.

553.    The allegations in Count XXXIV are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 553 and, therefore, denies the same.

554.    The allegations in Count XXXIV are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 554 and, therefore, denies the same.

555.    The allegations in Count XXXIV are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 555 and, therefore, denies the same.

556.    The allegations in Count XXXIV are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 556 and, therefore, denies the same.

29646/1/10190135v1

557.    The allegations in Count XXXIV are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 557 and, therefore, denies the same.

558.    The allegations in Count XXXIV are not directed at GDL and, therefore, no response is required. To the extent a response is required, GDL lacks sufficient information or belief to admit or deny the allegations in Paragraph 558 and, therefore, denies the same.

559.    GDL denies any and all allegations in the First Amended Complaint that are not expressly admitted herein.

560.    To the extent any headings or titles in the First Amended Complaint are considered allegations, GDL deny any and all such allegations.

561.    GDL denies that the Trustee is entitled to any recovery or relief whatsoever.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The First Amended Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

The Trustee's claims are barred, in whole or in part, by the applicable statute of limitations.

### Third Affirmative Defense

The Trustee's claims are barred, in whole or in part, by the mutual release provisions contained in GDL's Fifth Amendment to December 2007 GDL-SLC, executed December 28, 2016.

29646/1/10190135v1

### Fourth Affirmative Defense

Upon information and belief, GDL affirmatively alleges that the Debtor was solvent at the time the alleged transfers set forth in the First Amended Complaint were made.

### Fifth Affirmative Defense

The Trustee's claims are barred, in whole or in part, by the defenses set forth in 11 U.S.C. § 547(c)(1) insofar as each such transfer was made to be a contemporaneous exchange for new value given to the Debtor.

### Sixth Affirmative Defense

The Trustee's claims are barred, in whole or in part, by the defenses set forth in 11 U.S.C. § 547(c)(2) insofar as each such transfer was made in the ordinary course of business or according to ordinary business terms.

### Seventh Affirmative Defense

The Trustee's claims are barred, in whole or in part, by the defenses set forth in 11 U.S.C. § 547(c)(4) insofar as after each such transfer GDL gave new value to or for the benefit of the Debtor that was not secured by an otherwise unavoidable security interest and on account of which new value the Debtor did not make an otherwise unavoidable transfer to or for the benefit of GDL.

### Eighth Affirmative Defense

The Trustee's claims are barred, in whole or in part, by the defense set forth in 11 U.S.C. § 548(c), including, but not limited to, that value was given in exchange for such transfers.

### Ninth Affirmative Defense

The Trustee's claims are barred, in whole or in part, to the extent the alleged transfers were not of an interest of the Debtor in property.

29646/1/10190135v1

### Tenth Affirmative Defense

The Trustee's claims are barred, in whole or in part, by the doctrines of *in pari delicto*, unclean hands, and/or estoppel. GDL vehemently denies that any conspiracy or conspiracies took place. However, to the extent the Trustee alleges GDL took part in any such conspiracy or conspiracies, GDL and/or LCR's officers and directors did so as employee(s) of the Debtor acting within the course and scope of their employment and, therefore, the Debtor itself was party to the conspiracy. The Trustee knowingly, intentionally, and improperly omits the Debtor as a co-conspirator in a futile attempt to avoid a clear defense to her claims.

### Eleventh Affirmative Defense

The Trustee's conspiracy claims are barred, in whole or in part, by the intra-corporate immunity doctrine. GDL and/or LCR's officers and directors did so as employee(s) of the Debtor acting within the course and scope of their employment. Therefore, GDL was not a person separate and distinct from his employer, the Debtor.

### Twelfth Affirmative Defense

The Trustee's claims are barred, in whole or in part, because at all relevant times, GDL acted in good faith, complied with all relevant legal duties, did not engage in self-dealing, and acted with honest intent and ordinary prudence.

### Thirteenth Affirmative Defense

The Trustee's claims are barred, in whole or in part, because at all relevant times, GDL was not an insider (statutory or non-statutory) on or after January 31, 2016.

29646/1/10190135v1

### Fourteenth Affirmative Defense

The Trustee's claims are barred, in whole or in part, because all alleged transfers were made in the ordinary course of business.

### Fifteenth Affirmative Defense

The Trustee's alleged damages are speculative and were not foreseeable.

### Sixteenth Affirmative Defense

GDL is entitled to setoff for the amounts set forth in GDL's Proof of Claim.

### Seventeenth Affirmative Defense

The Trustee's claims are barred, in whole or in part, because the Debtor's's officers and/or directors acted in accordance with their reasonable business judgment.

## RESERVATION OF RIGHTS

GDL reserves all rights to assert additional defenses in the event that discovery indicates that such defenses would be appropriate.  In addition, Pursuant to Fed. R. Bankr. P. 7012(b), GDL respectfully states that he does not consent to the entry of final orders or judgment by the Bankruptcy Court.

## JURY DEMAND

GDL reserves the right to move to withdraw the reference with respect to the First Amended Complaint. Notwithstanding the foregoing, GDL respectfully requests a jury trial on all issues so triable.

WHEREFORE, the First Amended Complaint having been Answered, Defendant Gary D. LeClair respectfully requests the Court dismiss the First Amended Complaint with prejudice, and grant such other relief as may be just and proper.

## COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 13, made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7013, GDL, by counsel, brings these counterclaims against the Trustee and in support thereof states as follows:

A.    **The Parties.**

1.    On September 3, 2019, the Debtor was a Virginia professional limited liability company established pursuant to the Virginia Limited Liability Company Act, Va. Code § 13.1-1000, *et seq*.

B.    **Jurisdiction and Venue.**

2.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), as this counterclaim relates to the Debtor's case under title 11 of the United States Code.

3.    Venue is proper pursuant to 28 U.S.C. § 1409(a), as this counterclaim relates to the Debtor's case under title 11 of the United States Code.

C.    **The Debtor's Operating Agreement.**

4.    On February 27, 2018, the Debtor's members entered into an operating agreement titled "Fourth Amended and Restated Shareholders Agreement of LeClairRyan, A Professional Corporation, and Operating Agreement of LeClairRyan PLLC" (the "Operating Agreement"). A copy of the Operating Agreement was previously filed on this Court's docket at ECF No. 105-3 and is incorporated herein by reference.

5.    On March 4, 2018, the Debtor became a professional limited liability company ("LLC") organized under the laws of the Commonwealth of Virginia.

29646/1/10190135v1

6.      From time to time, the Debtor admitted attorneys as new members of the firm. Under Section 5.01 of the Debtor's Operating Agreement, an attorney became a member of the Debtor upon execution of a joinder agreement and purchase of shares of the Debtor's common stock. *See* ECF No. 105-3, at 50. An owner of the Debtor's common stock was then able to purchase shares of the Debtor's preferred stock.

7.      Section 4.02 of the Debtor's Operating Agreement provides: "[o]nly (i) individuals duly licensed and legally authorized to render professional services in the practice of law, and who are employed by the Company or any direct or indirect subsidiary thereof, or (ii) professional business entities that are duly licensed or legally authorized to render professional services in the practice of law, may hold Equity of the Company." *See* ECF No. 105-3, at 49.

8.      The Debtor's members also left the firm at various points. Section 2.02(a) of the Debtor's Operating Agreement provides that a member became a "Transferring Member" upon occurrence of any of the following events: (i) "the termination of a Member's employment with the [Debtor] whether because of death, permanent disability, retirement, [or] Qualified Retirement;" (ii) "termination by the [Debtor] with or without Cause;" (iii) termination "by the Member with or without Good Reason;" or (iv) "the Member's change of attorney classification from Member to Senior Counsel." *See* ECF No. 105-3, at 25.

9.      Section 2.02(a)(i) of the Debtor's Operating Agreement defines "Termination Date" as "the effective date of the termination of the Transferring Member's employment with the Company." *See* ECF No. 105-3, at 25.

10.     Section 2.02(a) of the Debtor's Operating Agreement provides that the Debtor was required to purchase from the Transferring Member all shares of common and preferred stock held

by that member "immediately prior to the termination of his or her employment or change in attorney classification," and the Transferring Member was required to sell the same to the Debtor. *See* ECF No. 105-3, at 25.

11.    Section 2.02(g) of the Debtor's Operating Agreement provides that all shares of common and preferred stock held by the Transferring Member "shall be deemed sold and transferred to the Company as of the Termination Date, irrespective of whether the [member] actually delivers the certificate(s) evidencing the Purchased Stock or any other transfer documents requested by the [Debtor]." *See* ECF No. 105-3, at 30.

12.    Section 5.03 of the Debtor's Operating Agreement provides: "As soon as any Person who is a member ceases to hold any Shares, such Person shall no longer be a Member." *See* ECF No. 105-3, at 50.

**D.    The Debtor's Course of Dealing.**

13.    From the date of the Debtor's conversion to a PLLC on March 4, 2018 through July 29, 2019, the Debtor acted consistent with the provisions of the Operating Agreement with respect to its members who terminated their employment.

14.    From the date of the Debtor's conversion to a PLLC on March 4, 2018 through midnight on December 31, 2018, one or more of the Debtor's members terminated their employment with LCR.

15.    The Debtor did not treat members who terminated, or otherwise ended, their employment with LCR between March 4, 2018 through midnight on December 31, 2018 as LLC members at the end of 2018.

29646/1/10190135v1

16.    From January 1, 2019 through July 29, 2019, one or more of the Debtor's members terminated their employment with LCR.

17.    The Debtor did not treat members who terminated, or otherwise ended, their employment with LCR between January 1, 2019 through July 29, 2019 as LLC members at the end of 2019.

**E.    GDL's ownership of common and preferred shares.**

18.    GDL founded the Debtor in 1988. As a shareholder, GDL owned shares in the Debtor's common stock.

19.    In 2010, the Debtor issued shares of preferred stock which were available for purchase by any holder of the Debtor's common stock.

20.    GDL purchased shares of the Debtor's preferred stock at various points beginning in 2010.

21.    As of December 31, 2018, GDL owned a membership interest in the Debtor.

22.    GDL did not purchase any shares of the Debtor's common or preferred stock in 2019.

**F.    GDL's employment ended on July 31, 2019.**

23.    On July 26, 2019, LCR's CEO emailed all members stating "this will confirm that the 30 day notice provision has been waived for Members." *See* GDL_0005651. Under the Operating Agreement's definition of "Withdrawing Member" in Section 1.01(vvvv), "a Member who voluntarily terminates his or her employment with the Company" was required to "giv[e] the Company at least thirty (30) days' prior written notice of such termination." *See* GDL_0004202. Section 2.02(h) of the Debtor's Operating Agreement provides "[t]he Notice Requirement may be

waived or the Notice Period shortened in the sole discretion of the Chief Executive Officer." *See* GDL_0004209. LCR's CEO's July 26, 2019 email to LCR's members waived the thirty (30) day notice period pursuant to Section 2.02(h) of Debtor's Operating Agreement.

24.     On or about July 26, 2019, GDL submitted his resignation notice from the Debtor, which stated as follows:

> Colleagues,
>
> I hereby withdraw as a member of LeClairRyan PLLC, effective immediately, and resign my employment effective as of 11:59 PM on August 4, 2019. I have been informed that the Firm has waived the 30-day Notice period set forth in Section 2.02(h) of the Operating Agreement. I will be joining Williams Mullen.
>
> Gary

*See* GDL_0005650.

25.     The Debtor accepted GDL's resignation.

26.     GDL's employment with the Debtor was terminated on July 31, 2019, and he began working at Williams Mullen the following day. By email dated July 31, 2019, GDL confirmed to the Debtor that his "membership in the firm will end upon my termination of employment," and asked that LCR deliver to him a promissory note in consideration for his preferred interests. *See* GDL_0005664.

27.     The Debtor accepted GDL's termination.

## COUNT ONE
### Declaratory Judgment
*Lynn L. Tavenner, as Chapter 7 Trustee*

28.     The preceding paragraphs are incorporated as if fully set forth herein.

29.     The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading,

29646/1/10190135v1

may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

30.    There is an actual, ripe controversy between the Trustee and GDL over whether he remained a member of the Debtor after July 31, 2019.

31.    On July 31, 2019, GDL's employment with the Debtor was terminated.

32.    Pursuant to Section 2.02(a) of the Operating Agreement, GDL became a "Transferring Member" on July 31, 2019.

33.    GDL's "Termination Date" was July 31, 2019.

34.    Section 2.02(a) of the Operating Agreement required the Debtor to purchase, and GDL to sell, all outstanding shares of Debtor's common and preferred stock owned by GDL immediately prior to the termination of his employment.

35.    Pursuant to Section 2.02(g) of the Operating Agreement, all outstanding shares of common and preferred stock in the Debtor owned by GDL were deemed sold and transferred to the Debtor effective as of GDL's Termination Date, July 31, 2019.

36.    Immediately following this sale and transfer, GDL ceased to hold any shares in the Debtor.

37.    Immediately following this sale and transfer, GDL was no longer a member of the Debtor pursuant to Section 5.03 of the Operating Agreement.

38.    The Debtor nevertheless has asserted and continues to assert that GDL remained a member of the Debtor following his termination on July 31, 2019. For example, the Debtor asserts that GDL remained a member of the Debtor as of September 3, 2019, and as of that date owned

29646/1/10190135v1

2.4% of the Debtor's common shares and 54.2% of the Debtor's preferred shares. *See In re LeClairRyan, PLLC*, Case No. 19-34574, ECF No. 209, at 27.

39.     GDL is entitled to an order declaring that he was no longer a member of the Debtor effective upon his termination on July 31, 2019.

## ALTERNATIVE COUNT TWO
### Declaratory Judgment
*Lynn L. Tavenner, as Chapter 7 Trustee*

40.     The preceding Counterclaim Paragraphs 1-38 are incorporated as if fully set forth herein.

41.     To the extent the Court does not enter an order declaring that GDL was no longer a member of the Debtor effective upon his termination on July 31, 2019, GDL seeks alternative relief under Count Two.

42.     Section 7.01 of the Debtor's Operating Agreement provides that a member is allocated a share of the Debtor's net income or net loss "in the proportion such Member's distributable income under ARTICLE VIII bears to the aggregate distributable income of all Members."

43.     Section 8.02(a) of the Debtor's Operating Agreement provides:

> "Distributable Income" means, for any period, the excess of (i) the gross receipts (whether or not considered taxable income, including borrowings and capital contributions) of the Company from all sources and amounts withdrawn from reserves, over (ii) disbursements of cash by the Company, including without limitation (A) the payment of operating expenses and debt service on loans, (B) capital expenditures, and (C) amounts deposited in reserves, including without limitation for the purpose of making distributions pursuant to Section 8.03 or making payments required under ARTICLE II, in each case as determined by the Board in its sole discretion.

44.     A member's share of the Debtor's distributable income under Section 7.01 and

Section 8.02(a) of the Operating Agreement is reported to the Internal Revenue Service under Part

II, Section J of the member's Schedule K-1 from the Debtor.

45.     The Trustee or her agents prepared the Debtor's federal and state tax returns for the

2019 tax year as well as the 2019 Schedule K-1s issued by the Debtor to its members.

46.     Upon information and belief, the Trustee calculated a member's share of profit,

loss, and capital, as reported under Part II, Section J of the 2019 Schedule K-1s from the Debtor

to its members, according to the member's ownership of the Debtor's shares (including common

shares, Series A preferred shares, and Series B preferred shares).

47.     Upon information and belief, the Trustee did not calculate a member's share of

profit, loss, and capital, as reported under Part II, Section J of the 2019 Schedule K-1s from the

Debtor to its members, in accordance with Section 7.01 and Section 8.02(a) of the Debtor's

Operating Agreement.

48.     The Trustee or her agents prepared the Debtor's federal and state tax returns for the

2020 tax year as well as the 2020 Schedule K-1s issued by the Debtor to its members.

49.     Upon information and belief, the Trustee calculated a member's share of profit,

loss, and capital, as reported under Part II, Section J of the 2020 Schedule K-1s from the Debtor

to its members, according to the member's ownership of the Debtor's shares (including common

shares, Series A preferred shares, and Series B preferred shares).

50.     Upon information and belief, the Trustee did not calculate a member's share of

profit, loss, and capital, as reported under Part II, Section J of the 2020 Schedule K-1s from the

29646/1/10190135v1

Debtor to its members, in accordance with Section 7.01 and Section 8.02(a) of the Debtor's Operating Agreement.

51.     As alternative to Count One, GDL is entitled to an order declaring his share of the profit, loss, and capital in accordance with Section 7.01 and Section 8.02(a) of the Debtor's Operating Agreement.

WHEREFORE, GDL requests that the Court enter judgment in his favor, enter an order declaring that GDL was not a member of the Debtor following his termination on July 31, 2019, or, in the alternative, enter an order declaring GDL's share of the Debtor's profits, losses, and capital for 2019 and 2020 in accordance with Section 7.01 and Section 8.02(a) of the Debtor's Operating Agreement, and grant such further relief that the Court deems necessary and proper.

Respectfully submitted this 12th day of November, 2021.

GARY D. LECLAIR

/s/ Andrew M. Bowman

J. Scott Sexton (VSB No. 29284)
Andrew M. Bowman (VSB No. 86754)
GENTRY LOCKE
P.O. Box 40013
Roanoke, Virginia 24022
Telephone:  540.983.9300
Fax:        540.983.9400
Email:      sexton@gentrylocke.com
            bowman@gentrylocke.com

William A. Broscious (VSB No. 27436)
William A. Broscious, Esq., PLC
P.O. Box 71180
Henrico, Virginia 23255
Telephone: 804.533.2734

Email:    wbroscious@broscrouslaw.com

*Counsel for Gary D. LeClair*

29646/1/10190135v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of November, 2021, I electronically filed the

foregoing with the Clerk using the CM/ECF system which will send notification of such filing to

all counsel of record.

/s/ Andrew M. Bowman

29646/1/10190135v1