# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Richmond Division)

| | |
|---|---|
| In re:<br><br>**LECLAIRRYAN PLLC,**<br><br>　　　　Debtor. | **Chapter 7**<br><br>**Case No. 19-34574 (KRH)** |
| **Lynn L. Tavenner, as Chapter 7 Trustee,**<br><br>　　　　**Plaintiff,**<br><br>**vs.**<br><br>**ULX Partners, LLC, UnitedLex Corporation, and ULX Manager, LLC**<br><br>　　　　**Defendants.** | **Adv. Proc. No. 20-03142-KRH** |

## ULX PARTNERS, LLC'S, UNITEDLEX CORPORATION'S, AND ULX MANAGER, LLC'S OPPOSITION TO THE TRUSTEE'S MOTION FOR LEAVE TO AMEND THE FIRST AMENDED COMPLAINT

Defendants ULX Partners, LLC ("**ULXP**"), UnitedLex Corporation ("**UnitedLex**"), and ULX Manager, LLC ("**ULXM**") (collectively, the "**ULX Entities**" or "**Defendants**"), by counsel, respectfully submit this Opposition to the Trustee's Motion for Leave to Amend the First Amended Complaint (the "**Motion**"), and state as follows:

## I.    INTRODUCTION

Lynn A. Tavenner, in her capacity as Chapter 7 Trustee (the "**Trustee**") should not be given leave to file the proposed Second Amended Complaint (the "**SAC**") at this late stage. The Trustee's Motion is, quite simply, untimely and prejudicial. If granted, Defendants will need to reopen discovery to defend these new, broad claims adequately. Depriving Defendants of additional

discovery if the Motion is granted will substantially prejudice Defendants.  Accordingly, this litigation

will require a continuance of the trial date.  Further, the Trustee's proposed amendment is futile.

Despite simultaneously claiming that the theory supporting her proposed new cause of

action for fraudulent inducement was contained in the First Amended Complaint (filed over six

months ago) and that she promptly moved to amend, the Trustee's Motion comes after the close

of discovery, after the January 27, 2022 omnibus hearing during which she made no mention of

any possible amendment, and after Defendants moved for Summary Judgment.[1]  Although the

Trustee alleges that evidence regarding this new allegation arose as a result of testimony received

in depositions, as described in greater detail below, the straightforward testimony that came during

the course of 13 depositions was that there was no fraudulent inducement and that the entire deal

was set forth in the joint venture agreements.[2]  Assuming that the Trustee's amended claim is made

in good faith – a generous assumption – the Defendants are entitled to ask who is making these

assertions, and on what basis.  That is why in the unlikely event of an amendment, discovery must

be reopened in the form of additional depositions and very likely additional written discovery,

especially if it is determined that responsive documents are needed from custodians which were

not included on the parties' previously agreed-upon email custodian list.  With discovery currently

closed, however, and the parties working diligently to prepare for the fast-approaching trial, and

because the Court has indicated that continuing the trial date is not an option, the Court should

---

[1] The Trustee's counsel first informed Defendants' counsel of the Trustee's intent to file the Motion after-
hours on January 31, 2022.  She did not provide a draft copy of the proposed SAC until after-hours on
February 2, 2022.  Although the Defendants reserve all rights and do object to the proposed amended as
untimely, the parties agreed on February 3, 2022 that Defendants would not object to the additional delay
between February 3, 2022 and the hearing on this Motion (March 8, 2022) as being prejudicial as the parties
agreed to table the Motion pending the result of their mediation.

[2] *See* reference to Exhibits E-I on page 8, *infra*.

deny the Motion.  To fail to reopen discovery and continue the trial will otherwise severely, and unnecessarily, prejudice Defendants.

The proposed amendment is also futile, as the alleged "misrepresentations" within the SAC do not relate to present or pre-existing facts.  Rather, the alleged "misrepresentations" amount to statements of opinion and speculation concerning the future business opportunities which the Debtor would receive following the creation of the joint venture. Further, the SAC attempts to allege that Defendants made certain promises which they did not intend to perform. However, despite having approximately a year and a half to review her documents and engage in discovery, the Trustee does not identify where any of these alleged promises resulted in contractual provisions as the law requires to state a claim for fraudulent inducement.  Especially in light of the sophistication of the parties and the various merger clauses in the JV Agreements, the SAC does not state a plausible cause of action for fraudulent inducement.

Respectfully, it seems to be no accident that the proposed amendment comes after the summary judgment deadline where the Trustee has now had to concede that a number of her damages theories, which Defendants have contested from the outset, have failed, and that a number of others will fail and are hanging by a thread.  Thus, the Trustee needs new alleged damages theories to elevate her position and to try to leverage and disparage Defendants.  The Court should reject this effort and for the reasons stated herein and at argument, leave to file the SAC should be denied.

## II.    RELEVANT PROCEDURAL BACKGROUND

This matter has been pending for approximately a year and a half as the Trustee filed her initial complaint against ULXP and UnitedLex on October 26, 2020. Dkt. No. 4.  On August 25, 2021, after being given leave by the Court to do so, the Trustee filed the First Amended Complaint, (the "**FAC**") adding ULX Manager and Gary LeClair as defendants and containing 34 causes of

action. Dkt. No. 86.  The ULX Entities moved to dismiss the FAC, and in her opposition (filed on

October 12, 2021) to their arguments that the Trustee's claim for <u>misappropriation of trade secrets</u>

should be dismissed, the Trustee vaguely argued that such claim was partially based on a theory

that the Contribution Agreement was fraudulently induced. *See* Dkt. No. 106.  The Trustee did not,

however, include a fraudulent inducement count regarding the JV transaction in her FAC. Yet now

in her Motion the Trustee asserts that "[o]ne alleged unlawful basis for the conspiracy counts was

the ULX Entities' fraudulent inducement to enter into the joint venture agreement." Mot. ¶ 9.  But

at most, she only alleged in the FAC that one of the "unlawful, illegal, and/or oppressive acts"

underlying the alleged conspiracy between Mr. LeClair and the ULX Entities was

"misrepresenting to one or more of the LCR Officer and Directors the potential benefits of the

ULXP joint venture." FAC ¶ 529. The Trustee did <u>not</u>, however, allege that such

misrepresentations fraudulently induced the complete JV transaction. *Id*.  In short, the Trustee now

seeks to introduce a significant and very broad new theory into the case.

Following extensive written and deposition discovery into the causes of action alleged in

the FAC, discovery closed on January 21, 2022.  Days later, on January 27, 2022, the parties

attended an omnibus status conference to discuss various outstanding issues. At such conference,

the Trustee did not alert the Court or the Defendants of any issues whatsoever concerning the

Trustee's intention or need to seek leave to amend the FAC, and indicated instead that the parties

were proceeding with summary judgment briefing and that they were working towards the April

18th trial date.  *See* **Ex. A**, Jan. 27, 2022 Transcript at 9:23-10:19.  The next day, on January 28th,

the Defendants moved for summary judgment. Dkt. No. 133 (the "**MSJ**").  Three days after the

MSJ was filed, and presumably after reviewing the same, the Trustee's counsel first reached out

to Defendants' counsel to raise the possibility of seeking leave to amend the FAC.  A copy of the

Trustee's counsel's January 31, 2022 email is attached as **Exhibit B**. A copy of the proposed SAC was not provided to Defendants for review until February 2, 2022.

Through the Motion, the Trustee seeks to add an entirely new and extremely broad cause of action for Fraudulent Inducement against UnitedLex and ULXM (proposed Count XXXV), add various new factual allegations, and substantively revise existing allegations.[3]  In the SAC, the Trustee seeks to state a cause of action for fraudulent inducement that Debtor generally entered into <u>all</u> of the JV Agreements based on alleged misrepresentations relating to the future business opportunities the Debtor would receive.[4] *See* SAC ¶¶ 452-456.  The Trustee raises the specter of significant damages but provides no facts, instead noting that such damages will be proved at trial. *Id.* ¶ 474.

## III.   STANDARD OF REVIEW

The decision to grant or deny a motion for leave to amend is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). While Rule 15(a) provides that leave to amend shall be freely given when justice so requires, leave "should be denied 'when the amendment would be prejudicial to the opposing party, there has been bad faith on the moving party, or the amendment would be futile.'" *Smithfield Foods, Inc. v. United Food & Commer. Workers Int'l Union*, 254 F.R.D. 274, 277-78 (E.D. Va. 2008) (quoting

---

[3] A redline comparison of the FAC and the proposed SAC is attached as **Exhibit C**.

[4] 

*Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). Further, "amendments of pleadings are particularly inappropriate, <u>absent exceptional circumstances</u>, once discovery has closed." *Id.* (quoting *Remington Arms Co. v. Modern Muzzleloading, Inc.*, 1998 U.S. Dist. LEXIS 21526, at \*7-8 (M.D.N.C. Dec. 17, 1998)) (emphasis added). "When considering whether a movant has shown good cause for an untimely amendment, a court should primarily consider the movant's diligence." *Chrisley v. Dan Ryan Builders Mid-Atlantic, LLC*, Civil Action No. 5:18cv00056, 2020 U.S. Dist. LEXIS 38374, at \*5 (W.D. Va. Mar. 5, 2020) (quoting *Thorpe*, 2011 U.S. Dist. LEXIS 96755, 2011 WL 3820809, at \*2)) (additional citations omitted). The Trustee has not demonstrated the requisite exceptional circumstances – or diligence – to amend her complaint after discovery closed and after the Defendants filed their MSJ.

## IV.   ANALYSIS

### A.   Leave to Amend Should be Denied because Trustee's Undue Delay in Seeking Leave Will Prejudice Defendants and Require Additional Discovery.

There are no exceptional circumstances present in this case to allow amendment at this stage in the proceedings, and Defendants will be significantly prejudiced if the Trustee is permitted to file the proposed SAC.  Prejudice may be found "[i]f an amendment requires the opponent 'to engage in significant new preparation,' or results in 'added expense and the burden of a more complicated and lengthy trial,' prejudice may be found." *Smithfield Foods*, 254 F.R.D. 274, 278 (E.D. Va. 2008) (quoting *Smith v. Angelone*, 111 F.3d 1126, 1134 (4th Cir. 1997)). Further, "where an amendment is offered shortly before trial, 'prejudice can result where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party.'" *Id.* (quoting *Johnson*, 785 F.2d at 510). In determining whether an amendment would be prejudicial, courts consider the good faith of the moving party and the extent to which there has been undue delay in seeking amendment. *Id.*  Particularly when

a motion is made after the close of discovery and is based on information known during the discovery phase of the case, it is within the sound discretion of the Court to deny leave. *Id.* (citing *First Nat'l Bank v. Master Auto Service Corp.*, 693 F.2d 308, 314 (4th Cir. 1982)).  Here, the relevant considerations weigh strongly in favor of denying the Trustee's Motion.

First, the Trustee's request for leave to file the SAC was unduly delayed. The parties have engaged in extensive written discovery consisting of hundreds of thousands of exchanged documents, dozens of interrogatories, and dozens of hours of depositions. Discovery closed on January 21, 2022.  After the close of discovery, on January 27, 2022, the Parties appeared before the Court for an omnibus status conference, and the Trustee did not mention any desire to file a SAC to add a new cause of action against Defendants. *See* **Ex. A**, Jan. 27, 2022 Transcript.  It was not until <u>after</u> Defendants filed their Motion for Summary Judgment, and likely as a response to the MSJ, that the Trustee determined that the SAC would be her next tactical move.  *See Norris v. PNC Bank, N.A.*, No. ELH-20-3315, 2022 U.S. Dist. LEXIS 10527, at *16 n.5 (D. Md. Jan. 19, 2022) (noting that "District judges are sometimes skeptical of motions to amend offered after the filing of summary judgment motions, in part because of the possibility that a plaintiff may be attempting to refashion its case to stave off an adverse summary judgment ruling.") (citing *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999) (explaining that once a Rule 56 motion has been filed the court will "more carefully scrutinize a party's attempt to raise new theories of recovery by amendment") (additional citations omitted).

The Trustee seeks to excuse her delay by asserting, in part, that "recent deposition testimony has made clear that the proposed new claim is well-founded," and that her Motion is being made "at the earliest possible time given that depositions by key members of UnitedLex management and others were conducted within the final two weeks of fact discovery . . . ." (Mot.

at ¶¶ 2, 19).  Yet nowhere in the Motion does the Trustee identify any of the deposition testimony
or other purported evidence that apparently came to light recently and provide support for a new
claim.  Nor does the Trustee provide any explanation as to what information she learned after
August 2021 when she last amended her complaint that would justify further amendment.  During
December 2021 and January 2022, the Parties participated in 13 depositions, yet she does not
identify what testimony supposedly gave rise to her new cause of action against the Defendants.
The fact that such purported testimony is conspicuously absent from her Motion is not surprising
given the fact that the LeClairRyan leadership all testified that UnitedLex personnel did <u>not</u> make
misrepresentations to LCR, and that the JV Agreements contained all promises between
the Parties. *See* **Exs. E - I** (LeClair Depo. 206:22-207:1-4; 213:7-11; 299:14-300:1); (Zappia
Depo. 56:13-57:15); (Thompson Depo. 57:2-15; 116:14-117:2); (Gustafson Depo. 52:8-53:6;
70:11-16; 211:12-212:12);  (Lange  Depo.  66:7-22,  544:2 ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████     In light of such overwhelming evidence demonstrating that no such misrepresentations
were made, the Trustee should have to specifically identify the allegedly recent and new evidence
she relies upon to bring her motion at such an untimely hour.

Nor does the Trustee explain why she waited until the final two seeks of discovery to
depose UnitedLex's management rather than at any other time during the approximately 13 months

of discovery.[5]  In other words, the untimeliness of the Trustee's Motion is solely the result of the Trustee's own decisions and strategy.[6]

Second, Defendants will be prejudiced if the Trustee is permitted to file a Second Amended Complaint at this stage because the Trustee will have deprived Defendants of critical discovery. Defendants are entitled to discover the specific alleged misrepresentations, who made them, who they were made to, when they were made, and who relied upon them.  The proposed SAC lacks such specificity (despite discovery now being complete) and instead alleges generalities such ███

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████  SAC

¶ 185.  None of these, or the other "examples" in the SAC constitute actionable misrepresentations, and Defendants should be permitted to conduct discovery with respect to the precise misrepresentations at issue.  By way of example, early in this case the Parties agreed to a list of

---

[5] The Trustee's counsel emailed Defendants' counsel on December 22, 2021 indicating the Trustee's intention to depose Daniel Reed (CEO), Nick Hinton (CFO), and Gary Quinn (Treasurer).  Against the backdrop of a January 21, 2022 discovery deadline, the Trustee proposed at that time to depose those three witnesses on January 18, January 20, and January 11, respectively. A copy of counsel's December 22, 2021 email is attached as **Exhibit J**.  Similarly, on December 23, 2021, the Trustee's counsel emailed 30(b)(6) deposition notices for UnitedLex, ULXP, and ULXM to take place on January 12, 13, and 14, respectively. A copy of the Trustee's email and deposition notices are attached collectively as **Exhibit K**.  (The ultimate dates of the actual depositions varied somewhat after discussions among counsel).  Moreover, it is also worth noting that the Trustee informally interviewed Mr. Reed, Mr. Hinton, and Mr. Quinn in September 2020, and then deposes Mr. Reed and Mr. Hinton pursuant to Rule 2004 in September 2020 as well.  In short, the depositions of Mr. Reed and Mr. Hinton in January 2022 were not the first times the Trustee had the opportunity to depose UnitedLex leadership under oath.

[6] The Trustee's statement that she sought amendment at the "earliest possible time" is also contradicted by her own arguments within the Motion that the theories of fraudulent inducement were already present in the First Amended Complaint. Mot. at ¶ 19. If the Trustee knew enough facts for to allege a theory of fraudulent inducement in the First Amended Complaint, she should have been able to allege a cause of action on the same.

email custodians at LCR whose emails would be searched for potentially relevant documents as part of discovery.  If the Trustee now asserts that particular persons at LCR were recipients of, or reasonably relied upon, alleged misrepresentations by Mr. Reed or others at UnitedLex, and such persons at LCR were <u>not</u> among the original group of agreed-upon email custodians, then Defendants risk severe prejudice and ambush at trial as they would not have had the opportunity to review potentially relevant correspondences.

Indeed, even during the pendency of the First Amended Complaint, Defendants attempted to discover information underlying the Trustee's prior statements of alleged misrepresentations but the Trustee stonewalled such information.  For example, the Trustee had alleged in Paragraph 179 of the FAC as follows: "To get shareholders in LeClairRyan on board, Mr. Reed had promised them business deals and opportunities, but never delivered."  Accordingly, on October 7, 2021 the Defendants served the Trustee with an interrogatory asking her to "[i]dentify and describe 'all business deals and opportunities' that were promised to LeClairRyan by Mr. Reed and/or the ULX Entities but were never delivered, as alleged in Paragraph 179 of the Amended Complaint."  On October 25, 2021, the Trustee served her objections to this Interrogatory Number 12, stating:

> The Trustee objects to this Interrogatory to the extent that it calls for information protected by the attorney-client privilege, attorney work product doctrine, or any other privileges, immunities, or other protections recognized by the Rules.  The Trustee further objects to this Interrogatory to the extent it purports to require the Trustee to "describe" the requested information.  The Trustee also objects to this Interrogatory on the ground that <u>it is a premature contention interrogatory since discover is still ongoing, and the Trustee's ability to respond to this Interrogatory depends in part upon the records in the possession of the ULX Entities, which they still have to produce, as well as depositions, and the Trustee's continuing review and investigation of the Debtor's records.</u>  Subject to the foregoing objections, the Trustee will confer with the ULX Entities about this Interrogatory and subsequently provide her Response, if any, to this Interrogatory.

**Exhibit L** (emphasis added).

On November 11, 2021, the Parties engaged in a meet and confer discussion regarding the Trustee's objections, during which the Trustee's counsel continued to assert that this information did not have to be disclosed until closer to the end of discovery because the Trustee considered it to be a "contention interrogatory." While the Parties ultimately agreed to disagree and reserve all rights on such call, the Trustee agreed to promptly provide substantive responses to other interrogatories (but not this Interrogatory No. 12). Accordingly, the Trustee provided a supplemental response to interrogatories on November 24, 2021, but did not supplement the above-response to Interrogatory No. 12. Indeed, it was not until January 25, 2022, four days _after_ the close of discovery, after all depositions were completed – including the Defendants' deposition of the Trustee – that the Trustee finally supplemented her response to Interrogatory No. 12. **Exhibit M**. Rather than respond to the interrogatory and specify the alleged misrepresentations at issue, however, the Trustee instead identified previously-produced emails that she contends are "documents reflecting information that support allegations contained in Paragraph 179 of the Amended Complaint." _Id._ In other words, the Trustee has consistently refused to identify the specific promises at issue and their relevant details.

And even with respect to the documents she untimely identified in her supplemental response, which consist of LCR documents (that she has possessed since her appointment) and ULXP-produced documents (that she has possessed since April 2021), none of them contain actionable promises and many of them are dated after the JV Agreements were already signed. Nevertheless, the Trustee waited to identify such documents and answer Interrogatory Number 12 until _after_ the Trustee was deposed and _after_ discovery was closed. Yet the Trustee now seeks to amend her complaint again and introduce a new count, purportedly based in part upon these

documents, while depriving Defendants the opportunity to question the parties to such emails or

the Trustee herself about such emails.[7]

If permitted to file a SAC adding a separate cause of action, at <u>minimum</u>, the Defendants

would need to take the depositions of various email recipients ████████████████████

████████████, and potentially the Trustee, and possibly others, depending on who the

Trustee identifies as persons she relies upon to attempt to prove that these alleged representations

were material and detrimentally relied upon, despite no mention in any of the contractual

documents), as well as to conduct email searches of certain LCR email custodians who may be

alleged recipients of misrepresentations or who reasonably relied upon any alleged statements.

Defendants should be permitted to question these, and potentially others, regarding what specific

representations were made to Debtor, their perception of any such representations, whether they

were materially relied on when entering the JV Agreements, whether such reliance was reasonable

(especially in light of the various merger clauses in the JV Agreements), whether they insisted on

specific contractual promises to reflect any such representations, etc.  In addition, Defendants

would need to expend significant additional time and resources to examine documents from

potential new document custodians.  Put simply, the Trustee's statements that no additional

discovery would be needed is wrong.  In order for Defendants to adequately prepare its defenses

against a new cause of action for fraudulent inducement, discovery would need to be reopened,

multiple depositions would need to be taken (or retaken), additional written discovery may be

needed, and the trial potentially continued. *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d

597, 603 (4th Cir. 2010) (affirming denial of motion to amend to add a new claim after the close

of discovery and on the eve of the deadline to file dispositive motions which would have required

---

[7] Such emails identified by the Trustee can be provided to the Court should the Court request to see them.

discovery to reopen); *Flame S.A. v. Indus. Carriers, Inc.*, No. 2:13-CV-658, 2014 U.S. Dist. LEXIS 117555, 2014 WL 4202470, at *3 (E.D. Va. Aug. 22, 2014) (denying plaintiff's motion to amend because allowing the amendment would require reopening discovery, which would unfairly prejudice defendants).

Similarly, although the Court's Fourth Stipulated Pretrial Order provides that in the event the amendment is permitted, then Defendants can promptly supplement their previously-filed MSJ, the Defendants would still need to file a responsive pleading to the SAC. All of this would be prejudicial, costly, and disruptive to Defendants and the Court, and warrant denying the Trustee's Motion.[8]

### B. Amendment Would be Futile as the Proposed Second Amended Complaint Fails to Adequately Allege a Claim for Fraudulent Inducement.

In addition to causing prejudice to Defendants, the Trustee's Motion should also be denied because the proposed amendment is futile. *Jaguar Land Rover Ltd. v. Bentley Motors Ltd.*, No.

[8]

2:18cv320, 2021 U.S. Dist. LEXIS 39082, at *11 (E.D. Va. Feb. 16, 2021) ("A proposed

amendment is deemed futile if it fails to state a claim upon which relief can be granted.") (citing

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)). Here,

the proposed fraudulent inducement claim is insufficient under Virginia law and fails to state a

cause of action against Defendants, and thus, permitting the Trustee to file the SAC to assert such

claim is futile.

### i.   *Amendment is Futile Because the Only "Misrepresentations" Within the SAC Constitute Statements or Opinion as to Future Events.*

The Trustee's proposed fraudulent misrepresentation claim fails as a matter of law because

the SAC does not allege any misrepresentations of a "present or pre-existing fact."  As Defendants

have set forth in detail on summary judgment, to be legally actionable an alleged misrepresentation

"must relate to a present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled

promises or statements as to future events." *Enomoto v. Space Adventures, Ltd.*, 624 F.Supp.2d

443, 454 (E.D. Va. 2009) (quoting *McMillion v. Dryvit Sys., Inc.*, 262 Va. 463, 552 S.E.2d 364

(2001)); *Patrick v. Summers*, 235 Va. 452, 454, 369 S.E.2d 162, 4 Va. Law Rep. 2949 (1988)

(quoting *Soble v. Herman*, 175 Va. 489, 500, 9 S.E.2d 459 (1940)). "[T]he mere expression of an

opinion, however strong and positive the language may be, is not a statement of present

fact." *Enomoto*, 624 F.Supp.2d at 454 (quoting *Mortarino v. Consultant Eng'g Servs., Inc.*, 251

Va. 289, 467 S.E.2d 778 (1996) (additional citation omitted); *see also Glaser v. Enzo Biochem,

Inc.*, 126 F. App'x 593, 600 (4th Cir. 2005) ("[C]ommendatory statements, trade talk, or puffing,

do not constitute fraud because statements of this nature are generally regarded as mere expressions

of opinion.").

The only allegations of "misrepresentations" within the SAC all relate to speculative

promises of or statements as to future events or positive opinions regarding the future business

opportunities that would come to Debtor following the implementation of the joint venture. *See*

*e.g.,* ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████ These are

plainly not "misrepresentations" of present or pre-existing fact, and are clearly statements and

opinions as to the forecasted (and hopeful) success of the joint venture transaction and the future

business Debtor would hopefully be able to generate. Even after the benefit of analyzing

Defendants' MSJ, the Trustee can still not allege that Defendants made any misrepresentation of

pre-existing fact.

The Trustee's proposed fraudulent inducement claim apparently hangs on the narrow

exception to the requirement that to state a claim a plaintiff must allege a present or pre-existing

fact: that when the Defendants made contractual promises, they did so with the present intent not

to perform such promise. *See Orbit Corp v. FedEx Ground Package Sys.*, No. 2:14cv607, 2016

U.S. Dist. LEXIS 155212, at *9 (E.D. Va. Nov. 8, 2016) (explaining the narrow exception to the

general rule that while fraudulent misrepresentation be predicated on statements of present or pre-

existing facts, "fraud may sometimes be predicated on promises which are made with a present

intention not to perform them; that is, the false representation of an existing intention to perform .

. . is the misrepresentation of a fact.") (quoting *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350,

362, 699 S.E.2d 483 (2010) (additional citations omitted).

However, such theory also fails, as to be actionable the Trustee must identify a specific

<u>contractual</u> promise she alleges the Defendants made which it never intended to perform. *Compare*

*James C. Justice Cos. v. Xcoal Energy & Res.*, Civil Action No. 7:14cv00170, 2015 U.S. Dist.

LEXIS 199129, at *9 (W.D. Va. Feb. 9, 2015) (denying leave to amend to add claim based on

fraudulent inducement where the alleged promises were not contained in the allegedly induced agreement); *Richmond Metro. Auth. v. McDevitt St. Bovis*, 256 Va. 553, 560, 507 S.E.2d 344, 348 (1998) (rejecting a fraudulent inducement claim where "[n]othing in the record suggests that [the defendant] did not intend to fulfill its **contractual** duties at the time it entered into the [subject agreement.]") (emphasis added); *with Zuberi v. Hirezi*, Civil Action No. 1:16-cv-1077 (AJT/TCB), 2017 U.S. Dist. LEXIS 14150, at *14 (E.D. Va. Jan. 30, 2017) (explaining that an allegation that the defendants did not intend to perform the work as specifically set forth in the subject agreement could support a fraudulent inducement claim).

Here, the SAC fails to identify a single specific contractual promise contained in <u>any</u> of the JV Agreements which the Trustee now alleges the Defendants never intended to perform at the time the parties entered into such agreement. Notably, in the dozens of claims she has asserted, the Trustee has never asserted a claim against Defendants for breach of contract. It does not follow that the Defendants somehow made misrepresentations regarding their intention to perform under contracts which the Trustee does not even contend that the Defendants breached. Rather, the Trustee would like to add a new cause of action based on forward-looking, extra contractual, speculative "promises" regarding the level of prosperity Debtor would receive by entering into the joint venture.  This is simply not a fraudulent inducement case, and the Trustee's proposed amendment is futile.

      **ii.** ***The Merger Clauses in the JV Agreements Precludes the Trustee's Proposed Fraudulent Inducement Claim.***

Highlighting further the notion that extra-contractual promises cannot serve the basis for a fraudulent inducement claim based on an intention not to perform, the heavily negotiated JV Agreements all contain similar non-reliance clauses reflecting that the Debtor did <u>not</u> rely on any

representations that were not contained in the written agreements.[9] The clauses in these agreements – all governed by Delaware law – prohibit such causes of action for fraudulent misrepresentation. *See PBM Capital Invs., LLC v. Lalonde*, Civil Action No. 3:13CV00008, 2013 U.S. Dist. LEXIS 95353, at *10-11 (W.D. Va. July 9, 2013) (citing *RAA Mgmt., LLC v. Savage Sports Holdings, Inc.*, 45 A.3d 107, 119 (Del. 2012) (holding, under Delaware law, that a plaintiff's fraud claims were barred by a non-reliance disclaimer clause in the parties' agreement). Here, the parties were extremely sophisticated.  In light of the various merger clauses in the JV Agreements, it is implausible that the Debtor materially or reasonably relied on extra-contractual promises regarding future, potential business developments which could result from the joint venture without placing any such "promises" in the terms of the agreements. As the Trustee cannot overcome the merger clauses in the JV Agreements, the proposed fraudulent inducement claim in the SAC is futile and leave should be denied.

---

[9] Each of the JV Agreements contain merger clauses.

### iii. *The Trustee Does Not Plausibly Allege a Fraudulent Inducement Claim Because the SAC Reflects Such Claim Was Waived.*

The SAC does not plausibly state a claim for fraudulent inducement because there are no allegations that the Debtor ever attempted to repudiate the JV Agreements. When seeking to repudiate a contract based on fraudulent inducement, a party "should do so as soon as he discovers the fraud. If after the discovery of the fraud he treats the contract as a subsisting obligation, he will be deemed to have waived his right of repudiation." *White v. Bott,* 158 Va. 442, 448, 158 S.E. 880, 881 (1931). Here, even if the alleged promises of future performance could support a fraudulent misrepresentation claim, the Debtor was required to have promptly repudiated the JV Agreements once it discovered any such fraud. There are no allegations that the Debtor ever attempted to repudiate the contract, and to the contrary the SAC reflects that the parties operated under the joint venture through the date of the petition.

### CONCLUSION

For the reasons set forth herein, the Defendants respectfully request that the Court deny the Trustee's Motion for Leave to Amend the First Amended Complaint, and for such other relief as this Court may deem to be just and proper.

Dated:  March 1, 2022                     Respectfully submitted,

*/s/ Thomas J. McKee, Jr.*
Thomas J. McKee, Jr. (VSB No. 68427)
David G. Barger (VSB No. 21652)
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Telephone: (703) 749-1300
Facsimile: (703) 749-1301
Email: mckeet@gtlaw.com
        bargerd@gtlaw.com

and

J. Gregory Milmoe (admitted pro hac vice)
Greenberg Traurig, LLP
One International Place, Suite 2000
Boston, MA 02110
Telephone: (617) 310-6064
Email:  milmoeg@gtlaw.com

*Counsel to the ULX Entities*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 1st day of March, 2022, I served a true and correct copy of the

foregoing document via the Court's ECF system upon:

Erika L. Morabito, Esq.
Brittany J. Nelson, Esq.
QUINN EMANUEL
URQUHART & SULLIVAN LLP
1300 I Street, N.W., Suite 900
Washington, DC 20005
(202) 538-8334 (telephone)
erikamorabito@quinnemanuel.com
brittanynelson@quinnemanuel.com

*Special Counsel to Lynn L. Tavenner, Chapter 7 Trustee*

<u>*/s/ Thomas J. McKee, Jr.*</u>
Thomas J. McKee, Jr. (VSB No. 68427)
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Telephone:  (703) 749-1300
Facsimile:   (703) 749-1301
Email:  mckeet@gtlaw.com
*Counsel to Defendants*