## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| In re: | |
| | |
| LECLAIRRYAN PLLC, | Chapter 7 |
|     Debtor. | |
| | Case No. 19-34574 (KRH) |
| Lynn L. Tavenner, as Chapter 7 Trustee, | |
|     Plaintiff. | |
| v. | |
| | |
| ULX Partners, LLC, UnitedLex Corporation, | Adv. Proc. Nos. 20-03142 (KRH) |
| and ULX Managers, LLC, | |
|     Defendants. | and |
| | |
| Lynn L. Tavenner, as Chapter 7 Trustee, | 21-03095 (KRH) |
|     Plaintiff. | |
| v. | |
| | |
| CVC Capital Partners, Daniel Reed, Nicholas | |
| Hinton, Josh Rosenfeld, P. Douglas Benson, | |
|     Defendants. | |

### OBJECTION OF THE UNITED STATES TRUSTEE TO ULX PARTNERS, LLC, UNITEDLEX CORPORATION AND ULX MANAGERS, LLC'S MOTION TO SEAL SETTLEMENT AGREEMENT AND RELATED DOCUMENTS, INFORMATION, AND HEARINGS

John P. Fitzgerald, III, Acting United States Trustee for Region Four (the "United States

Trustee"), by and through the undersigned counsel, files this Objection to ULX Partners, LLC's,

UnitedLex Corporation's, and ULX Managers, LLC's (collectively, the "Defendants") Motion to

Kathryn R. Montgomery, AUST (VSB No. 42380)
Shannon Pecoraro, Esq. (VSB No. 46864)
Jason B. Shorter, Esq. (VSB No. 80929)
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219
Telephone: (804) 771-2310
Facsimile: (704) 771-2330

Seal Settlement Agreement, and Related Documents, Information, and Hearings (hereinafter the "Motion to Seal") (Main Dkt. 1325 and Dkt. 207). [1]   In support hereof, the United States Trustee respectfully states as follows:

## INTRODUCTION

There is a strong presumption and public policy in favor of public access to court records. *See, e.g., Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-98, 98 S. Ct. 1306, 55 L. Ed. 2d 57 (1978*); Neal v. The Kansas City Star (In re Neal)*, 461 F.3d 1048, 1053 (8th Cir. 2006); *Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d 1, 6 (1st Cir. 2005); *Miles v. Ruby Tuesday, Inc.*, 799 F. Supp. 2d 618 (E.D. Va. 2011).  Such right is "rooted in the public's First Amendment right to know about the administration of justice." *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 26 (2d Cir. 1994).

The right of public access to papers filed in this Court is codified in 11 U.S.C. § 107(a). With limited exceptions, papers filed in a bankruptcy case "are public records and open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a).  Similarly, the concept that all hearings be conducted in open court is woven into the bankruptcy system and governed by Bankruptcy Rule 5001.  As one court eloquently emphasized, "[t]he public interest in openness of court proceedings is at its zenith when issues concerning the integrity and transparency of bankruptcy court proceedings are involved," *In re Food Management Group, LLC*, 359 B.R. 543 (Bankr. S.D.N.Y. 2007).

In the Fourth Circuit, trial courts are guided by *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004), which provides that "the common law presumes a right

---

[1]  "Main Dkt." refers to the docket in the main Bankruptcy Case.  "Dkt." refers to the docket in the United Lex Adversary Proceeding, while "Reed Dkt." refers to the docket in the Reed Adversary Proceeding (both as herein)after defined, and, collectively, the "Adversary Proceedings").

of the public to inspect and copy 'all judicial records and documents.'"  It further provides that a

trial court "must . . . weigh the appropriate competing interests under the following procedure: it

must give the public notice of the request to seal and a reasonable opportunity to challenge the

request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state

the reasons (and specific supporting findings) for its decision and the reasons for rejecting

alternatives to sealing." *Id*. at 576.

The United States Trustee opposes the Defendants' sweeping Motion to Seal, which seeks

to seal the hearing on the Motion to Seal itself, the settlement agreement between the Defendants

and the Chapter 7 Trustee concerning the Adversary Proceedings (the "Settlement"), the 9019

Motion (as hereinafter defined) seeking the approval of such Settlement, all declarations to be filed

in support of the 9019 Motion, this Court's hearing to approve the 9019 Motion, the transcript of

the April 19, 2022 hearing at which the settlement terms were set forth on the record, the

Defendants' motion for summary judgment and all exhibits thereto, the responsive pleadings to

the motion for summary judgment, and the motion to amend complaint. (Collectively Dkt. 133,

137,  147, 149, 150, 152, 153, 156, 168, 169, 172, 173, 174, 175, 200, 211).[2] Defendants' Motion

to Seal fails to set forth facts or evidence sufficient to satisfy the requirements for sealing under

both sections 105 and 107 of the Bankruptcy Code and Bankruptcy Rule 9018.  Moreover, the

Defendants participated in setting forth the material terms of the Settlement at an open hearing

before this Court on April 19, 2022, and the news media thereafter widely published the Settlement

terms.  Thus, not only have the Defendants in essence waived their right to retroactively seek a

protective order approximately a month after the terms of the Settlement were announced in open

---

[2] The amended complaint and summary judgment motions and exhibits have been filed under seal and are mooted
by the Settlement.  Defendants seek to keep these documents sealed in perpetuity, but offer no evidence or
arguments in support.

court, but the Motion to Seal the same Settlement terms is now moot as they have now been publicly circulated through various media avenues.  As such, the Motion to Seal should be denied.

### JURISDICTION

1.　　　This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§157 and 1334, and the delegation made by the United States District Court by Order dated August 15, 1984.

2.　　　The United States Trustee files this Objection in furtherance of his duties and responsibilities pursuant to 28 U.S.C. §586 and 11 U.S.C. § 307.

### FACTUAL BACKGROUND

3.　　　On September 3, 2019 (the "Petition Date"), the Debtor filed for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as thereafter amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Bankruptcy Court").

4.　　　On October 4, 2019, the Debtor's Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code.  (Main Dkt. 140).  Lynn L. Tavenner was appointed Chapter 7 Trustee (the "Chapter 7 Trustee").

5.　　　On October 4, 2019, this Court entered an Order approving the retention of Tavenner & Beran PLC to represent the Chapter 7 Trustee on an hourly basis.  (Main Dkt. 142 (retention application), 152 (order)).

6.　　　On February 10, 2020, the Court entered an Order approving the retention of the law firm of Foley & Lardner, LLP ("Foley") as special counsel, pursuant to section 327(e) of the Bankruptcy Code, to represent the Chapter 7 Trustee in litigation matters.  The Court ordered that Foley be compensated on an hourly basis for legal services performed during the "Investigative Phase," and that, pursuant to section 328(a), Foley be compensated on a 30% contingency fee basis

4

for legal services performed during the "Litigation Phase." (Main Dkt. 300 (retention application), 342 (order)).

7.      Subsequently, on May 18, 2021, the Foley lawyers handling the representation of the estate, Erika L. Morabito and Brittany Nelson, moved their practice to the law firm of Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn").

8.      On June 28, 2021, the Court entered an Order approving the retention of Quinn to represent the Chapter 7 Trustee in litigation matters pursuant to §§ 327(a), 327(e), and 328(a) of the Bankruptcy Code.  The retention order approved a dual fee structure whereby Quinn would bill the estate (a) on a 35% contingency fee basis (an increase of 5% of the terms under which Foley was employed) for various categories of legal services ( and (b) on an hourly basis for other related matters. (Main Dkt. 937).

9.      Thereafter, the Chapter 7 Trustee filed a *Motion for an Order Establishing Procedures Regarding the Prosecution of Actions Involving Former Attorneys and Certain Others and Memorandum in Support Thereof* (the "FAO Procedures Motion") (Main Dkt. 457). The FAO Procedures Motion was approved by Order of this Court (Main Dkt. 533), as amended/supplemented by additional Orders of this Court (Main Dkt. 929 and 982) (collectively, the "FAO Order").

10.     Among other things, the FAO Order provides that:

> To the extent a particular FAO Defendant and/or the Trustee requires as a part of any Proposed FAO Settlement that the same be subject to a protective order of this Court, the Settlement Notice shall be (a) filed with this Court under seal . . . and (b) provided to any Person holding a claim against the Estate . . .

FAO Order (Main Dkt. 929 at ¶ 3).  Notably, the FAO Order provides some limitations to the effect of the terms of the order on the ongoing litigation between the Chapter 7 Trustee and the Defendants:

5

Notwithstanding any of the foregoing stated herein, no term of the Motion or this Order shall preclude, limit, prohibit, or bar discovery of any kind whatsoever in the litigation pending between the Trustee, ULX Partners, LLC ("ULXP"), and United LexCorporation ("ULX"), currently captioned as Lynn L. Tavenner, as Chapter 7 Trustee v. ULX Partners, LLC and UnitedLex Corporation, Adv. Pro. No. 20-03142-KRH, in the United States Bankruptcy Court for the Eastern District of Virginia, and any iteration thereof (The "ULX/ULXP Adversary Proceeding").

*Id.* at ¶ 5.

11.     On October 26, 2020, the Chapter 7 Trustee filed the current adversary proceeding against ULX Partners, LLC and UnitedLex Corporation (as amended, the "UnitedLex Adversary Proceeding").

12.     On September 2, 2021, the Chapter 7 Trustee filed a separate adversary proceeding (No. 21-03095-KRH) (the "Reed Adversary Proceeding") against CVC Capital Partners as well as UnitedLex Corporation's Chief Executive Officers, Daniel Reed ("Mr. Reed"), and its Chief Financial Officer, Nicholas Hinton ("Mr. Hinton").

13.     On January 28, 2022, the Defendants filed a Motion for Summary Judgment (Dkt. 133) (the "Motion for Summary Judgement") and associated documents, seeking to dismiss certain claim.  The Chapter 7 Trustee opposed the Motion for Summary Judgment (Dkt. 152) (the "Opposition to Summary Judgment").

14.     On February 4, 2022, at the joint request of the Chapter 7 Trustee and the Defendants, the Court entered an Order in the United Lex Adversary Proceeding (the "Mediation Order") (Dkt. 142) appointing the Honorable Frank J. Santoro, the Chief Judge of the United States Bankruptcy Court for the Eastern District of Virginia, as the judicial mediator (the "Mediator"), to conduct a mediation (the "Mediation") among the Chapter 7 Trustee, the ULX Defendants, Mr. Reed and Mr. Hinton in their individual capacities, and insurance carriers for the Defendants or Messrs. Hinton or Reed.

15.     On February 11, 2022, the Chapter 7 Trustee filed a Motion for Leave to Amend the First Amended Complaint (Dkt. 147) (the "Second Motion to Amend") and to place the associated documents under seal.  The Defendants opposed the Motion to Amend (Dkt. 168) (the "Opposition to Second Motion to Amend").

16.     Between March 5 and April 13, 2022, the parties engaged in Mediation to resolve the Adversary Proceedings.

17.     On April 11, 2022, the Mediator entered the Mediation Order Regarding Confidentiality (the "Confidentiality Order").  (Dkt. 195).  The Confidentiality Order provided, in pertinent part:

> All confidential documents produced or received by any Mediation Party and all communications made by and all submissions prepared by a Mediation Party in connection with the Mediation, including but not limited to: (a) discussions among any of the Mediation Parties during the course of the Mediation; (b) discussions with or in the presence of the Mediator; (c) mediation statements and any other documents or information provided to the Mediator and/or the Mediation Parties in the course of the Mediation; and (d) all correspondence, settlement, proposals, counterproposals, term sheets and offers of compromise produced or, as a result of, or in connection with the mediation ((a), (b), (c) and (d) collectively, the "Settlement Proposals") shall remain confidential, shall not be made available to the public and, as applicable, shall be subject to the Protective Order; provided however, that (i) nothing in this Order shall operate to protect pre-existing documents, materials or information simply because it is shared with the Mediator or otherwise disclosed during the Mediation; and (ii) the Mediation Party making any such Settlement Proposal may agree to the disclosure of its own Settlement Proposal.

Dkt. 195 at ¶ 2. Nothing in the Confidentiality Order, however, expressly required that the final settlement agreement be under seal.

18.     At the April 19, 2022 hearing before this Court, the parties announced that the collective Settlement had been reached in the  Adversary Proceedings.

19.     The material terms of the Settlement were set forth on the record with the participation of counsel for the Chapter 7 Trustee, counsel for the Defendants, including Special

Insurance Counsel for ULX Partners.  The Settlement was presented as the Mediator's proposal and relevant terms included payment of funds, mutual releases, and an additional payment of fees to Quinn from the proceeds of the Settlement. (Dkt. 197).

20.     The terms of the Settlement announced at the April 19, 2022 hearing did not include confidentiality as a term of the Settlement.  (Dkt. 197 (hearing), 200 (transcript filed)).

21.     On May 11, 2022, Defendants filed the instant Motion to Seal. (Main Dkt. 1325 and Dkt. 207).

22.     On May 16, 2022, Richmond BizSense, a local business newspaper in Richmond, Virginia, and Reuters published news articles setting forth the terms of the Settlement as outlined on the record at the April 19, 2022 hearing. Subsequently, other national news media, including Bloomberg Law and Law 360, published articles detailing the terms of the Settlement.[3]

23.     On May 18, 2022, almost a month after the April 19, 2022 hearing during which the Settlement terms were put on the record, the Defendants sought entry of a Bridge Order Restricting Public Access to the April 19, 2022 Transcript (Dkt. 210).

24.     Also on May 18, 2022, the Chapter 7 Trustee filed the Trustee's Motion And Memorandum of Law For Entry Of An Order (I) Approving (A) Judicially Mediated Settlement and (B) Compensation To Counsel Including An Improvident Payment Under Section 328(A); and (II) Granting Related Relief (the "9019 Motion") (Dkt. 211).  A hearing on the 9019 Motion is scheduled for June 8, 2022.

---

[3] https://richmondbizsense.com/2022/05/16/21m-settlement-pending-in-leclairryan-unitedlex-dispute/  ;
https://www.reuters.com/legal/litigation/leclairryan-trustee-reaches-21-mln-settlement-unitedlex-case-2022-05-17/  ;
https://news.bloomberglaw.com/business-and-practice/leclairryan-trustee-to-settle-unitedlex-case-for-21-million  ;
https://www.law360.com/tax/articles/1494079/last-of-leclairryan-s-partners-battle-opaque-tax-threat  .

<u>**LEGAL ARGUMENT**</u>

**A.  The Motion to Seal is Moot and the Defendants are Barred by Waiver**

25.     The Defendants took no steps to attempt to seal the hearing on April 19, 2022

before the terms of the Settlement were stated on the record.

26.     Notably, the Defendants admit in the Motion to Seal that neither confidentiality

nor an agreement to seal is a term of the Settlement.  (Motion to Seal, ¶ 22).[4]

27.     Despite the clear language on the Court's docket entry 200 dated April 22, 2022,

which states "[t]he transcript may be viewed at the Bankruptcy Court Clerk's Office," the

Defendants did not seek entry of a Bridge Order preventing access to the April 19, 2022

Transcript until May 18, 2022 (Dkt. 210), almost a month after the Settlement terms were

publicly announced in open Court.

28.     Even though the Defendants filed a Notice of Intent to Request Transcript

Redaction, that request was not docketed until April 27, 2022 (Dkt. 204).  The docket entry again

clearly states "[p]ursuant to the new policy adopted by the Judicial Conference, transcripts are

available for inspection only at the clerk's office or may be purchased from the court transcriber

for a 90 day period.

29.     In the meantime, the press was able to view a copy of the transcript; and the terms

of the Settlement were published by Richmond BizSense and by Reuters on May 16, 2022, and

thereafter by other national publications, including Bloomberg Law and Law 360.

30.     Retroactively redacting the April 19, 2022 Transcript and sealing the Settlement

would be a fruitless exercise at this point.  An internet search now reveals the details of the

---

[4] Specifically, paragraph 22 of the Motion to Seal provides that "[a]lthough the terms of the Omnibus Settlement
Agreement do not include an agreement to seal the agreement or maintain its confidentiality, the confidentiality and
sealing of the information requested in this Motion will help to facilitate the parties' Settlement."

Settlement, including the amount and timing of payments and the supplemental fee payment to

Quinn.

31.     Furthermore, the waiver doctrine should bar the Defendants' Motion to Seal.

In the case of *Benedict v. Hankook Tire Co*., 323 F. Supp 3d 747, 760-61 (E.D.Va. 2018), Judge

Payne analyzed the concept of waiver in the context of sealing trial transcripts, trial exhibits

presented openly at trial, and jury instruction post-trial stating "if no effort is made to prevent

dissemination of confidential information at trial, the right to claim that trial materials containing

that information should be sealed is waived."

32.     "[T]he release of information in open trial is a publication of that information and,

if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict

its further use.  Level 3, 611 F. Supp 2d at 583.

33.     As Judge Payne in the *Benedict* case, "the fact that Defendants filed their motion

soon after receiving the transcript and before it became public does not change that Defendants

took no measures to limit the dissemination of the information contained in the transcripts during

the public trial" and "release of information in open trial is a publication of that information and,

if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict

its further use."  *Benedi*ct, 323 F. Supp. 3d at 762.

34.     The Defendants did not take steps to raise confidentiality of the Settlement at the

hearing on April 19, 2022 and took no real steps to prevent public dissemination of the transcript

until May 18, 2022.

35.     Accordingly, the Defendants' inaction should be deemed a waiver to their

requests in the Motion to Seal the Settlement and redact the April 19, 2022 Transcript.

Moreover, additionally, because the contents of the Settlement are now publicly available in

numerous articles, the Defendants' request to seal the Settlement and to redact the April 19, 2022

Transcript is essentially moot and should be denied.

**B.        Fees of Chapter 7 Trustee's Counsel Should Not Be Sealed**

36.        Pursuant to 11 U.S.C. § 323, the trustee is the representative of the bankruptcy

estate.   A chapter 7 trustee's duties include "the duties of loyalty, distribution maximization,

diligence, due care, accountability, competence, claims review, information disclosure, candor,

civility, proper litigation preparation and conduct, impartiality and its appearance, enforcement,

supervision, compliance, and good faith and fair dealing." Steven Rhodes, *"The Fiduciary and

Institutional Obligations of a Chapter 7 Bankruptcy Trustee,"* 80 Am. Bankr. L.J. 147, 187-189

(2006).   A trustee is vested with significant powers to aid in carrying out his or her fiduciary

obligations to the bankruptcy estate and may employ professionals to assist in this endeavor.

*Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 352 (1985).

37.        A term of the Settlement is that the Chapter 7 Trustee's counsel, Quinn, will

receive an additional fee payment.  The United States Trustee is unaware of any other settlement

reached in this case that contains such a term.  Moreover, the additional fee payment is outside of

the parameters set forth in Quinn's publicly filed retention application.

38.        Due to the unusual facts here, the Chapter 7 Trustee should not be put in a

position whereby she cannot publicly set forth the evidentiary and legal support for the additional

fee payment to her counsel.

39.        If the Chapter 7 Trustee cannot avail herself of the transparency of an open

proceeding with publicly available filings, the Settlement could undermine the public's

confidence in the bankruptcy system.  This is especially true since the material terms of the

Settlement have already been widely published in the media.

40.    The United States Trustee can find no published precedent in this jurisdiction for a Bankruptcy Court sealing a request or order for a  fee enhancement, substantial contribution payment, or increased compensation to professionals under section 328(a), and the Defendants have not cited any such authority.

41.    In *Computer Learning Ctrs., Inc*., 272 B.R. 897, 907, fn. 8 (Bankr. E.D.Va. 2001), the Court ordered that a fee application for the chapter 7 trustee's professional be unsealed and filed on the public record, stating that "[t]he document filed under seal was wholly insufficient to support the fee application. Moreover, filing it under seal deprived interested creditors from any meaningful review of the fee application. They, of course, are the very ones who are, effectively, paying [the professional fees]."[5]

42.    The Court in *In re Anthracite Capital, Inc.* further expanded upon this concept by stating it was not persuaded by the notion that "'settlements of civil lawsuits are private arrangements between . . . parties' and a court 'plays no role whatever, standing 'indifferent' to the terms the parties have agreed to . . . the notion that the court plays no role in settlements agreements is especially untrue when a trustee is seeking to settle a claim on behalf of the estate."  *In re Anthracite Capital, Inc.,* 492 B.R. 162, 172 (Bankr. S.D.N.Y. 2012), (quotation omitted), *citing In re Oldco M. Corp*., 466 B.R. 234, 238 (Bankr. S.D.N.Y. 2012) ("[W]hen a trustee seeks to settle a claim on behalf of a bankruptcy estate, the public policy of open access

---

[5] While the FAO Procedures do provide for a mechanism for certain parties to request copies of the Settlement, the United States Trustee notes that the notice of the Settlement with instructions on how to request the pleadings, only goes to certain limited parties listed in the Case Management Order (Main Dkt.38), not every creditor in the case. Chapter 7 Trustee's fiduciary duties are not only to those limited parties who receive notice pursuant to a case management order, but to underlined all creditors.

to court records comes fully into play, and a searching judicial inquiry is required before approving the settlement.")

43.     For the reasons stated, this Settlement is not a typical settlement in terms of this specific case or even generally in bankruptcy.  Transparency best protects the integrity of the system and allows the Chapter 7 Trustee to fulfil her fiduciary duties in the light of day.

**C.     The Settlement is Beyond the Scope of the FAO Procedures Order**

44.     Defendants seek to seal this Settlement consistent with the settlements of former LeClairRyan attorneys and other parties under this Court's FAO Procedures Order. (Main Dkt. 533, as modified, 929).  However, this Settlement is unlike any other settlement in this case and, as such, it is beyond the scope of the FAO Procedures.

45.     The Chapter 7 Trustee's stated reasons for approval of the FAO Procedures, in pertinent part, are as follows:  (a) serve judicial economy; (b) speed the time within which the matters will be resolved; (c) reduce unnecessary litigation costs for the parties, (d) reduce the burden on the parties and Court, *(e) minimize cost and expense, and (f) enhance her ability to collect amounts and maximize the recovery for the Estate. (Main Dkt. 457).  The Chapter 7 Trustee further asserted that the FAO Procedures satisfied due process requirements.[6] (Main Dkt. 457, ¶17).

46.     The FAO Procedures were later modified on request of the Chapter 7 Trustee to close a loophole and an unintended result that allowed parties engaged in active litigation to obtain copies of settlements, which information could be used in connection with litigation

---

[6] Pursuant to the language of the Chapter 7 Trustee's motion to approve the revised FAO Procedures, the procedures "satisfy due process requirements" and "allow for all requisite Persons to determine if he/she/it believe a proposed settlement is fair and equitable and in the best interest of the Estate without providing confidential and sensitive information to Persons engaged in active litigation against the Estate."  (Main Dkt. 852, ¶¶16 &  19).

against the Estate.  The Court approved the modified FAO Procedures over the objection of the Defendants.  (Main Dkt. 852, 929).

47.     Interestingly, the Defendants objected to revised FAO Procedures that they now seek to avail themselves of, stating that the "Trustee's Motions share common themes of secrecy that are contrary to the bankruptcy process and fundamental fairness underlying discovery and trial….the settlement documents and communications do not contain the type of information intended to be protected from disclosure by Section 107 of the Bankruptcy Code or Bankruptcy Rule 9018,  and … would eviscerate the oversight protections established in connection with settlements under the Bankruptcy Rules and the close eye of creditors…" (Main Dkt. 891).

48.     The United States Trustee understands the reasons the Chapter 7 Trustee sought approval of the FAO Procedures and modified FAO Procedures; however, the Chapter 7 Trustee's reasons for seeking the FAO Procedures are absent in the matter at hand.

49.     First, any judicial economy that might have been gained through the FAO Procedures was lost on the instant case after years of motions practice and discovery.  Second, the estate's largest claim has always been against Defendants, who are in no way similarly-situated to the dozens of former LeClairRyan lawyers against whom the Chapter 7 Trustee has sought recovery for the Estate.

50.     The most striking difference between the instant Settlement and the settlements consummated under seal pursuant to the FAO Procedures is that none of those settlements contained an award of a fee award for the Chapter 7 Trustee's counsel above the contingency fee agreed to and approved by the Court in the retention order.

51.     Defendants cannot use the FAO Protocol to cloak the Settlement of this case when the facts, circumstances, material terms, and parties to this Settlement are vastly different

and distinguishable from the Chapter 7 Trustee's previous settlements with former LeClairRyan

lawyers.

**D.     The Requirements of Section 107(b) Are Not Met**

52.     The right to public access to papers in bankruptcy is so imperative that it has been

codified in the Bankruptcy Code, evidencing Congress' strong desire to preserve the public's right

of access to judicial records in bankruptcy proceedings. *See* 11 U.S.C. Section 107; *In re Dreier*,

485 B.R. 821, 822 (Bankr. S.D.N.Y. 2013) *citing In re Orion Pictures Corp.*, 21 F.3d 24, 26 (2d

Cir. 1994); *accord Borders Grp., Inc.*, 462 B.R. at 46 ("[t]here is a strong presumption and public

policy in favor of public access to court records"); *In re Food Mgmt. Grp.* 359 B.R. 543, 553-55

(Bankr. S.D.N.Y. 2007) (Section 107 reflects Congress' intent to favor public access to papers

filed with the Bankruptcy Court); *In re Gitto Global Corp.*, 422 F.3d at 7 ("This governmental

interest is of special importance in the bankruptcy arena, as unrestricted access to judicial records

fosters confidence among creditors regarding the fairness of the bankruptcy system"); *In re Bell

& Beckwith*, 44 B.R. 661, 664 (Bankr. N.D. Ohio 1984) ("This policy of open inspection,

established in the Bankruptcy Code itself, is fundamental to the operation of the bankruptcy system

and is the best means of avoiding any suggestion of impropriety that might or could be raised."

53.     Sealing documents filed in a bankruptcy court, though left to the discretion of the

court, should "be the exception rather than the rule." *In re Nunn*, 49 B.R. 963, 964 (Bankr. E.D.

Va. 1985).  "It is a highly unusual and extraordinary remedy for the Court to seal the records in

any case because of the generally-recognized rule of law that the public has a right to know."  *In

re Epic Associates V*, 54 B.R. 445, 448 (Bankr. E.D. Va. 1985).  "Under *In re Nunn*, the

Bankruptcy Court should only seal a paper if no less drastic remedy exists." *Robbins v. Tripp*,

510 B.R. 61, 69 (E.D. Va. 2014).

15

54.     Specifically, section 107(b) of the Bankruptcy Code states as follows:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may –
>
>> (1) protect an entity with respect to a *trade secret* or *confidential research, development or commercial information*; or
>>
>> (2) protect a person with respect to *scandalous or defamatory matter* contained in a paper filed in a case under this title.

11 U.S.C. § 107(b) (emphasis added).

55.     Except as provided in section 107(b), a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination. The plain text of section 107 "limits the discretion of courts regarding public access to papers filed in a bankruptcy case . . . unless material contained therein falls within one of the statutory exceptions." *In re Gitto Global Corp.*, 422 F.3d 1, 11 (1st Cir. 2005);

56.     As observed by one bankruptcy court:

> Congress has articulated and codified those public policies that it believes override the public's general right to access court documents, namely confidential commercial information and scandalous material. Congress has mandated through Section 107(a) that any papers filed with this Court that do not fall within the stated exceptions of § 107(b) "are public records and open to examination...." 11 U.S.C. § 107.  By enacting § 107, Congress has balanced the harms for the bankruptcy courts.  Any other public policy concerns that may or may not arise in the context of a motion under § 107 has been determined by Congress to be less important than the public's right to access.  *See* 11 U.S.C. § 107.

*In re Anthracite Capital, Inc.*, 492 B.R. 162, 182–83 (Bankr. S.D.N.Y. 2013).

### i.     *Defendants Have The Burden of Proof*

16

57.     Sealing documents in bankruptcy is a "highly unusual and extraordinary remedy." *In re Orion Pictures Corp.,* 21 F.3d at 27.  The party seeking to seal documents must show a "compelling need" for protection and "extraordinary circumstances." *Id.*

58.     The burden is on a movant to demonstrate that the interest in secrecy outweighs the presumption in favor of access. *Bank of America Nat'l Trust & Savings Assoc. v. Hotel Rittenhouse Associates*, 800 F.2d 339, 344 (3d Cir. 1986); *In re Continental Airlines*, 150 B.R. 334, 340 (D. Del. 1993).  "Evidence—not just argument—is required to support the extraordinary remedy of sealing."  *In re Motors Liquidation Company*, 561 B.R. 36, 43 (Bankr. S.D.N.Y. 2016 (citing *In re Dreier LLP*, 485 B.R. at 823 (finding that "conclusory statements in [a declaration] are not probative")).

59.     "Inherent in the language of section 107(b) is the requirement that the party requesting the extraordinary relief provide the court with specific factual and legal authority demonstrating that a particular document at issue is properly classified as "confidential" or "scandalous." *In re Anthracite Capital, Inc.*, 492 B.R. at 171 (*citing, United States v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)),* 150 B.R. 334, 340–41 (D.Del.1993) (refusing to seal documents based on "nothing more than the mere possibility" that they contained defamatory information).

60.     In the Motion to Seal, the Defendants make no attempt to provide any evidentiary support for the expansive request to seal.  Far from showing a "sufficient threat of irreparable harm" by pointing to specific characteristics of the information to be sealed and concrete examples of irreparable harm, the Defendants offer bald assertions of potential harm. *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1071 (*citing Stamicarbon, N.V. v. Am. Cyamid Co.,* 506

17

F.2d 532, 539-42 (2d Cir. 1974)); *In re Itel Corp*., 17 B.R. 942, 944 (B.A.P. 9th Cir. 1981)

(Harm that is only speculative cannot support a sealing order).

61.     The Motion to Seal contains no declarations in support of the motion from any

parties.  Instead, the Defendants state that they "are willing to provide additional information and

argument with respect to [the] Motion to Seal, *either in a sealed hearing or in camera*, to further

inform the Court on these issues."  Motion to Seal, ¶ 30 (emphasis added).

62.     This shroud of secrecy over this Court and the tenets on which it is based would

undermine the public's confidence in the bankruptcy system.

### *ii.      The Settlement Does Not Involve Commercial Information*

63.     Defendants' primary argument is that the Settlement should be sealed to protect

Defendants' commercial information.  Defendants, however, do not articulate what particular

commercial information would be impacted.  Instead, Defendants merely state that the

Settlement "has the potential to be harmful to Defendants' ability to engage in future business

dealings."  As previously stated, the Defendants further offer to advise this Court *in camera* or at

a sealed hearing their "business reasons for a settlement." (Motion to Seal, ¶ 30).

64.     "Commercial information has been defined as information which would cause 'an

unfair advantage to competitors by providing them information as to the commercial operations

of the debtor.'"  *In re Orion Pictures Corp.,* 21 F.3d 24, 27 (2d Cir. 1994) (*citing In re Itel Corp*.,

17 B.R. 942, 944 (9th Cir. BAP 1982)).

65.     Examples of the types of information protected under the confidential commercial

information would include: (a) the terms of a licensing agreement that would have impaired a

party's ability to conduct contract negotiations, *In re Orion Pictures Corp.,* 21 F.3d at 28; (b) a

copy of a confidential customer list that the debtor previously sold to a creditor, *In re A.G. Fin.*

*Serv. Ctr.,* 395 F.3d 410, 415-16 (7th Cir. 2005); and (c) documents that detailed a hedge fund's

investment strategy.  *In re Dreier LLP*, 485 B.R. 821, 823 (Bankr. S.D.N.Y. 2013).

66.     Absent establishing the existence of actual confidential commercial information

contained in the Settlement, nothing about a settlement *per se* qualifies it as confidential

commercial information.  *See In re Analytical Sys., Inc.,* 83 B.R. 833, 835 (Bankr. N.D. Ga.

1987) (finding that settlement agreement "does not contain trade secrets or confidential research,

development, or commercial information nor scandalous or defamatory matters within the

meaning of 11 U.S.C. section 107 and Bankruptcy Rule 9018.").  In rejecting the notion that a

settlement agreement constitutes confidential secret information, a bankruptcy court has

observed:

> But the terms of the instant settlement have to do only with the instant litigation,
> and have nothing to do with the competitive business operations of the debtor or
> of Andersen, in any normal sense of the words. If the Trustee's definition were
> accepted, then not only would any paper filed by Andersen in the course of
> litigation likely constitute secret "commercial information," but secrecy under this
> exception would also extend to any of countless cases involving a business entity
> actively defending civil suits for damages.

*Geltzer v. Andersen Worldwide, S.C.,* 2007 WL 273526, at *3 (S.D.N.Y. 2007).

67.     The policy of encouraging settlement of disputes does not trump the right of

public access to judicial records.[7]  *See In re N. Bay Gen. Hosp., Inc*., 404 B.R. 429, 441 (Bankr.

S.D. Tex. 2009) (granting motion to unseal because presumption of public access codified in

section 107(a) was never rebutted); *Ramirez v. Gen. Motors Corp.,* 1999 WL 1336087, at *2

---

[7] Bankruptcy courts routinely deny motions to seal settlement agreements.  See *In re Jason Corey Bornman*, 2016
WL 4468069, at *2 (Bankr. E.D.N.C. 2016); *In re Anthracite Capital, Inc*., 492 B.R. 162, 174 (Bankr. S.D.N.Y.
2013); *In re Oldco M Corp.,* 466 B.R. 234, 238 (Bankr. S.D.N.Y. 2012); *Geltzer v. Andersen Worldwide, S.C.,* 2007
WL 273526, at *3 (S.D.N.Y. 2007); *In re Alterra Healthcare Corp.,* 353 B.R. 66, 77 (Bankr. D. Del. 2006); *In re
Analytical Sys., Inc.,* 83 B.R. 833, 835 (Bankr. N.D. Ga. 1987).

(S.D. Tex. 1999) (denying motion to strike actual amount of settlement and noting that the
availability of information about settlement of cases could equally well be argued to facilitate
settlement of similar cases in the future).  "[C]ourts have repeatedly stated that 'injury or
potential injury to reputation is not enough to deny public access to court documents."  *In re N.
Bay Gen Hosp., Inc*, 404 B.R. at 442 (2009) (*citing In re Neal*, 461 F.3d 1048, 1054 (8th Cir.
2006).

68.     Defendants' claims of commercial information are hollow.  Other than the
unsupported statement that the Settlement "has the potential to be harmful to Defendants' ability
to engage in future business dealings," Defendants offer no basis to support their claim of
commercial information.  The existence of a settlement alone is not commercial information that
may be protected under section 107 of the Bankruptcy Code.

### *iii.     The Settlement Does Not Involve Scandalous or Defamatory Information*

69.     The Defendants claim that public disclosure of the Settlement "or other sensitive
information, including allegations in the litigation that Defendants contend are defamatory, has
the potential to be harmful to Defendants' ability to engage in future business dealings." (Motion
to Seal, ¶ 29).

70.     Although it is not clear whether the Defendants are asserting grounds to seal
under section 107(b)(2), the Defendants do not meet their burden under this provision any more
than they do under section 107(b)(1).

71.     In fact, nowhere in the Motion to Seal do the Defendants specify what
"allegations in the litigation" they contend are  defamatory or where these allegations may be
found.  The Complaint (Dkt. 4) and Amended Complaint (Dkt. 86) have been public for months
and contain among other things, various allegations of fraudulent transfers, conspiracy,

20

conversion,  unjust enrichment, and breach of fiduciary duty, by the Defendants. To the extent

Defendants assert the Chapter 7 Trustee's allegations are defamatory, the horse has been out of

the barn for quite some time.  Sealing the Settlement would do nothing to change this.

72.     Additionally, the Motion to Seal states that the Settlement will state that "no party

has admitted liability in any case and the parties have exercised their business judgment in

determining a settlement is appropriate.  Each of the parties entered into the Omnibus Settlement

Agreement without admitting the truth or falsity of any allegations, claims, or other potential

claims, or any fault, wrongdoing, or liability by any party."  (Motion to Seal, ¶ 16). This

language seems the opposite of defamatory.

73.     In contrast to the facts of the case at bar, in *Robbins v. Tripp*, Judge Morgan found

that sealing was appropriate under section 107(b) in an unusual bankruptcy case involving

attorney underperformance.  In *Robbins v. Tripp*, 510 B.R. 61 (E.D.Va. 2014), the Bankruptcy

Court directed counsel for a consumer lawyer, Mr. Tripp, to file a report with the Bankruptcy

Court detailing the problems with Mr. Tripp's practice and recommending solutions to these

problems.  The Bankruptcy Court instructed that the report be written "candidly and not as an

advocate to any party to this matter."  *Id*. at 64.  Counsel filed the report and Mr. Tripp moved to

seal the report, which the Bankruptcy Court granted.  In upholding the Bankruptcy Court, the

District Court found that the material contained within the report could be considered

scandalous.  The District Court explained:

> Under *In re Nunn*, the Bankruptcy Court should only seal a paper if no less drastic
> remedy exists. *In re Nunn,* 49 B.R. at 964. Here, the Report if unsealed would
> serve no useful purpose other than to embarrass the Appellee. This is not a typical
> bankruptcy case; it is more akin to a disciplinary proceeding in which the
> Bankruptcy Court found that no sanction was appropriate. The Appellee did not
> have an opportunity to rebut the allegations contained in the Report. Furthermore,
> it would make public information that normally would be protected by the
> attorney-client privilege. *See United States v. Jones*, 696 F.2d 1069, 1072 (4th

Cir. 1982) (setting for the test for the application of the privilege) (*quoting United States v. United Shoe Mach. Corp.,* 89 F. Supp. 357, 358-59 (D. Mass. 1950)). Appellee's counsel filed the Report to protect his client's interests, and the Bankruptcy Court acted to ensure to the public that a member of its bar was performing at an appropriate level. Thus, sealing the Report was a proper action.

*Id.* at 17-18 (emphasis added).

74.     The material sealed in *Tripp* was specifically prepared by an attorney at the direction of the Bankruptcy Court for the purpose of candidly setting forth Mr. Tripp's problems with his law practice and solutions for remediation.  The District Court compared this exercise to an attorney disciplinary proceeding, which in Virginia, portions of which are unavailable to the public.  *Id.* at 17; *See also* Rules of the Supreme Court of Virginia, Part 6, Section IV, Paragraph 13-30, Procedure for Disciplining, Suspending, and Disbarring Attorneys, Confidentiality of Disciplinary Records and Proceedings.

75.     Unlike *Tripp*, the case at bar is not atypical in a Chapter 7 asset bankruptcy case. The Debtor and the Defendants here are corporations.  The counts involve claims of fraud, alter ego, and fraudulent conveyances—not atypical counts in an adversary proceeding to recover assets for a bankruptcy estate.   The Settlement in this case, the terms of which involve a sum of money, mutual releases, and a supplemental fee payment to Quinn, is  not comparable to *Tripp*'s candid report detailing an attorney's underperformance and proposing solutions for improvement.

76.     This Court should decline to find that the Defendants have met their burden to prove the Settlement contains scandalous or defamatory matter that should be sealed from public view.

**E.    The Court Hearing Should Not Be Sealed**

77.    Bankruptcy Rule 5001(b) provides in part: "All trials and hearings shall be conducted in open court and so far as convenient in a regular court room."  Fed. R. Bankr. P. 5001(b).

78.    Bankruptcy Rule 9018 does permit a court to "make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information."  Fed. R. Bankr. P. 9018.

79.    Bankruptcy courts have sought to harmonize the principals embodied in section 107(a) and Bankruptcy Rule 5001(b) – public access – with the principals embodied in sections 107(b) and (c) and Bankruptcy Rule 9018 – protecting confidential information.

80.    Some courts have acknowledged that Bankruptcy Rule 9018 can be applied to seal a hearing, despite Rule the general presumption of openness and Rule 5001(b).  "[I]n appropriate cases, [Bankruptcy Rule 9018] trumps [Bankruptcy Rule 5001(b)]."  *In re Global Crossing Ltd.*, 295 B.R. 720, 724 (Bankr. S.D.N.Y. 2003).

81.    That said, courts require that limits on public access to a hearing "should [be done] as narrowly as possible."  *See Global Crossing*, 295 B.R. at 724.  "Proceedings should be held *in camera* only to the extent required to protect the particular interest.  For a hearing to be held *in camera*, the party seeking protection should demonstrate good cause by evidencing that disclosure will result in a clearly defined, serious injury."  *Id.* (quoting 9 *Collier on Bankruptcy* ¶ 5001.03[2] (15th ed. Rev. 2003)).  *See also Farmland Industries*, 209 B.R. at 369-370 (requiring open hearing on DIP financing motion that called for sale of assets prior to closing the courtroom to all but a limited number of parties to hear evidence on two narrow factual issues).

82.    As set forth above, the allegations against the Defendants have been public for months and the Settlement terms have been widely publicized by the news media.  Sealing any

23

hearings on this Settlement is inconsistent with the Bankruptcy Code and would undermine the integrity of the system.

**F.      Redaction of April 19, 2022 Hearing Transcript is Not Warranted**

83.      In addition to the broad requests to seal numerous documents in this case, the Defendants also seek to redact the transcript from the April 19, 2022 hearing, during which time material terms of the Settlement were placed on the record (Dkt. 200) (the "April 19th Transcript").

84.      The Defendants attached a proposed redacted version of the April 19th Transcript to their Motion to Seal, which included sweeping requests for redactions.

85.      As previously stated in this pleading and by the Defendants' own admission, confidentiality and sealing were not a provision of the Settlement.

86.      Additionally, the Defendants' failure to assert confidentiality at the hearing or to take steps to prevent dissemination of the Settlement act as a waiver of their ability to seek retroactive redaction now.

87.      The terms of the Settlement have already been made public by various news organizations.

88.      Even if the Defendants' inaction and admissions are not sufficient for this Court to find that the redaction of the April 19th Transcript is unwarranted, the sough redactions go beyond the Judicial Conference Policy of Privacy and Public Access to Electronic Case Files ("Policy"), which provides that official transcripts may be redacted of personal data identifiers upon notice and request of a party that personal data identifiers be redacted.  The Policy provides

that data identifiers are "Social Security numbers, names of minor children, financial account numbers, dates of birth, and, in criminal cases, home addresses."[8]

89.    The requested redactions to the April 19th Transcript go well beyond seeking to redact any personal data identifiers. In fact, they go well beyond even the terms of the Settlement they now seek to seal.

90.    A review of the Defendants' proposed redactions suggests that the Defendants seek to redact any statement they do not like, including comments by this Court and the United States Trustee.

91.    Even if this Court were to allow for redaction at this point, this broad and overly expansive attempt should not be allowed.

92.    Redacting documents to remove only protectable information is preferable to wholesale sealing. The policy favoring public access *supports making public as much information as possible* while still preserving confidentiality of protectable information." *In re Williams*, 2017 Bankr. LEXIS 4183 (Bankr. W.D. Va. 2017) (quoting *In re Borders Group, Inc.*, 462 B.R. 42, 47 (Bankr. S.D.N.Y. 2011)) (emphasis added).

93.    The District Court for the Southern District of Texas refused to seal a hearing transcript where the movant had not identified which particular portions of the transcript were "potential fodder for improper use." *Alam v. Fannie Mae*, 2007 WL 101803, at *2 (S.D.Tex. Jan.5, 2007).

94.    For these reasons, the United States Trustee asserts that the Defendants do not have a valid basis to seek redaction of the April 19, 2022 Transcript.

---

[8] The Policy may be found at https://www.uscourts.gov/rules-policies/judiciary-policies/privacy-policy-electronic-case-files

## **CONCLUSION**

The Bankruptcy Code and Rules place narrow limits upon sealing documents.  The requirements of the Bankruptcy Code and Rules express the necessary public interest in this matter requiring full disclosure.

WHEREFORE, the United States Trustee requests that the Court deny the Motion To Seal and grant such other and further relief as the Court deems appropriate.

Respectfully Submitted,

Dated: May 23, 2022                          JOHN P. FITZGERALD, III
                                             Acting United States Trustee Region 4


By:  /s/ Kathryn R. Montgomery
Kathryn R. Montgomery (VSB 42380)
Assistant United States Trustee
Office of the United States Trustee
701 E. Broad St., Ste. 4304
Richmond, VA 23219
Ph: (804) 771-2310
Fax: (804) 771-2330
Kathryn.Montgomery@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of May, 2022, a true and correct copy of the foregoing document was served via first class mail and/or electronic mail upon: (i) all parties and counsel requesting service via the Court's ECF system, (ii) the Defendants, (iii) the 20 largest unsecured creditors as listed on the Debtor's schedules, (iv) the Service List as defined by the governing Case Management Order, (v) Foley & Lardner,  (vi) all Persons identified in paragraph 4 of the FAO Procedures Order, and (vii) counsel for the Chapter 7 Trustee.

By:  /s/ Kathryn R. Montgomery
Kathryn R. Montgomery, Esq.