IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re:

LECLAIRRYAN PLLC,

                Debtor.

Chapter 7

Case no. 19-34574 (KRH)

Lynn L. Tavenner, as Chapter 7 Trustee,

        Plaintiff,

v.

ULX Partners, LLC, UnitedLex Corporation, and
ULX Managers, LLC

        Defendants.

Adv. Pros. 20-03142 (KRH) and

21-03095 (KRH)

Lynn L. Tavenner, as Chapter 7 Trustee,

        Plaintiff,

v.

CVC Capital Partners, Daniel Reed, Nicholas
Hinton, Josh Rosenfeld, P. Douglas Benson

        Defendants.

Kathryn R. Montgomery, AUST (VSB No. 42380)
Shannon Pecoraro, Esq. (VSB No. 46864)
Jason B. Shorter, Esq. (VSB No. 80929)
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219
Telephone: (804) 771-2310
Facsimile: (704) 771-2330

## SUPPLEMENTAL OBJECTION OF THE UNITED STATES TRUSTEE TO TRUSTEE'S MOTION AND MEMORANDUM OF LAW FOR ENTRY OF AN ORDER (I) APPROVING (A) JUDICIALLY MEDIATED SETTLEMENT AND (B) COMPENSATION TO COUNSEL INCLUDING AN IMPROVIDENT PAYMENT UNDER SECTION 328(A); AND (II) GRANTING RELATED RELIEF

John P. Fitzgerald, III, Acting United States Trustee for Region Four (the "United States Trustee"), by and through the undersigned counsel, files this Objection to the Chapter 7 Trustee's Motion and Memorandum of Law for Entry of an Order (I) Approving (A) Judicially Mediated Settlement and (B) Compensation to Counsel Including an Improvident Payment Under Section 328(a); and (II) Granting Related Relief (Main Dkt. 1328 and Dkt. 211) (the "9019 Motion"). [1] The United States Trustee asks that the Court strike the Improvident Payment term from the Settlement Agreement and 9019 Motion and approve the remainder of the Settlement Agreement and 9019 Motion and grant such other and further relief as the Court deems appropriate. In support hereof, the United States Trustee respectfully states as follows: [2]

### INTRODUCTION

The $21 million dollar settlement appears to be an excellent result, and the United States Trustee does not object to, or question the Chapter 7 trustee's business judgment as to the amount of the settlement or the mutual releases contained therein. But there is one term of the settlement as currently structured that is inconsistent with the Bankruptcy Code and to which the United States Trustee does strongly object. Under the terms of the settlement as presented, up to $10.5 million dollars—50% of the settlement proceeds—would be paid to the Chapter 7 trustee's counsel, Quinn

---

[1] "Main Dkt." refers to the docket in the main Bankruptcy Case. "Dkt." refers to the docket in the United Lex Adversary Proceeding, while "Reed Dkt." refers to the docket in the Reed Adversary Proceeding (both as defined herein and, collectively, the "Adversary Proceedings").

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the 9019 Motion.

Emanuel ("Quinn"), despite this Court's previous Order approving Quinn's 35% contingency fee for litigation matters.

To date, Quinn has received $5,777,138.00 in fees on its retention in the LeClairRyan bankruptcy case. Foley & Larder, LLP ("Foley"), the predecessor firm where two lawyers for the Chapter 7 Trustee previously practiced, has received $2,102,086.00 in fees representing the Chapter 7 Trustee in the case. Should Quinn be compensated at its Court-approved 35% contingency fee for this settlement, it would be entitled an additional $7.35 million dollars in fees. However, this settlement contains an additional term that would provide Quinn up to an additional $3.15 million dollars over and above the $7.35 million dollar contingency fee—*in a case that settled before trial*.

The justification for the additional payment to Quinn—termed the "Improvident Payment"-is that the ██████████████████████████████████████████████████. ███████████ ██████, as incorporated by the Federal Rules of Bankruptcy Procedure. The Chapter 7 Trustee, through counsel, argues in the 9019 Motion that ███████████████ ██████████████████████████ could not have anticipated it when it agreed to represent the Chapter 7 Trustee on a 35% contingency fee basis. As a consequence, the Chapter 7 Trustee further argues that Quinn's lawyers had to work longer and harder than they envisioned when they entered into an attorney-client relationship with the Chapter 7 Trustee and thus should receive an additional $3.15 million dollars more in fees from the proceeds of this settlement.

To be clear, the United States Trustee is not asserting that Quinn is not entitled to its 35% contingency fee from this settlement nor does the United States Trustee ██████████████ ████████████████████████████████████. To the contrary, the Chapter 7 Trustee's ██████████████████████████████████████████████████

3



This Court approved Quinn's retention on June 28, 2021, and in that time, Quinn has taken no cases to trial and has received $5,533,500.00 in fees. Quinn has and continues to reap the rewards of its fee arrangement. Just because the ULX litigation has taken longer and required more effort than the other matters settled in the LeClairRyan bankruptcy case does not mean that Quinn struck a bad deal with the Chapter 7 Trustee and should receive an additional $3.15 million dollars from the estate.

During the May 25, 2022, sealed portion of the hearing before this Court, there was a

discussion regarding whether the Improvident Payment ████████████████████████

████████████████████████████████ . ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

As set forth in more depth below, the United States Trustee objects to the 9019 Motion to

the extent that it provides for the Improvident Payment for the following reasons:

- The Settlement May Be Approved Without Awarding the Improvident Payment

5

- The Improvident Payment Must Analyzed Under the Standards of § 328(a) of the Bankruptcy Code, Not Bankruptcy Rule 9019

- The Chapter 7 Trustee and Quinn Have Not Established that the Improvident Payment Is Warranted Under § 328(a) of the Bankruptcy Code

- Even if the Requirements of § 328(a) Were Met, There is Insufficient Evidence as to the Appropriate Amount of the Improvident Payment

- ███████████████████████████████████████

- The Improvident Payment Provision of the Settlement Agreement Is Outside the Scope of the FAO Procedures

## JURISDICTION

1.    This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§157 and 1334, and the delegation made by the United States District Court by Order dated August 15, 1984.

2.    The United States Trustee files this Objection in furtherance of his duties and responsibilities pursuant to 28 U.S.C. §586 and 11 U.S.C. § 307.

## FACTUAL BACKGROUND

3.    On September 3, 2019 (the "Petition Date"), the Debtor filed for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as thereafter amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Bankruptcy Court").

4.    On October 4, 2019, the Debtor's Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code.  (Main Dkt. 140).  Lynn L. Tavenner was appointed Chapter 7 Trustee (the "Chapter 7 Trustee").

6

*Special Counsel Retention Applications and Fees Awarded to Date*

5.      On October 4, 2019, this Court entered an Order approving the retention of
Tavenner & Beran PLC to represent the Chapter 7 Trustee on an hourly basis. (Main Dkt. 142
(retention application), 152 (order)).

6.      On February 10, 2020, the Court entered an Order approving the retention of the
law firm of Foley as special counsel, pursuant to § 327(e) of the Bankruptcy Code, to represent
the Chapter 7 Trustee in litigation matters. The Court ordered that Foley be compensated on an
hourly basis for legal services performed during the "Investigative Phase," and that, pursuant to §
328(a), Foley be compensated on a 30% contingency fee basis for legal services performed during
the "Litigation Phase." (Main Dkt. 300 (retention application), 342 (order)).

7.      Subsequently, on May 18, 2021, the primary Foley lawyers handling the
representation of the Chapter 7 Trustee, Erika L. Morabito and Brittany Nelson, moved their
practice to the law firm of Quinn.

8.      On June 7, 2021, the Chapter 7 Trustee filed an application to retain Quinn as her
special counsel to replace Foley to investigate and pursue various causes of action. (Main Dkt.
908 (retention application), 937 (order)). [3] More specifically, the Chapter 7 Trustee was seeking
to retain Quinn on a contingency fee basis on certain matters (the "Contingency Matters"):[4]

---

[3] As to the prior representation by Foley, the Quinn retention application noted that "Quinn Emanuel and Foley
understand the necessity to, and have agreed to, coordinate with each other to transition the designated matters to
Quinn Emanuel. Said transition shall result in no additional cost to the Estate." Main Dkt. 908 at ¶17. Moreover,
the two firms acknowledged that to the extent that Foley was entitled to any renumeration for services rendered in
connection with Contingency Matters, the compensation to be awarded (together with the fees provided Foley)
would not exceed the 35% contingency fee. Main Dkt. 908 at ¶20.

[4] The Contingency Matters include the following:

      a.  Investigation of the Estate's claims and causes of action (collectively the "Claims" and each a
          "Claim") against certain individuals, entities, and/or former attorneys of the Debtor and/or those

9.      The Chapter 7 Trustee also sought to retain Quinn on an hourly basis in connection with other related matters that may have required legal services, "including but not limited to, proceedings to enforce a judgment including with respect to liens, probate proceedings, disputes with the Debtor's insurance company regarding coverage, and/or preparation for, and attendance at, omnibus hearings before the Bankruptcy Court if said attendance is not solely related to pursuit of one or more claims" (the "Non-Contingency Matters"). Main Dkt. 908 at ¶ 15.[5]

10.     As to Contingency Matters, the retention application contemplated a contingency fee of 35% – 5% higher than what the Chapter 7 Trustee had previously agreed to with Foley (the "Contingency Fee"). Main Dkt. 908 at ¶ 19. The Contingency Fee was to be calculated based on:

> any recovery of funds actually received by the Estate with respect to a particular Claim, whether such recovery of funds actually received by the Estate is by way of settlement, judgment, compromise or otherwise (including from proceeds of insurance) after deduction of the amount of costs and expenses (other than the Trustee's own fee and any fees charged by the Trustee's law firm and/or any other professional employed by the Trustee except as otherwise provided in the Engagement Letter) paid by the Trustee (or by Quinn Emanuel on behalf of the Trustee, to the extent Quinn Emanuel agrees to do so as a convenience) in connection with such Claim.

*Id.*

---

acting in concern with them, including but not limited to ULX Partners, LLC and UnitedLex Corporation, and possibly others;
b.  Determining responsible parties;
c.  Preparing, filing, and/or prosecuting one or more lawsuits;
d.  Settlement procedures and negotiations;
e.  Prosecution of claim(s) until settlement, award, or judgment is obtained; and
f.  If judgment is obtained in the Trustee's favor, opposing an opposing party's motion for new trial (if any);
g.  Negotiations regarding possible settlement with any Defendant.

Main Dkt. 908 at ¶ 14.

[5] The Engagement Letter attached to the Quinn retention application further provided:
This Agreement does not cover other related matters that may arise and may require legal services (for example, disputes with the Debtor's insurance company regarding coverage or preparation for, and attendance at, omnibus hearings before the Bankruptcy Court if said is attendance is not solely related to pursuit of one of more Claims).

11.    The Quinn retention application further emphasized that "[f]or Contingency Matters, **in no event** will the total amount paid by the Estate to any and all special counsel exceed the Fee for each such matter." Main Dkt. 908 at ¶ 20.

12.    For Non-Contingency Matters, Quinn would charge its standard hourly rates, subject to a 10% discount. *Id.* The Engagement Letter attached to the Quinn retention application listed the 2021 hourly billing rates for the engagement to range between $1660.50 (for senior partners) to $441.00 (for first-year law clerks), taking into account the 10% discount. Main Dkt. 908, Exhibit 1, Section (d).

13.    On June 28, 2021, the Court entered the Order authorizing the retention and employment of Quinn in the various litigation matters pursuant to §§ 327(a), 327(e), and 328(a) of the Bankruptcy Code. Main Dkt. 937. As set forth in the retention application, the retention order approved the dual fee structure described above whereby Quinn would bill the estate (a) on a 35% contingency fee basis for the Contingency Matters and (b) on an hourly basis for the Non-Contingency Matters.

14.    As for the hourly rates awarded for the Non-Contingency Matters, the Order expressly provided that "Quinn Emanuel and the Trustee shall mutually agree **in writing** before any services are provided for Non-Contingency Matters." *Id.* at ¶ 4 (emphasis added). Moreover, the order emphasized that "[a]pproval of Quinn Emmanuel's fees shall be subject to further order of the Court." *Id.* at ¶ 6.

15.    Between 2020 and 2021, Foley filed a total of four interim fee application seeking both hourly and contingency fees, and was awarded a total of $2,203,634.00 (including expenses), as set forth below:

9

| Date | Main Dkt. No. | Hourly/Investigative | Contingency | Expenses |
|---|---|---|---|---|
| 6/24/21 | 931 | 146,957.00 | 960,429.00 | 34,577.00 |
| 2/10/21 | 779 | 163,266.00 | 75,254.00 | 30,528.00 |
| 10/16/20 | 657 | 433,213.00 | 41,040.00 | 26,658.00 |
| 8/5/20 | 587 | 271,222.00 | 10,705.00 | 9,785.00 |
| Total | | 1,014,658.00 | 1,087,428.00 | 101,548.00 |

16.     Between 2021 and 2022, Quinn also filed three interim fee applications seeking both hourly and contingency fees, and was awarded a total of $5,932,521.00 (including expenses), as set forth below:

| Date | | Hourly/Investigative | Contingency | Expenses |
|---|---|---|---|---|
| 4/12/22 | 1282[6] | 66,354.00 | 200,550.00 | 98,341.00 |
| 12/22/21 | 1168 | 93,541.00 | 4,527,600.00 | 29,096.00 |
| 10/13/21 | 1075 | 83,743.00 | 805,350.00 | 27,946.00 |
| Total | | 243,638.00 | 5,533,500.00 | 155,383,.00 |

17.     On March 15, 2022, Quinn filed a Supplement to its third interim fee application seeking additional fees (the "Supplemental Third Interim Fee Application"). Main Dkt. 1249. More specifically, in addition to the fees and costs sought in its third interim fee application, Quinn sought an additional $24,150.17 in hourly fees and $6,942.27 in costs arising from the Mediation (as defined herein) and pleadings that the Chapter 7 Trustee intended to file with the Court related to the Mediation. As set forth in more detail in the Supplemental Third Interim Fee Application:

> The Additional Fees and Additional Costs were incurred in connection with a mediation held on March 5 and March 6, and pleadings that the Trustee prepared

---

[6] A fee application (Main Dkt. 1245) and a supplemental fee request (Main Dkt. 1249) were filed. The fee app sought $48,063.00 in fees. The supplemental fee application sought $24,150.00 in fees, for a total of $72,213.00. Following discussion with the United States Trustee, Quinn reduced the amount sought by $5,859.00. The total approved by this Court was $66,354.00.

and intended on filing with this Court on Friday, March 11, 2022. These pleadings were also related to this Court's March 7, 8, and 10 orders [Dkt. Nos 177. 178, and 183] in [this Adversary Proceeding] . . . . Prior to filing the pleadings referenced herein (which included a motion, exhibits, and several declarations related thereto), and pursuant to Bankruptcy Rule 7037 and Local Rule 26, the parties held a meet and confer on the afternoon of March 11, 2022 (the "Meet and Confer"). As part of the Meet and Confer, counsel for the Trustee explained the contents of her motion and the relief being requested therein. Shortly after the Meet and Confer, the parties were able to reach a resolution regarding the relief sought in the motion, thereby eliminating the Trustees need to file said motion. The Additional Fees and Additional Costs being sought . . . will be reimbursed to the Estate by Greenberg Traurig and/or United Lex Corporation.

*Id.* at ¶ 4.

18.    Notably, in the Supplemental Third Interim Fee Application, Quinn notes that while the firm had incurred $69,416.30 of fees that it could seek as additional hourly fees, it was only seeking $24,150.17 on an hourly basis in conjunction with the supplement, while reserving the right "to seek the remainder of these fees from the Estate in future fee applications as Contingent Fees sought" in connection with the UnitedLex Adversary Proceeding (as defined herein).[7]

19.    No objections were filed to the Supplemental Third Interim Fee Application, and on April 12, 2022, the Court entered an Order approving Quinn's third interim fee application approving Quinn's fees and expenses, including the supplemental fees requested. Main Dkt. 1282.

***FAO Procedures***

20.    On May 14, 2020, the Chapter 7 Trustee filed a *Motion for an Order Establishing Procedures Regarding the Prosecution of Actions Involving Former Attorneys and Certain Others and Memorandum in Support Thereof* (the "FAO Procedures Motion") (Main Dkt. 457). The FAO Procedures Motion was approved by Order of this Court (Main Dkt. 533), as

---

[7] For purposes of full disclosure, the Supplemental Third Interim Fee Application did note, however, that "nothing herein shall prevent the Trustee from seeking additional fees and costs on behalf of the Estate for additional matters not raised in the Meet and Confer."

amended/supplemented by additional Orders of this Court (Main Dkt. 929 and 982) (collectively, the "FAO Order").

21.    The FAO Order established procedures for matters involving, among others, former attorneys of the Debtor, persons receiving transfers for the benefit of former attorneys, ULX Partners, UnitedLex Corporation, and various insurance companies.  Main Dkt. 457 at ¶ 9.

22.    Among other things, the FAO Order established a mediation process for all matters covered by the FAO Order.  Main Dkt. 533.

### *Adversary Proceedings and Mediation Process*

23.    On October 26, 2020, the Chapter 7 Trustee filed the current adversary proceeding against ULX Partners, LLC and UnitedLex Corporation (as amended, the "UnitedLex Adversary Proceeding").  ULX Partners, LLC, UnitedLex Corporation and ULX Manager, LLC, shall be referred to collectively as the "ULX Defendants."

24.    On September 2, 2021, the Chapter 7 Trustee filed a separate adversary proceeding (No. 21-03095-KRH) (the "Reed Adversary Proceeding") against CVC Capital Partners as well as UnitedLex Corporation's Chief Executive Officers, Daniel Reed, its Chief Financial Officer, Nicholas Hinton, as well as Josh Rosenfeld and P. Douglas Benton (collectively the "Reed Defendants").  The ULX Defendants and the Reed Defendants shall be referred to collectively as the "Defendants." The UnitedLex Adversary Proceeding and Reed Adversary Proceeding shall be referred to collectively as the "Adversary Proceedings."

25.    After the Court granted a motion to amend the complaint in the UnitedLexAdversary Proceeding, a two-week trial in that adversary proceeding was scheduled to begin on April 14, 2022.  Dkt. 144.

26.     On January 28, 2022, the ULX Defendants filed a Motion for Summary Judgment (Dkt. 133) (the "Motion for Summary Judgment") and associated documents, seeking to dismiss certain claims.  The Chapter 7 Trustee opposed the Motion for Summary Judgment.  Dkt. 152.

27.     On February 4, 2022, at the joint request of the Chapter 7 Trustee and the ULX Defendants, the Court entered an Order in the United Lex Adversary Proceeding (the "Mediation Order") appointing the Honorable Frank J. Santoro, the Chief Judge of the United States Bankruptcy Court for the Eastern District of Virginia, as the judicial mediator (the "Mediator"), to conduct a mediation (the "Mediation") among the Chapter 7 Trustee, the ULX Defendants, Mr. Reed and Mr. Hinton in their individual capacities, and insurance carriers for the Defendants.  Dkt. 142.

28.     The Mediation Order expressly provided that "[a]ny resolution that is reached will be subject to Court approval after notice and opportunity for hearing in accordance with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules."  Dkt. 142 at ¶8.

29.     On February 11, 2022, the Chapter 7 Trustee filed a Motion for Leave to Amend the First Amended Complaint (Dkt. 147) (the "Second Motion to Amend") and to place the associated documents under seal.  The Second Motion to Amend sought to add an additional count against United Lex Corporation and ULX Manager LLC.  The ULX Defendants opposed the Motion to Amend (Dkt. 168). The Second Motion to Amend was held in abeyance pending the Mediation and the now pending 9019 Motion.

30.     Between March 5 and April 13, 2022, the parties engaged in the Mediation in an effort to resolve the Adversary Proceedings.

31.     On March 8, 2022, the Mediator entered the "Order Directing Defendants to Produce Insurance-Related Information" (Dkt. 177) (the "March 8 Insurance Order") and the

"Order Directing the Exchange of Information Between the Defendants, Nicholas Hinton, Daniel Reed, the Insurance Companies and the Chapter 7 Trustee" (Dkt. 178).

32.      On March 9, 2022, the Bankruptcy Court entered an order that the trial in this matter be continued until May 17, 2022, and also continued other pending motions in the case. Dkt. 184.

33.      On March 18, 2022, the ULX Defendants and Reed and Hinton produced approximately 5,000 pages of documents pursuant to the March 8 Insurance Order.  Dkt. 211 at ¶ 30.  Following various conferences, additional documents were produced on March 24 and March 28, 2022 (the "Supplemental Production").  *Id.* at ¶ 31.

34.

### Settlement Agreement

35.      On April 13, 2022, after continued negotiations and sharing of information, a global and comprehensive proposal was made by the Mediator to resolve all of the pending claims in the Adversary Proceedings.  *Id.* at ¶ 35.

36.      The hearing on the Second Motion to Amend was scheduled for April 19, 2022; however, right before the scheduled hearing, the parties involved in the Adversary Proceedings agreed to the Mediator's proposal (the "Settlement Agreement").  *Id.* at ¶ 36.

37.      At the April 19, 2022, hearing before this Court, the parties announced that a collective Settlement Agreement had been reached in the Adversary Proceedings; and the material terms of the Settlement Agreement were set forth on the record with the participation of counsel

for the Chapter 7 Trustee and counsel for the Defendants, including special insurance counsel for ULX Partners.

38.     On May 11, 2022, the ULX Defendants filed a Motion to Seal. (Main Dkt. 1325 and Dkt. 207), seeking to file under seal the Settlement Agreement, the 9019 Motion, the transcript of the April 19, 2022, hearing, and various other documents related to the Adversary Proceedings (the "Motion to Seal"). The Motion to Seal further sought that the hearing concerning the Motion to Seal and the 9019 Motion be held *in camera*.

39.     The United States Trustee filed an objection to the Motion to Seal. Dkt. 215. A hearing on the Motion to Seal was held on May 25, 2022. The Court granted the Motion to Seal on an interim basis, with final decision deferred until June 8, 2022, to be heard on the same date as the 9019 Motion.

40.     On May 18, 2022, the Chapter 7 Trustee filed the 9019 Motion. (Dkt. 211).

41.     The 9019 Motion seeks the entry of an order (a) approving the Settlement Agreement; (b) authorizing the effectiveness of the Settlement Agreement on behalf of the Estate; (c) approving the Contingency Fee payment to Quinn; and (d) approving the Improvident Payment to Quinn. *Id.* at ¶ 2.

42.     The key terms of the Settlement Agreement, as summarized in the 9019 Motion, are as follows: (a) Continental Casualty Company (a CNA entity) shall pay the estate the sum of $5,000,000.00; (b) Columbia Casualty Company (also a CNA entity) shall pay the estate the sum of $7,250,000.00; (c) Travelers Casualty and Surety Company of America shall pay the estate the sum of $500,000.00; (d) the ULX Defendants, CVC, Mr. Reed, Mr. Hinton and other defendants named in the Adversary Proceedings shall pay the estate the sum of $8,250,000.00, which sum would be paid in three separate installments; (f) various consensual releases amongst parties to the

Settlement Agreement; and (g) ULX Partners, LLC agreed to waive the ULX Partners' Proofs of Claim. *Id.* at ¶ 37.

43.     Notably, the Settlement Agreement also seeks approval of a payment to Quinn of its Contingency Fee of 35% of the total amount of the payments that the estate is to receive -- $21,000,000.00 (the "Total Settlement Payment"). *Id.* In addition, the 9019 Motion seeks authority for the Chapter 7 Trustee to pay Quinn the Improvident Payment in an amount not to exceed $3,150,000.00 based on the assertion that "the terms of the Quinn Retention Order have proven to be improvident in view of circumstances in this matter." *Id*.

## LEGAL ARGUMENT

### I.     The Settlement May Be Approved Without Awarding the Improvident Payment

The United States Trustee does not object to the Chapter 7 Trustee settling the Adversary Proceedings which have spanned almost over a two-year period and have been extremely contentious and agrees that the Total Settlement Payment of $21 million is an overall good result for the estate. The United States Trustee also does not contest the payment of the 35% Contingency Fee to be paid to Quinn, as previously approved by the Court under § 328(a) upon the firm's retention. The United States Trustee does contest, however, that under the terms of the Settlement Agreement, Quinn stands to receive 50% of the Total Settlement Payment – a 15% increase of its agreed-upon Contingency Fee.

Disallowing the Improvident Payment would not be fatal to this settlement. Under the express terms of the 9019 Motion, the settlement can be approved even if this Court does not approve the Improvident Payment:

> Further, just like in TRU, the Bankruptcy Court here may exercise its own gatekeeper role of determining whether the Improvident Payment is warranted and reasonable. Thus, pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019, the Bankruptcy Court should approve the Settlement Agreement,

regardless of whether the Improvident Payment separately qualifies as a payment under section 328(a) of the Bankruptcy Code.

(9019 Motion, Para. 63.)

As the 9019 Motion specifically provides that approval of the Improvident Payment is not necessary for approval of the Settlement Agreement, for the reasons set forth below, this Court should disallow the Improvident Payment and approve the Total Settlement Payment to the estate and compensate Quinn according to the terms upon which this Court previously approved its employment.

## II. The Improvident Payment Must Analyzed Under the Standards of § 328(a) of the Bankruptcy Code, Not Bankruptcy Rule 9019

The United States Trustee does not dispute the Rule 9019 standard that applies to the approval of settlement agreements as articulated by the Chapter 7 Trustee. In evaluating whether to approve a settlement under Bankruptcy Rule 9019, the Court should consider: (1) the probability of success in the litigation; (2) the complexity expense and likely duration of the litigation; (3) all other factors relevant to making a full and fair assessment of the wisdom of the proposed compromise, including potential difficulties in collection, if any; and (4) whether the proposed compromise is fair and equitable to the debtor, its creditors, and other parties in interest. *Fotner v. Hotel Street Capital, LLC,* 2021 WL 1022585, *3 (E.D. Va. Feb. 5, 2021) (*citing In re Austin*, 186 B.R. 397, 400) (Bankr. E.D. Va. 1995)). *See also* 9019 Motion at ¶ 42.

The Improvident Payment, however, must be analyzed under the more stringent standard articulated in Bankruptcy Code § 328(a). Bankruptcy Rules, such as Rule 9019, shall not abridge, enlarge, or modify any substantive right. 28 U.S.C. § 2075. Moreover, the "general language of a [Bankruptcy Code] statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment." *RadLAX Gateway*

*Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012) (holding that general authorizations in the Bankruptcy Code cannot be used to avoid specific statutory provisions). This rule "is particularly true where ... Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." *Id.* (internal quotation and citation omitted); *see also In re Keren Ltd. P'ship*, 189 F.3d 86 (2d Cir. 1999). The strict requirements imposed by § 328(a) must be the standard upon which the Improvident Payment is reviewed – not the factors used to review Rule 9019 settlements. The plain meaning of the Bankruptcy Code's text is clear and determinative. Where Congress has enacted § 328(a) to govern administrative expense paid to professionals from the bankruptcy estate, the broader "fair and equitable" standard governing Rule 9019 settlements should not apply. *See In re Lehman Bros. Holdings, Inc.*, 508 B.R. 283, 289 (S.D.N.Y. 2014). For the reasons set forth in greater detail below, neither the Chapter 7 Trustee nor Quinn has met the requirements of § 328(a); accordingly, the Improvident Payment should not be awarded.

Even if the Court were to review the Improvident Payment under the Bankruptcy Rule 9019 standard – which it should not – the Court should deny that any additional fee be paid to Quinn. In the case of *In re Hale-Halsell Co.*, the court denied a settlement agreement with respect to a request for a fee enhancement under the standard of Rule 9019. *In re Hale-Halsell Co.*, 391 B.R 459 (Bankr. N.D. Okla. 2008). In that case, Hale Halsell Company filed a Chapter 11 proceeding. A committee of unsecured creditors was appointed, and it employed two law firms. At the end of the case, one of the committee's law firms filed a final fee application seeking a blended hourly rate of $325.00 per hour, rather than the $275.00 hourly rate that it had agreed to in the original retention application. The firm argued that the request for the fee enhancement was warranted because (a) the bankruptcy case was more complex than originally anticipated and (b)

18

while it was originally determined that most of the work could be performed by more junior

attorneys, it was later determined that the services to be performed required attorneys at a more

senior level.   Ultimately, a settlement was reached whereby parties agreed to an enhancement fee

of $25,000.00, rather than the $52,320.00 originally sought; and the firm sought court approval of

the proposed compromise.

Despite there being no objections to the settlement, the court in *Hale-Halsell Co.*

considered the standards for approval of a compromise generally applicable to motions seeking

the approval of settlements pursuant to Bankruptcy Rule 9019.  In considering the "likelihood of

success on the merits," the court noted that the complexity of the case, the claim that the firm

expected the case to be handled by less experienced and less expensive attorneys, and the

substantial return to unsecured creditors were foreseeable at the time; accordingly, the likelihood

of the firm prevailing on the "improvident" standard of § 328(a) was not likely.  *Id.* at 467.  As to

the "whether the settlement promotes the integrity of the judicial system," the court noted:

> This Court is troubled by the prospect of a system that allows the compensation
> arrangements to be changed after the fact, absent the most exception of
> circumstances. Bankruptcy is designed to be a transparent process, where creditors
> and the public can easily view and understand what is going on in any particular
> case.  Fee arrangements between professionals and a bankruptcy estate are to be
> equally transparent.  This transparency is clouded, if not made completely opaque,
> if fee arrangements can be routinely adjusted after the fact.  The Committee and the
> Court had the right to rely upon [the firm's] representation that its blended rate
> would not exceed $275 per hour, and the public had the right to rely upon the
> Court's retention order to that effect.  Modifying that order on the facts of this case
> would not promote the integrity of the bankruptcy system.

*Id.* at 469.  Finally, as to the "interests of the creditors" factor, the court stated that the interests of

creditors in bankruptcy center upon maximum recovery; accordingly, if the fee enhancement was

not paid, there would be more money paid to creditors.  *Id.*  Moreover, the court noted that the

creditors had a right to rely upon the representation made by the firm as it sought employment in

19

the case, just as they had the right to rely upon the order of the court that approved the firm's

retention.

Ultimately, in denying the motion seeking the approval of the compromise on the fee

enhancement, the court concluded:

> This Court is well aware of and agrees with the principle that compromises are to
> be favored in bankruptcy cases. However, the principle is not without its
> exceptions. The compromise presently before the Court fails to meet the standards
> contained in §328(a). It runs contrary to the representations made by [the firm] in
> its employment application and the order of the Court that authorized said
> employment. As such, it should not be approved.

*Id.* at 470. Similarly, here, even if the Court were to review the Settlement Agreement – and in

particular the Improvident Payment – under the standards for approval of a settlement pursuant to

Rule 9019, the factors weigh against its approval.

**III.    The Chapter 7 Trustee and Quinn Have Not Established that the Improvident
Payment Is Warranted Under § 328(a) of the Bankruptcy Code**

The 9019 Motion characterizes the Improvident Payment as "being directed by the

Mediator and being a material and integral part of the Settlement." The 9019 Motion further argues

that Quinn is entitled to the Improvident Payment pursuant to § 328(a). While making broad

arguments about Quinn having to spend a substantial amount of time that it could not have

anticipated to deal with ████████████████ and the unanticipated developments resulting

therefrom, the justifications provided for the Improvident Payment, an increase of the Contingency

Fee by over 15%, falls short of meeting the high hurdles of § 328(a).

Section 328(a) provides that "the court may allow compensation different from the

compensation provided under such terms and conditions after the conclusion of such employment,

[only] if such terms and conditions prove to have been improvident in light of developments not

capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. §

328(a). Section 328(a) operates to limit risk against being paid less than agreed when in hindsight the amount appears excessive. However, it also applies with equal force to limit the risk that professionals will seek to be paid more than they agreed to accept when they obtain a better result than anticipated. *See* 3 Collier On Bankruptcy 328.03[4][b], at 328-30 (2020) ("Section 328(a) thus operates as a two-way ratchet: it may preclude reduction of compensation that in hindsight appears excessive, but it also may preclude an increase of compensation that in hindsight appears inadequate. Section 328(a) ultimately provides a device whereby a debtor and its professionals may allocate risk and reward on an *ex ante* basis and generally have that allocation respected *ex post*.").

"[I]f the terms of their compensation are approved as part of their retention under § 328(a), professionals largely lock in how they will be paid, with no later second-guessing as to reasonableness unless such terms prove to have been improvident in the light of developments not capable of being anticipated when they were fixed by the retention order." *In re Frontier Commc'ns Corp.*, 623 B.R. 358, 362 (Bankr. S.D.N.Y. 2020). Varying compensation after approval under § 328(a) presents a "high hurdle" as the standard requires "show[ing] not merely that a compensation adjustment is appropriate considering subsequent developments that were previously unforeseen or unanticipated by the parties; instead, the movant is tasked with the weightier burden of proving that the subsequent developments were **incapable of being anticipated** at the time the engagement was approved." *In re ASARCO, L.L.C. (ASARCO)*, 702 F.3d 250, 258 (5th Cir. 2012) (emphasis added); *but see In re Janata*, 395 B.R. 496, 498 (Bankr. S.D. Fla. 2008) (holding that considering the remarkable results achieved by counsel in this "highly bizarre" case, where the estate ultimately realized sufficient funds to pay all general unsecured creditors, as well as a residue capable of satisfying in part the claims of various subordinated

creditors, a fee enhancement of $30,000 was warranted).  There is no mention in the 9019 Motion

of potential payout to general unsecured creditors.

The burden of proof to establish any new compensation terms rests with the applicant.  In

*ASARCO*, the Fifth Circuit rejected the investment banker's "proffered excuse that it had no way

– and, therefore, could not have anticipated – the full extent of ASARCO's internal disarray . . ."

*ASARCO*, 702 F.3d at 265.  In a complex case, a professional is generally capable of anticipating

that "plans for a quick pit-stop reorganization" could be slowed by such factors of which it is

aware, as well as "other foreseeable problems—such as inadequate leadership, management,

internal controls, and reporting systems—that it had not yet discovered. *Id*. at 264; *In re Smart

World Technologies, LLC*, 552 F.3d 228, 235 (2d Cir. 2009) ("[T]he prospect of prolonged

litigation always exists, and was clearly anticipated by the parties, who made [the attorneys']

contingent fee a function of the length of the litigation.").

To show entitlement to an enhancement, an applicant must produce "specific evidence"

that an award based on its approved rates does not fairly compensate the applicant for the work

done. *In re Manoa Fin. Co.,* 853 F.2d 687, 688 (9th Cir. 1988); *In re Brous,* 370 B.R. 563, 570

(Bankr. S.D.N.Y. 2007) (quotation omitted) ("'The party advocating such a departure bears the

burden of establishing that an adjustment is necessary to the calculation of a reasonable fee.'").

As one court has stated:

> The requirement of "improvidence in light of developments not capable of being
> anticipated at the time" makes it difficult, as a practical matter, for a court to vary
> the compensation even when it thinks that it was improvident at the outset.  Whether
> development were capable of being anticipated is fertile ground for debate in
> virtually every case.

*In re Yablon*, 136 B.R. 88, 92 (Bankr. S.D.N.Y. 1992).

In the 9019 Motion, the Chapter 7 Trustee states that it is not until after the Mediation

commenced – ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████.  As a result of this, the Chapter 7 Trustee argues that "the

unanticipated circumstances ███████████████████████████████████

████████████████████████████████████████████████████████,

as well as the unanticipated developments resulting therefrom, were not capable of anticipating by

either the Trustee or Quinn Emanuel." *Id.* at ¶ 58.  What the Chapter 7 Trustee and Quinn appear

to argue is ██████████████████████████████████████ **required**

Quinn to spend more time than it could have anticipated and that the Adversary Proceedings could

have been settled much earlier ███████████████████████████.  *Id.* at ¶ 59.  That,

however, simply does not rise to the "improvident" standard of not capable of being anticipated.

As set forth above, and with some limited exceptions for matters falling under hourly

compensation, Quinn was retained to represent the Chapter 7 Trustee in various matters, including

the Adversary Proceedings, on a 35% contingency basis.  Notably, the 35% Contingency Fee was

a flat percentage that would apply regardless of whether the Adversary Proceedings had settled

immediately after the Rule 26 initial disclosures were made or whether the case proceeded to a full

and prolonged trial.  Accordingly, the Chapter 7 Trustee and Quinn's assertions that an

unanticipated amount of time was spent dealing with the case as a result of ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████





███████████████████████████████████████

███████████████████████████████████████

██████████████████ – Quinn would be paid an additional 15% over and above the previously ordered Contingency Fee agreement – for a total of 50% of the Total Settlement Payment – for its work. Quinn should not be entitled to such a windfall under the terms of the Settlement Agreement as nothing in the Bankruptcy Code would allow such fee enhancement. If the Adversary Proceedings had been settled for the same Total Settlement Payment within months of their commencement, Quinn would have earned the Contingency Fee of 35%; and an argument that Quinn's fee should be reduced because otherwise Quinn would receive a windfall would have had no merit because settlement is always a possibility even in the early weeks of a case. Alternatively, if the parties had engaged in lengthy discovery disputes (albeit with no party failing to disclose relevant information), lengthy and contested litigation pre-trial motions, unsuccessful mediation, and ultimately fully litigating the Adversary Proceedings to trial, with post-trial motions, all resulting in the same Total Settlement Payment after prolonged and extensive litigation, under the pre-approved retention agreement, Quinn would receive the same Contingency Fee of 35%. Any argument for a fee enhancement would fail. Employment and a pre-approved compensation structure pursuant to § 328 provides fee certainty on both sides of the coin for the benefit of professionals as well as other parties in interest.

Adversary proceedings can get litigious; and some are more contested and prolonged than others. That is simply the nature of litigation; and discovery disputes are common in many adversaries. Said differently, the reasons that the 9019 Motion offers as to why Quinn is entitled to a significant increase in their fees could have been anticipated, the parties should not "Monday morning quarter back" the previously approved fee agreement to the detriment of the estate, and

the Improvident Payment is not and should not be an integral part of the Settlement Agreement.

The 9019 Motion cites to some cases that are distinguishable.  In the case of *In re Home Exp., Inc.*, 213 B.R. 162 (Bankr. N.D. Cal. 1997), the court adjusted the fees previously agreed upon pursuant to § 328(a).  In adjusting the professionals' fees, the court rejected arguments that the fees were improvident in light of the fact that (a) the debtor's reorganization took longer than originally anticipated and (b) the difficulties with reclamation claimants and other trade creditors proved more nettlesome to resolve than could have reasonable been expected.  *Id*. at 167.  The court held that "the only real surprise that might justify a fee adjustment for the professionals under § 328(a) centers on a pervasive managerial vacuum." *Id*. ("The managerial vacuum not only left the professionals stranded in this case with no leadership or direction, but also required them to attempt to fill the void."). In *In re Western Monetary Consultants, Inc.*, 143 B.R. 780 (Bankr. D. Colo. 1992), an accountant sought fees of $18,651.75, notwithstanding a cap on fees in the order granting its retention application. The bankruptcy court had adjusted the debtor's accountant's fees upward because the accounting firm had to reconstruct manually many files that had been lost when the debtor's computer was removed. The accountant requested additional fees; and the bankruptcy court's approval of such fees was appealed by the debtor.  The accounting firm filed a motion for sanctions under Rule 11 and 28 U.S.C. § 1927 alleging that the appeal was filed to frustrate the firm's collection efforts. The district court affirmed the lower court, finding that the bankruptcy court's approval of the accountant's increased fees under the § 328(a) "improvident" standard was not clearly erroneous and awarded additional sanctions under Rule 11. ▮▮▮

▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮

▮▮▮▮. Furthermore, the additional fees sought in these cases were very modest

compared to the Improvident Payment sought in this case.

The 9019 Motion also draws the Court's attention to the settlement reached in the *Toys R Us* case which provided for, among other things, a substantial contribution payment to counsel of an ad hoc group of creditors (notably, the same counsel who is representing the Chapter 7 Trustee in this case). In that case, as the Rule 9019 Motion points out, Judge Phillips overruled the United States Trustee's objection and found that the substantial contribution payment of $2 million dollars was an integral and material part of the settlement agreement and should thus be approved pursuant to §§ 105, 363, and Rule 9019. *See* TRU August 7, 2018 Transcript at p. 221. Alternatively, the Court found that based on the motions, the declarations, the pleadings filed as well as the arguments and all evidence submitted in court, the vendor fee payment met the standards of § 503(b)(3)(D) and (4), "due to the substantial and concrete contributions that the ad hoc vendor group and vendor committee members have made towards reaching a settlement that is beneficial to the debtor's estates and their creditors."

As set forth in his objection to the settlement in *Toys R Us*, the United States Trustee objected to, among other things, the substantial contribution payment and argued, in pertinent part, that "sections 330(a) and 503(b) contain none of the evidence-avoidance privileges or presumption of Bankruptcy Rule 9019(a)." *Toys R Us, Inc. et al*, No. 17034665 (Dkt. 3979). His position remains unchanged today – Rule 9019 is not and cannot be a run-around for more specific sections of the Bankruptcy Code. Accordingly, the United States Trustee respectfully disagrees with Judge Phillips's decision that the substantial contribution payment could be approved under §§ 105, 363 and Rule 9019 and further would argue that that order is not binding on this Court. Second, as the Chapter 7 Trustee herself recognizes in footnote 9 of the 9019 Motion, the standard that applies to a substantial contribution is governed by § 503 – not under § 328(a). Accordingly, the proposed

27

comparison is tantamount to the proverbial "comparing apples to oranges." Thus, reliance on the

Toys R Us settlement does not provide strong support for the Chapter 7 Trustee's position.

**IV.    Even if the Requirements of § 328(a) Were Met, There is Insufficient Evidence as to the Appropriate Amount of the Improvident Payment**

Should this Court find that Quinn's 35% Contingency Fee is improvident in light of

developments not capable of being anticipated—a finding with which the United States Trustee

strongly disagrees—the Court must then determine the amount of the Improvident Payment to be

paid to Quinn over and above its 35% Contingency Fee on the appropriate settlement figure.

**A.    The Improvident Payment Improperly Provides for Fees-on-Fees**

The Improvident Payment as structured pursuant to the terms of the Settlement Agreement

and 9019 Motion provides Quinn with an improper windfall. The Total Settlement Payment to the

estate is $21 million dollars. From that amount, based on its retention application, Quinn would

be entitled to receive the Contingency Fee calculated as "any recovery of funds actually received

by the Estate with respect to a particular Claim . . . after deduction of the amount of costs and

expenses (other than the Trustee's own fee and any fees charged by the Trustee's law firm and/or

any other professional employed by the Trustee except as otherwise provided in the Engagement

Letter)". *See supra* at ¶ 19.

As proposed in the 9019 Motion, without providing for a deduction of any "costs and

expenses," Quinn would earn a Contingency Fee of $7.35 million dollars, which is 35% of the

Total Settlement Payment, without subtracting any amount first for payment of the Improvident

Payment. In essence, what is proposed is to pay fees-on-fees. Quinn should not receive a 35%

Contingency Fee on the Improvident Payment. At a minimum, the amount to the Improvident

Payment should be subtracted from the Total Settlement Payment so that the 35% percent

Contingency Fee is calculated based on the Total Settlement Payment <u>minus</u> the Improvident

28

Payment awarded.[9]

**B.    There Is Insufficient Evidence for the Court to Make a Determination of the Amount of Any Improvident Payment Award**

The United States Trustee agrees that fees approved under § 328(a) need not be reviewed for reasonableness under § 330; instead, the contract governs. *In re ASARCO, L.L.C. (ASARCO)*, 702 F.3d 250, 268 (5th Cir. 2012) ("In disputes governed by § 328(a), the contractual arrangement is supreme, and we shall enforce the contract as written.") But here, the 9019 Motion contemplates that Quinn will receive the § 328(a) Contingency Fee—a fee which the United States Trustee does not dispute (as it stands alone)- plus an Improvident Payment, the amount of which this Court must determine. To the extent this Court determines that the standards under § 328(a) have been met, this Court must also have facts to employ a methodology to determine the appropriate amount of an improvident fee under this provision. Here, such facts are absent from the record.

In the Fourth Circuit, the methodology for determining an appropriate fee are the Johnson factors, which are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Johnson v. Georgia Highway Express,*

---

[9]To illustrate, if the Court were to award an Improvident Payment of $3,150,000.00, the calculation of the contingency fee would be as follows: ($21,000,000.00 minus $3,150.000.00 = $17,850,000.00) multiplied by 35% = $6,247,500.00. Total payment to Quinn would be $6,247,500.00 + $3,150,000.00 = $9,397,500.00.

*Inc.,* 488 F.2d 714 (5th Cir. 1974). There is insufficient evidence upon which this Court can apply

the *Johnson* factors to determine the proper amount of any Improvident Payment. Quinn has not

filed a fee application under Bankruptcy Rule 2016(a). In order to determine the appropriate

amount of the Improvident Payment, the Court should have the benefit of a fee application or at

least time records and an explanation of what additional services Quinn provided that it would not

have otherwise been required to provide as part of its Contingency Fee representation. Without a

factual basis, this Court cannot determine the appropriate amount of the Improvident Payment, and

as such, should not award an Improvident Payment.

### C.    The Chapter 7 Trustee and Quinn Have Failed to Demonstrate How Quinn Would Be Entitled to the Improvident Payment on an Hourly Basis.

In further support of the request for approval of an Improvident Payment, the 9019 Motion

provides that "[a]bsent approval of the Settlement Agreement, Quinn Emanuel would otherwise

seek compensation on an hourly basis by the Estate in an amount that would exceed $3,150,000."

*Supra* at ¶ 54. It is unclear, for several reasons, how that alternate argument would allow Quinn

to prevail on its request for a fee enhancement. First, the hourly rate structure only applies to a

limited category of services; and it is not clear that any of the work for which Quinn is now seeking

an increased fee fits into any of those categories. Second, as for the hourly rates awarded for the

Non-Contingency Matters, the Quinn retention order expressly provides that "Quinn Emanuel and

the Trustee shall mutually agree **in writing** before any services are provided for Non-Contingency

Matters." *See supra* at ¶ 4 (Emphasis added). Upon information and belief, it does not appear that

Quinn received any pre-approval by the Chapter 7 Trustee for the work it now tries to fit into the

Non-Contingency Matters category. To that end, if that were the case, it is not clear why Quinn

would not simply have filed an appropriate fee application for those hourly fees, subject to § 330.

Even more importantly, it bears emphasis that Quinn has filed fee applications already for hourly work under the Non-Contingency Matters. In March of 2022, just a couple of months ago, it sought and was awarded additional hourly fees for time spent on the Mediation. Moreover, as to any amounts of hourly work related to the Mediation, as set forth above at Paragraph 17, Quinn already filed a supplemental fee application indicating that it had incurred $69,416.30 of fees that it could seek as additional hourly fees, and noting that it was only seeking $24,150.17 on an hourly basis in conjunction with the supplement, while reserving the right "to seek the remainder of these fees from the Estate in future fee applications as **Contingent Fees**." Dkt. 1249, pg. 2, fn 2 (emphasis added).

**V.** ▰▰▰▰▰▰▰▰▰▰



## VI.    The Improvident Payment Provision of the Settlement Agreement Is Outside the Scope of the FAO Procedures

At the May 25, 2022, hearing, this Court inquired why the FAO Procedures do not govern this settlement. (FAO procedures found at Main Dkt. 533 and 929 (as amended)).  The United States Trustee's position is that Rule 9019 and the FAO Procedures do govern the settlement as it relates to the $21 million dollar Total Settlement Payment and the mutual releases, but do not govern as it relates to the Improvident Payment.   This position is set forth in the United States Trustee's Opposition to the Motion to Seal, incorporated herein by reference. (Dkt. 215 at Sections B and C, pages 11-15).  In sum, the United States Trustee asserts that the FAO Procedures were put in place for judicial economy and to preserve resources of the estate as well as defendants. The procedures allowed for more expeditious resolution of the numerous actions asserted by the Chapter 7 Trustee against various parties by including confidentiality provisions, but with certain

terms to allow the Chapter 7 Trustee to still comply with her fiduciary duties.  In no way did the

FAO Procedures include such confidentiality provisions or considerations for increased fees or

payment of an enhancement to counsel for the Chapter 7 Trustee.  In fact, to allow the request and

any alleged justification for increased fees over and above those on the public record to her own

counsel under any form of seal puts the Chapter 7 Trustee in a very precarious position with those

she is duty-bound to serve.  The Chapter 7 Trustee owes a duty to all creditors in the case, not just

those few who receive notice under the FAO Procedures.  In essence, it is the inclusion of the

Improvident Payment in this Settlement Agreement that puts it beyond the scope of the previously

approved FAO Procedures.

## CONCLUSION

WHEREFORE, the United States Trustee requests that the Court strike the Improvident

Payment term from the Settlement Agreement and the 9019 Motion and approve the remainder of

the Settlement Agreement and the 9019 Motion and grant such other and further relief as the Court

deems appropriate.

Respectfully Submitted,

Dated: June 3, 2022                               JOHN P. FITZGERALD, III
                                                  Acting United States Trustee Region 4


                                                  By:  /s/Kathryn R. Montgomery
                                                  Kathryn R. Montgomery (VSB 42380)
                                                  Assistant United States Trustee
                                                  Office of the United States Trustee
                                                  701 E. Broad St., Ste. 4304
                                                  Richmond, VA 23219
                                                  Ph: (804) 771-2310
                                                  Fax: (804) 771-2330
                                                  Kathryn.Montgomery@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2022, I caused a copy of the foregoing pleading to be served by email on the Chapter 7 Trustee, her counsel, and counsel for the parties in the Adversary Proceedings.

/s/    Kathryn R. Montgomery
        Kathryn R. Montgomery, Esq.